1  MARK DAVID MCPHERSON (CA SBN 307951)
   mmcpherson@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California 94105-2482
   Telephone: 415.268.7000
4
   JESSICA KAUFMAN (ADMITTED *PRO HAC VICE*)
5  jkaufman@mofo.com
   STEVEN RAPPOPORT (ADMITTED *PRO HAC VICE*)
6  srappoport@mofo.com
   MORRISON & FOERSTER LLP
7  250 55th Street
   New York, NY 10019
8  Telephone: 212.468.8000

9  Attorneys for Defendants
   McKINSEY & COMPANY, INC.
10 McKINSEY & COMPANY, INC. UNITED STATES
   McKINSEY & COMPANY, INC. WASHINGTON D.C.
11 McKINSEY HOLDINGS, INC.

12 [Additional Counsel Listed on Signature Page]

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

17 IN RE: MCKINSEY & CO., INC.            Case No. 3:21-md-02996-CRB (SK)
   NATIONAL PRESCRIPTION OPIATE
18 CONSULTANT LITIGATION                  **McKINSEY DEFENDANTS' NOTICE OF
                                          MOTION AND MOTION TO DISMISS
19                                        FOR LACK OF PERSONAL
                                          JURISDICTION; MEMORANDUM OF
20 This Document Relates to:             POINTS AND AUTHORITIES**

21 Cases Listed in Appendix A
                                          Date:      March 31, 2022
22                                        Time:      10:00 a.m.
                                          Courtroom: Courtroom 6, 17th Floor
23                                        Judge:     Hon. Charles R. Breyer

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on March 31, 2022 at 10:00 a.m., or as soon thereafter as

4  the matter may be heard, before the Honorable Charles R. Breyer, United States District Judge, in

5  Courtroom 6, 17th Floor of the San Francisco Courthouse, located at 450 Golden Gate Ave., San

6  Francisco, CA 94102, Defendants McKinsey & Company, Inc., McKinsey & Company, Inc.

7  United States, McKinsey & Company, Inc. Washington D.C., and McKinsey Holdings, Inc.

8  (collectively, "McKinsey") will and do hereby move to dismiss Plaintiffs' complaints in the cases

9  set forth in Appendix A.

10      This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds

11  that the Court lacks personal jurisdiction over McKinsey in these cases.

12      This motion is based upon this Notice of Motion and Motion, the following Memorandum

13  of Points and Authorities, the Declaration of Abhishek Jain in Support of McKinsey Defendants'

14  Motion to Dismiss for Lack of Personal Jurisdiction, the Declaration of Gretchen Scheidler in

15  Support of McKinsey Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, all other

16  pleadings and papers on file herewith, and such other arguments and other materials as may be

17  presented before the Motion is taken under submission.

18  Dated: December 23, 2021          **MORRISON & FOERSTER LLP**

19

20                                     By: */s/ Mark David McPherson*
                                        MARK DAVID McPHERSON
21
                                        Attorneys for Defendants
22                                      McKINSEY & COMPANY, INC.
                                        McKINSEY & COMPANY, INC. UNITED STATES
23                                      McKINSEY & COMPANY, INC. WASHINGTON D.C.
                                        McKINSEY HOLDINGS, INC.
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITES ............................................................................................... iii

ISSUE TO BE DECIDED .............................................................................................. ix

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .................................................................................................. 4

    A.   Parties ........................................................................................................ 4

    B.   McKinsey's Engagements with Purdue .................................................... 5

    C.   McKinsey's Other Alleged Engagements ................................................ 6

    D.   Evidence of the Locations of McKinsey's Engagements ........................ 7

    E.   Plaintiffs' Allegations Concerning Personal Jurisdiction ........................ 8

III. LEGAL STANDARD .......................................................................................... 10

IV.  ARGUMENT ....................................................................................................... 12

    A.   McKinsey Is Not Subject to General Jurisdiction in Any of the Subject States. ... 12

    B.   McKinsey Is Not Subject to Specific Jurisdiction in the Subject States. ............... 14

        1.   McKinsey Did Not "Purposefully Direct" Any Activities at the Subject States. ...................................................................................... 15

            a.   Plaintiffs' Alleged Injuries in the Subject States Cannot Render McKinsey's Conduct "Expressly Aimed" at Those States. ........... 15

            b.   McKinsey's *Clients'* Conduct in the Subject States Cannot Render *McKinsey's* Conduct "Expressly Aimed" at Those States. ............. 17

            c.   Plaintiffs' Allegations that McKinsey Should Have Foreseen Injuries in the Subject States Cannot Render McKinsey's Conduct "Expressly Aimed" at Those States. .............................................. 18

            d.   Plaintiffs' Allegations that McKinsey Conspired with Manufacturers Cannot Render McKinsey's Conduct "Expressly Aimed" at Those States. ........................................................... 22

        2.   Plaintiffs' Claims Against McKinsey Do Not Arise from or Relate to McKinsey's Activities in the Subject States. ........................................... 23

        3.   The Exercise of Jurisdiction over McKinsey in the Subject States Would Be Unreasonable. ...................................................................... 25

    C.   Any Request for Jurisdictional Discovery Should Be Denied. .............................. 28

i

1

**TABLE OF CONTENTS**
(continued)

2

Page

3
V.      CONCLUSION ......................................................................................................... 29

4
APPENDIX A ................................................................................................................... 31

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITES

**Page(s)**

**Cases**

*Abdulaziz v. Twitter, Inc.,*
No. 19-CV-06694-LB, 2020 WL 6947929 (N.D. Cal. Aug. 12, 2020) ...................................13

*Able Fund v. KPMG Accountants NV,*
247 F. App'x 504 (5th Cir. 2007) ........................................................................................21

*Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.,*
No. 15-cv-02991, 2015 WL 5834135 (N.D. Cal. Oct. 7, 2015) .............................................20

*Anaya v. Machines de Triage et Broyage,*
No. 18-cv-01731, 2019 WL 1083783 (N.D. Cal. Mar. 7, 2019).............................................20

*Asahi Metal Indus. Co. v. Superior Court*
480 U.S. 102 (1987)...........................................................................................................19

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.,*
No. 07-MD-01871, 2012 WL 3205620 (E.D. Pa. Aug. 7, 2012)....................................11fn. 6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*
874 F.3d 1064 (9th Cir. 2017)..............................................................................................17

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
11 F.4th. 972 (9th Cir. 2021).......................................................................... 23, 24fn. 8, 26

*B. Bullen v. CohnReznick, LLP,*
No. 1884-cv-03802-BLS2,
2019 WL 3331280 (Mass. Super. Ct. June 17, 2019) ............................................................21

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
223 F.3d 1082 (9th Cir. 2000)........................................................................................16, 19

*Baton v. Ledger SAS,*
No. 21-CV-02470-EMC, 2021 WL 5226315 (N.D. Cal. Nov. 9, 2021).................................29

*BNSF Ry. Co. v. Tyrrell,*
137 S. Ct. 1549 (2017) ..................................................................................................12, 13

*Boschetto v. Hansing,*
539 F.3d 1011 (9th Cir. 2008)..............................................................................................29

*Brand v. Menlove Dodge,*
796 F.2d 1070 (9th Cir. 1986)..............................................................................................26

*Bristol-Myers Squibb Co. v. Super. Ct.,*
137 S. Ct. 1773 (2017) ....................................................................................................14, 26

iii

*Brown v. 140 NM LLC,*
  No. 17-cv-05782, 2019 WL 118425 (N.D. Cal. Jan. 7, 2019)....................................22

*Caruth v. Int'l Psychoanalytical Ass'n,*
  59 F.3d 126 (9th Cir. 1995)..........................................................................................27

*CBC Framing, Inc. v. Flores,*
  No. CV 08-00150, 2008 WL 11337545 (C.D. Cal. May 19, 2008)................................25fn. 9

*CE Distribution, LLC v. New Sensor Corp.,*
  380 F.3d 1107 (9th Cir. 2004).......................................................................................26

*Chirila v. Conforte,*
  47 F. App'x 838 (9th Cir. 2002) ...................................................................................22

*Cisco Sys., Inc. v. STMicroelectronics, Inc.,*
  77 F. Supp. 3d 887 (N.D. Cal. 2014) ............................................................................23

*Core-Vent Corp. v. Nobel Indus. AB,*
  11 F.3d 1482 (9th Cir. 1993).........................................................................................27

*Creative Tech., Ltd. v. Aztech Sys. PTE., Ltd.,*
  61 F.3d 696 (9th Cir. 1995)...........................................................................................28

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .......................................................................................12, 13, 14, 26

*In re Depuy Orthopaedics, Inc.,*
  870 F.3d 345 (5th Cir. 2017).........................................................................................10

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.,*
  No. 3:11-MD-2244-K, 2016 WL 9559912 (N.D. Tex. Sept. 20, 2016) ...................10

*Dillon v. Avis Budget Grp., Inc.,*
  No. 18-cv-3870, 2018 WL 3475529 (C.D. Cal. July 13, 2018)...............................14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  No. C 02-1486, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005)...................................12

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.,*
  No. 20-cv-06846, 2021 WL 3037701 (N.D. Cal. July 19, 2021)...............................23

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.,*
  828 F.2d 1439 (9th Cir. 1987).......................................................................................27

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.,*
  No. 19-cv-05611, 2020 WL 1244918 (N.D. Cal. Mar. 16, 2020)..........................20, 22

*Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP,*
  89 Mass. App. Ct. 718 (2016)........................................................................................21

iv

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ........................................................................................... 24fn. 8

*Gutierrez v. Givens*,
    1 F. Supp. 2d 1077 (S.D. Cal. 1998) ...................................................................... 22

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    No. CIV.A. H-10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) ............................ 11fn. 6

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ........................................................................... 19, 21

*Hudson-Munoz, LLC v. U.S. Waffle Co.*,
    No. 19-cv-01960, 2019 WL 3548919 (C.D. Cal. Aug. 5, 2019) ............................... 25

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ...................................................... 10, 12, 29

*Karp v. Imagetrust GMBH & Co. KG*,
    No. 16-cv-09228, 2017 WL 10399369 (C.D. Cal. Oct. 17, 2017) .......................... 16

*Kellman v. Whole Foods Market, Inc.*,
    313 F. Supp. 3d 1031 (N.D. Cal. 2018) ................................................................ 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................. 10

*In re Korean Air Lines Co.*,
    642 F.3d 685 (9th Cir. 2011) ............................................................................... 12

*Krypt, Inc. v. Ropaar LLC*,
    No. 19-cv-03226, 2020 WL 3639651 (N.D. Cal. July 6, 2020) ............................... 22

*Leetsch v. Freedman*,
    260 F.3d 1100 (9th Cir. 2001) ............................................................................. 27

*Lexington Ins. Co. v. Hotai Ins. Co.*,
    938 F.3d 874 (7th Cir. 2019) ............................................................................... 18

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ............................................................................. 13

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................................... 29

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) ............................................................................. 27

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
    No. 17-CV-04992, 2019 WL 4888693 (N.D. Cal. Oct. 3, 2019) ...................... 25fn. 9

v

*Morrill v. Scott Fin. Corp.*,
 873 F.3d 1136 (9th Cir. 2017)..................................................................................15

*In re Packaged Seafood Prods. Antitrust Litig.*,
 338 F. Supp. 3d 1118 (S.D. Cal. 2018) ...................................................................14

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006)............................................................................12, 19

*Perkins v. Benguet Consol. Mining Co.*,
 342 U.S. 437 (1952) .................................................................................................14

*Picot v. Weston*
 780 F.3d 1206 (9th Cir. 2015)............................................................................24, 25

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
 No. 14-cv-8390, 2016 WL 7177532 (C.D. Cal. May 26, 2016) ..............................11

*Rocke v. Canadian Auto. Sport Club*,
 660 F.2d 395 (9th Cir. 1981)....................................................................................26

*Rodriguez v. Reinhardt*,
 No. 13-CV-05403, 2014 WL 12639965 (N.D. Cal. Sept. 4, 2014) ..........................26

*Roth v. Garcia Marquez*,
 942 F.2d 617 (9th Cir. 1991)....................................................................................27

*Sanchez v. Bos. Scientific Corp.*,
 No. 12-cv-05762, 2014 WL 202787 (S.D. W.Va. Jan. 17, 2014).....................11fn. 6

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
 882 F.3d 96 (5th Cir. 2018).....................................................................................18

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004)........................................................................15, 19, 25

*Sciara v. Campbell*,
 840 F. App'x 920 (9th Cir. 2020) ............................................................................17

*Sharma v. Volkswagen AG*,
 524 F. Supp. 3d 891 (N.D. Cal. 2021) .............................................................24fn. 8, 28

*Taub v. Parker Jewish Inst. for Health Care & Rehab.*,
 No. 18-cv-07491, 2019 WL 3292369 (N.D. Cal. July 22, 2019)..............................28

*Terracom v. Valley Nat'l Bank*,
 49 F.3d 555 (9th Cir. 1995)................................................................................26, 28

*Thakar v. Patel*,
 No. 07-cv-1220, 2008 WL 11409564 (C.D. Cal. Sept. 30, 2008) ......................24, 25

vi

McKinsey Defendants' Notice of Motion and Motion to Dismiss For Lack of Personal Jurisdiction
Case No. 3:21-md-02996-CRB (SK)

*Trierweiler v. Croxton & Trench Holding Corp.*,
    90 F.3d 1523 (10th Cir. 1996) ........................................................................ 21

*Triple Up Ltd. v. Youku Tudou Inc.*,
    No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018) (per curiam) ............... 18

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ........................................................................ 27

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................ *passim*

*Wescott v. Reisner*,
    No. 17-cv-06271, 2018 WL 2463614 (N.D. Cal. June 1, 2018) ........................ 22

*Williams v. Beemiller, Inc.*,
    33 N.Y.3d 523 (2019) ........................................................................ 22

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ........................................................................ 20

*Wonderful Co. LLC v. Nut Cravings Inc.*,
    No. 20-cv-11738, 2021 WL 3598859 (C.D. Cal. Apr. 22, 2021) .................... 17, 19

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    No. 3:09-MD-02100-DRH, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) ............... 11 fn. 6

*Yeager v. Airbus Grp. SE*,
    No. 19-cv-01793, 2021 WL 750836 (C.D. Cal. Jan. 26, 2021) ........................ 18

*Zawitz v. Star Magic*,
    No. 20-cv-07121, 2021 WL 1788590 (N.D. Cal. May 5, 2021) ........................ 16

*Zoch v. Magna Seating (Germany) GmbH*,
    810 F. App'x 285 (5th Cir. 2020) ........................................................................ 18

**Statutes and Rules**

Alaska Stat. § 09.05.015 ........................................................................ 9 fn. 5

Ariz. R. Civ. P. 4.2(a) ........................................................................ 9 fn. 5

Colo. Rev. Stat. § 13-1-124 ........................................................................ 9 fn. 5

Haw. Rev. Stat. § 634-35 ........................................................................ 9 fn. 5

Ind. R. Trial 4.4(A) ........................................................................ 9 fn. 5

Ky. Rev. Stat. Ann. § 454.210 ........................................................................ 9 fn. 5

La. Rev. Stat. Ann. § 13:3201 ........................................................................ 9 fn. 5

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ................................................................. 9fn. 5

Miss. Code Ann. § 13-3-57 ........................................................................................ 9fn. 5

Mont. R. Civ. P. 4B ................................................................................................... 9fn. 5

N.M. Stat. Ann. § 38-1-16 ......................................................................................... 9fn. 5

Okla. Stat. tit. 12, § 2004 .......................................................................................... 9fn. 5

Or. R. Civ. P. 4 .......................................................................................................... 9fn. 5

Tenn. Code Ann. § 20-2-225 ...................................................................................... 9fn. 5

Utah Code Ann. § 78B-3-201 .................................................................................... 9fn. 5

Va. Code Ann. § 8.01-328.1 ...................................................................................... 9fn. 5

W. Va. Code § 56-3-33 .............................................................................................. 9fn. 5

Wash. Rev. Code § 4.28.185 ...................................................................................... 9fn. 5

Wis. Stat. § 801.05 .................................................................................................... 9fn. 5

**Other Authorities**

4 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1068 (4th ed.
    2021) ............................................................................................................. 11fn. 7

1

## **ISSUE TO BE DECIDED**

2        1.     Is McKinsey subject to personal jurisdiction in states where it neither is

3   incorporated nor maintains its principal place of business, and where it provided no advice

4   concerning sales, marketing, manufacturing, or distribution of opioids, merely because Plaintiffs

5   allege either that they were injured there, or that other third parties (not McKinsey itself) sold

6   opioids in Plaintiffs' states?

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

In these consolidated cases, 548 Plaintiffs in 31 states have filed 98 cases, all claiming that McKinsey should be held legally responsible for the opioid crisis, based on allegations that McKinsey provided consulting services to certain opioid manufacturers. Plaintiffs' complaints purport to state more than two dozen claims, all but one of which are pleaded under state law, such as claims for negligence, common law fraud, and public nuisance, as well as claims under various states' consumer protection or deceptive trade practices statutes.

While McKinsey looks forward to briefing why Plaintiffs' claims against it fail as a matter of law, at this initial stage of the proceedings, McKinsey is filing two threshold motions to winnow the group of Plaintiffs asserting claims against McKinsey.[1] First, in a companion motion, McKinsey is moving to dismiss claims brought by political subdivision and similarly-situated Plaintiffs from states with which McKinsey has already settled claims. And second, with this motion, McKinsey seeks dismissal of claims brought by *all* Plaintiffs in or from 19 states— Alaska, Arizona, Colorado, Hawai'i, Indiana, Kentucky, Louisiana, Maryland, Mississippi, Montana, New Mexico, Oklahoma, Oregon, Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin[2]—for lack of personal jurisdiction.

McKinsey is differently situated than defendants in opioid-related litigation pending elsewhere. Most, if not all, of those defendants manufactured, distributed, or sold opioids across the country and therefore may be subject to claims concerning opioid sales in all 50 states. McKinsey, on the other hand, is a consulting firm that provides advice to clients in select

---

[1] As noted in the parties' Joint Status Conference Submission (ECF No. 240 at 2), the parties agreed that McKinsey reserves the right to move to dismiss Plaintiffs' complaints on other grounds, including under Rule 12(b)(6)—an agreement also reflected in Pretrial Order No. 7: Initial Case Management Order (ECF No. 293 ¶¶ 8-9).

[2] Cases filed by plaintiffs from Hawai'i have not yet been transferred to this MDL Proceeding, though McKinsey expects the cases to be transferred to this MDL Proceeding shortly. McKinsey's motion seeks dismissal of any cases filed in the Subject States, or any cases filed directly in an MDL Proceeding that would be remanded to a Subject State at the conclusion of pretrial proceedings. McKinsey reserves the right to supplement this motion to seek dismissal of any subsequently filed or transferred cases from the Subject States or from other states in which McKinsey can similarly demonstrate, as it does in this motion, that it provided no advice concerning sales, marketing, manufacturing, or distribution of opioids.

1

locations. McKinsey has never manufactured, distributed, or sold opioids in any state. Nor has McKinsey ever had any interactions with any of the Plaintiffs in these cases concerning opioids—much less made any representations to them about opioids. For that reason, McKinsey is not subject to expansive nationwide personal jurisdiction in the same way that other defendants in other opioid-related litigation may be.

The lack of personal jurisdiction over McKinsey in more than half of the states represented in this MDL Proceeding is a crucial threshold issue. Any cases remaining at the conclusion of pretrial proceedings will be remanded to their original forum states, requiring McKinsey to defend itself at trial there—an inefficient (and unreasonable) result given that all of the evidence pertaining to liability is located elsewhere. This motion therefore seeks to limit where McKinsey perhaps later might be required to defend itself at trial—while also helping to streamline this Court's legal analysis for later Rule 12(b) motions, by significantly reducing the number of states whose laws the parties will need to analyze.

To be clear, while McKinsey is moving to dismiss for lack of personal jurisdiction in 19 states, McKinsey is not conceding that it is subject to jurisdiction in the remaining 12 states currently represented in this MDL Proceeding. McKinsey has reserved its right to move to dismiss claims brought against it in cases filed in other states at a later stage of these proceedings. (See ECF No. 293 ¶ 8.) Although McKinsey may have had limited contacts with other states, those contacts were neither relevant nor sufficient to confer personal jurisdiction. But McKinsey recognizes that such contacts may nonetheless create a fact issue at this stage of the litigation. By contrast, the Court need not resolve any factual disputes to eliminate 62 cases from 19 states from this MDL Proceeding. For now, therefore, McKinsey moves to dismiss the claims against it brought in these 19 states.

As to these states, this motion presents only one legal question: is McKinsey subject to personal jurisdiction in states where it neither is incorporated nor maintains its principal place of business, and where it provided no advice concerning sales, marketing, manufacturing, or distribution of opioids, merely because Plaintiffs allege either that they were injured there, or that other third parties (not McKinsey itself) sold opioids in Plaintiffs' states?

2

1    The answer is no. The Supreme Court has made clear that except in the most exceptional

2    case, a court may only exercise general jurisdiction over a defendant where the defendant is

3    domiciled (here, depending on the specific McKinsey entity, New York or Delaware). The

4    Supreme Court has made clear that a court may only exercise specific jurisdiction over a

5    defendant if plaintiffs' claims arise out of or relate to the defendant's contacts with the relevant

6    forum state—not the plaintiffs' contacts, not the defendant's clients' contacts, and not any other

7    third party's contacts. And interpreting Supreme Court precedent, the Ninth Circuit has made

8    clear that, for a court to exercise specific jurisdiction over a defendant based on the defendant's

9    out-of-state conduct, the defendant must expressly aim conduct at the forum state, and plaintiffs'

10   claims must arise from that conduct. That is true, the Ninth Circuit has held, even if a defendant

11   could have foreseen plaintiffs' injuries in the forum state.

12   Based on these fundamental principles, the conclusion is inescapable: McKinsey cannot

13   be subject to personal jurisdiction in any of the 19 states at issue. Plaintiffs do not allege that

14   McKinsey performed any work in these states, nor could they. As McKinsey's Director of

15   Professional Development explains, there is no reason to believe McKinsey performed any

16   opioid-related work for any opioid manufacturer or distributor in any of the 19 states. Nor could

17   Plaintiffs allege, much less satisfy their burden of establishing, that McKinsey expressly aimed

18   any conduct at the 19 states. McKinsey has no relationship with any Plaintiff, including any of the

19   Plaintiffs in the 19 states. As a consultant, McKinsey "aims" or "targets" its conduct at its clients

20   and its clients alone, not to any third parties. Thus, to the extent McKinsey's consulting work

21   could be considered "aimed" at any particular geographic location, it was aimed only at states

22   where its clients received McKinsey's services. Because none of the clients at issue in these cases

23   is located in, or received McKinsey's services in, the 19 states, McKinsey did not "expressly aim"

24   any conduct at those states, and it would be unfair to subject McKinsey to personal jurisdiction in

25   those states where it had no contacts relevant to this litigation.

26   McKinsey is therefore not subject to personal jurisdiction in Alaska, Arizona, Colorado,

27   Hawai'i, Indiana, Kentucky, Louisiana, Maryland, Mississippi, Montana, New Mexico,

28   Oklahoma, Oregon, Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin. All

3

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1    of the complaints against McKinsey that were originally filed in those states (or would be

2    remanded to those states at the conclusion of this MDL Proceeding), should be dismissed.

3        **II.    BACKGROUND**

4            **A.    Parties**

5            For purposes of this motion, Plaintiffs are local governments, school districts, Native

6    American tribes and tribal health organizations, multi-employer health and welfare benefit trust

7    funds, and private citizens from 19 states: Alaska, Arizona, Colorado, Hawai'i, Indiana,

8    Kentucky, Louisiana, Maryland, Mississippi, Montana, New Mexico, Oklahoma, Oregon,

9    Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin ("the Subject States").

10            Plaintiffs generally allege that they were injured in their home states based on increased

11   costs relating to the treatment of opioid addiction arising from what Plaintiffs allege was opioid

12   manufacturers' widespread and deceptive marketing campaigns that drove an illicit market for the

13   non-medical use of opioids. In these cases, though, Plaintiffs seek recovery not against those

14   manufacturers, but against McKinsey.

15           The four named McKinsey defendants are part of a global management consulting firm.

16   (*See e.g.*, *City of Shawnee v. McKinsey & Co.*, No. 3:21-cv-04388-CRB, ECF No. 1-1 ¶ 9 (the

17   "*Shawnee* Compl.").[3]) McKinsey & Company, Inc. is a corporation organized under the laws of

18   the state of New York with its principal place of business in New York. (ECF No. 298, *Master*

19   *Complaint (NAS)* ¶ 37; Decl. of Abishek Jain, dated Dec. 23, 2021 ("Jain Decl.") ¶ 4.) McKinsey

20   & Company, Inc. United States, a corporation organized under the laws of Delaware, is an

21   indirect, wholly owned subsidiary of McKinsey & Company, Inc. (Jain Decl. ¶ 6.) McKinsey &

22   Company, Inc. United States operates in the U.S. and has its principal place of business in New

23   York. (*Id*.) McKinsey & Company, Inc. Washington D.C., another indirect, wholly owned

24   subsidiary of McKinsey & Company, Inc., is a corporation organized under the laws of the state

25   of Delaware with its principal place of business in New York. (*Id*. ¶ 7; ECF No. 298 ¶¶ 40-41.)

26   _____

27   [3] All but one of Plaintiffs' Master Complaints refer to their individual complaints to
     establish the purported basis for personal jurisdiction over McKinsey (ECF Nos. 296 ¶ 21; 297
     ¶ 27; 298 ¶ 21; 300 ¶ 21). Accordingly, this brief contains citations to individual complaints, as
28   well as Plaintiffs' Master Complaints.

1  McKinsey Holdings, Inc. is a corporation organized under the laws of the state of Delaware with

2  its principal place of business in New York. (Jain Decl. ¶ 5; ECF No. 298 ¶ 38.) McKinsey

3  Holdings, Inc. is a wholly owned subsidiary of McKinsey & Co. Inc. and is the parent company

4  of both McKinsey & Company, Inc. United States and McKinsey & Company, Inc. Washington

5  D.C. (Jain Decl. ¶ 5; ECF No. 298 ¶ 41.)

6      While Plaintiffs' complaints are heavy on rhetoric critical of McKinsey, they are light on

7  specific facts or engagements relating to McKinsey's work for particular opioid manufacturers. In

8  general, the complaints allege that McKinsey performed opioid-related consulting work for

9  Purdue, Endo, Johnson & Johnson, and Mallinckrodt, with allusions to work for other opioid

10  manufacturers or distributors, as well.

11                    **B.      McKinsey's Engagements with Purdue**

12      Plaintiffs allege that McKinsey began providing consulting services to Purdue in 2004 by

13  (i) "creating and helping to implement marketing strategies and tactics to bolster the sales of

14  Oxycontin," an opioid used for pain relief, and (ii) helping Purdue "protect its public image and

15  to profit from the market for illicit opioids that predictably developed." (*Pike Cty. v. McKinsey &*

16  *Co.*, No. 3:21-cv-09424-CRB, ECF No. 1-1 ¶ 1 (the "*Pike Cty.* Compl.").) They allege that in

17  2009, McKinsey "helped Purdue prepare for an FDA Advisory Committee meeting" concerning

18  the approval of an anti-abuse reformulation of OxyContin ("ADF OxyContin"). (*Id*. ¶¶ 48-49.)

19  Plaintiffs allege that McKinsey advised Purdue on a proposed "Risk Evaluation and Mitigation

20  Strategy" for OxyContin. (*Id*. ¶ 55.) And Plaintiffs allege that in 2009, McKinsey provided

21  "multi-faceted advice to Purdue to turnaround recent volume and share decline in OxyContin,"

22  including supposedly advising Purdue to "push" doctors to prescribe higher doses of OxyContin,

23  "segmenting prescribers and tailoring messages and tactics to different segments," encouraging

24  doctors who had "'low comfort with extended release opioids'" to prescribe those opioids for a

25  "wider range of patients and for longer periods of time," and suggesting that Purdue tell patients

26  to take doses every twelve hours, even though OxyContin did not last that long, which Plaintiffs

27  allege increased patients' addiction to the drug. (*Id*. ¶¶ 59-74.)

28      Plaintiffs allege that Purdue engaged McKinsey in 2013 to "fix its OxyContin sales

problem." (*Id.* ¶ 76.) McKinsey allegedly conducted an assessment (the "Evolve to Excellence" initiative or "E2E") of the drivers of OxyContin's performance and identified "'key opportunities to increase near-term OxyContin revenue.'" (*Id.* ¶¶ 76, 82.) Plaintiffs allege McKinsey advised Purdue to "'turbocharge'" OxyContin sales by "intensifying its marketing efforts on the highest-volume prescribers, without addressing whether those prescribers may be engaged in abuse and diversion." (*Id.* ¶ 81.) Plaintiffs also allege that McKinsey "recommended a shift to 'value deciles,' which purported to weight prescribers according to factors including overall opioid prescriptions, including the number of branded versus generic prescriptions; prescriber rules in place limiting sales calls; managed care access; and the number of the prescribers new to brand prescriptions, including new opioid patients and switches from other opioid products." (*Id.* ¶ 89.)

The complaints also allege that in 2017, McKinsey "recommended to Purdue ways to circumvent programs and initiatives by third party payors and other stakeholders to reduce opioid overdoses." (*Id.* ¶ 116.)

Plaintiffs allege that in 2019, McKinsey announced that it "'would not advise any clients worldwide on opioid-specific business.'" (*Id.* ¶ 121.)

### C.    McKinsey's Other Alleged Engagements

While Plaintiffs' complaints largely center on McKinsey's alleged engagements with Purdue (and some complaints even acknowledge as much explicitly (*e.g.*, *id.* ¶¶ 1-14)), Plaintiffs include allegations concerning McKinsey's work for other manufacturers. Plaintiffs allege that starting in 2002, McKinsey consulted with Johnson & Johnson's Janssen subsidiary concerning a different opioid, Duragesic, and that, in 2011, McKinsey helped Janssen "boost[] sales" of the opioid Nucynta. (*Id.* ¶¶ 3, 28, 112; ECF No. 298 ¶¶ 391-93.) Plaintiffs allege that McKinsey "helped Janssen target its opioid marketing by identifying 'priority growth opportunities' and growth strategies for Duragesic." (*Pike Cty.* Compl. ¶ 28.) Plaintiffs allege that in 2011, after Purdue had released ADF OxyContin, McKinsey advised Janssen to "differentiate its Nucynta opioid from OxyContin on the basis of prescribers' concerns about OxyContin's abuse liability." (*Id.* ¶ 112.)

Plaintiffs also allege that McKinsey worked with Endo, first with respect to its launch of

6

MᴄKɪɴsᴇʏ Dᴇғᴇɴᴅᴀɴᴛs' Nᴏᴛɪᴄᴇ ᴏғ Mᴏᴛɪᴏɴ ᴀɴᴅ Mᴏᴛɪᴏɴ ᴛᴏ Dɪsᴍɪss Fᴏʀ Lᴀᴄᴋ ᴏғ Pᴇʀsᴏɴᴀʟ Jᴜʀɪsᴅɪᴄᴛɪᴏɴ
Cᴀsᴇ Nᴏ. 3:21-md-02996-CRB (SK)

1   Opana in Europe (not in the United States) (ECF No. 296 ¶ 302) and later with respect to Opana

2   ER and Belbuca (*e.g., id*. ¶¶ 333, 342-343, 351; *Pike Cty*. Compl. ¶ 3.) And Plaintiffs allege that

3   McKinsey performed consulting work for other manufacturers, such as Mallinckrodt and

4   Depomed; and for non-manufacturers, such as AmerisourceBergen and McKesson. (*E.g.*, ECF

5   No. 298 ¶¶ 10, 402, 403, 407-08.)[4]

6   ### D.   Evidence of the Locations of McKinsey's Engagements

7   Gretchen Scheidler, McKinsey's Director of Professional Development, explains why

8   there is no reason to believe any of the McKinsey work described in Plaintiffs' complaints took

9   place in any of the Subject States. McKinsey originates each client engagement in a particular

10   office. (Scheidler Decl. ¶ 6.) McKinsey then staffs that engagement with consultants based in

11   offices worldwide. (*Id.* ¶ 6.) Those consultants typically work on engagements either from their

12   home office or at the client site. (*Id.*)

13   In the ordinary course of its business, pursuant to company policies, McKinsey maintains

14   records concerning the offices in which engagements originated, the anticipated work location for

15   engagements, and the U.S. offices where McKinsey employees were located during engagements.

16   (*Id.* ¶ 8.) This information is stored in a McKinsey database. (*Id.*) Information concerning the

17   offices in which engagements originated and anticipated work locations for engagements is

18   entered into McKinsey's database at or around the time the engagements begin, and information

19   about employees' office locations is maintained contemporaneously, as well. (*Id.*)

20   Scheidler, who is knowledgeable about how McKinsey staffs and manages client

21   engagements, as well as the records that McKinsey maintains concerning its client engagements,

22

23   [4] Another complaint includes scattered references to work McKinsey allegedly performed for other manufacturers such as Actavis and Abbott, Cardinal Health, pharmacies such as CVS

24   and Walmart, and the FDA. (*Cherokee Nation v. McKinsey & Co.*, No. 3:21-cv-08061-CRB, ECF No. 2-1 ¶¶ 28-46, 58-68, 72-113, 143-150 (the "*Cherokee* Compl.").) But even if any of

25   McKinsey's alleged work for those clients was connected in any way to Oklahoma or the other Subject States (Plaintiffs do not allege that it was), there is no allegation that any of this work

26   related to the sales and marketing of opioids, only allegations concerning unrelated work. Just to cite a few examples, the *Cherokee* Complaint alleges that McKinsey advised McKesson "with a

27   reorganization of the general counsel's office" (*id.* ¶ 75); a Cardinal Health executive "recently completed a McKinsey leadership program that the firm offers exclusively to clients" (*id.* ¶ 87);

28   and McKinsey "helped to oversee Watson's integration with Actavis" (*id.* ¶ 35).

7

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

identified engagements with Purdue, Endo, Mallinckrodt and Johnson & Johnson that reasonably could be deemed to relate to advice concerning those clients' sales, marketing, manufacturing, or distribution of opioid products. (*Id.* ¶¶ 10–21.) (McKinsey does not in any way concede that the engagements Scheidler identified are all related to the work Plaintiffs purport to describe in their complaints. To avoid any possible dispute about the factual basis for this motion, however, Scheidler identified engagements that reasonably could be deemed to relate to advice concerning those clients' sales, marketing, manufacturing, or distribution of opioid products. (*Id.* ¶ 24.)) Scheidler also reviewed information about engagements with McKesson Corporation, AmerisourceBergen Corporation, Depomed, Inc., and another manufacturer, and identified no engagements that reasonably could be deemed to relate to those clients' sales, marketing, manufacturing, or distribution of opioid products. (*Id.* ¶¶ 22–23.) McKinsey's database was then queried to identify, for each such engagement, the offices in which engagements originated, the work location for the engagements, and the offices where McKinsey employees were located during the time of certain engagements. (*Id.* ¶¶ 24–25.)

As reflected in Scheidler's declaration, these records show that none of the potentially opioid-related engagements Scheidler identified originated in any of the Subject States, and no McKinsey employee who worked on any of the potentially opioid-related engagements was based in one of the Subject States during the engagements. In addition, Scheidler's declaration confirms that no engagement reflected a work location in any of the Subject States. (*Id.* ¶¶ 24–25.) McKinsey's records confirm that more than 400 consultants worked on the engagements Scheidler identified as potentially opioid-related, but none of those consultants were based in a Subject State at any time during such an engagement. (*Id.* ¶ 25.)

### E.    Plaintiffs' Allegations Concerning Personal Jurisdiction

McKinsey raised its personal jurisdiction defense in its Initial Conference Submission on July 29, 2021 (ECF No. 123 at 4), and again in the Joint Status Conference Submission on August 31, 2021 (ECF No. 240 at 3). Nevertheless, neither the Master Consolidated Complaints, nor any of the individual complaints to which they refer, and which they purport to summarize, allege anything more than boilerplate conclusions that this Court has personal jurisdiction over

8

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

McKinsey based on the long-arm statutes of the Subject States.[5] Parroting the language of various long-arm statutes, Plaintiffs allege that their claims "arise out of McKinsey's transacting business in" the Subject States; that McKinsey "contract[ed] to supply services or goods" in the Subject States, "caus[ed] tortious injury by an act or omission in" the Subject States, or "caus[ed] tortious injury in" the Subject States; and that "McKinsey regularly does or solicits business or engaged in a persistent course of conduct or derived substantial revenue from goods used or consumed or services rendered in this state." (*Pike Cty.* Compl. ¶ 26; *see also Shawnee* Compl. ¶¶ 20-21; *Cherokee* Compl. ¶ 12 ("McKinsey conducts business in and throughout Oklahoma and it has deliberately engaged in significant acts and omissions that have injured the Cherokee Nation and its citizens.").) Plaintiffs also allege that McKinsey has "purposefully directed its actions towards" the Subject States "and/or has the requisite minimum contacts with" the Subject States "to satisfy any statutory or constitutional requirements for personal jurisdiction." (*Pike Cty.* Compl. ¶ 26; *see also Parish of Livingston v. McKinsey & Co.*, No. 3:21-cv-04962-CRB, ECF No. 1 ¶ 24 ("*Livingston* Compl.") ("Defendants do business by agent in Louisiana, directly and through the purposeful direction of their actions towards Louisiana, and have the requisite minimum contacts with Louisiana necessary to constitutionally permit the exercise of jurisdiction.").) Some complaints also allege personal jurisdiction over McKinsey "through the actions of its co-conspirators in furtherance of [a] conspiracy, each of which has substantial contacts and business dealings throughout" certain of the Subject States. (*Cherokee* Compl. ¶ 13.)

Nowhere in the Master Complaints or the individual complaints do Plaintiffs provide any factual allegations making these conclusory assertions plausible. Plaintiffs do not allege that McKinsey ever performed work for any opioid manufacturer or distributor in one of the Subject States: that is, they do not allege that any McKinsey consultant performed work for any opioid manufacturer or distributor from an office located in a Subject State, nor that a McKinsey

---

[5] Alaska Stat. § 09.05.015; Ariz. R. Civ. P. 4.2(a); Colo. Rev. Stat. § 13-1-124; Haw. Rev. Stat. § 634-35; Ind. R. Trial 4.4(A); Ky. Rev. Stat. Ann. § 454.210; La. Rev. Stat. Ann. § 13:3201; Md. Code Ann., Cts. & Jud. Proc. § 6-103; Miss. Code Ann. § 13-3-57; Mont. R. Civ. P. 4B; N.M. Stat. Ann. § 38-1-16; Okla. Stat. tit. 12, § 2004; Or. R. Civ. P. 4; Tenn. Code Ann. § 20-2-225; Utah Code Ann. § 78B-3-201; Va. Code Ann. § 8.01-328.1; Wash. Rev. Code § 4.28.185; W. Va. Code § 56-3-33; Wis. Stat. § 801.05.

9

1   consultant otherwise performed work for any opioid manufacturer or distributor in a Subject

2   State. Plaintiffs cannot, of course, allege that McKinsey itself sold or marketed any opioid

3   products anywhere, much less in any Subject State, nor could they allege that McKinsey directed

4   any opioid manufacturer or distributor to take specific sales or marketing steps in any particular

5   state, much less one of the Subject States. Plaintiffs thus do not tie any of McKinsey's conduct to

6   any of the Subject States.

7         III.    **LEGAL STANDARD**

8         Plaintiffs have the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*

9   *of Am.*, 511 U.S. 375, 377 (1994). "In MDL actions such as this one, the court is entitled to

10  exercise personal jurisdiction over each defendant only to the same degree that the original

11  transferor court could have." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,

12  497 F. Supp. 3d 552, 674 (N.D. Cal. 2020).

13        For actions that were "direct-filed," either in this MDL Proceeding or in the *In re National*

14  *Prescription Opiate Litigation* MDL pending in the Northern District of Ohio and then transferred

15  to this MDL Proceeding, the Court should similarly assess whether jurisdiction would exist over

16  McKinsey in the courts in which the direct-filed cases would have been filed and to which they

17  would be remanded at the conclusion of pretrial proceedings. *See In re Depuy Orthopaedics, Inc.*,

18  870 F.3d 345, 348 (5th Cir. 2017) ("Federal law limits an MDL court's jurisdiction over a

19  transferred case to pretrial proceedings and provides that once those are completed, the MDL

20  court must remand the transferred case to the district from which it was transferred [for trial

21  proceedings]. Cases that are directly filed in an MDL court are treated 'as if they were transferred

22  from a judicial district sitting in the state where the case originated.'") (alteration in original); *In*

23  *re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244-K,

24  2016 WL 9559912, at *2 (N.D. Tex. Sept. 20, 2016) (agreeing with plaintiffs that it should treat a

25  case direct-filed into a Texas MDL "as if originally filed in California," where plaintiffs resided,

26  "and that this Court has personal jurisdiction to the same extent that a California-based court

27  would have jurisdiction"); *JUUL Labs*, 497 F. Supp. 3d at 643, 674 (holding that whether

28  jurisdiction existed over direct actions brought by state governmental entities in California federal

court depended on whether jurisdiction would have existed had the cases been filed in those

entities' home states, and noting that direct-filed actions would be analyzed similarly); *Prime*

*Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, No. 14-cv-8390, 2016 WL 7177532, at *1

(C.D. Cal. May 26, 2016) (dismissing, in a non-MDL action, claims brought by non-California

plaintiffs for lack of personal jurisdiction where "Plaintiffs' claims did not arise out of or relate to

Defendants' contacts in California"); ECF No. 293 ¶ 4 ("The inclusion of any action in *In re*

*McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, MDL No. 2996,

whether such action was or will be filed originally or directly in the United States District Court

for the Northern District of California or was or will be transferred or removed from some other

court, shall not constitute a determination by this Court that jurisdiction . . . is proper in this

District."); *id.* ¶ 10 ("Direct filing shall not impact the choice of law or jurisdictional analysis to

be applied in the case; any such direct filed cases shall be treated as if they were transferred from

the judicial district(s) sitting in the state(s) where the case(s) originated and would have been filed

but for this direct filing provision.").[6]

    Jurisdiction under each of the long-arm statutes at issue here[7] is proper only "if the

---

[6] *Accord In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) ("[T]he better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated."); *Sanchez v. Bos. Scientific Corp.*, No. 12-cv-05762, 2014 WL 202787, at *4 (S.D. W.Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction."); *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 07-MD-01871, 2012 WL 3205620, at *2 n.18 (E.D. Pa. Aug. 7, 2012) ("[T]he Court considers that 'direct filed' cases should be treated as if they were filed in the Plaintiffs' home states."). *But see, e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. CIV.A. H-10-171, 2011 WL 1232352, at *5 (S.D. Tex. Mar. 31, 2011) (assessing jurisdiction in direct-filed case, where jurisdiction in the transferor court was not in dispute, based on whether jurisdiction existed in the transferee MDL court).

[7] Alaska, Arizona, Colorado, Hawai'i, Indiana, Kentucky, Louisiana, Maryland, Montana, New Mexico, Oregon, Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin have enacted long-arm statutes that have been interpreted to assert maximum jurisdiction. 4 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1068 ("Growth and Use of Long-Arm Statutes") (4th ed. 2021). The long-arm statutes of Mississippi and Oklahoma, in contrast, are narrower than the limits of constitutional due process. *Id.* Because the reach of any long-arm statute is necessarily constrained by the limits of federal due process, this motion focuses on whether federal due process is satisfied for each of the Subject States. If McKinsey is not subject to jurisdiction consistent with federal due process in any of those States, as this motion

---

11

1  exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*,

2  453 F.3d 1151, 1154-55 (9th Cir. 2006). Because federal law controls that analysis, this Court

3  should "look to its own circuit as the source for federal law." *In re Dynamic Random Access*

4  *Memory (DRAM) Antitrust Litig.*, No. C 02-1486, 2005 WL 2988715, at *2 (N.D. Cal. Nov. 7,

5  2005) (citing *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)); *JUUL Labs*, 497 F. Supp. 3d at

6  674 ("'[S]ince federal law accordingly controls, this court will look to its own circuit as the

7  source for federal law.'") (citation omitted); *accord In re Korean Air Lines Co.*, 642 F.3d 685,

8  699 (9th Cir. 2011) ("[T]he MDL transferee court is generally bound by the same substantive

9  legal standards, if not always the same interpretation of them, as would have applied in the

10  transferor court.'").

11  **IV.   ARGUMENT**

12  A court's exercise of personal jurisdiction over a non-resident defendant is consistent with

13  due process only if that defendant has "certain minimum contacts" with the forum state "such that

14  the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

15  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks omitted). Consistent with

16  due process requirements, there are two forms of personal jurisdiction that a forum state may

17  exercise over a non-resident defendant—general and specific jurisdiction. Under either theory,

18  McKinsey is not subject to personal jurisdiction in the Subject States.

19  **A.   McKinsey Is Not Subject to General Jurisdiction in Any of the Subject**
      **States.**

20

21  General jurisdiction over a corporation exists only when the "corporation's 'affiliations

22  with the State are so "'continuous and systematic' as to render [it] essentially at home in the

23  forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires*

24  *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a

25  corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal

26  place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citation omitted).

27  _____

28  establishes, then *a fortiori*, jurisdiction over McKinsey would not even be consistent with the
      long-arm statutes of Mississippi or Oklahoma.

1   "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v.*

2   *Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014); *accord BNSF*, 137 S. Ct. at 1558 (citing

3   *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952) (holding that Ohio court

4   had general jurisdiction where corporation temporarily relocated to Ohio because of war)).

5         McKinsey & Co., Inc. is incorporated in New York, while the other named McKinsey

6   defendants are incorporated in Delaware. (ECF No. 298 ¶¶ 38-41; Jain Decl. ¶¶ 4-7.) All of the

7   McKinsey entities maintain their principal executive offices in New York. (*Id.*) Under *Daimler*,

8   then, McKinsey & Co., Inc. is subject to general jurisdiction only in New York; the other

9   McKinsey entities are subject to general jurisdiction only in Delaware and New York.

10        As the Supreme Court has repeatedly held, the mere fact that McKinsey transacts business

11  in some Subject States is not sufficient to confer general jurisdiction over McKinsey in those

12  States. In *Daimler*, for example, the Supreme Court held that an automobile manufacturer was not

13  "at home" in California for general jurisdiction purposes, even though it distributed thousands of

14  cars to California, did $4.6 billion in sales in California, which were 10% of its U.S. sales, and

15  maintained at least three California facilities—including a regional headquarters. 571 U.S. at 117,

16  122-23, 148. As the Court recognized, "[a] corporation that operates in many places can scarcely

17  be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing

18  business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 139 n.20.

19  Likewise, in *BNSF*, the District of Montana could not exercise general jurisdiction over a railway

20  with over 2,000 miles of railroad track and more than 2,000 employees in Montana. 137 S. Ct. at

21  1559. "'[T]he general jurisdiction inquiry,'" the Supreme Court explained, "'does not focus solely

22  on the magnitude of the defendant's in-state contacts.' Rather, the inquiry 'calls for an appraisal

23  of a corporation's activities in their entirety.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.20).

24        McKinsey is a global company with offices and employees throughout the United States

25  and the world. Regardless of the amount of business for which McKinsey's offices in certain of

26  the Subject States may be responsible, the lesson of *Daimler* and *BNSF* is that a company, absent

27  exceptional circumstances, is not subject to general jurisdiction everywhere it conducts business

28  or maintains offices. *See*, *e.g.*, *Abdulaziz v. Twitter, Inc.*, No. 19-CV-06694-LB, 2020 WL

13

1    6947929, at *8 (N.D. Cal. Aug. 12, 2020) (despite McKinsey's presence in California, dismissing

2    case for lack of general jurisdiction over McKinsey where plaintiff's claim against McKinsey

3    "has no connection to the forum," and "McKinsey is incorporated in New York and has its

4    headquarters there"); *Kellman v. Whole Foods Market, Inc*., 313 F. Supp. 3d 1031, 1045-46 (N.D.

5    Cal. 2018) (finding no general jurisdiction even accepting plaintiff's allegations concerning

6    employee numbers, store operations, product design and sales, and operational oversight in forum

7    state); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1141 (S.D. Cal.

8    2018) ("[T]he presence of offices in the forum state does not, by itself, render a defendant subject

9    to general jurisdiction."); *Dillon v. Avis Budget Grp., Inc.*, No. 18-cv-3870, 2018 WL 3475529, at

10   *4 (C.D. Cal. July 13, 2018) (rejecting general jurisdiction argument based on company's

11   operation of "so many physical [car] rental locations" in forum state).

12       Plaintiffs cannot offer any reason why this is the "exceptional case" to the contrary. The

13   only time the Supreme Court has found a company to be subject to general jurisdiction in a place

14   other than the paradigm places of its incorporation state or its principal place of business was in

15   *Perkins*. 342 U.S. at 447-48. There, the defendant company had relocated from the Philippines to

16   Ohio during World War II, and Ohio became the "center of the corporation's wartime activities,"

17   where the president of the company kept an office, maintained the company's files, and oversaw

18   the company's activities. *Daimler*, 571 U.S. at 129-30 n.8. Under these exceptional

19   circumstances, "Ohio was the corporation's principal, if temporary, place of business" for general

20   jurisdiction purposes. *Daimler*, 571 U.S. at 129-30 n.8 (citation omitted). Nothing approaching

21   the exceptional facts of *Perkins* could be alleged as to McKinsey in these cases.

22       **B.       McKinsey Is Not Subject to Specific Jurisdiction in the Subject States.**

23       A court may only exercise specific jurisdiction if the claim asserted in the pleading arises

24   out of or relates to the defendant's contacts with the relevant forum state. *Bristol-Myers Squibb

25   Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017). The inquiry "focuses on the relationship among

26   the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (cleaned up).

27       To determine whether a defendant has sufficient contacts with a forum state to be subject

28   to specific personal jurisdiction, the Ninth Circuit instructs courts to apply a three-part test:

14

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1151 (9th Cir. 2017). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (cleaned up). If the plaintiff satisfies the first two prongs, then it is the defendant's burden to demonstrate that the third prong—reasonableness—has not been satisfied. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### 1.   McKinsey Did Not "Purposefully Direct" Any Activities at the Subject States.

Although purposeful direction and purposeful availment are sometimes used in a "shorthand fashion as a single concept," they are "two distinct concepts," with purposeful availment "most often used in suits sounding in contract." *Schwarzenegger*, 374 F.3d at 802. Where, as here, a plaintiff's claims sound in tort, the "purposeful direction analysis . . . is most often used." *Id.*

The first prong of the purposeful direction test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803. Plaintiffs cannot establish that any of McKinsey's alleged acts were either "expressly aimed" at the Subject States, or that McKinsey knew they were likely to cause harm there.

### a.   Plaintiffs' Alleged Injuries in the Subject States Cannot Render McKinsey's Conduct "Expressly Aimed" at Those States.

First, Plaintiffs cannot show that McKinsey "expressly aimed" its conduct at a Subject State simply by alleging that they suffered an injury in that state. "A plaintiff does not show

15

1   express aiming by alleging injuries that are entirely personal to him … and not tethered to [the

2   forum] in any meaningful way." *Zawitz v. Star Magic*, No. 20-cv-07121, 2021 WL 1788590, at

3   *5 (N.D. Cal. May 5, 2021) (cleaned up). Rather, a plaintiff must demonstrate that "the effects

4   caused by the defendants' [conduct]—*i.e.*, the injury to the plaintiff[] . . .—connected the

5   defendants' conduct to [the forum state], not just to a plaintiff who lived there." *Walden*, 571 U.S.

6   at 288 (internal quotation marks omitted). *See also Karp v. Imagetrust GMBH & Co. KG*, No. 16-

7   cv-09228, 2017 WL 10399369, at *2 (C.D. Cal. Oct. 17, 2017) ("[A] mere relationship of the

8   defendant to a forum-state plaintiff or third-party does not establish minimum contacts; likewise,

9   the mere location where the plaintiff experienced the injury does not suffice because it does not

10  necessarily show that the defendant purposefully established a relationship with the forum state").

11       The Supreme Court's application of due process requirements compels the conclusion that

12  Plaintiffs' injuries in the Subject States are not sufficient to confer jurisdiction over McKinsey:

> [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. *Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State*, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.

17  *Walden*, 571 U.S. at 286 (emphasis added; cleaned up). Further applying those requirements,

18  Ninth Circuit precedent "bear[s] out the conclusion that 'express aiming' encompasses wrongful

19  conduct *individually targeting* a known forum resident." *Bancroft & Masters, Inc. v. Augusta*

20  *Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (defendant's sending of individually targeted

21  cease-and-desist letter to California plaintiff and its Virginia-based vendor constituted "express

22  aiming"), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

23  *L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc).

24       Here, Plaintiffs allege only that McKinsey provided consulting services to Purdue and

25  other opioid manufacturers. Plaintiffs do not plead facts sufficient to allege that McKinsey

26  "aimed" these consulting services at the Subject States, expressly or otherwise, or that McKinsey

27  "individually targeted" the Subject States with its work in any way. Rather, as a service provider,

28  McKinsey "aims" its conduct at, or "targets," its clients and its clients alone. Thus, to the extent

16

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

McKinsey's consulting work could be considered "aimed" at any particular geographic location, it was aimed only at states where its clients received McKinsey's services. Because none of those clients is located in, or received McKinsey's services in, the Subject States (*see* Scheidler Decl. ¶¶ 24-25), McKinsey did not "expressly aim" any conduct at the Subject States. *See, e.g., Sciara v. Campbell*, 840 F. App'x 920, 923 (9th Cir. 2020) (fact that plaintiff suffered injury in forum state is not enough to show that defendant "expressly aimed his acts at" forum state).

> **b.** **McKinsey's *Clients'* Conduct in the Subject States Cannot Render *McKinsey's* Conduct "Expressly Aimed" at Those States.**

Putting aside Plaintiffs' own alleged injuries, then, their complaints try to impute to McKinsey the actions of McKinsey's clients to satisfy the test for jurisdiction. Plaintiffs allege that they were injured from Purdue's and others' marketing and sales of opioids in the Subject States. (*Pike Cty*. Compl. ¶¶ 28-31; 136; *Livingston Compl*. ¶¶ 1-4, 39-40, 98-100.) In other words, while Plaintiffs' allegations connect McKinsey to Purdue and other manufacturers, and while Plaintiffs then connect Purdue and other manufacturers to the Subject States, they do not connect McKinsey to *the Subject States through McKinsey's own conduct*.

Supreme Court precedent, as applied by the Ninth Circuit and courts within it, forecloses Plaintiffs' effort to ground jurisdiction over McKinsey based on *other parties'* jurisdictional ties. In *Walden*—where a Georgia defendant's only contacts with Nevada were his alleged contacts with a Nevada resident—the Supreme Court held that "a defendant's relationship with a plaintiff *or third party*, standing alone, is an insufficient basis for jurisdiction." 571 U.S. at 286 (emphasis added). Likewise, in *Axiom Foods, Inc. v. Acerchem International, Inc*., the Ninth Circuit explained that "the relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant *himself* creates with the forum State," because "the minimum contacts analysis examines the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 874 F.3d 1064, 1068 (9th Cir. 2017) (emphasis in original; cleaned up). "It follows that 'a defendant's relationship with a plaintiff *or third party*, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (emphasis added; quoting *Walden* 571 U.S. at 286). *See also Wonderful Co. LLC v. Nut Cravings Inc.*, No. 20-cv-11738,

17

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

2021 WL 3598859, at *4 (C.D. Cal. Apr. 22, 2021) ("[S]pecific personal jurisdiction cannot be established based on the Defendant's contacts with a third party that is itself linked to the forum state."); *Yeager v. Airbus Grp. SE*, No. 19-cv-01793, 2021 WL 750836, at *4 (C.D. Cal. Jan. 26, 2021) ("[T]he relevant inquiry in this Circuit is whether defendant's own contacts with the forum are enough to satisfy due process.").

Other circuit courts agree. *See, e.g.*, *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *3 (D.C. Cir. July 17, 2018) (rejecting personal jurisdiction over defendant in United States based on third-party advertisers' placement of advertisements, because "'[a] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.'") (per curiam) (quoting *Walden*, 571 U.S. at 286); *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State") (quoting *Walden*, 571 U.S. at 284); *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 289 (5th Cir. 2020) ("[W]hile 'a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties,' the 'defendant-focused 'minimum contacts' inquiry' cannot be satisfied by merely demonstrating contacts between the plaintiff or a third party and the forum state.") (quoting *Walden*, 571 U.S. at 284); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 880 (7th Cir. 2019)("[I]t is a defendant's contacts with the forum state, not with the plaintiff, that count.").

          **c.**      **Plaintiffs' Allegations that McKinsey Should Have Foreseen Injuries in the Subject States Cannot Render McKinsey's Conduct "Expressly Aimed" at Those States.**

Plaintiffs thus cannot rest on McKinsey's *clients'* alleged activities in the Subject States to confer jurisdiction over McKinsey—and their allegation that McKinsey should have *foreseen* that its conduct would result in its clients undertaking some activity in the Subject States does nothing to change that conclusion. At most, Plaintiffs make the conclusory allegation that McKinsey "purposefully directed its actions towards" each of the Subject States, based on their allegation

1  that it was foreseeable that McKinsey's actions would cause harm in the Subject States. (*Pike Cty*.

2  Compl. ¶ 26; *Livingston* Compl. ¶ 24.) But as the Ninth Circuit has held, the foreseeability of

3  possible harm in the forum state is not sufficient: "'something more' is needed in addition to a

4  mere foreseeable effect." *Pebble Beach*, 453 F.3d at 1156 (quoting *Bancroft & Masters*, 223 F.3d

5  at 1087); *see also Schwarzenegger*, 374 F.3d at 805 ("'[S]omething more' than mere

6  foreseeability [is required] in order to justify the assertion of personal jurisdiction."). Although

7  for several years the Ninth Circuit did "not spell[] out what that something more must be,"

8  *Bancroft & Masters*, 223 F.3d at 1087, it later clarified that "'something more' is what the

9  Supreme Court described as 'express aiming' at the forum state." *Id.* (quoting *Calder v. Jones*,

10  465 U.S. 783, 789 (1984)). *See also Wonderful Co. LLC*, 2021 WL 3598859, at *2 ("Express

11  aiming is not satisfied where connections to the forum state are merely the foreseeable result of a

12  defendant's conduct.") (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir.

13  2020)). Plaintiffs' allegations, which fail to demonstrate how McKinsey expressly aimed its

14  conduct at the Subject States, fall far short of this standard.

15        The Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court* confirms

16  that merely foreseeing consequences in a forum state is not enough to confer jurisdiction over a

17  defendant. 480 U.S. 102, 111-112 (1987). There, the Supreme Court examined whether a

18  manufacturer's ability to foresee "that its product would find its way into the United States" was a

19  sufficient basis for finding that minimum contacts existed with the forum state, California. Even

20  though Asahi, a Japanese manufacturer of tire valve assemblies, was aware that its product was

21  incorporated into tires that were being sold in California, a plurality of justices agreed that the

22  "placement of a product into the stream of commerce, without more, is not an act of the defendant

23  purposefully directed toward the forum State." *Id.* (The Ninth Circuit has adopted this plurality as

24  a correct statement of the law. *See, e.g.*, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d

25  450, 459 (9th Cir. 2007) ("The placement of a product into the stream of commerce, without

26  more, is not an act purposefully directed toward a forum state.") (citing *Asahi*, 480 U.S. at 112).)

27  "Additional conduct," the justices explained, was required to show "an intent or purpose to serve

28  the market in the forum State." *Id.* "The *Asahi* defendant," in other words, "knew that its products

19

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

would be sold and used in California . . . but '[t]he Court relied on the absence of any business solicitation or promotional conduct to determine that . . . the exertion of personal jurisdiction was unreasonable.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 n.3 (9th Cir. 2017) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988)).

Other cases have likewise found that manufacturers who sell products to distributors, who then sell to the forum state, are not subject to personal jurisdiction based solely on the foreseeability of the product being sold in the forum state. *See Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611, 2020 WL 1244918, at *8 (N.D. Cal. Mar. 16, 2020) (declining to find specific jurisdiction over a Wisconsin-based packaging manufacturer, which allegedly misappropriated trade secrets and infringed the patents of a California-based seller of prepackaged meals, because even though the Wisconsin manufacturer knew that its allegedly infringing products would be sold in California, the California-based seller, not the Wisconsin manufacturer, "made the ultimate decision as to where the allegedly infringing product was to be sold"); *Anaya v. Machines de Triage et Broyage*, No. 18-cv-01731, 2019 WL 1083783, at *4 (N.D. Cal. Mar. 7, 2019) (no specific jurisdiction in absence of evidence that defendant knew its screw conveyor was being sold in California; even if defendant "knew its product was destined for California, such knowledge would be insufficient to establish that [defendant] expressly aimed its conduct at California"); *see also Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (finding the express aiming requirement not met where plaintiff did not allege or present evidence that defendant sold products into California through Amazon, but did not "advertise[] in California, market[] products specifically intended for a California audience, or in any other way direct[] its sales activities to California").

Here, of course, McKinsey is even further removed than the kinds of defendants as to which courts find jurisdiction lacking. McKinsey is not a manufacturer or seller of products; it is a service provider that does not put products into the stream of commerce. And McKinsey's clients were not acting as distributors of its products, as were distributors in cases such as *Asahi* or *Five Star*, where courts found that simply putting a product into the stream of commerce was

1    not sufficient to confer jurisdiction over a defendant who did not otherwise take specific steps to

2    expressly aim its sales into the forum state. *A fortiori*, McKinsey's purported contacts with the

3    Subject States—which are much more tenuous and remote than in cases rejecting jurisdiction

4    over manufacturers based on their relationship with forum-state sellers—cannot suffice to confer

5    jurisdiction over it. *See Holland Am. Line*, 485 F.3d at 459 ("[Defendant] itself has not put *any*

6    products into the stream of commerce that might have ended up in the forum, whether through a

7    distributorship agreement or otherwise. That alone ends the inquiry.").

8            McKinsey's distinct role as a service provider—not a manufacturer, not a seller, not a

9    distributor—thus precludes personal jurisdiction over it based on allegations concerning the

10   conduct of McKinsey's clients. Applying the same principles finding personal jurisdiction lacking

11   over manufacturers, the few cases addressing whether a service provider could be subject to

12   personal jurisdiction based on the foreseeable acts of its clients have all held that the answer is no.

13   For instance, in *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996),

14   the Tenth Circuit held that a Colorado law firm was not subject to personal jurisdiction in

15   Michigan simply because it was foreseeable that an opinion letter the law firm had written for its

16   client, a Colorado-based guarantor of a loan plaintiff made to defendant, would be sent to plaintiff

17   in Michigan. *Id.* at 1534. In *Able Fund v. KPMG Accountants NV*, 247 F. App'x 504 (5th Cir.

18   2007), the Fifth Circuit held that a Netherlands Antilles accounting firm was not subject to

19   personal jurisdiction in Texas when it had mailed its audit of a British Virgin Islands fund to the

20   fund's administrator in Curacao, which then sent the audit to Texan plaintiffs. *Id.* at 507.

21   Likewise, in *Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*, 89 Mass. App. Ct.

22   718, 723 (2016), the court held that an auditor's "knowledge that [a fund] would send the audit

23   reports to Massachusetts does not constitute a contact with Massachusetts sufficient to support

24   jurisdiction." *See also B. Bullen v. CohnReznick, LLP*, No. 1884-cv-03802-BLS2, 2019 WL

25   3331280, at *4-7 (Mass. Super. Ct. June 17, 2019) (auditor not subject to jurisdiction in

26   Massachusetts since it conducted its work in New York or New Jersey, had only limited

27   communications with parties in Massachusetts, and had not authorized the fund it audited to share

28   its audit reports with plaintiffs).

21

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

At bottom, Plaintiffs do not—and cannot—allege that McKinsey provided advice concerning sales, marketing, manufacturing, or distribution of opioids to any client located in any of the Subject States. Nor do they allege that McKinsey's employees worked to provide any such advice to Purdue or other opioid manufacturers or distributors in any of the Subject States. And McKinsey's clients—not McKinsey—"made the ultimate decision" as to whether and where to implement McKinsey's advice, if at all. *Five Star Gourmet Foods, Inc.*, 2020 WL 1244918, at *8; *see also Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 530 (2019) (finding no personal jurisdiction over non-resident defendant where "'defendant's connection with the forum State resulted from decisions made by others.'").

On this record, therefore, Plaintiffs cannot show that McKinsey expressly aimed conduct at the Subject States and, thus, that McKinsey purposely directed its conduct at those states.

> **d.      Plaintiffs' Allegations that McKinsey Conspired with Manufacturers Cannot Render McKinsey's Conduct "Expressly Aimed" at Those States.**

Although some plaintiffs assert personal jurisdiction in the Subject States based on the contacts of McKinsey's alleged co-conspirators (*e.g.*, *Cherokee* Compl. ¶ 13), the Ninth Circuit has refused to endorse a conspiracy theory of personal jurisdiction, *see Chirila v. Conforte*, 47 F. App'x 838, 842-43 (9th Cir. 2002), and numerous district courts in the Ninth Circuit have also rejected it. *See*, *e.g.*, *Brown v. 140 NM LLC*, No. 17-cv-05782, 2019 WL 118425, at *5 (N.D. Cal. Jan. 7, 2019) (declining to adopt a conspiracy jurisdiction theory "[i]n the absence of clear Ninth Circuit authority"); *Wescott v. Reisner*, No. 17-cv-06271, 2018 WL 2463614, at *4 (N.D. Cal. June 1, 2018) (same); *Krypt, Inc. v. Ropaar LLC*, No. 19-cv-03226, 2020 WL 3639651, at *3 (N.D. Cal. July 6, 2020) ("[T]he conspiracy theory of personal jurisdiction has not been adopted in this Circuit."); *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1083 n.1 (S.D. Cal. 1998) (rejecting jurisdiction based on conspiracy allegations and noting that "an individual's connection with the forum state must be examined independently to determine jurisdiction").

In any event, Plaintiffs' allegations of a conspiracy are entirely conclusory. (*See, e.g.*, *Cherokee* Compl. ¶¶ 292–302; *Shawnee* Compl. ¶¶ 221–230; *Pike Cty.* Compl. ¶¶ 190–206; *Livingston* Compl. ¶¶ 164–175.) Plaintiffs asserting claims for civil conspiracy must allege facts

22

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1   showing "the formation and operation of the conspiracy and damage resulting to plaintiff from an

2   act or acts done in furtherance of the common design." *Cisco Sys., Inc. v. STMicroelectronics,*

3   *Inc.*, 77 F. Supp. 3d 887, 894 (N.D. Cal. 2014). Critically, Plaintiffs "must allege an agreement to

4   commit the wrongful acts," and where "a plaintiff alleges that a defendant is liable for intentional

5   misrepresentations under a civil conspiracy theory, Rule 9(b) requires that the plaintiff allege with

6   particularity facts that support the existence of a civil conspiracy." *Id.* Here, Plaintiffs plead,

7   without any particularity, that "McKinsey and its co-conspirators agreed with each other to

8   accomplish the unlawful purposes of marketing, selling, and distributing prescription opioids

9   through violations of law and misrepresentations." (*Cherokee* Compl. ¶ 371; *see also Shawnee*

10  Compl. ¶ 223; *Pike Cty.* Compl. ¶ 191; *Livingston* Compl. ¶ 165.) The Ninth Circuit "has

11  declined to find jurisdiction based on a 'bare allegation of a conspiracy between the defendant

12  and a person within the personal jurisdiction' of this Court." *Elite Semiconductor, Inc. v. Anchor*

13  *Semiconductor, Inc.*, No. 20-cv-06846, 2021 WL 3037701, at *9 (N.D. Cal. July 19, 2021)

14  (quoting *Chirila*, 47 F. App'x at 842–43).

15      Because Plaintiffs offer nothing more than bare allegations of conspiracy, personal

16  jurisdiction cannot be based on the contacts of McKinsey's supposed co-conspirators.

17           **2.       Plaintiffs' Claims Against McKinsey Do Not Arise from or
                        Relate to McKinsey's Activities in the Subject States.**
18

19      Plaintiffs thus cannot allege, must less prove, that McKinsey "expressly aimed" any

20  conduct at the Subject States—and that alone precludes a finding of personal jurisdiction over

21  McKinsey in any of those States.

22      But even if Plaintiffs could identify some conduct by McKinsey directed at the Subject

23  States, Plaintiffs could not satisfy the second prong of the specific personal jurisdiction test,

24  which requires that their claims arise out of or relate to any such forum-related contacts. *See Ayla,*

25  *LLC v. Alya Skin Pty. Ltd.*, 11 F.4th. 972, 983 (9th Cir. 2021) ("plaintiff's claims must 'arise out

26  of or relate to the defendant's contacts with the forum.'" (quoting *Ford Motor Co. v. Mont.*

27  *Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021))). The "proper question" when assessing the

28  second prong "is not where the plaintiff experienced a particular injury or effect but whether the

23

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Moreover, the effect of the defendant's conduct must be "tethered to" the state, not to the plaintiff. *Id.*[8] Here, Plaintiffs do not allege, and cannot show, any McKinsey forum-related contacts from which their claims arise or to which their claims relate.

The crux of Plaintiffs' allegations is that McKinsey advised Purdue and other opioid manufacturers on a variety of issues, including (but not exclusively) how those manufacturers could maximize sales of their products. (*Pike Cty.* Compl. ¶ 1; *Livingston* Compl. ¶ 4.) But Plaintiffs' complaints do not connect the services McKinsey allegedly provided for those manufacturers to the Subject States.

The Ninth Circuit has refused to find personal jurisdiction in a forum state where plaintiffs' claims did not arise from any of the defendant's forum-related conduct. In *Picot v. Weston*, for example, the Ninth Circuit affirmed dismissal of an action where the allegedly tortious conduct consisted of defendant making statements to one non-resident third party that caused another non-resident third party to cease making payments into non-resident third-party trusts "from his residence in Michigan, without entering [the forum state], contacting any person in [the forum state], or otherwise reaching out to [the forum state]." 780 F.3d 1206, 1215 (9th Cir. 2015). The Court concluded that "none of [the] challenged conduct had anything to do with [the forum state] itself." *Id.* A plaintiff who fails to demonstrate a defendant's contacts with the forum state "cannot demonstrate that his claims arise out of such non-existent contacts." *Thakar v. Patel*, No. 07-cv-1220, 2008 WL 11409564, at *8 (C.D. Cal. Sept. 30, 2008).

Here, too, Plaintiffs cannot point to a single relevant tie between McKinsey's consulting

---

[8] Before *Ford Motor Co.*, courts in the Ninth Circuit applied a "'but for' test to determine whether Plaintiff would have been injured 'but for' a defendant's forum-related conduct." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 904 (N.D. Cal. 2021). In *Ayla*, the Ninth Circuit clarified that, in light of *Ford Motor Co.*, its "precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement," as a "narrower test" is now "foreclosed" by the Supreme Court. 11 F.4th at 983 n.5. It does not matter here, though, since Plaintiffs cannot show that there is any causal relationship between *McKinsey's conduct in the Subject States* and their alleged injuries. At most, Plaintiffs' theory of jurisdiction is that manufacturers—*not McKinsey itself*—engaged in conduct in the Subject States out of which their claims arise. *Ford* says nothing to improve Plaintiffs' theory of jurisdiction over McKinsey based on McKinsey's conduct in other states.

work for Purdue and others and the Subject States. Plaintiffs cannot, therefore, demonstrate that their "claims arise out of such non-existent contacts." *Thakar*, 2008 WL 11409564, at *8. Plaintiffs' failure to establish any meaningful connection between the challenged conduct and the Subject States precludes a finding of jurisdiction over McKinsey, because it is Plaintiffs' burden to supply evidence of such a tie. *See*, *e.g.*, *Picot*, 780 F.3d at 1215.[9]

### 3. The Exercise of Jurisdiction over McKinsey in the Subject States Would Be Unreasonable.

Because Plaintiffs cannot allege that McKinsey purposefully directed activities intended by McKinsey to cause harm in the Subject States, or that Plaintiffs' alleged injuries arose from any conduct in the Subject States, the personal jurisdiction inquiry should end there. *Schwarzenegger*, 374 F.3d at 802; *see also Hudson-Munoz, LLC v. U.S. Waffle Co.*, No. 19-cv-01960, 2019 WL 3548919, at *4 (C.D. Cal. Aug. 5, 2019) ("As Plaintiff has not made a prima facie showing of the first two prongs of specific jurisdiction, the Court does not reach the issue of reasonableness.").

If there were any doubt left, however, the exercise of personal jurisdiction over McKinsey would be improper under the third and final prong of the jurisdictional inquiry—whether, if Plaintiffs satisfied the first two prongs, the exercise of jurisdiction would be reasonable. Courts may only exercise personal jurisdiction if doing so reasonably "comports with the limits imposed

---

[9] To the extent certain Plaintiffs asserting RICO claims may argue that 18 U.S.C. § 1965(a) subjects McKinsey to personal jurisdiction in any district where it "resides, is found, has an agent, or transacts [its] affairs," that is "a venue provision" and not "an independent basis for asserting personal jurisdiction." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 17-CV-04992, 2019 WL 4888693, at *15 (N.D. Cal. Oct. 3, 2019), order vacated in part on reconsideration on other grounds, 531 F. Supp. 3d 673 (S.D.N.Y. 2021). *See also CBC Framing, Inc. v. Flores*, No. CV 08-00150, 2008 WL 11337545, at *3 (C.D. Cal. May 19, 2008) (treating § 1965(a) as "a supplemental venue provision"). Nor is jurisdiction proper under § 1965(b)—the "ends of justice" provision in the RICO statute. For this provision to apply, "'the court must have personal jurisdiction over at least one of the participants in the alleged multi-district conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged coconspirators.'" *Monterey Bay Mil. Hous.*, 2019 WL 4888693, at *19 (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)). Here, there are a number of districts with personal jurisdiction over all four McKinsey entities, including the District of Connecticut (where McKinsey performed work for Purdue that forms the basis for Plaintiffs' core allegations against McKinsey) and the Southern District of New York.

by federal due process." *Daimler*, 571 U.S. at 125. The "primary concern" is the burden on the defendant. *See Bristol-Myers Squibb*, 137 S. Ct. at 1780. Because Plaintiffs do not allege any conduct that occurred in the Subject States, each of the seven factors courts consider when making the reasonableness determination, *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004), weighs in McKinsey's favor.

      **First**, whether a defendant has purposefully interjected its activities into the forum is "'analogous to the purposeful direction' factor." *Ayla*, 11 F.4th at 984 (quoting *Sinatra*, 854 F.2d at 1199). As shown above, McKinsey did not direct any relevant conduct at the Subject States.

      **Second**, the Court must "examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986). This factor also weighs against the reasonableness of jurisdiction. While McKinsey has offices in certain of the Subject States, Plaintiffs do not allege—nor could they establish—that those offices played any role in the conduct Plaintiffs challenge. If these cases were ever remanded at the conclusion of pretrial proceedings, it would be unreasonably burdensome for McKinsey to try actions in 15 different jurisdictions, as opposed to just those jurisdictions where Plaintiffs could assert personal jurisdiction over McKinsey.

      **Third**, the extent of conflict with the sovereignty of Delaware or New York, McKinsey's home states, is neutral at worst, and at best weighs against finding jurisdiction in the Subject States. *See Rodriguez v. Reinhardt*, No. 13-CV-05403, 2014 WL 12639965, at *4 (N.D. Cal. Sept. 4, 2014) ("[Defendant] is from another state in the union rather than a foreign country, and as such, this factor is neutral."); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("Where the burdens are equal, the second factor tips in favor of [defendant] because the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden.").

      **Fourth**, because no conduct of McKinsey occurred in the Subject States, they have no interest in resolving the dispute between Plaintiffs and McKinsey. *See*, *e.g.*, *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981) (holding that although California "clearly has an interest" in litigating tort claims brought by its residents, that interest is "diluted" where it has "no reasonable interest otherwise" in regulating the conduct of non-resident entities).

26

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

**Fifth**, judicial efficiency does not weigh in favor of finding jurisdiction in the Subject States. In considering which forum could most efficiently resolve a dispute, the court focuses on the location of the evidence and the witnesses who would need to travel to the forum state for trial. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) ("This factor concerns the efficiency of the forum, particularly where the witnesses and evidence are likely to be located."); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006) ("The site where the injury occurred and where evidence is located usually will be the most efficient forum."). Here, Plaintiffs do not identify any evidence or witnesses that might be present in the Subject States, beyond Plaintiffs themselves, nor could they—the evidence reflects that McKinsey's work on these engagements took place outside the Subject States. Although this MDL Proceeding will coordinate pretrial discovery, any cases remaining at the conclusion of the MDL Proceeding's pretrial proceedings would be remanded to their original forum states; trial in those states would be inefficient because all of the evidence pertaining to liability is located elsewhere. And it would be far more efficient to narrow the universe of potential laws applicable to any future motion practice in this MDL Proceeding by limiting Plaintiffs' claims to jurisdictions to which McKinsey has a legally sufficient connection.

**Sixth**, although the importance of the forum to plaintiffs nominally remains part of this test, cases doubt its significance. *See, e.g.*, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) ("A mere preference on the part of the plaintiff for its home forum does not affect the balancing."); *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991) ("[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."); *Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) ("[I]n this circuit, the plaintiff's convenience is not of paramount importance."). Plaintiffs' convenience should "not significantly influence [the Court's] analysis" here. *Caruth*, 59 F.3d at 129.

**Finally**, Plaintiffs bear the burden of proving the unavailability of an alternative forum. *See Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1445 (9th Cir. 1987). "The existence of an adequate alternative forum depends upon whether or not an alternative forum is 'so clearly inadequate or unsatisfactory that it is no remedy at all.'" *Leetsch v. Freedman*, 260

27

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

F.3d 1100, 1103 (9th Cir. 2001) (citation omitted). "This requirement is generally satisfied if the defendant is amenable to service of process in the alternative forum." *Creative Tech., Ltd. v. Aztech Sys. PTE., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995). The McKinsey defendants are incorporated in Delaware or New York and maintain their principal places of business in New York; they are therefore amenable to service in both forums, and those forums are plainly adequate. *See, e.g.*, *Taub v. Parker Jewish Inst. for Health Care & Rehab.*, No. 18-cv-07491, 2019 WL 3292369, at *8 (N.D. Cal. July 22, 2019) (concluding that "New York is an available and adequate alternative forum").

## C.    Any Request for Jurisdictional Discovery Should Be Denied.

Where, as here, "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom*, 49 F.3d at 562 (citation omitted); *see also Sharma*, 524 F. Supp. 3d at 905 ("Absent 'some evidence' establishing a 'colorable basis' for jurisdiction, the Court must deny Plaintiffs' request for jurisdictional discovery.").

That is all the more so here, since Plaintiffs already obtained vast quantities of documents concerning McKinsey's work for opioids manufacturers: the discovery that McKinsey produced in MDL 2804 (ECF No. 240 at 3); the documents McKinsey submitted to the Attorneys General pursuant to the various consent judgments, for publication in an online public repository (*id.*); plus "approximately 50 terabytes of data" produced by manufacturer defendants, distributor defendants, pharmacy defendants, and other third parties in MDL 2804 (ECF No. 286-1 at 2). Just the McKinsey production to the Attorneys General alone—which consists, to note just a few required categories, of "[a]ll communications with" Purdue, Endo, J&J, and Mallinckrodt; and "[a]ll documents reflecting or concerning McKinsey's work for" Purdue, Endo, J&J, and Mallinckrodt—would give Plaintiffs every document they could conceivably need to show any forum contacts between McKinsey and the Subject States, if there were any such contacts to

28

McKinsey Defendants' Notice of Motion and Motion to Dismiss For Lack of Personal Jurisdiction
Case No. 3:21-md-02996-CRB (SK)

1   show.[10] Yet Plaintiffs have still failed to allege any facts tying McKinsey's challenged conduct to

2   the Subject States.

3        In short, if there were any documents supporting Plaintiffs' conclusory allegations of

4   personal jurisdiction over McKinsey, the documents would be described in the complaints. Any

5   request for yet more jurisdictional discovery should be denied as unnecessary and based on

6   nothing more than speculation. *See Baton v. Ledger SAS*, No. 21-CV-02470-EMC, 2021 WL

7   5226315, at *13 (N.D. Cal. Nov. 9, 2021) ("where a defendant has already provided evidence

8   establishing that personal jurisdiction does not exist, jurisdictional discovery is unwarranted.");

9   *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (denying a "request for discovery,

10  which was based on little more than a hunch that it might yield jurisdictionally relevant facts, [is]

11  not an abuse of discretion").

12       **V.    CONCLUSION**

13       For all of these reasons, Plaintiffs cannot make a *prima facie* showing that McKinsey is

14  subject to personal jurisdiction in the Subject States, much less that the Subject States' exercise of

15  personal jurisdiction over McKinsey would be reasonable. Because the transferor courts in the

16  Subject States lack personal jurisdiction over McKinsey, this Court does, too. *JUUL Labs*, 497 F.

17  Supp. 3d at 674. Plaintiffs' claims against McKinsey in the actions set forth in Appendix A

18  should therefore be dismissed. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 818 (9th Cir.

19  1988) ("The district court properly dismissed [plaintiff's] complaint against [defendant] for lack

20  of personal jurisdiction…and did not abuse its discretion in denying appellants leave to amend.").

21

22

23

24

25

26

---

27       [10] Plaintiffs negotiated a schedule that would permit them access to this material before
     filing their Master Complaints, so that the allegations in their complaints could be informed by
28   McKinsey's document productions. (ECF No. 240 at 1.)

1   Dated: December 23, 2021          **MORRISON & FOERSTER LLP**

2

3                                     By: */s/ Mark David McPherson*
                                          MARK DAVID McPHERSON

4

5

6                                     **STROOCK & STROOCK & LAVAN LLP**

7                                     James L. Bernard (Admitted *Pro Hac Vice*)
                                      jbernard@stroock.com
8                                     David M. Cheifetz (Admitted *Pro Hac Vice*)
                                      dcheifetz@stroock.com
9                                     Daniel J. Yost (Admitted *Pro Hac Vice*)
                                      dyost@stroock.com
10                                    180 Maiden Lane
                                      New York, NY 10038
11                                    Phone: (212) 806-5400

12                                    **CLARENCE DYER & COHEN LLP**

13                                    Josh A. Cohen (CA SBN 217853)
                                      jcohen@clarencedyer.com
14                                    Shaneeda Jaffer (CA SBN 253449)
                                      sjaffer@clarencedyer.com
15                                    899 Ellis Street
                                      San Francisco, CA 94109
16                                    Phone: (415) 749-1800

17                                    Attorneys for Defendants
                                      McKINSEY & COMPANY, INC.
18                                    McKINSEY & COMPANY, INC. UNITED STATES
                                      McKINSEY & COMPANY, INC. WASHINGTON D.C.
19                                    McKINSEY HOLDINGS, INC.

20

21

22

23

24

25

26

27

28

## APPENDIX A

| Case No. | Case Caption | Subject State |
|---|---|---|
| 3:21-cv-04382-CRB | Board of County Commissioners of Kay County et al v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-04385-CRB | The County Commission of Mingo County et al v. McKinsey & Company, Inc. | West Virginia |
| 3:21-cv-04388-CRB | Shawnee City of et al v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-04489-CRB | Swinomish Indian Tribal Community v. McKinsey & Company, Inc. | Washington |
| 3:21-cv-04483-CRB | Kenaitze Indian Tribe et al v. McKinsey & Company, Inc. | Alaska |
| 3:21-cv-04512-CRB | King County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-04536-CRB | Green County Fiscal Court et al v. McKinsey & Company, Inc. United States et al | Kentucky |
| 3:21-cv-04513-CRB | Skagit County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-04959-CRB | The Fiscal Court of Calloway County Kentucky et al v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04956-CRB | The City of Columbia et al v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04957-CRB | The Fiscal Court of Breathitt County Kentucky et al v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04970-CRB | The Board of Education of Mason County, West Virginia et al v. McKinsey & Company, Inc., United States | West Virginia |
| 3:21-cv-04969-CRB | Blount County, Tennessee et al v. McKinsey & Company, Inc. et al | Tennessee |
| 3:21-cv-04973-CRB | The Navajo Nation v. McKinsey & Company, Inc. | Arizona New Mexico Utah |
| 3:21-cv-04965-CRB | Port Gamble S'Klallam Tribe et al v. McKinsey & Company, Inc. | Washington |
| 3:21-cv-04955-CRB | The Board of Education of Jefferson County, Kentucky v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04968-CRB | Alaska Native Tribal Health Consortium et al v. McKinsey & Company, Inc. | Alaska |
| 3:21-cv-04962-CRB | Parish of Livingston v. McKinsey & Company, Inc. et al | Louisiana |
| 3:21-cv-04966-CRB | Southcentral Foundation v. McKinsey & Company, Inc. | Alaska |
| 3:21-cv-05294-CRB | County Board of Arlington County, Virginia et al v. McKinsey & Company, Inc. | Virginia |
| 3:21-cv-05292-CRB | City of Chesapeake, Virginia v. McKinsey & Company, Inc. | Virginia |
| 3:21-cv-05344-CRB | Orange County, Indiana v. McKinsey & Company, Inc. et al. | Indiana |
| 3:21-cv-05403-CRB | City of Austin, Indiana v. McKinsey & Company, Inc. et al | Indiana |
| 3:21-cv-04383-CRB | Citizen Pottawatomie Nation v. McKinsey & Company Inc. | Oklahoma |

| Case No. | Case Caption | Subject State |
|---|---|---|
| 3:21-cv-05402-CRB | City of Madison, Indiana v. McKinsey & Company, Inc. et al | Indiana |
| 3:21-cv-09837-CRB | Kitsap County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-06237-CRB | Scott County, Indiana v. McKinsey & Company, Inc. et al | Indiana |
| 3:21-cv-06430-CRB | Woolwine v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07026-CRB | Blankenship v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07030-CRB | Lambert et al v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07021-CRB | Hudak v. McKinsey & Company, Inc. | Colorado |
| 3:21-cv-07028-CRB | Daniels v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07648-CRB | Lewis County v. McKinsey & Company Inc. | Washington |
| 3:21-cv-08061-CRB | Cherokee Nation v. McKinsey and Company, Inc. | Oklahoma |
| 3:21-cv-08633-CRB | Confederated Salish and Kootenai Tribes of the Flathead Reservation et al v. McKinsey & Company Inc. | Montana |
| 3:21-cv-08637-CRB | The Muscogee (Creek) Nation v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-08630-CRB | Island County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-08629-CRB | City of Kent v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-08859-CRB | Zuni Tribe of the Zuni Reservation v. McKinsey & Company Inc. | New Mexico |
| 3:21-cv-08865-CRB | Confederated Tribes of the Grand Ronde Community of Oregon v. McKinsey & Company Inc. | Oregon |
| 3:21-cv-08860-CRB | Gila River Indian Community et al v. McKinsey & Company Inc. | Arizona |
| 3:21-cv-08867-CRB | Mississippi Band of Choctaw Indians v. McKinsey & Company Inc. | Mississippi |
| 3:21-cv-08870-CRB | Puyallup Tribe of Indians et al v. McKinsey & Company Inc. | Washington |
| 3:21-cv-09099-CRB | City of Baton Rouge, Parish of East Baton Rouge v. McKinsey & Company, Inc. | Louisiana |
| 3:21-cv-09108-CRB | Floyd County, KY v. McKinsey & Company, Inc. | Kentucky |
| 3:21-cv-09105-CRB | St. John the Baptist Parish v. McKinsey & Company, Inc. | Louisiana |
| 3:21-cv-09100-CRB | St Martinville et al v. McKinsey & Co Inc. | Louisiana |
| 3:21-cv-09297-CRB | Knott County, KY v. McKinsey & Company, Inc. | Kentucky |
| 3:21-cv-09424-CRB | Pike County, KY v. McKinsey & Company, Inc. | Kentucky |
| 3:21-cv-09484-CRB | The County of Roosevelt v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09480-CRB | Fiscal Court of Anderson County et al v. McKinsey and Company, Inc. | Kentucky |
| 3:21-cv-09481-CRB | The County of Grant v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09483-CRB | The County of Rio Arriba v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09485-CRB | The County of Sandoval v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09637-CRB | The County of Mora County v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09831-CRB | Amite County, Mississippi et al v. McKinsey and Company, Inc. | Mississippi |

| Case No. | Case Caption | Subject State |
|---|---|---|
| 3:21-cv-09838-CRB | Board of County Commissioners of the County of Bernalillo, New Mexico et al v. McKinsey and Company, Inc. | New Mexico |
| 3:21-cv-09920-CRB | Allegany County, Maryland et al v. McKinsey and Company, Inc. | Maryland |
| 3:21-cv-09922-CRB | City of Kenosha Wisconsin et al v. McKinsey and Company Inc. | Wisconsin |
| 3:21-cv-09917-CRB | Benton County, Mississippi et al v. McKinsey and Company, Inc. | Mississippi |
| Pending | The Fiscal Court of Adair County et al v. McKinsey and Company, Inc. | Kentucky |
| Pending | Virginia Beach, Virginia et al v. McKinsey and Company, Inc. | Virginia |

MCKINSEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)