MARK DAVID MCPHERSON (CA SBN 307951)
mmcpherson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000

JESSICA KAUFMAN (ADMITTED *PRO HAC VICE*)
jkaufman@mofo.com
STEVEN RAPPOPORT (ADMITTED *PRO HAC VICE*)
srappoport@mofo.com
MORRISON & FOERSTER LLP
250 55th Street
New York, NY 10019
Telephone: 212.468.8000

Attorneys for Defendants
McKINSEY & COMPANY, INC.
McKINSEY & COMPANY, INC. UNITED STATES
McKINSEY & COMPANY, INC. WASHINGTON D.C.
McKINSEY HOLDINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates to:<br><br>Cases Listed in Appendix A of the Accompanying Motion | Case No. 3:21-md-02996-CRB (SK)<br><br>**DECLARATION OF GRETCHEN SCHEIDLER IN SUPPORT OF McKINSEY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: March 31, 2022<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 6, 17th Floor<br>Judge: Hon. Charles Breyer |

I, Gretchen Scheidler, hereby declare as follows:

1. I am the Director of Professional Development at McKinsey & Company, Inc. United States ("McKinsey US"). I am based in Chicago, Illinois. In my capacity as Director of Professional Development, I am authorized to make this declaration on behalf of Defendants McKinsey US, McKinsey & Company, Inc., McKinsey & Company, Inc. Washington D.C., and McKinsey Holdings, Inc. (collectively, "McKinsey"), in support of their motion to dismiss for lack of personal jurisdiction in Alaska, Arizona, Colorado, Hawai'i, Indiana, Kentucky, Louisiana, Maryland, Mississippi, Montana, New Mexico, Oklahoma, Oregon, Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin (the "Subject States").

2. I have worked for McKinsey for over twelve years. I have been the Director of Professional Development for North America since July 2017. I hold a B.S. from the University of Dayton, a B.S.N. in nursing from The Johns Hopkins University, and an M.B.A from Duke University. Before joining McKinsey, I was a practicing nurse from 2005 until 2007. I joined McKinsey in 2009 as a consultant on healthcare related matters and served as an Associate and an Engagement Manager. In 2012, I became a Manager of Professional Development. I became a Senior Manager of Professional Development for the Midwest Office in November 2016 before transitioning into my current Director of Professional Development role.

3. As Director of Professional Development, I lead teams of managers who are responsible for staffing client engagements. In my role, I have developed an understanding of the needs of McKinsey's clients and their specific engagements so that I can work with managers to match our consultants' skillsets with our clients' needs and, at the same time, balance client needs with our consultants' priorities for their professional development. As part of my and my teams' work for McKinsey, therefore, I must understand the goals of engagements (based on partner conversations, Statements of Work defining the engagements, or other sources), I must understand where McKinsey's clients expect McKinsey to perform their work for the engagements, and I must understand how McKinsey can best staff an engagement (including from which offices McKinsey will staff an engagement).

4. I know the facts set forth herein from my own personal knowledge, or from my

review of records maintained in the ordinary course of McKinsey's business. All of the facts set forth herein are true and correct to the best of my knowledge. I can and will testify competently to this information if called as a witness.

**McKinsey's Staffing, and Recording of Information Concerning, Engagements**

5. I am knowledgeable about how McKinsey staffs and manages client engagements, as well as data that McKinsey maintains in order to track the work its partners and employees perform on those engagements. I am also knowledgeable about records that McKinsey maintains concerning its client engagements.

6. McKinsey originates each engagement in a particular office. The engagement is then staffed with consultants who are based in various offices worldwide. Those consultants typically work on engagements either from their home office or at the client site.

7. In the ordinary course of its business, pursuant to company policies, McKinsey maintains records tracking its client engagements, including information concerning the scope of engagements and consultants who work on them, in a firm database.

8. Also in the ordinary course of its business, pursuant to company policies, McKinsey maintains records concerning offices in which engagements originated, locations at which the bulk of the work for the engagements was expected to take place, and US offices to which McKinsey employees were assigned during the time of certain engagements. These records are based on information that McKinsey maintains in a computer database. Records concerning offices in which engagements originated and where most of the work is expected to take place are entered into the database at or around the time the engagements begin. US employee office assignment records are entered into the database at or around the time an employee begins working for McKinsey and when the office to which an employee is assigned changes.

9. The computer database on which McKinsey maintains these records can be queried to provide Excel files reflecting data contained in the database.

**Purdue Engagements**

10. As Director of Professional Development, I am knowledgeable about engagements McKinsey undertook with Purdue since 2004, when McKinsey began working with Purdue,

through 2019, when McKinsey ceased working with Purdue, either through my own personal knowledge or through my review of SOWs and data from the firm's database for those engagements.

11. For purposes of McKinsey's motion to dismiss for lack of personal jurisdiction, I identified McKinsey's engagements with Purdue that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioid products. To do so, I reviewed SOWs for, and data from the firm's database concerning, engagements between McKinsey and Purdue from 2004 to 2019.

12. I identified engagements (including preliminary engagements that did not become client engagements) that McKinsey undertook for Purdue between 2004 and 2019, some of which are not reasonably related to Purdue's sales, marketing, manufacturing, or distribution of opioids. The 68 client engagement codes for client engagements that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids are:

- PUP001
- PUP014
- PUP026
- PUP039
- PUP053
- PUP066
- PUP002
- PUP015
- PUP027
- PUP040
- PUP054
- PUP068
- PUP003
- PUP016
- PUP028
- PUP041
- PUP056
- PUP069
- PUP004
- PUP017
- PUP029
- PUP042
- PUP057
- PUP070
- PUP005
- PUP018
- PUP030
- PUP043
- PUP058
- PUP072
- PUP006
- PUP019
- PUP031
- PUP044
- PUP059
- PUP073
- PUP007
- PUP020
- PUP032
- PUP045
- PUP060
- PUP074
- PUP008
- PUP021
- PUP034
- PUP046
- PUP061
- 8353JC
- PUP009
- PUP022
- PUP035
- PUP047
- PUP062
- PUP010
- PUP023
- PUP036
- PUP050
- PUP063
- PUP011
- PUP024
- PUP037
- PUP051
- PUP064
- PUP012
- PUP025
- PUP038
- PUP052
- PUP065

**Endo Engagements**

13. I am also knowledgeable about McKinsey's engagements with Endo International

4
DECLARATION OF GRETCHEN SCHEIDLER IN SUPPORT OF MCKINSEY DEFENDANTS' MOTION TO DISMISS
Case No. 3:21-md-02996-CRB (SK)

plc and its affiliates ("Endo"). I am knowledgeable about engagements McKinsey undertook with Endo since 2006, when McKinsey began working with Endo, through 2018, when McKinsey ceased working with Endo, either through my own personal knowledge or through my review of SOWs and data from the firm's database for those engagements.

14. In connection with McKinsey's motion to dismiss for lack of personal jurisdiction, I identified McKinsey's engagements with Endo that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids. To do so, I reviewed SOWs for, and data from the firm's database concerning, engagements between McKinsey and Endo between 2006 and 2018.

15. I identified engagements (including preliminary engagements that did not become client engagements) that McKinsey undertook for Endo between 2006 and 2017, the vast majority of which are not reasonably related to Endo's opioids business. The 8 client engagement codes for client engagements that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids are: END001, END002, END003, END006, END007, END051, END052, and END062.

**Mallinckrodt Engagements**

16. I am also knowledgeable about McKinsey's engagements with Mallinckrodt, Inc. and its affiliates ("Mallinckrodt"). I am knowledgeable about engagements McKinsey undertook with Mallinckrodt since McKinsey began working with Mallinckrodt in 2000, either through my own personal knowledge or through my review of SOWs and data from the firm's database for those engagements.

17. In connection with McKinsey's motion to dismiss for lack of personal jurisdiction, I identified McKinsey's engagements with Mallinckrodt that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids. To do so, I reviewed SOWs for, and data from the firm's database concerning, engagements between McKinsey and Mallinckrodt between 2000 and 2020.

18. I identified engagements (including preliminary engagements that did not become client engagements) that McKinsey undertook for Mallinckrodt between 2000 and 2020. SOWs

for, and data from the firm's database concerning, engagements between McKinsey and Mallinckrodt did not reveal any engagements that were clearly related to opioids. Based on allegations in Plaintiffs' complaints and my understanding of Mallinckrodt's business, I selected two engagement codes as examples of engagements for Mallinckrodt that Plaintiffs might argue are related to sales, marketing, manufacturing, or distribution of opioids. Those codes are: MWT010 and MWT015.

**Johnson & Johnson Engagements**

19. I am also knowledgeable about McKinsey's engagements with Johnson & Johnson and its affiliates ("J&J"). I am knowledgeable about engagements McKinsey undertook with J&J, either through my own personal knowledge or through my review of SOWs and data from the firm's database concerning for those engagements.

20. In connection with McKinsey's motion to dismiss for lack of personal jurisdiction, I identified McKinsey's engagements with J&J that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids. To do so, I reviewed certain SOWs for, and data from the firm's database concerning, engagements between McKinsey and J&J between 2002 (when Plaintiffs allege McKinsey first advised J&J concerning any opioids-related matter) and 2021.

21. I identified engagements (including preliminary engagements that did not become client engagements) that McKinsey undertook for J&J between 2002 and 2021, all but three of which are not reasonably related to J&J's opioids business. The 3 client engagement codes for client engagements that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids are: J&J479, JNJ053, and JNJ197.

**Other Purported Engagements**

22. I understand that Plaintiffs' complaints in these proceedings refer to other current and former McKinsey clients that are manufacturers or distributors of opioids. These companies include McKesson Corporation, AmerisourceBergen Corporation, Depomed, Inc., and another company, the name of which was redacted in paragraph 403 of the publicly-filed *Master Complaint (NAS)*.

23.     I identified engagements (including preliminary engagements that did not become client engagements) that McKinsey has undertaken for these four companies since 2004. I then reviewed certain SOWs and data from the firm's database relating to these engagements. Based on my knowledge and experience in my various roles at McKinsey and my review of SOWs and data from the firm's database, I can confirm that McKinsey had no engagements with these clients that reasonably could be deemed to relate to sales, marketing, manufacturing, or distribution of opioids.

**Summary of McKinsey's Relevant Engagements**

24.     As detailed above, in all, I identified 81 engagements that could be described as possibly relating to McKinsey's clients' sales, marketing, manufacturing, or distribution of opioid products. Those engagements were originated in three different offices, and McKinsey records reflect that the bulk of the work for these engagements was anticipated to be performed in six states. No engagement originated in any of the Subject States, and McKinsey records reflect that the work for all of the identified engagements was anticipated to be performed outside of the Subject States.

25.     I also reviewed records from McKinsey's database concerning the office assignments of all McKinsey employees who performed work in connection with the engagements I identified as possibly relating to McKinsey's clients' sales, marketing, manufacturing, or distribution of opioid products between. In total, more than 400 McKinsey consultants worked on the engagements I identified. Not one of those consultants, however, was based in an office in a Subject State at any time during an opioid-related engagement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 23, 2021, in Chicago, IL.

DocuSigned by:

*[signature]*
6946F815FB1B484...
Gretchen Scheidler