Elizabeth J. Cabraser (State Bar No. 083151)
ecabraser@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Lead Counsel for Plaintiffs*

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates to:<br><br>CASES LISTED IN APPENDIX A | Case No. 21-md-02996-CRB (SK)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO McKINSEY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:  March 31, 2022<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 6, 17th Floor<br><br>Judge: The Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

Issue To Be Decided ........................................................................................... 1

I.    Introduction. ............................................................................................. 1

II.   Plaintiffs Meet the Legal Standard to Defeat McKinsey's Motion.................... 2

III.  McKinsey Developed and Implemented a National Strategy to Increase Opioid Sales. ........................................................................................................... 3

    A.    McKinsey Worked with Its Clients to Transform the Opioid Market. ................... 3

    B.    McKinsey Conducted Zip Code and Doctor-Specific Geographic Analyses to Increase Its Clients' Sales. ........................................................................................... 4

    C.    McKinsey Conducted in-the-Field Research in the Subject States to Increase Opioids Sales in these States. ................... 7

IV.   McKinsey Is Subject to Specific Personal Jurisdiction in All Subject States Because It Had Sufficient Contacts with Each of Them. ........................................ 8

    A.    McKinsey Purposefully Directed Its Conduct at the Subject States under the Ninth Circuit's "Effects" Test. ................................................................. 8

        1.    McKinsey's Conduct Was Expressly Aimed at the Subject States............ 9

            a.    What McKinsey Did, Not What Its Contracts Say, Is the Relevant Inquiry.......................................................................... 12

            b.    McKinsey Cannot Hide Behind Its Clients' Conduct to Avoid the Exercise of Personal Jurisdiction in the Subject States. .......................................................................................... 12

        2.    McKinsey Acted Knowing Its Actions Would Cause Harm in the Subject States. ............................................................................... 15

    B.    McKinsey's Contacts with the Subject States Are Related to Plaintiffs' Claims. ................................................................................................ 16

    C.    The Exercise of Personal Jurisdiction Over McKinsey in Each of the Subject States Is Reasonable. ................................................................. 18

    D.    Specific Personal Jurisdiction Also Exists in the Subject States Because McKinsey Conspired with Its Opioid Clients to Increase Sales in those States. ................................................................................................. 21

V.    Alternatively, the Court Could Defer Ruling on McKinsey's Personal Jurisdiction Motion until the Subject States' Cases Are to be Remanded for Trial. ............. 24

VI.   Plaintiffs Should Be Permitted to Conduct Discovery Related to the Factual Issues McKinsey Raised. ...................................................................................... 25

VII.  Conclusion ............................................................................................... 27

APPENDIX A ................................................................................................... 30

# TABLE OF AUTHORITIES

Page

**Cases**

*Able Fund v. KPMG Accts. NV*,
   247 F. App'x 504 (5th Cir. 2007) ........................... 15

*Alves v. Player's Edge, Inc.*,
   No. 05-1654 WQH (CAB), 2006 WL 8455520 (S.D. Cal. July 14, 2006) .............................. 26

*Asahi Metals Industry Co. v. Superior Court*,
   480 U.S. 102 (1987) ........................... 15

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ........................... passim

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ........................... 9, 15

*Brainerd v. Governors of the Univ. of Alberta*,
   873 F.2d 1257 (9th Cir. 1989) ........................... 9

*Brown v. 140 NM LLC*,
   Case No. 17-cv-05782-JSW, 2019 WL 118425 (N.D. Cal. Jan. 7, 2019) ........................... 23

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................... 13, 19

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934 (7th Cir. 2000) ........................... 25

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ........................... 21, 22

*Chirila v. Conforte*,
   47 F. App'x 838 (9th Cir. 2002) ........................... 23

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
   541 F. Supp. 3d 1009 (N.D. Cal. 2021) ........................... 13

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ........................... 21

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ........................... 2

*eMag Sols., LLC v. Toda Kogyo Corp.*,
   No. C 02-1611 PJH, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006) ........................... 25

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
   No. 19-CV-05611-PJH, 2020 WL 1244918 (N.D. Cal. Mar. 16, 2020) ........................... 16

*Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*,
   54 N.E.3d 570 (Mass. App. Ct. 2016) ........................... 16

*Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*,
   Case No. C12–2082JLR, 2013 WL 566949 (W.D. Wash. Feb. 13, 2013) ........................... 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ........................... 17

*Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ........................... 19

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020)..........................................................................2

*Haisten v. Grass Valley Med. Reimbursement Fund*,
   784 F.2d 1392 (9th Cir. 1986)........................................................................12

*Hanson v. Denckla*,
   357 U.S. 235 (1958).......................................................................................13

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003)...................................................................17, 20

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020).........................................................2, 10

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   533 F. Supp. 3d 858 (N.D. Cal. 2021)............................................................23

*In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio) ......................................26

*In re Nat'l Prescription Opiate Litig.*,
   No. 1:17-MD-2804, 2019 WL 4194296 (N.D. Ohio Sept. 4, 2019)........................24

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
   715 F.3d 716 (9th Cir. 2013)...................................................................17, 18

*J & M Assocs., Inc. v. Romero*,
   488 F. App'x 373 (11th Cir. 2012) ...............................................................22

*Jung v. Ass'n of Am. Med. Colleges*,
   300 F. Supp. 2d 119 (D.D.C. 2004) ..............................................................22

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984).......................................................................................10

*Krypt, Inc. v. Ropaar LLC*,
   Case No. 19-cv-03226-BLF, 2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ...................23

*Kulko v. California Superior Court*,
   436 U.S. 84 (1978).........................................................................................13

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir. 1987)..........................................................................9

*Lions Gate Entertainment Inc. v. TD Ameritrade Services Co., Inc.*,
   170 F. Supp. 3d 1249 (C.D. Cal. 2016) ..........................................................14

*Matus v. Premium Nutraceuticals, LLC*,
   715 F. App'x 662 (9th Cir. 2018) ..................................................................11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)..........................................................................2

*Mee Indus., Inc. v. Adamson*,
   Case No. 2:18-cv-003314-CAS (JCx), 2018 WL 6136813 (C.D. Cal. July 27, 2018)..............23

*Melea, Ltd. v. Jawer SA*,
   511 F.3d 1060 (10th Cir. 2007)......................................................................22

*Metro. Life Ins. Co. v. Neaves*,
   912 F.2d 1062 (9th Cir. 1990)..........................................................................9

- iii -

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Nowak v. Tak How Invs., Ltd.*,
  94 F.3d 708 (1st Cir. 1996) ................................................................. 13

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
  198 F.R.D. 670 (S.D. Cal. 2001) .................................................. 25, 26

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .............................................................. 10

*Rousselot B.V. v. St. Paul Brands Inc.*,
  Case No. SA CV 19-0458-DOC, 2020 WL 2510653 (C.D. Cal. Feb. 14, 2020) .................... 23

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
  22 F.4th 103 (2d Cir. 2021) ......................................................... 21, 22

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ........................................................ passim

*Sinatra v. Nat'l Enquirer, Inc.*,
  854 F.2d 1191 (9th Cir. 1988) .............................................................. 20

*Trierweiler v. Croxton & Trench Holding Corp.*,
  90 F.3d 1523 (10th Cir. 1996) .............................................................. 15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) .............................................................. 20

*Underwager v. Channel 9 Austl.*,
  69 F.3d 361 (9th Cir. 1995) ................................................................ 23

*Unspam Techs., Inc. v. Chernuk*,
  716 F.3d 322 (4th Cir. 2013) ........................................................ 21, 22

*Walden v. Fiore*,
  571 U.S. 277 (2014) .............................................................. 11, 14, 18

*Ward v. Auerbach*,
  Civ. A. No. 16-12543-FDS, 2017 WL 2724938 (D. Mass. June 23, 2017) ........................ 22

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir. 1977) ............................................................... 26

*Wien Air Alaska Inc. v. Brandt*,
  195 F.3d 208 (5th Cir. 1999) ............................................................... 12

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ........................................................... 8, 17

**Statutes**

14 A.L.R.7th Art. 8 ........................................................................ 24

Cal. Civ. Code § 3490 ...................................................................... 24

Colo. Rev. Stat. Ann. § 13-80-111 ......................................................... 24

Ky. Rev. Stat. Ann. § 413.270 ............................................................. 24

Okla. Stat. Ann. tit. 50, § 7 ............................................................. 24

S.D. Codified Laws § 21-10-4 .............................................................. 24

Tenn. Code Ann. § 28-1-105 ................................................................ 24

- iv -

## TABLE OF AUTHORITIES
### (continued)

**Page**

**Rules**

Md. Rule 2-101 ................................................................................................................... 24

**Other Authorities**

Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. 1165, 1220 (2018) ......................................................................................................................... 25

Patrick Viguerie et al., *The Granularity of Growth*, Book Excerpt, McKinsey & Co. (Mar. 1, 2008) .................................................................................................................................. 4

- v -

**Issue To Be Decided**

Was McKinsey's national strategy to increase opioid sales intentionally in all fifty states, including through a granular targeting of the Subject States, sufficient to establish personal jurisdiction in each of the states where it now seeks to dismiss cases?

## I.  Introduction.

Plaintiffs allege global consulting giant McKinsey[1] engineered the aggressive marketing strategies Purdue Pharma, Mallinckrodt, Endo Pharmaceuticals, and others used to cause the opioid crisis that has devastated so many communities.

McKinsey boasts that it employs approximately 30,000 consultants spread among more than 130 offices in over sixty-five countries.[2]  It has thirty-six offices in the United States alone.[3] McKinsey's work with opioid manufacturers was not some limited scope engagement designed to, for example, increase executive efficacy or to streamline some internal process.  Rather, it was a far-ranging engagement specifically designed to "turbocharge" its clients' opioid sales in all fifty states.  Even the limited evidence produced so far establishes that McKinsey is subject to specific personal jurisdiction in all nineteen of the Subject States[4] through, among other actions, McKinsey's employees' detailed research and analysis of existing opioid sales, prescribers, and health care providers in each of the Subject States in order to maximize opioid sales and profits. This was zip code-specific research with the goal of increasing opioid sales in those neighborhoods—in each of the nineteen states.  Further, not only did McKinsey develop the strategies for increasing sales, it joined hands with its clients to implement those strategies nationally.  Facing both an uproar over its work and government lawsuits, McKinsey entered into settlement agreements with the nineteen states' Attorneys General regarding its active role in

---

[1] "McKinsey" refers collectively to McKinsey & Company, Inc.; McKinsey Holdings, Inc.; McKinsey & Company, Inc. United States; and McKinsey & Company, Inc. Washington D.C.

[2] *See* https://www.mckinsey.com/locations (last visited Feb. 11, 2022).

[3] *Id*.

[4] The "Subject States" refers to Alaska, Arizona, Colorado, Hawai'i, Indiana, Kentucky, Louisiana, Maryland, Mississippi, Montana, New Mexico, Oklahoma, Oregon, Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin.

1   fueling the opioid epidemic in each of those states.  To implement and enforce these settlements,

2   the AGs filed complaints and the courts in all states entered judgments.

3         But even if the Court has some questions regarding personal jurisdiction in specific states,

4   it need not decide the issue at the outset of this MDL.  It is undisputed that the Plaintiffs in the

5   Subject States may bring those claims in a McKinsey "home state" forum.  For these reasons, the

6   Court should deny McKinsey's motion on the merits, or alternatively defer ruling until such time

7   as it becomes necessary to decide the personal jurisdiction question regarding a particular state,

8   such as remand for trial.

9   **II.      Plaintiffs Meet the Legal Standard to Defeat McKinsey's Motion.**

10        When opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the

11  burden of establishing that jurisdiction is proper.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

12  F.3d 1218, 1223 (9th Cir. 2011).[5]  While the burden is on the plaintiff to show that the defendant

13  purposefully directed its activities at the forum state and that its claims arise out of the

14  defendant's forum-related activities, once the plaintiff has done so, the burden shifts to the

15  defendant to show that the exercise of jurisdiction would be unreasonable.  *See infra* at 7-8.  If the

16  court decides the motion without an evidentiary hearing, the plaintiff's pleadings and affidavits

17  need merely make a prima facie showing of jurisdictional facts. *Glob. Commodities Trading Grp.,*

18  *Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  All

19  uncontroverted allegations in the complaint are taken as true, and all genuine factual disputes are

20  resolved in the plaintiff's favor.  *Id.* (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

21  797, 800 (9th Cir. 2004)).  If the court orders an evidentiary hearing or an affirmative defense is

22  tried, the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence.

23  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

24        The allegations in the Master Complaints establish personal jurisdiction in all fifty states,

25  including in the Subject States.  Moreover, the evidence cited in the Master Complaints, as well

26

27  _____

28  [5] Plaintiffs agree that an MDL Court "is entitled to exercise personal jurisdiction over each
    defendant only to the same degree that the original transferor court could have."  *In re JUUL
    Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 674 (N.D. Cal. 2020).

as that cited in this Memorandum regarding McKinsey's actions in the Subject States, easily satisfies Plaintiffs' burden.

### III.   McKinsey Developed and Implemented a National Strategy to Increase Opioid Sales.

#### A.   McKinsey Worked with Its Clients to Transform the Opioid Market.

McKinsey's "transformational relationship" with its clients, including its opioid supply chain clients, consists of both strategy work—"provid[ing] big-picture advice to clients"—and implementation of the strategies it devises.  Subdivision Master Compl. ("Compl.") (ECF No. 296) ¶¶ 59-60, 62.[6]  According to McKinsey, its consultants work so closely with its clients to develop detailed plans and put them into place that "you can't even tell the difference between a McKinsey team member and one of [its] clients."  *Id.* ¶ 64.

Through McKinsey's transformational relationship with Purdue, McKinsey developed and implemented Purdue's sales and marketing strategy for OxyContin that multiplied the opioid crisis throughout the country.  *See, e.g.*, *id.* ¶ 143.  McKinsey was heavily involved in multiple areas of Purdue's business, including sales strategies, product acquisition, research and development, designing clinical studies, risk management, regulatory affairs, and other administrative matters.  *See id.* ¶ 106.  Together, McKinsey and Purdue devised broad national plans to expand the overall market for prescription opioids in general and to increase sales for Purdue's opioids specifically.  *Id.* ¶¶ 421-24.  By virtue of their transformational relationship, McKinsey's actions for Purdue were not one-offs, but rather were part a conscious scheme lasting over a decade. These plans were consistent with the overall purpose of the Opioid Marketing Enterprise, in which McKinsey played a key role. And while McKinsey's relationship may have been closest with Purdue, it sought to clone the strategies it used for boosting OxyContin sales to increase sales for its other opioid clients. *See id.* ¶¶ 290, 309-10, 368, 378.

---

[6] The allegations regarding McKinsey's conduct in the Subdivision Master Complaint are in the other Master Complaints as well.

**B.** **McKinsey Conducted Zip Code and Doctor-Specific Geographic Analyses to Increase Its Clients' Sales.**

McKinsey billed its clients millions of dollars to develop and fine-tune national strategies to increase opioid sales in all fifty states. McKinsey's plan to turbocharge the opioids market nationwide required detailed geographic planning. Central to McKinsey's work for Purdue (and for other opioid supply chain clients) was its "granular" approach to identifying growth opportunities: "break[ing down] big-picture strategy into its smallest relevant components." *Id.* ¶ 172 (quoting Patrick Viguerie et al., *The Granularity of Growth*, Book Excerpt, McKinsey & Co. (Mar. 1, 2008), *available at* https://www.mckinsey.com/business-functions/strategy-and-corporate-finance/our-insights/the-granularity-of-growth). McKinsey's granular strategies involved analysis and targeting of geographic regions. *Id.* ¶ 174. One analysis for Purdue detailed which locations were attractive markets.[7] Among these were cities in Colorado, Kentucky, Maryland, Oklahoma, Utah, Virginia, Washington, and Wisconsin.[8] In the same presentation, McKinsey also analyzed prescribing patterns in Indiana, Tennessee, and Washington.[9] Elsewhere, McKinsey honed in on "micro markets by territory," including in all of the Subject States.[10]

McKinsey devised strategies to target existing high prescribers by looking at "prescriber-level milligram dosing data," Compl. ¶¶ 194-207, 255-69; *see also id.* ¶ 357 (McKinsey also recommended prescriber targeting for Endo), ¶ 377 (same for J&J), and to analyze individual sales channels. *Id.* ¶ 270. McKinsey's targeting of specific locations was simultaneously so precise and so expansive that it studied doctors' opioid prescribing patterns on the *zip code* level

---

[7] Declaration of Catherine P. Humphreville ("Humphreville Dec."), Ex. A at 50 (map showing "market attractiveness by geography").

[8] *Id.* at 51.

[9] *Id.* at 8 (presenting U.S. map and the "substantial variability in OxyContin [total prescription] change by zip code" and looking at certain cities in particular which are among the Subject States, including Fort Wayne, IN; Knoxville, TN; and Renton, WA).

[10] *Id.* at 50 (drawing from spreadsheets titled "Attractiveness Map" and "Micro Markets by Territory"); Humphreville Dec., Ex. B (spreadsheet titled "Micro Markets by Territory," including analysis hundreds of cities, including locations in each of the Subject States, *e.g.*, Anchorage, AK; Phoenix, AZ; Denver, CO; Hawaii (East); Terre Haute, IN; Louisville, KY; Monroe, LA; Bel Air, MD; Jackson, MS; Helena, MT; Albuquerque, NM; Oklahoma City, OK; Portland, OR; Jackson, TN; Provo, UT; Roanoke, VA; Huntington WV; Federal Way, WA; and Racine, WI).

in all fifty states, determining which to target. *Id.* at ¶¶ 51, 478.  As one of many examples, McKinsey created a map detailing total prescription growth by zip code for Purdue:



*Id.* ¶ 478 ("TRx" means total prescriptions).  McKinsey had its employees visit doctors throughout the country to help it develop the national strategies that it then helped its clients implement—knowingly targeting patients in all fifty states. *Id.*[11]

McKinsey directed Purdue to buy data sets, on a nationwide and granular basis, by zip code, from a key third party, IMS (now known as IQVIA), the leading pharmaceutical data publisher.[12]  McKinsey analyzed and presented these data to Purdue for OxyContin in terms of "market attractiveness by geography" on a map of the United States.[13]  In the same presentation,

---

[11] Humphreville Dec., Ex. A at 8 (showing map above) and 9 (presenting U.S. map and the "substantial variability in Oxycontin share of [extended release option] by state" using zip codes); *see also* nn.19-21.

[12] Humphreville Dec., Ex. C at MCK-MDL2996-0284414, 0284417-22 (noting in presentation entitled "OxyContin growth opportunities" that McKinsey was waiting for data from IMS and discussing whether zip codes were the appropriate way to analyze the data); Humphreville Dec., Ex. D at MCK-MDL2996-0104431-32 (updating Purdue board that McKinsey had Purdue purchase prescriber level data from IMS and had "purposely and consistently focused on analyses at the local market level (e.g., zip code level analysis of growth)").

[13] *See, e.g.*, Humphreville Dec., Ex. A at 50.

1    McKinsey detailed OxyContin performance in terms of external "Market Attractiveness" factors

2    and "Micro Markets by Territory," focusing on thirty cities, including Westminster, Colorado;

3    Louisville East, Kentucky; East Baltimore, Maryland; Oklahoma City, Oklahoma; Park City,

4    Utah; Virginia Beach, Virginia; Seattle and Bellingham, Washington; and South Milwaukee,

5    Wisconsin—in eight of the Subject States.[14]

6         McKinsey's advice was so detailed that it targeted specific doctors.  Purdue's Evolve to

7    Excellence plan ("E2E"), the re-boot of the earlier Project Turbocharge, "was overseen by

8    McKinsey and some Purdue executives, who together comprised the E2E Executive Oversight

9    Team and Project Management Office."[15]  A plethora of E2E documents show how McKinsey

10   targeted specific doctors in the Subject States.  As just one example, an Excel spreadsheet

11   containing the E2E target list of individual physicians included prescribers from each of the

12   Subject States.[16]

13        Don't think McKinsey didn't know the consequences of its field research and doctor

14   targeting.  McKinsey analyzed those, too, developing a method for Purdue to identify abuse and

15   diversion hot spots—but without ever acting to address them.  Compl. ¶¶ 462-66.  Later, seeking

16   to brand itself as working in the interest of public health—independent of, and indeed in conflict

17   with, its opioid client engagements—McKinsey tracked the consequences of its opioid marketing

18   schemes, also at a granular level.  *See id.* ¶¶ 475-83.  McKinsey presented the "'opioid

19   prescribing rate' per 100 people in every county in the United States" as a way to track the opioid

20   crisis.  *Id.* ¶¶ 476, 479.  McKinsey knew exactly the places it was targeting and where the harms

21   of its work impacted communities.

22

23

24

---

25   [14] *Id.* at 51.

26   [15] *See, e.g.*, Compl. ¶¶ 244, 245, 248, 254, 500; *see also* Humphreville Dec., Ex. E at 5 (detailing E2E team structure) and 22 (analyzing geographic markets including in Colorado, Kentucky, Maryland, Utah, Virginia, Washington, and Wisconsin).

27   [16] Humphreville Dec., Ex. F (excerpted to show twenty examples of prescribers targeted in each of the Subject States).  A full version of the spreadsheet shows 30,704 prescribers McKinsey and Purdue identified in the Subject States.

28

C.    **McKinsey Conducted in-the-Field Research in the Subject States to Increase Opioids Sales in these States.**

McKinsey relies, in part, on the representations of Gretchen Scheidler, McKinsey's Director of Professional Development, to claim it did not work in the Subject States.  And her declaration confirms Plaintiffs' allegations that McKinsey worked with Purdue for over a decade.  *See* Scheidler Dec. ¶ 12 (68 Purdue client engagement codes related to opioid sales, marketing, manufacturing, and distribution).  But what Ms. Scheidler did not attest speaks volumes.  She did not claim, and McKinsey has not represented, that McKinsey did not conduct opioid-related work in, or directed at, the Subject States.  Based upon the limited number of documents Plaintiffs have reviewed so far, McKinsey cannot truthfully make that representation.  Its motion and Ms. Scheidler's declaration are a mirage.

Contrary to its claims, McKinsey was not an armchair advisor, but an active participant in Purdue's precision targeting of particular geographic locations, including in the Subject States.  McKinsey's engagement database indicates where an engagement is initiated and the home offices of the consultants staffed on the project.  *Id.* ¶¶ 5-8.  But that's only part of the story.

McKinsey's employees travel often and are actively involved in field activities.[17]  For Purdue, this included conducting investigatory meetings and interviews at hospitals and clinics, and field visits with sales representatives to collect real-world data, called "rep ride-a-longs."[18]  McKinsey's documents contain email after email describing its consultants riding along with Purdue's sales team visiting doctors, including in Tennessee, Maryland, Indiana, Louisiana, and other states where McKinsey claims it did not work.[19]  For example, Purdue arranged to have a McKinsey consultant spend a day working with a sales representative in Tennessee.[20]  The

---

[17] *See* Humphreville Dec., Ex. G at MCK-MDL2996-0281087-109 (McKinsey's firm travel policy annexed to Master Consulting Agreement between Purdue and McKinsey).
[18] Humphreville Dec., Ex. A at 67.
[19] Humphreville Dec., Ex. H at MCK-MDL2996-0310910-11 ("OxyContin growth opportunities" presentation identifying sales representatives Ted Frank, Kevin Dunleavy, Tessa Schaeffer, and Hope Batts) and Ex. I (matching aforementioned sales representatives with their territories, Annapolis, MD; Nashville, TN; Carmel, IN; and Shreveport LA, respectively).
[20] Humphreville Dec., Ex. J at PPLPC014000209587-88 (email from Windell Fisher to Lori Stewart, dated June 7, 2013 with subject "OxyContin Research Project – McKinsey & Company") and Ex. I (spreadsheet showing Lori Stewart's territory as Knoxville, TN).

Tennessee sales representative was one of "several representatives" that would have a McKinsey consultant spend a day with them.[21]  These ride-a-longs allowed McKinsey to assess how Purdue salespeople were detailing and messaging doctors, and how McKinsey could provide insight and advice concerning proposed responses to challenges and opportunities.

## IV.  McKinsey Is Subject to Specific Personal Jurisdiction in All Subject States Because It Had Sufficient Contacts with Each of Them.

The Ninth Circuit uses a three-part test to analyze whether a defendant has sufficient "minimum contacts" with a forum state such that the exercise of specific jurisdiction is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 801-02.  Under the first prong, when a claim sounds in tort, courts consider whether the defendant engaged in acts that were purposefully directed toward the forum state.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  With respect to the first two prongs, if a plaintiff can make a strong showing as to one, a lesser showing is required for the other.  *Id.* at 1210.  Once the plaintiff has established the first two prongs, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable.  *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983–84 (9th Cir. 2021).

### A.  McKinsey Purposefully Directed Its Conduct at the Subject States under the Ninth Circuit's "Effects" Test.

The Ninth Circuit utilizes a separate three-prong test to determine whether a defendant's out of state conduct is purposefully directed at the forum.  Under this "effects" test, "the

---

[21] Humphreville Dec., Ex. J at PPLPC014000209587-88.

- 8 -

1  defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the

2  forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

3  state." *Schwarzenegger*, 374 F.3d at 803.  A defendant need not conduct any acts within a forum;

4  purposeful direction may be shown even where the defendant has no actual contact with the

5  forum state.  *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

6        McKinsey does not challenge the first prong, acknowledging it committed intentional acts.

7  Rather, McKinsey contends that Plaintiffs have not established that its acts were expressly aimed

8  at the Subject States or that those acts were likely to cause harm in those states.  McKinsey could

9  not be more wrong.

10              **1.     McKinsey's Conduct Was Expressly Aimed at the Subject States.**

11        "'Express aiming' encompasses wrongful conduct individually targeting a known forum

12  resident."  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087–88 (9th Cir.

13  2000), *overruled in part on other grounds by Yahoo!*, 433 F.3d at 1207.  It is not necessary that

14  the plaintiff be the known forum resident.  *See Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062,

15  1065 (9th Cir. 1990) (finding personal jurisdiction over Alabama resident defendant in case

16  brought in California where defendant mailed fraudulent documents to California plaintiff there).

17  Nor is it required that the defendant have initiated the contact with the forum.  *Brainerd,* 873 F.2d

18  at 1259–60 (holding Canadian defendants subject to personal jurisdiction in Arizona based on

19  letter sent and phone conversations in response to University of Arizona's inquiries about a

20  former colleague).  If the defendant "took those actions 'for the very purpose of having their

21  consequences felt in the forum state,'" the exercise of personal jurisdiction comports with due

22  process. *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987) (quoting *Wright v. Yackley*, 459 F.2d

23  287, 290 (9th Cir. 1972)).

24        Here, for two reasons, McKinsey's actions were expressly aimed at the forum states.

25  First, McKinsey was the architect of nationwide campaigns promoting the use and sale of opioids.

26  It was intentional and inevitable that these campaigns would cause harm in the Subject States.

27  Second, McKinsey employed granular analysis for its clients, specifically targeting the Subject

28  States.

It is undisputed that its opioid clients hired McKinsey to promote and to increase their opioid product sales nationwide.  Courts in the Ninth Circuit routinely hold that national campaigns can serve as the basis for the exercise of specific jurisdiction where the contacts with the forum state are more than "random, isolated, or fortuitous." *Ayla*, 11 F.4th at 980-81 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  For example, in *Ayla*, the court held that the defendant was subject to specific jurisdiction on the basis that it directed "an insistent marketing campaign toward the forum," including having specifically targeted advertisements at Americans and posting features of its products in American magazines and having considerable sales in the United States. *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)) (alterations omitted).  Similarly, in *In re JUUL Labs, Inc.*, the court held that it could appropriately exercise specific jurisdiction over corporate officer and director defendants based on their role in "develop[ing] and maintain[ing] a nationwide youth nicotine market," including a national marketing campaign that included the forum states, the establishment of "a nationwide distribution network" and "a website that offered JUUL for sale nationwide," and sales of JUUL "products nationwide (including in the forum states)." 497 F. Supp. 3d at 677.

McKinsey's role in its opioid clients' nationwide campaigns meant that its contacts were not "random, isolated, or fortuitous."  Rather, as Plaintiffs allege, McKinsey established "transformational relationships" with its opioid clients and engaged in campaigns pushing dangerous opioids for years.  McKinsey, together with Purdue, Endo, Johnson & Johnson, and others, increased the market for prescription opioids in all fifty states. *See, e.g.*, Compl. ¶ 478.

But McKinsey's intentional conduct was not limited to providing generic advice to be deployed on a national level.  It also included granular and specifically tailored strategies aimed at each Subject State.  Specifically, and without limitation, McKinsey gathered data about prescribing practices and policies regarding interaction with drug sales representatives at both large and small medical facilities. *See, e.g.*, *supra* n.16.  McKinsey also compiled and circulated lists of high prescribing doctors for its clients to target for the specific purpose of increasing sales and prescriptions in those states. *See, e.g.*, Compl. ¶¶ 51, 478.  And McKinsey assisted with the

1    training and monitoring of its clients' sales representatives in the Subject States, including acts

2    like ride-a-longs with sales representatives.  *See supra* nn.18-21; *see also Walden v. Fiore*, 571

3    U.S. 277, 285 (2014) ("[P]hysical entry into the State—either by the defendant in person or

4    through an agent, goods, mail, or some other means—is certainly a relevant contact.").   The ride-

5    a-longs served two purposes: (1) ensuring that sales representatives were implementing

6    McKinsey's plan to target specific prescribers and (2) fine-tuning the script the representatives

7    used.  *See* Humphreville Dec., Ex. A at 67.  McKinsey acted intentionally when it devised both

8    national and targeted strategies to increase the distribution of opioids in the Subject States.  By

9    specifically targeting individual prescribers in the Subject States to carry out that objective,

10   McKinsey knew that the effects of increased opioid distribution would be felt in each of the

11   Subject States.  This conduct unequivocally meets the elements of the "effects" test.

12        McKinsey argues it is insufficient that mere foreseeability of the effects of its generic

13   consulting services would be felt in the Subject States.  Again, this ignores and obfuscates both

14   the work McKinsey claims it provides clients and McKinsey's specific targeting of prescribers in

15   the Subject States.  In cases where personal jurisdiction was lacking based on mere foreseeability,

16   the conduct at issue was either directed specifically at *another* forum or was *exclusively global* in

17   nature.  For example, in *Schwarzenegger*, the Ninth Circuit held that a car dealership's use of

18   then-California Governor Schwarzenegger's image from the *Terminator* movies in a print

19   advertisement was not a sufficient contact to support personal jurisdiction over the defendant in

20   California when the advertisement was only circulated in and expressly aimed at Ohio, the

21   dealership's location.  374 F.3d at 800.  The court found that even though the advertisement

22   might lead to harm to Mr. Schwarzenegger in California, the "foreseeable effect" was not enough.

23   "'[S]omething more' . . . that could be construed as being directed at the forum state"—rather

24   than mere possible effect—was required.  *Id.* at 807.

25        Similarly, the Ninth Circuit rejected personal jurisdiction based solely on "a global,

26   universal publication without any express aiming at the [forum state] market."  *Matus v. Premium*

27   *Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (out-of-state seller's "passive

28   website" did not target California where consumer purchased a product manufactured and

marketed in a foreign jurisdiction from a foreign reseller).  Here, Plaintiffs do not seek to show, for example, that a Washington court has jurisdiction based on McKinsey's actions directed toward West Virginia.  Plaintiffs allege both a nationwide campaign pursued for the specific purpose of increasing opioid distribution in *every* state and that the nationwide campaign included strategies and protocols developed *specifically* for increasing sales in *each of the Subject States*.

### a.   What McKinsey Did, Not What Its Contracts Say, Is the Relevant Inquiry.

Actions speak louder than words.  McKinsey cannot avoid jurisdiction by arguing that none of its client engagements "originated in any of the Subject States" or that "the work for all of the identified engagements was anticipated to be performed outside of the Subject States." Scheidler Dec. ¶ 24.  A defendant cannot intentionally structure transactions to avoid jurisdiction where it would otherwise be appropriate.  Rather, in analyzing specific jurisdiction, a court must "look toward the economic reality of the [defendant's] activities . . . .  The substance, not the form, of the defendant's activities are dispositive" for jurisdictional analysis.  *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1398 (9th Cir. 1986); *see also Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 211–12 (5th Cir. 1999) ("Even if the parties formed their [attorney-client] relationship in Germany, however, a single act by [the defendant] directed toward [the forum state] that gives rise to a cause of action by [the plaintiff] can support a finding of minimum contacts.").  How McKinsey papered its engagements with its clients is therefore largely irrelevant to the personal jurisdiction analysis.  Where McKinsey or its clients "anticipated" in writing that its activities would be performed does not alter the reality of where they were performed or where the intended, consequential effects of those activities would be felt.

### b.   McKinsey Cannot Hide Behind Its Clients' Conduct to Avoid the Exercise of Personal Jurisdiction in the Subject States.

McKinsey seeks to downplay its involvement in its clients' activities in the Subject States by characterizing itself as a third party.  While a defendant's relationship with a third party *standing alone* is an insufficient basis for jurisdiction, Plaintiffs do not simply allege that McKinsey had a relationship with its clients that happened to engage in conduct in the Subject

States.  Plaintiffs allege that McKinsey was an active participant in that conduct, providing

guidance, advice, and direction to its clients on how to have the greatest impact in each of the

Subject States, including working alongside the clients to carry out McKinsey's recommended

strategies.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985) ("[W]here

individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to

allow them to escape having to account in other States for consequences that arise proximately

from such activities; the Due Process Clause may not readily be wielded as a territorial shield to

avoid interstate obligations that have been voluntarily assumed." (quoting *Kulko v. California

Superior Court*, 436 U.S. 84, 96 (1978))).  And courts have found that when "a foreign

corporation directly targets residents in an ongoing effort to further a business relationship, and

achieves its purpose," and harms a resident-plaintiff in the process, the exercise of personal

jurisdiction may be appropriate.  *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715–16 (1st Cir.

1996) (holding hotel subject to jurisdiction in Massachusetts for wrongful death action where

hotel solicited decedent's spouse's employer to reserve rooms).

Regardless of whether McKinsey employees personally performed some of the actions

that led to the opioid crisis, McKinsey provided its advice with the intent that its clients would act

consistent with that advice in each of the Subject States.  Moreover, McKinsey assisted its clients

with implementation of the plans it devised.  McKinsey did not simply create a PowerPoint

presentation and leave it to chance that its clients would carry out its granular strategies.  Its

clients' actions were therefore not the result of "unilateral activity of another party or a third

person," but acts induced and intended by McKinsey.  *Burger King*, 471 U.S. at 475 (citation

omitted); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those

who claim some relationship with a nonresident defendant cannot satisfy the requirement of

contact with the forum State.  The application of that rule will vary with the quality and nature of

the defendant's activity . . . ."); *Cisco Sys., Inc. v. Dexon Computer, Inc.*, 541 F. Supp. 3d 1009,

1015 (N.D. Cal. 2021) (Breyer, J.) (while unilateral activity of a plaintiff is not enough to

establish jurisdiction, a defendant's efforts to exploit a market in the forum state may be).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

This case is similar to *Lions Gate Entertainment Inc. v. TD Ameritrade Services Co., Inc.*, 170 F. Supp. 3d 1249 (C.D. Cal. 2016), *overruled in part on other grounds on reconsideration*, No. CV 15-05024 DDP (EX), 2016 WL 4134495 (C.D. Cal. Aug. 1, 2016), where an advertising agency sought to avoid jurisdiction on the basis that it did not disseminate the allegedly tortious ads at issue, nor control where the ads would be disseminated. *Id.* at 1260. The court held that the fact that the defendant did not disseminate the advertisements was not controlling where it knew that the campaign would target the forum state and that harm would be felt there. *Id.* at 1261-62.

The cases cited by McKinsey in section B(1)(b) of its brief do not alter this outcome nor does McKinsey explain how those cases are relevant to the facts. In *Walden*, the Supreme Court acknowledged that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 571 U.S. at 286. The Court therefore held that the defendant could not be hailed into a Nevada court "simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289. McKinsey's other authorities merely parrot the generic and undisputed standard that personal jurisdiction cannot be premised on a plaintiff's or third party's unilateral, fortuitous, or attenuated contact with the forum state, even if the defendant is aware of that party's connection to that state. *See* McKinsey Mot. to Dismiss for Lack of Personal Jurisdiction (ECF No. 313) ("Mot.") at 17–18.

By contrast, Plaintiffs do not contend that jurisdiction is appropriate merely because McKinsey knew of connections with the Subject States. Indeed, Plaintiffs make no allegations about McKinsey's specific knowledge of any individual plaintiff. Nor do Plaintiffs contend that McKinsey is subject to jurisdiction in the Subject States because its clients engaged in conduct in the forum states unrelated to McKinsey's consulting engagements. Instead, McKinsey is subject to jurisdiction in the Subject States because McKinsey, acting in concert with its clients, engaged in targeted marketing and sales campaigns in the Subject States with the intent and purpose to increase the distribution of opioids *in those states*. In other words, McKinsey and its clients did

1   not specifically target Plaintiffs who happened to reside in the Subject States; McKinsey and its

2   clients specifically targeted the Subject States, where Plaintiffs happened to reside.

**2.      McKinsey Acted Knowing Its Actions Would Cause Harm in the Subject States.**

5        Plaintiffs have also established, under the third prong of the effects test, that McKinsey

6   caused harm knowing it would likely be felt in the Subject States.  The Ninth Circuit has held that

7   this "require[s] 'something more' than mere foreseeability in order to justify the assertion of

8   personal jurisdiction."  *Schwarzenegger*, 374 F.3d at 805 (quoting *Bancroft*, 223 F.3d at 1087).

9   This "something more" requires "express aiming," which can be established by showing that the

10  defendant targeted known forum residents.  *Bancroft*, 223 F.3d at 1087–88.  Plaintiffs allege that

11  McKinsey targeted known forum residents—doctors and other providers in the Subject States—

12  for the specific purpose of disseminating false information regarding opioids and encouraging the

13  prescription, sale, and distribution of opioids in the Subject States.  This is sufficient to support

14  personal jurisdiction over McKinsey.  Furthermore, McKinsey did not just assume that its opioid

15  marketing activities were *likely* to cause harm in the Subject States; it in fact *knew* about the

16  harms it caused in the Subject States because it tracked that information.  *See* Compl. ¶¶ 462-66,

17  475-83.  McKinsey does not seriously dispute the nature of Plaintiffs' harms or that they were

18  foreseeable, but instead focuses on whether it engaged in "something more" such that the exercise

19  of jurisdiction would be warranted.

20       McKinsey's citation of *Asahi Metals Industry Co. v. Superior Court*, 480 U.S. 102 (1987),

21  is inapposite.  McKinsey states that because it is not a product manufacturer, but a service

22  provider, "*a fortiori*, McKinsey's purported contacts with the Subject States . . . cannot suffice to

23  confer jurisdiction over it."  Mot. at 21.  In each of the cases cited by McKinsey, the non-resident

24  defendants had provided *discrete* legal or accounting services for their clients.  *See Trierweiler v.*

25  *Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (single letter sent by

26  attorney to Michigan plaintiff via an intermediary was insufficient to establish personal

27  jurisdiction even if it was foreseeable that letter would ultimately be sent to Michigan); *Able Fund*

28  *v. KPMG Accts. NV*, 247 F. App'x 504, 507 (5th Cir. 2007) (no jurisdiction in Texas based on

1 audit conducted in Netherlands Antilles for client in Curacao which was mailed to plaintiffs in

2 Europe and the Caribbean where defendant's only connection to Texas was that defendant

3 collected information there); *Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*, 54

4 N.E.3d 570, 575 (Mass. App. Ct. 2016) (no personal jurisdiction for accounting malpractice

5 claims over Cayman Islands accountant who performed audit for New York-based client based on

6 knowledge that client would send audit to shareholders in Massachusetts); *Five Star Gourmet*

7 *Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 1244918, at *8 (N.D. Cal.

8 Mar. 16, 2020) (company that designed and manufactured product packaging for product

9 manufacturer not subject to jurisdiction in California based on product manufacturer's decision to

10 sell products there).

11       McKinsey's attempt to analogize those cases to its role in advising clients how to increase

12 sales nationally and in the Subject States falls flat.  In contrast to these cases, McKinsey did not

13 merely provide a single opinion letter or isolated accounting services, but rather immersed itself

14 in its opioid clients' businesses to provide detailed strategic plans and guidance with the purpose

15 and intent that its clients would use those plans and advice to increase opioid sales in the Subject

16 States.  McKinsey did not provide, for example, New York-based advice to Purdue, which Purdue

17 unilaterally decided to expand and adapt into a nationwide strategy.  McKinsey developed a

18 strategy, based on its nationwide research and analysis, designed to increase sales in *all* states,

19 including the Subject States, and then assisted with the implementation of that strategy.  In other

20 words, unlike the "service providers" that performed discrete services for their clients unrelated to

21 the forum states in the cases cited by McKinsey, McKinsey performed services for its clients

22 *directly related to* and *intended* to cause a *specific* effect in the Subject States.

23       **B.**       **McKinsey's Contacts with the Subject States Are Related to Plaintiffs'**
                   **Claims.**

24

25       McKinsey's minimum contacts with each of the Subject States are also directly related to

26 Plaintiffs' claims.  Here, McKinsey's contacts with the forum states—geographic researching,

27 analyzing local data, as well as advising, directing, and implementing efforts to increase the sales

28 of opioids in the Subject States—are directly related to Plaintiffs' claims for conspiracy, public

1  nuisance, negligence, fraud, and violations of the respective consumer protection statutes in each

2  of the Subject States.[22]

3      The Supreme Court recently clarified that plaintiffs need not establish a causal

4  relationship between a defendant's contact with the forum state and the plaintiffs' claims, only

5  that their claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor*

6  *Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (citation and alteration

7  omitted).  The Ninth Circuit has recognized that "a strict causal relationship is not required"

8  under the *Ford Motor* standard.  *See Ayla*, 11 F.4th at 983 n.5.  Nevertheless, McKinsey asks this

9  Court to dismiss Plaintiffs' claims based on the purported lack of "any causal relationship

10  between McKinsey's conduct in the Subject States and their alleged injuries."  Mot. at 24 n.8.[23]

11      In *Ayla*, the plaintiff brought trademark and unfair competition claims against an

12  Australian company.  11 F.4th at 977.  After finding that the defendant's promotion, sale, and

13  distribution of products constituted sufficient minimum contacts with the forum, it found that

14  because the plaintiff's claims arose from the very same promotion, sale, and distribution activity,

15  the claims were "related to" the defendant's forum-activities.  *Id.* at 983.  Here, Plaintiffs allege

16  that McKinsey targeted forum health care providers and made representations in the Subject

17  States for the purpose of increasing the sales of opioids in those states.  Plaintiffs' claims relate to

18  that conduct and their injuries arose from, *inter alia*, the increased sale and distribution of opioid

19  products in their communities.

20      *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716 (9th Cir.

21  2013), is also instructive.  In that case, MDL defendants protested the exercise of jurisdiction

22  where they had not entered into contracts to sell natural gas to any of the named plaintiffs,

23

24  [22] Given the strong allegations that McKinsey carried out a national campaign specifically directing its activities at the Subject States, a lesser showing is required under the second prong of the Ninth Circuit's specific jurisdiction test.  *Yahoo!*, 433 F.3d at 1206 (where a plaintiff has

25  made a strong showing of purposeful direction, it need only make a lesser showing under the "arises out of" prong).

26  [23] Even under a more searching "but for" analysis, the Ninth Circuit has allowed the exercise of

27  jurisdiction on this basis where the defendant had "ongoing contacts with the forum state" over a period of years and its tortious conduct outside the forum state had the effect of injuring the plaintiff in the forum state.  *See, e.g.*, *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,

28  328 F.3d 1122, 1132 (9th Cir. 2003).

although they had entered into contracts to supply natural gas to other Wisconsin and Missouri companies. *Id.* at 739-41. Plaintiffs alleged that they suffered harm because they bought "gas at inflated prices from third party sellers" as a result of the defendants' anti-competitive behavior. *Id.* at 742. The court concluded that "the Plaintiffs' state antitrust claims [arose] out of the [defendants'] collusive manipulation of the gas price indices," or in other words, they related to the defendants' "forum-related activities." *Id.* at 742–43. Plaintiffs' claims warrant the same conclusion here. Plaintiffs do not, as McKinsey attempts to argue, claim that the second prong is met by virtue of Plaintiffs' mere presence in the Subject States, but rather that it is satisfied because they were harmed by McKinsey's conduct directed at the Subject States that was intended to, and did, result in an increase in opioid products sold and distributed in the Subject States.[24]

### C.   The Exercise of Personal Jurisdiction Over McKinsey in Each of the Subject States Is Reasonable.

Because Plaintiffs have demonstrated that McKinsey had minimum contacts with the Subject States sufficient to support the exercise of personal jurisdiction and that Plaintiffs' claims arise from or relate to those contacts, the burden shifts to McKinsey to show that the exercise of personal jurisdiction in the Subject States would nevertheless be unreasonable. *Ayla*, 11 F.4th at 983–84. McKinsey cannot meet that burden.

In the Ninth Circuit, courts are guided by seven factors in determining whether the exercise of personal jurisdiction would be unreasonable despite sufficient minimum contacts:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

---

[24] Defendants contend that the Supreme Court in *Walden* held that the "'the proper question' when assessing the second prong 'is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'" Mot. at 23–24 (quoting *Walden*, 571 U.S. at 290). But the opinion makes clear that this question applies to the sufficiency of a forum connection, not the contacts' relationship to the claims at issue. *Walden*, 571 U.S. at 289-90.

1    *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018); *see also*

2    *Burger King*, 471 U.S. at 476–77 (identifying factors to consider relevant to "fair play and

3    substantial justice").

4            The first factor, "the extent of the defendant's purposeful injection into the forum state's

5    affairs" is analogous to purposeful direction.  *Ayla*, 11 F.4th at 984.  Because McKinsey

6    purposefully directed its activities toward the Subject States, this factor supports the exercise of

7    jurisdiction.

8            The second factor, the burden on the defendant to defend in the forum, also weighs in

9    favor of the exercise of personal jurisdiction.  The burden on McKinsey in litigating in the

10   Subject States is minimal.  McKinsey has offices in Colorado and Washington—two of the

11   Subject States.[25]  Additionally, McKinsey has already participated in litigation in the Subject

12   States related to its opioid consulting: it entered into consent judgments with the Attorneys

13   General in each of the Subject States.  Further, since pre-trial matters have been transferred to this

14   Court by the Judicial Panel on Multidistrict Litigation, McKinsey need only appear in the Subject

15   States for trial.  As a massive company that advises clients both nationwide and globally, and in

16   fact touts its national and global reach, this cannot be unduly burdensome.

17           Nor is McKinsey's argument that it will be more burdensome to try actions in fifteen

18   different jurisdictions availing.  All pre-trial determinations are to be made by this Court.

19   McKinsey will still need to participate in the same number of trials; McKinsey makes no specific

20   argument about how the location of these trials will impose any additional burden.  Moreover,

21   when minimum contacts have been established, they outweigh the general burden placed on a

22   foreign defendant.  *Ayla*, 11 F.4th at 984.

23           In contrast, the burden to Plaintiffs in litigating in the states of McKinsey's incorporation

24   or principal place of business—which McKinsey implicitly argues are the only places where it

25   would be subject to jurisdiction for the harms suffered in the Subject States—would be

26   substantial.  It makes far more sense for the Plaintiffs to try their claims in courts in their home

27   states, where the claims will undoubtedly involve testimony of local officials and others involved

28   ---
[25] https://www.mckinsey.com/locations (last visited Feb. 11, 2022).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
                                                                                                   FIRST AMENDED COMPLAINT

1   in opioid-related matters, than it does for them to travel to and burden the courts of states that

2   have no specific interest in adjudicating the claims of distant plaintiffs.

3            The third factor, the conflict with the sovereignty of the defendant's state, is, as McKinsey

4   notes, neutral.  Because McKinsey is from another state as opposed to a foreign country, there are

5   no sovereignty implications.

6            The fourth factor, the forum state's interest in adjudicating the dispute, also supports

7   jurisdiction.  A forum state typically has "a strong interest in providing an effective means of

8   redress for its residents [who are] tortiously injured."  *Harris Rutsky & Co.*, 328 F.3d at 1133

9   (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988)).  The Subject

10   States' interests in adjudicating these claims are substantial given the catastrophic effect the

11   opioid crisis has had, and continues to have, on Plaintiffs' communities.

12            The fifth factor, the efficient resolution of the controversy, also weighs in favor of

13   jurisdiction in the Subject States or is, at least, neutral.  "The site where the injury occurred and

14   where evidence is located usually will be the most efficient forum."  *Tuazon v. R.J. Reynolds*

15   *Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006) (citation omitted).  Here, with respect to the

16   claims McKinsey seeks to dismiss, the injuries arose in the Subject States making evidence more

17   readily available there.  And given that common discovery will be centralized in this Court,

18   discovery from McKinsey's various offices does not weigh in favor of another forum.  Plaintiffs

19   were injured in the Subject States, and their evidence related to these claims is available there.

20            The sixth factor, the plaintiff's interest in choice of forum, supports jurisdiction in the

21   Subject States.  As McKinsey notes, this factor is nominal as it is axiomatic that a plaintiff would

22   prefer to litigate in its home state.  While the plaintiff's convenience should not significantly

23   influence the Court's decision, the Court must still balance the competing convenience interests

24   of the parties.  Here, this factor is even less crucial where the majority of the proceedings will

25   occur in neither the Subject States nor in the states where McKinsey is subject to general personal

26   jurisdiction because pre-trial proceedings have been centralized in this MDL.

27            Finally, the last factor, the existence of an alternative forum, does not weigh against the

28   exercise of jurisdiction.  Plaintiffs do not dispute that their claims could be brought in Delaware

1   or New York by virtue of McKinsey's incorporation and maintenance of principal places of

2   business there.  But if this factor were dispositive, then specific jurisdiction would not be

3   appropriate in any case.  That McKinsey may be sued in another jurisdiction does not preclude

4   the exercise of personal jurisdiction in the Subject States.  Indeed, "[w]hether another reasonable

5   forum exists becomes an issue only when the forum state is shown to be unreasonable."

6   *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (citation omitted).

7         Because McKinsey fails to meet its burden to show that the exercise of personal

8   jurisdiction in the Subject States would be unreasonable, the Court must deny its motion.

9         **D.**      <u>**Specific Personal Jurisdiction Also Exists in the Subject States Because**</u>

10   <u>**McKinsey Conspired with Its Opioid Clients to Increase Sales in those**</u>
      <u>**States.**</u>

11         Under the conspiracy based theory of personal jurisdiction, a court can find personal

12   jurisdiction over a defendant to the same extent as his co-conspirators. *Charles Schwab Corp. v.*

13   *Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018); *see also Schwab Short-Term Bond Mkt. Fund*

14   *v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 122 (2d Cir. 2021) ("[A] defendant can similarly avail

15   itself of a forum through certain actions taken by a co-conspirator in the forum.  Much like an

16   agent who operates on behalf of, and for the benefit of, its principal, a co-conspirator who

17   undertakes action in furtherance of the conspiracy essentially operates on behalf of, and for the

18   benefit of, each member of the conspiracy." (citation omitted)).  Courts that recognize this

19   doctrine employ a three-part test to determine whether a plaintiff has sufficiently plead conspiracy

20   jurisdiction.  To show personal jurisdiction, the plaintiff must allege (1) a conspiracy existed;

21   (2) defendant participated in the conspiracy; and (3) a co-conspirator's activities in furtherance of

22   the conspiracy had sufficient contacts with the state to subject that defendant to jurisdiction in the

23   state.  *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).  While the acts in

24   furtherance of the conspiracy must be foreseeable, the defendant is not required to direct, control,

25   or supervise its co-conspirator's activities in the forum to be subject to conspiracy jurisdiction.

26   *Schwab*, 22 F.4th at 124.

27         McKinsey and its co-conspirators' actions satisfy the three-part test for conspiracy

28   jurisdiction in the Subject States.  *See id.* at 124.  First, McKinsey entered into a conspiracy with

1   its opioid clients to unlawfully increase opioid sales across the United States.  Compl. ¶¶ 109-11,

2   129-43; *Schwab,* 22 F.4th at 124 (defendants conspired to manipulate LIBOR).  Second, as part of

3   this agreement, McKinsey and its clients created and used a deceptive marketing campaign that

4   would push doctors in every state to prescribe higher numbers of opioids and higher doses of

5   opioids.  McKinsey not only participated in this conspiracy, but was an integral part of it.  Compl.

6   ¶¶ 151-223.  It designed and implemented the marketing campaign used by its opioid clients to

7   unlawfully push sales of a highly abusable and addictive drug.  *Id.* ¶¶ 177-223.  Third, given that

8   McKinsey knew this was an effort to increase sales nationwide, it was both foreseeable and

9   intended that opioid manufactures would target doctors and increase their sales of opioids in each

10   and every state, including the Subject States.  *Id.* ¶¶ 225-69.  These sales were clearly in

11   furtherance of the conspiracy; the specific *goal* of the conspiracy was to sell as many opioids as

12   possible in all states, including the Subject States, based on a granular analysis of data related to

13   those states.  *See Schwab*, 22 F.4th at 124 (finding overt acts in the forum where co-conspirators

14   attempted to manipulate the LIBOR rates in the forum).  This Court can thus find personal

15   jurisdiction over McKinsey based on its co-conspirators' nationwide efforts to unreasonably

16   increase their sales of opioids.  *See id.* (allegation of overt acts in the forum enough to establish

17   jurisdiction).

18        Though the use of this theory of personal jurisdiction is not universal, this is largely

19   because many Courts of Appeal have yet to rule on the issue.  *See Ward v. Auerbach,* Civ. A. No.

20   16-12543-FDS, 2017 WL 2724938, at *12 (D. Mass. June 23, 2017) (noting that the First Circuit

21   had not ruled on conspiracy jurisdiction (and it still has not)).  On the other hand, some circuits

22   have recognized that a conspiracy theory may justify imputing the contacts of co-conspirators.

23   *See Charles Schwab Corp.*, 883 F.3d at 87; *Unspam Techs., Inc*. 716 F.3d at 329; *J & M Assocs.,*

24   *Inc. v. Romero*, 488 F. App'x 373, 375 (11th Cir. 2012); *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060,

25   1069 (10th Cir. 2007); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 140 (D.D.C.

26   2004).  Those that have recognized it view it as a means of serving the purposeful availment

27   requirement of specific jurisdiction.  *Schwab*, 22 F.4th at 125.

28

1   The Ninth Circuit has neither accepted nor rejected the conspiracy theory of personal

2 jurisdiction.  *Chirila v. Conforte*, 47 F. App'x 838, 843 (9th Cir. 2002); *see also Underwager v.*

3 *Channel 9 Austl.*, 69 F.3d 361, 364 (9th Cir. 1995) (court did not address conspiracy theory of

4 personal jurisdiction where plaintiff alleged no facts to suggest a conspiracy).  Rather, the Ninth

5 Circuit has found only that a "bare allegation of a conspiracy between the defendant and a person

6 within the personal jurisdiction of the Court is not enough" to establish personal jurisdiction.

7 *Chirila*, 47 F. App'x at 843 (citation omitted).  Although some courts have been skeptical to

8 allow personal jurisdiction based on the Ninth Circuit's failure to affirmatively embrace the

9 theory, *see Brown v. 140 NM LLC*, Case No. 17-cv-05782-JSW, 2019 WL 118425, at *5 (N.D.

10 Cal. Jan. 7, 2019), most courts have followed in the steps of the Ninth Circuit and instead

11 dismissed cases where the conspiracy allegations are paltry.  *See, e.g., Rousselot B.V. v. St. Paul*

12 *Brands Inc.*, Case No. SA CV 19-0458-DOC, 2020 WL 2510653, at *3 (C.D. Cal. Feb. 14, 2020)

13 (finding no personal jurisdiction where "Plaintiff makes a bare allegation that Eco Pharma entered

14 into a conspiracy with other, in-state defendants"); *Krypt, Inc. v. Ropaar LLC*, Case No. 19-cv-

15 03226-BLF, 2020 WL 32334, at *5 (N.D. Cal. Jan. 2, 2020) ("The *Chirila* court did not reach a

16 conclusion as to the validity of a conspiracy theory of personal jurisdiction, however, because the

17 allegations of conspiracy were too conclusory.  So too here.").  While not explicitly decided

18 based on "conspiracy jurisdiction," Judge Orrick found specific jurisdiction based on a co-

19 defendant's position on a board of directors and actions in concert with the company's actions in

20 the forum state.  *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 533 F. Supp.

21 3d 858, 879 (N.D. Cal. 2021).

22   In other cases in the Ninth Circuit, courts have found personal jurisdiction where the

23 defendant's contact with the forum came from trade secrets stolen from that forum by a co-

24 defendant, even though the defendant did not otherwise interact with the forum.  *Fluke Elecs.*

25 *Corp. v. CorDEX Instruments, Inc.,* Case No. C12–2082JLR, 2013 WL 566949, at *9 (W.D.

26 Wash. Feb. 13, 2013); *see Mee Indus., Inc. v. Adamson*, Case No. 2:18-cv-003314-CAS (JCx),

27 2018 WL 6136813, at *6 (C.D. Cal. July 27, 2018).  These cases indicate that this Court can find

28 it has personal jurisdiction over a defendant where another party takes action in the forum state

1   that furthers a shared scheme.  And unlike the "bare" or "conclusory" allegations of conspiracy

2   discussed in the above cases, McKinsey's role in assisting Purdue and others in their efforts to

3   maximize opioid sales throughout the country is well-documented and formed the basis of

4   McKinsey's entering into consent judgments with the Attorneys General of each state in the

5   country.

6   **V.      Alternatively, the Court Could Defer Ruling on McKinsey's Personal Jurisdiction**

7   **         Motion until the Subject States' Cases Are to be Remanded for Trial.**

8          Assuming *arguendo* that the Court determines Plaintiffs have not made the requisite

9   demonstration of specific personal jurisdiction in one or more of the Subject States, the remedy

10  would be a dismissal without prejudice.  However, that would not be the end of the litigation for

11  the Plaintiffs from the Subject States: the Plaintiffs could, of course, re-file their complaints in

12  one of the "home state" jurisdictions where McKinsey is subject to general jurisdiction.  Indeed,

13  many states contemplate dismissals for non-merits reasons and provide statute of limitations

14  "savings" provisions that enable plaintiffs to re-file their claim (usually within a statutory tolling

15  period), and the re-filed claim will be treated as filed when the original suit was filed for

16  limitations purposes.  *See, e.g.*, Colo. Rev. Stat. Ann. § 13-80-111 (applying ninety day savings

17  period for claims dismissed for lack of jurisdiction or improper venue); Ky. Rev. Stat. Ann.

18  § 413.270 (ninety day savings period applies to cases dismissed based on jurisdiction or venue);

19  Md. Rule 2-101 (provides thirty days to re-file in state court if the action is dismissed in federal

20  court for want of jurisdiction); Tenn. Code Ann. § 28-1-105 (one year savings period applies to

21  cases dismissed for reasons "not concluding the plaintiff's right of action").  While a state-by-

22  state analysis of each state's law is beyond the scope of this brief, it is likely that governing state

23  law would permit Plaintiffs' claims to proceed over any limitations objection.[26]

24  _____

25  [26] Even if a savings period is not applicable in a particular jurisdiction, the ongoing nature of
    Plaintiffs' public nuisance claims ordinarily prevents limitations from running.  Courts generally
    recognize that statutes of limitations do not run on a claim for public nuisance if the nuisance is

26  continuing.  *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL
    4194296, at *3 & n.3 (N.D. Ohio Sept. 4, 2019) (applying Ohio law but noting that "longstanding

27  precedent makes clear there is no limitations applicable to" public nuisance claims, and observing
    that "[s]ome states have codified the common law rule that 'no lapse of time can legalize a public

28  nuisance amounting to an actual obstruction of public right'" (citing Cal. Civ. Code § 3490; Okla.
    Stat. Ann. tit. 50, § 7; S.D. Codified Laws § 21-10-4)); *see also* 14 A.L.R.7th Art. 8 ("[I]f a

1    In reality, any dismissed and subsequently re-filed cases would end up back in this MDL

2    pursuant to a transfer order, albeit from a different originating court.  Granting McKinsey's

3    motion now would simply lead to an unnecessary delay, only to leave all parties in the same

4    position a short time later.  Courts typically approach multi-district litigation transfer and personal

5    jurisdiction issues through a pragmatic lens, *see* Andrew D. Bradt, *The Long Arm of Multidistrict*

6    *Litigation*, 59 Wm. & Mary L. Rev. 1165, 1220 (2018), and Plaintiffs submit that the Court,

7    acting consistently with this approach, should deny McKinsey's motion at this time.  While

8    Plaintiffs respect that personal jurisdiction is a requirement to proceed in any court, in this MDL,

9    personal jurisdiction will be best determined at the time the claims of a Subject State Plaintiff are

10   ripe for remand.[27]

11   **VI.   Plaintiffs Should Be Permitted to Conduct Discovery Related to the Factual Issues**
         **McKinsey Raised.**
12

13   Although as detailed above, the documents Plaintiffs cite establish jurisdiction in each

14   Subject State, McKinsey's motion is premature because Plaintiffs are entitled to jurisdictional

15   discovery.  *See eMag Sols., LLC v. Toda Kogyo Corp.*, No. C 02-1611 PJH, 2006 WL 3783548,

16   at *2 (N.D. Cal. Dec. 21, 2006) (allowing plaintiff to conduct jurisdictional discovery to oppose

17   defendant's motion to dismiss).  While it is unclear in the Ninth Circuit whether a plaintiff must

18   allege facts to make a "colorable or prima facie showing of personal jurisdiction" over a

19   defendant before being entitled to conduct jurisdictional discovery, as is the case in certain other

20   circuits, *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d

21   934, 946 (7th Cir. 2000), Plaintiffs have made that showing as described herein, as well as in their

22   detailed Master Complaints.  *See Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670,

23   672-73 (S.D. Cal. 2001) ("It would . . . be counterintuitive to require a plaintiff, *prior*

24

25   nuisance or trespass is continuing, the general rule is that every repetition of the continuing
     nuisance or trespass is a separate wrong subject to a new and separate limitation period, for which
26   the person injured may bring successive actions for damages until the nuisance or trespass is
     abated even though the action based on the original wrong may be barred.") (collecting cases).

27   [27] Because this Court will decide pretrial matters, a non-merits dismissal and re-filing in another
     forum will not inject any additional delay in the trial of a Subject State plaintiff's claim
28   proceeding to trial.  Either the original forum, or the "home state" forum after re-filing, will
     receive the remanded case in exactly the same posture.

*to* conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss."); *Alves v. Player's Edge, Inc*., No. 05-1654 WQH (CAB), 2006 WL 8455520, at *9 (S.D. Cal. July 14, 2006) (citing *Orchid Biosciences* and holding that "[a]lthough Plaintiffs have not made a *prima facie* case of personal jurisdiction over the Defendant, this is not an impediment to requiring discovery specifically concerning personal jurisdiction").

Allowing jurisdictional discovery is particularly appropriate in this case, where McKinsey self-selected more than eighty documents in support of its motion.  *See* Scheidler Dec. ¶¶ 10-25 (identifying documents it claims to describe engagements outside of the Subject States).  This case is similar to *Orchid Biosciences*, where the defendant submitted an affidavit purporting to disclose all of its forum-related contacts, the facts of which plaintiff disputed.  *See Orchid Biosciences*, 198 F.R.D. at 673-74.  There, the court held that to defeat the plaintiff's request for discovery, the "[d]efendant must meet the relatively high burden of establishing that 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'"  *Id.* at 674-75 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Plaintiffs served their Second Set of Requests for Production of Documents on McKinsey on January 26, 2022, which contains several specific requests for information relevant to McKinsey's conduct in and directed to the Subject States.[28]  The evidence set forth above is derived from the discovery produced in *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio), access granted to Plaintiffs in this MDL by Amended Case Management Order No. 2, dated Oct. 15, 2021 (ECF No. 4028), entered in MDL 2804 (N.D. Ohio), as well as from McKinsey's production of documents to the State Attorneys General, which was produced to Plaintiffs in this MDL on November 19, 2021.  Plaintiffs have not had the opportunity to review all of the previously produced documents and have yet to receive documents from McKinsey responsive to their second set of requests (McKinsey claims it need not respond).  It is highly likely that further review of the previously produced documents, and review of the information requested in Plaintiffs' second set of requests, will yield further evidence to support the exercise

---

[28] *See* Humphreville Dec., Ex. K.

1  of specific personal jurisdiction in the Subject States.  Plaintiffs reserve the right to supplement

2  this response to provide additional evidence and argument in response to McKinsey's motion to

3  dismiss.

4  **VII.**   **Conclusion**

5        Opioid clients hired McKinsey to research, develop, and work with them to implement

6  strategies to increase opioid sales in all fifty states.  The Master Complaints allege (and the

7  evidence thus far shows) that McKinsey did this over a period of many years.  McKinsey created

8  and oversaw marketing campaigns related to opioids for Purdue, as well as for Johnson &

9  Johnson, Endo, Mallinckrodt, and others, that were nationwide in scope and targeted every state,

10  including those where McKinsey now contests jurisdiction.

11        Accordingly, the Court should deny McKinsey's motion to dismiss on the basis of

12  personal jurisdiction.  Alternatively the Court should permit Plaintiffs to conduct discovery on the

13  issues McKinsey raised in its motion.  If it chooses, the Court instead may defer ruling on

14  McKinsey's motion until such time as cases from the Subject States are being considered for

15  remand.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: February 14, 2022                    Respectfully submitted,

2

3                                                 /s/ Elizabeth J. Cabraser
                                                 Elizabeth J. Cabraser
                                                 ecabraser@lchb.com
4                                                Eric B, Fastiff
                                                 efastiff@lchb.com
5                                                Kelly K. McNabb
                                                 kmcnabb@lchb.com
6                                                Andrew R. Kaufman
                                                 akaufman@lchb.com
7                                                Dan Drachler
                                                 ddrachler@lchb.com
8                                                Catherine P. Humphreville
                                                 chumphreville@lchb.com
9                                                Kaylee A. Kohlmaier
                                                 kkohlmaier@lchb.com
10                                               **LIEFF, CABRASER, HEIMANN &**
                                                 **BERNSTEIN, LLP**
11                                               275 Battery Street, 29th Floor
                                                 San Francisco, CA 94111-3339
12                                               Telephone: (415) 956-1000
                                                 Facsimile: (415) 956-1008
13
                                                 *Plaintiffs' Lead Counsel*
14
                                                 Aelish M. Baig
15                                               aelishb@rgrdlaw.com
                                                 **ROBBINS GELLER RUDMAN & DOWD, LLP**
16                                               One Montgomery Street, Ste 1800
                                                 San Francisco, CA 94104
17
                                                 Scott R. Bickford
18                                               srb@mbfirm.com
                                                 **MARTZELL, BICKFORD & CENTOLA, APC**
19                                               338 Lafayette Street
                                                 New Orleans, LA 70130
20
                                                 Matthew Browne
21                                               mbrowne@brownepelican.com
                                                 **BROWNE PELICAN, PLLC**
22                                               7007 Shook Avenue
                                                 Dallas, TX 75214
23
                                                 Jayne Conroy
24                                               jconroy@simmonsfirm.com
                                                 Justin Presnal
25                                               jpresnal@simmonsfirm.com
                                                 **SIMMONS HANLY CONROY, LLC**
26                                               112 Madison Avenue, 7th Floor
                                                 New York, NY 10016
27

28

James Dugan
jdugan@dugan-lawfirm.com
TerriAnne Benedetto
tbenedetto@dugan-lawfirm.com
**THE DUGAN LAW FIRM, LLC**
365 Canal Street, Ste 1000
New Orleans, LA 70130

Cyrus Mehri
cmehri@findjustice.com
**MEHRI & SKALET, PLLC**
1250 Connecticut Avenue NW
Washington, D.C. 20036

Lloyd B. Miller
lloyd@sonosky.net
**SONOSKY, CHAMBERS, SACHSE, MILLER &**
**MONKMAN, LLP**
725 East Fireweed Lane
Anchorage, AK 99503

Joe Rice
jrice@motleyrice.com
**MOTLEY RICE, LLC**
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

Emily Roark
emily.roark@bryantpsc.com
**BRYANT LAW CENTER, PSC**
601 Washington Street, P.O. Box 1876
Paducah, KY 42002-1876

*Plaintiffs' Steering Committee*

Rebecca L. Solomon
rsolomon@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101

*On the Brief*

## APPENDIX A

| Case No. | Case Caption | Subject State |
|---|---|---|
| 3:21-cv-04483-CRB | Kenaitze Indian Tribe et al v. McKinsey & Company, Inc. | Alaska |
| 3:21-cv-04966-CRB | Southcentral Foundation v. McKinsey & Company, Inc. | Alaska |
| 3:21-cv-04968-CRB | Alaska Native Tribal Health Consortium et al v. McKinsey & Company, Inc. | Alaska |
| 3:21-cv-04973-CRB | The Navajo Nation v. McKinsey & Company, Inc. | Arizona New Mexico Utah |
| 3:21-cv-08860-CRB | Gila River Indian Community et al v. McKinsey & Company Inc. | Arizona |
| 3:21-cv-07021-CRB | Hudak v. McKinsey & Company, Inc. | Colorado |
| 3:21-cv-05402-CRB | City of Madison, Indiana v. McKinsey & Company, Inc. et al | Indiana |
| 3:21-cv-05403-CRB | City of Austin, Indiana v. McKinsey & Company, Inc. et al | Indiana |
| 3:21-cv-05344-CRB | Orange County, Indiana v. McKinsey & Company, Inc. et al. | Indiana |
| 3:21-cv-06237-CRB | Scott County, Indiana v. McKinsey & Company, Inc. et al | Indiana |
| 3:21-cv-04536-CRB | Green County Fiscal Court et al v. McKinsey & Company, Inc. United States et al | Kentucky |
| 3:21-cv-04955-CRB | The Board of Education of Jefferson County, Kentucky v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04956-CRB | The City of Columbia et al v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04957-CRB | The Fiscal Court of Breathitt County Kentucky et al v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-04959-CRB | The Fiscal Court of Calloway County Kentucky et al v. McKinsey & Company, Inc. United States | Kentucky |
| 3:21-cv-09108-CRB | Floyd County, KY v. McKinsey & Company, Inc. | Kentucky |
| 3:21-cv-09424-CRB | Pike County, KY v. McKinsey & Company, Inc. | Kentucky |
| 3:21-cv-09297-CRB | Knott County, KY v. McKinsey & Company, Inc. | Kentucky |
| 3:21-cv-09480-CRB | Fiscal Court of Anderson County et al v. McKinsey and Company, Inc. | Kentucky |
| 3:21-cv-09923-CRB | The Fiscal Court of Adair County et al v. McKinsey and Company, Inc. | Kentucky |
| 3:21-cv-04962-CRB | Parish of Livingston v. McKinsey & Company, Inc. et al | Louisiana |
| 3:21-cv-09099-CRB | City of Baton Rouge, Parish of East Baton Rouge v. McKinsey & Company, Inc. | Louisiana |
| 3:21-cv-09100-CRB | St Martinville et al v. McKinsey & Co Inc. | Louisiana |
| 3:21-cv-09105-CRB | St. John the Baptist Parish v. McKinsey & Company, Inc. | Louisiana |

| Case No. | Case Caption | Subject State |
|---|---|---|
| 3:21-cv-09920-CRB | Allegany County, Maryland et al v. McKinsey and Company, Inc. | Maryland |
| 3:21-cv-08867-CRB | Mississippi Band of Choctaw Indians v. McKinsey & Company Inc. | Mississippi |
| 3:21-cv-09831-CRB | Amite County, Mississippi et al v. McKinsey and Company, Inc. | Mississippi |
| 3:21-cv-09917-CRB | Benton County, Mississippi et al v. McKinsey and Company, Inc. | Mississippi |
| 3:21-cv-08633-CRB | Confederated Salish and Kootenai Tribes of the Flathead Reservation et al v. McKinsey & Company Inc. | Montana |
| 3:21-cv-08859-CRB | Zuni Tribe of the Zuni Reservation v. McKinsey & Company Inc. | New Mexico |
| 3:21-cv-09481-CRB | The County of Grant v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09483-CRB | The County of Rio Arriba v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09484-CRB | The County of Roosevelt v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09485-CRB | The County of Sandoval v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09637-CRB | The County of Mora County v. McKinsey & Company, Inc. | New Mexico |
| 3:21-cv-09838-CRB | Board of County Commissioners of the County of Bernalillo, New Mexico et al v. McKinsey and Company, Inc. | New Mexico |
| 3:21-cv-04382-CRB | Board of County Commissioners of Kay County et al v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-04383-CRB | Citizen Pottawatomie Nation v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-04388-CRB | Shawnee City of et al v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-08061-CRB | Cherokee Nation v. McKinsey and Company, Inc. | Oklahoma |
| 3:21-cv-08637-CRB | The Muscogee (Creek) Nation v. McKinsey & Company Inc. | Oklahoma |
| 3:21-cv-08865-CRB | Confederated Tribes of the Grand Ronde Community of Oregon v. McKinsey & Company Inc. | Oregon |
| 3:21-cv-04969-CRB | Blount County, Tennessee et al v. McKinsey & Company, Inc. et al | Tennessee |
| 3:21-cv-05292-CRB | City of Chesapeake, Virginia v. McKinsey & Company, Inc. | Virginia |
| 3:21-cv-05294-CRB | County Board of Arlington County, Virginia et al v. McKinsey & Company, Inc. | Virginia |
| 3:21-cv-09921-CRB | Virginia Beach, Virginia et al v. McKinsey and Company, Inc. | Virginia |
| 3:21-cv-04489-CRB | Swinomish Indian Tribal Community v. McKinsey & Company, Inc. | Washington |
| 3:21-cv-04512-CRB | King County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-04513-CRB | Skagit County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-04965-CRB | Port Gamble S'Klallam Tribe et al v. McKinsey & Company, Inc. | Washington |

| Case No. | Case Caption | Subject State |
|---|---|---|
| 3:21-cv-07648-CRB | Lewis County v. McKinsey & Company Inc. | Washington |
| 3:21-cv-08629-CRB | City of Kent v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-08630-CRB | Island County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-08870-CRB | Puyallup Tribe of Indians et al v. McKinsey & Company Inc. | Washington |
| 3:21-cv-09837-CRB | Kitsap County v. McKinsey & Company Inc. United States et al | Washington |
| 3:21-cv-04385-CRB | The County Commission of Mingo County et al v. McKinsey & Company, Inc. | West Virginia |
| 3:21-cv-04970-CRB | The Board of Education of Mason County, West Virginia et al v. McKinsey & Company, Inc., United States | West Virginia |
| 3:21-cv-06430-CRB | Woolwine v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07026-CRB | Blankenship v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07028-CRB | Daniels v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-07030-CRB | Lambert et al v. McKinsey and Company, Inc. et al | West Virginia |
| 3:21-cv-09922-CRB | City of Kenosha Wisconsin et al v. McKinsey and Company Inc. | Wisconsin |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that, on February 14, 2022, service of this document was accomplished

3  pursuant to the Court's electronic filing procedures by filing this document through the ECF

4  system.

5                                                              */s/ Elizabeth J. Cabraser*
                                                              Elizabeth J. Cabraser
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
                                                                FIRST AMENDED COMPLAINT