[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates to:<br><br>ALL SCHOOL DISTRICT ACTIONS | Case No. 21-md-02996-CRB (SK)<br><br>**SCHOOL DISTRICT PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON THE GROUNDS OF RES JUDICATA AND RELEASE**<br><br>**JUDGE: Hon. Charles R. Breyer**<br>**DATE:    March 31, 2022**<br>**TIME:**<br>**CTRM.: 6** |

For Public Schools, the pain of the opioid crisis is persistent and acute. As the School Districts' Master Complaint (ECF 297) describes, a child is diagnosed in this country with neonatal opioid withdrawal symptoms every 15-20 minutes. At the age of four or five, these children enter school, and with numbers still rising, there are now hundreds of thousands of opioid-exposed children in America's public schools. Because of prenatal opioid exposure, they disproportionately need and receive special education services, often from pre-kindergarten through high school—and so do other children from opioid-involved homes. These services and supports are expensive, roughly doubling the cost of a K-12 education. ECF 297 ¶¶ 21-25, 545, 690 & nn. 15–22. Even if the opioid crisis ended today, Public Schools would still have to meet their obligations to opioid-affected children for another twenty years.

By "turbocharging" opioid sales, McKinsey has disrupted classrooms across the country and saddled Public Schools with high unfunded costs. *See generally* Claudia Rowe, *The Opioid Crisis Comes to the Classroom as Soaring Numbers of Children Born in Drug Withdrawal Reach School Age*, The Seattle Times (May 24, 2019), https://www.seattletimes.com/education-lab/the-littlest-children-of-opioid-addicts-are-throwing-schools-into-unprecedented-turmoil-heres-what-new-hampshire-is-doing-about-it/.

Public Schools' claims do not duplicate state AGs' claims. Public Schools' losses are direct, for *their* expenditures, what they pay with tax dollars, which *they* raise through local (not state) taxes, for services they—and only they—provide. These direct losses include school districts' increased costs, because of the opioid crisis, for:

- o Identifying, locating, and evaluating "all" children who might need special education and related services (the "child find" mandate), 20 U.S.C. § 1412(a)(3)(A);

SCHOOL DISTRICTS' OPP. TO MOT. TO DISMISS
(RES JUDICATA AND RELEASE)
21-md-02996-CRB (SK)

- ○ Developing, reviewing, and revising individualized education programs (IEPs) for each "child with a disability," which includes children with developmental delays, emotional disturbances, and intellectual disabilities or specific learning disabilities associated with prenatal exposure to opioids, 20 U.S.C. §§ 1401(3), 1412(a)(4);[1]

- ○ Providing trauma-informed, in-school services to address the social and emotional needs of children from homes with opioid-involved parents, guardians, or siblings;[2]

- ○ Training teachers and staff;

- ○ Purchasing materials, supplies, and technological supports for special needs Programs; and

- ○ Covering personnel costs for special education teachers and administrators and related services providers (psychologists, counselors, and social workers).[3]

The AGs settled *parens patriae* claims for harms to the health and well-being of their states' residents. Public Schools, by contrast, are bringing proprietary claims to recover their own losses, not for harms to their residents. The direct losses alleged by school districts (and by subdivisions) are "different in kind and degree from the harm suffered by the public at large." *In re Opioid Litigation*, Index No 400000/2017, at 5 (Sup. Ct. Suffolk Cnty., June 21, 2019)

---

[1] *See generally* Laura J. Sherman, *et al.*, *Mental Disorders Among Children Born with Neonatal Abstinence Syndrome*, Psychiatric Services 70:2 (February 2019), https://ps.psychiatryonline.org/doi/10.1176/appi.ps.201800341?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%20%200pubmed#.

[2] *See generally* Erin L. Winstanley and Amanda N. Stover, *The Impact of the Opioid Epidemic on Children and Adolescents,* Clinical Therapeutics vol. 41,9 (2019): 1655-1662, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7017799/.

[3] *See generally* Jay G. Chambers *et al.*, *Special Education Expenditure Project: Characteristics of High-Expenditure Students with Disabilities, 1999-2000*, Center for Special Education Finance, Report 8, May 2004, https://files.eric.ed.gov/fulltext/ED522071.pdf.

SCHOOL DISTRICTS' OPP. TO MOT. TO DISMISS
(RES JUDICATA AND RELEASE)
21-md-02996-CRB (SK)

1
2
(Exhibit A) (denying pharmacy defendants' motions to dismiss). Public Schools' claims cannot be released by the state.[4]

3
4
5
6
7
8
9
10
11
12
13
A finding of preclusion here would be extraordinary. The prevailing rule against nonparty exclusion has only a narrow "privity" exception. *Headwaters, Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1050 (9th Cir. 2005). McKinsey offers no evidence that any AG consulted any school district, much less tried to identify or quantify Public Schools' losses, before settling. And the AGs and Public Schools, as supposed "privies," are in fact in conflict—including over who has a cause of action, who should receive what share of a judgment or settlement, and who should decide (all in a consent-judgment setting with no Rule 23-like protections).[5] At a bare minimum, the question of adequacy of representation here is factual and disputed, preventing its resolution on a motion to dismiss.

14
15
16
At bottom, McKinsey's motion is misguidedly based on a thinly described and highly stylized model of absolute state hegemony and supremacy, on the one hand, and faulty

17
18
19
20
21
22
23
24
[4] *See generally City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758 (9th Cir. 2003) (refusing to bar city claims based on an earlier settlement between the defendant and the state because the city's "private property interests" could not be released by the state); *City of New York v. Beretta U.S.A Corp.*, 315 F. Supp. 2d 256, 266 (E.D.N.Y. 2004) (refusing to bar New York City's claims based on an earlier *parens patriae* suit by New York State); ECF 345-2 (Report of Plaintiffs' Expert Prof. Richard Briffault). *See also In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d 665, 675-76 (N.D. Ohio 2020) (denying opioid manufacturers' motion to dismiss and rejecting their argument that only the Michigan AG, and not Michigan counties, could sue for damages stemming from the opioid crisis).

25
26
[5] States' and schools' "common interest in maximizing" what McKinsey pays "is wholly insufficient to vitiate the very real, substantial" other conflicts between them. *Walker v. Liggett Grp.*, 175 F.R.D. 226, 233 n.12 (S.D. W. Va. 1997).

27
28

suppositions about the abject subordination of school districts (and subdivisions) on the other.[6]

School districts have consistently enjoyed and been judicially accorded much more autonomy

than McKinsey's model makes room for. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274, 280 (1977) (under Ohio law, the "State" does not include school districts); ,

*Lawrence Cnty. v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256 (1985) (states cannot commandeer

federal funds granted to localities). Indeed, the U.S. Supreme Court has underscored that "No

single tradition in public education is more deeply rooted" in this country "than local control"

over education. *Milliken v. Bradley*, 418 U.S. 717, 741 (1974); *see also Bd. of Educ. v. Walter*,

58 Ohio St. 2d 368, 377 (1979) ("The history of public education in Ohio is essentially a history

of local," not centralized, "control over education"). Even critics of local control of schools

concede that it is an "inexorable component of the legal architecture of governance in America."

N. Shoked, *An American Oddity: The Law, History, And Toll of the School District*, 111 Nw.

U.L. Rev. 945, 950 (2017).[7] McKinsey's motion ignores the American tradition of local school

independence. It ignores school districts' established and autonomous role in nuisance and

products liability litigation. *In re Juul Labs, Inc.*, 497 F. Supp.3d 552 (N.D. Cal. 2020); *Jefferson*

*Cnty. Sch. Dist. v. Lead Indus. Ass'n*, 223 F. Supp.2d 771 (D. Miss. 2002); *In re School Asbestos*

---

[6] By wrongly miscasting subdivisions and school districts as mere instrumentalities of state government, with no independence, McKinsey's motion effectively relegates them to a position below all private corporations, organizations, associations, labors unions, and other non-governmental entities.

[7] To be sure, many aspects of government (policing, housing, public transportation, and also education) have become "intergovernmental"— blending local, state, and federal participation. But (current pandemic excepted) Public Schools' autonomy has been much less threatened by state interference than by *federal* encroachment—which has shifted some power away from both states and Public Schools. *See, e.g.*, the No Child Left Behind Act of 2002, 20 U.S.C. § 6301, and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*.

SCHOOL DISTRICTS' OPP. TO MOT. TO DISMISS
(RES JUDICATA AND RELEASE)
21-md-02996-CRB (SK)

*Litig.*, 789 F.2d 996 (3rd Cir. 1986). And McKinsey cites no case, from any state, supporting (much less requiring) preclusion of Public Schools' claims.[8]

McKinsey's motion also ignores the conspicuous hole in its consent judgments. McKinsey and the AGs negotiated those judgments against the backdrop of an unprecedented number of claims by subdivisions and school districts against other opioid defendants in MDL 2804 in Cleveland. And against that backdrop, if McKinsey and the AGs had agreed about trying to preclude school and subdivision filings, their consent judgments would have included six more words, trying to extinguish claims both by "a Settling State *and its subdivisions and school districts.*" The tobacco Master Settlement Agreement, the Opioid Distributor agreements, and the consent judgments with Juul Labs all have that kind of language, explicitly purporting to release subdivision claims if possible (without resolving whether it is possible). But not McKinsey.

Last, the amici's suggestion that unless AGs can release school and subdivision claims, settlements will become impossible or at least infeasible is substantially backward. One of the virtues of MDLs has been their success in facilitating global settlements, and that success has followed from the fact that MDL's essence—and its power—is centralization. The AGs' model of state-based litigation, by contrast, is inherently decentralized, which has real costs. Having fifty AG lawsuits in as many jurisdictions creates inefficiencies; allows states to impose

---

[8] McKinsey suggests *Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.3d 484, 493-97 (4th Cir. 1981), as the template for a ruling here. Leaving aside *Nash's* basis exclusively in North Carolina law, it is a one of a kind case. The state Attorney General in *Nash* brought an antitrust suit, explicitly declaring himself the legal representative of all public schools in the state, entitled to sue on behalf of "each public school system in this state," which state law authorized him to do. *Id*. at 494. And the state's and school districts' claims were identical. None of those facts are present here.

SCHOOL DISTRICTS' OPP. TO MOT. TO DISMISS
(RES JUDICATA AND RELEASE)
21-md-02996-CRB (SK)

externalities on each other; encourages races to the courthouse; risks inequities between larger and smaller states; and complicates coordination and global settlement.

With these additions, School District Plaintiffs join the arguments that the subdivisions have made in their more comprehensive brief opposing McKinsey's motion to dismiss on grounds of res judicata and release (ECF No. 345).

## Conclusion

McKinsey's motion to dismiss based on res judicata and release should be denied.

Dated: February 14, 2022

Respectfully submitted,

By: /s/ Cyrus Mehri
Cyrus Mehri
cmehri@findjustice.com
**MEHRI & SKALET PLLC**
2000 K Street NW, Suite 325
Washington, DC 20006
Telephone: (202) 822-5100

*Plaintiffs' Steering Committee Member –
Independent School Districts*

**Filing Authorized by Plaintiffs' Lead Counsel
Pursuant to PTO 2:**

By: /s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser
ecabraser@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

SCHOOL DISTRICTS' OPP. TO MOT. TO DISMISS
(RES JUDICATA AND RELEASE)
21-md-02996-CRB (SK)