```
 1  James L. Bernard (Admitted Pro Hac Vice)
    (jbernard@stroock.com)
 2  David M. Cheifetz (Admitted Pro Hac Vice)
    (dcheifetz@stroock.com)
 3  Daniel J. Yost (Admitted Pro Hac Vice)
    (dyost@stroock.com)
 4  STROOCK & STROOCK & LAVAN LLP
    180 Maiden Lane
 5  New York, NY 10038
    Telephone:  (212) 806-5400
 6
 7  Josh A. Cohen (CA SBN 217853)
    (jcohen@clarencedyer.com)
 8  Shaneeda Jaffer (CA SBN 253449)
    (sjaffer@clarencedyer.com)
 9  CLARENCE DYER & COHEN LLP
    899 Ellis Street
10  San Francisco, CA 94109
    Telephone:  (415) 749-1800
11
12
    *Attorneys for Defendants McKinsey & Company, Inc., McKinsey & Company, Inc. United*
13  *States, McKinsey & Company, Inc. Washington D.C. and McKinsey Holdings, Inc.*
14
    [Additional counsel listed on signature page]
15
                       UNITED STATES DISTRICT COURT
16                    NORTHERN DISTRICT OF CALIFORNIA
17
```

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This document relates to:<br><br>Master Complaint (School Districts) Individual School District Cases Listed in Appendix L | Case No. 3:21-md-2996-CRB (SK)<br><br>**MCKINSEY DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SCHOOL DISTRICT COMPLAINTS ON THE GROUNDS OF *RES JUDICATA* AND RELEASE**<br><br>Date:       March 31, 2022<br>Time:      10:00 a.m.<br>Courtroom: Courtroom 6, 17th Floor<br>Judge:     Hon. Charles R. Breyer |

McKinsey submits this reply memorandum of law in further support of its motion to dismiss on the grounds of *res judicata* and release (the "Motion") (ECF No. 310) and in response to the School District Plaintiffs' opposition (ECF No. 349). McKinsey's reply to the Political Subdivision Plaintiffs' opposition is equally applicable to the School District Plaintiffs' opposition and is adopted in full. McKinsey writes separately only to respond to the School District Plaintiffs' supposedly additional arguments.

Specifically, this reply addresses the School District Plaintiffs' arguments that (1) their claims are different from the States' because "[t]he AGs settled *parens patriae* claims for harms to the health and well-being of their states' residents" whereas "Public Schools . . . are bringing proprietary claims to recover their own losses," (ECF No. 349 at 2); and (2) they somehow lack privity with the States because "[s]chool districts have consistently enjoyed and been judicially accorded much more autonomy than McKinsey's model makes room for," (*Id.* at 5). These arguments do not alter the straightforward application of *res judicata* and release set out in the Motion. They should be rejected and the Motion should be granted.

### I. The School District Plaintiffs Allege Public Claims Based On Governmental Functions, Not Their Own Proprietary Claims

Although the School District Plaintiffs state that they are bringing proprietary claims for their own "direct losses," their position is refuted by the public nature of the losses they have identified, namely "increased costs" for (a) complying with conditions imposed ***on States*** by federal law[1]; (b) providing "in-school services to address the social and emotional needs of

---

[1] The School District Plaintiffs rely on two substantive provisions from the Individuals with Disabilities Act. (*See* ECF No. 349 at 1-2 (citing 20 U.S.C. §§ 1412(a)(3)(A), (a)(4)).) Those provisions impose obligations on States, not subdivisions or school districts. In relevant part, the Act provides: "***A State*** is eligible for assistance under this subchapter for a fiscal year ***if the State*** submits a plan that provides assurances to the Secretary of State that ***the State*** has in effect policies and procedures to ensure that ***the State*** meets" the conditions set forth in subdivisions (3)(A) and (4). 20 U.S.C. § 1412(a) (emphasis added). The Act defines "State" to "mean[] each of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and each of the outlying areas." *Id.* § 1401(31).

1

children"; (c) "[t]raining teachers and staff"; (d) "[p]urchasing materials, supplies, and technological supports for special needs Programs"; and (e) "[c]overing personnel costs for special education teachers and administrators and related services providers." (ECF No. 349 at 1-2.) These claims all relate to the provision of educational services, a quintessential function of government performed by the School District Plaintiffs in their governmental capacity on behalf of the States. They are not proprietary claims distinct from the public claims the States already litigated.

Tellingly, the School District Plaintiffs do not cite a single controlling case or provision of law to support their contention that their alleged direct losses relate to their own proprietary claims. The reason for that is simple. The law in each of the relevant States – Kentucky, New York, Ohio and Florida – is clear that these losses are all public losses that stem from the performance of governmental functions. In Kentucky, "public schools are the responsibility of the state," and "a board of education is an agency of state government" that "perform[s] a governmental function." *Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky. 2001). Under Kentucky law, school boards perform governmental, not proprietary, functions when they are engaged in "activities in direct furtherance of education." *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). Examples of such activities include authorizing athletics, providing dormitory housing to students, and even providing housing to staff – e.g., activities that are performed, "not to raise revenue or to participate in the local . . . market, but to further [a school's] educational mission." *Id.* at 887-88.

The same is true in New York. There, the State is responsible for education and "boards of education and school districts are merely agents of the State for securing the appropriate free education and the raising of funds to provide for that education." *Jeter v. Ellenville Cent. Sch.*

2

*Dist.*, 377 N.Y.Sd 685, 693 (N.Y. App. Div. 1975).  Thus, "[e]ducation is a matter of **State interest and concern**."  *Id.* (emphasis added).  And when school boards and districts "provid[e] students with resources to further their education," they are performing a "governmental function."  *RK Sols., LLC v. George Westinghouse Info. Tech. High Sch.*, 982 N.Y.S.2d 765 (N.Y. App. Div. 2014); *see also Rubino v. City of New York*, 498 N.Y.S.2d 831, 837 (N.Y. App. Div. 1986) (stating that New York law "make[s] it abundantly clear that the operation of the common schools of the City of New York is a governmental function").

Similarly, under Ohio law, "[t]he provision of a system of public education" is a "governmental function," not a proprietary function.  Ohio Rev. Code § 2744.01(C)(2); *see also Hubbard v. Canton City Sch. Bd. of Educ.*, 780 N.E.2d 543, 546 (Ohio 2002).  Courts interpret this statute broadly, extending it to all activities that are "so fundamental to the provision of a system of public education that [they] cannot be considered apart from the governmental function of providing a system of public education."  *Schmitt v. Educ. Serv. Ctr. of Cuyahoga Cnty.*, 970 N.E.2d 1187, 1192-93 (Ohio Ct. App. 2012) (internal quotation marks omitted); *see also Senu-Oke v. Bd. of Educ. of Dayton City Sch. Dist.*, No. 20967, 2005 WL 2403910, at *2 (Ohio Ct. App. Sept. 30, 2005) ("The hiring of special education teachers and administrators for a public school district is clearly a governmental function.").[2]

Likewise, in Florida, "[t]he district school system shall be considered as a part of the state system of public education."  Fla. Stat. Ann. § 1001.32(1).  And county school boards "are engaged in a purely governmental function."  *Bragg v. Bd. of Pub. Instruction of Duval Cnty.*,

---

[2] The School District Plaintiffs' reliance on *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), as support for the proposition that, "under Ohio law, the 'State' does not include school districts," (ECF No. 349 at 4), is of no moment.  McKinsey does not contend that Ohio school districts *are* "the State."  They are subdivisions of the State carrying out the governmental function of providing education to residents.  *See Avon Lake City Sch. Dist. v. Limbach*, 518 N.E.2d 1190, 1193 (Ohio 1988) ("[A] school district is a political subdivision created by the General Assembly."); *see also* Ohio Rev. Code § 2743.01(B).

3

36 So. 2d 222, 222 (Fla. 1948).  Accordingly, they are treated as "a state agency for the purpose of immunity from suit," *Bd. of Pub. Instruction of Broward Cnty. v. State ex rel. Allen*, 219 So. 2d 430, 432 (Fla. 1969), and they hold their property "for the use of the state, to carry on the state's constitutional system of public schools," *Blake v. City of Tampa*, 156 So. 97, 100 (Fla. 1934).

In sum, the School District Plaintiffs' so-called "direct losses" are anything but.  They all relate to the provision of educational services, a function the School District Plaintiffs perform for the benefit of the public and on behalf of the States.  These are not the School District Plaintiffs' own unique, proprietary interests that are distinct from the interests the States already represented.[3]

## II.    The School District Plaintiffs' Claimed Autonomy Does Not Demonstrate a Lack of Privity

According to the School District Plaintiffs, they have "consistently enjoyed and been judicially accorded much more autonomy than McKinsey's model makes room for."  (ECF No. 349 at 4.)  From that starting point, they then make the unsupported leap that their historical "autonomy" prevents a determination of privity with States on a motion to dismiss.  The School District Plaintiffs are wrong.  None of the cases they cite involve *res judicata* nor do they shed any light on the relevant privity inquiry, an inquiry addressed more fully in the Motion and McKinsey's reply in response to the Political Subdivision Plaintiffs' opposition.

---

[3] The School District Plaintiffs' reliance on an unpublished decision from the New York Supreme Court in Suffolk County, (*see* ECF No. 349 at 2), does not alter this analysis.  In addition to being non-binding, the cited case involved the unrelated question of whether the school districts there alleged an "injury in fact" for purposes of standing.  *In re Opioid Litig.*, Index No. 400000/2017, at 5 (N.Y. Sup. Ct. June 21, 2019).  The court did not address whether the school districts' alleged harm related to a governmental function nor did it address whether the alleged harm was distinct from interests already represented by state attorneys general.

Instead, the School District Plaintiffs rely on cases primarily dealing with the federal government's role in, or oversight of, local educational services. Thus, in *Lawrence County v. Lead-Deadwood School District*, the Supreme Court held that a State could not "regulate the distribution of funds" school districts received "from the Federal Government" because an applicable federal statute gave the school districts "more discretion in spending federal aid than the State would allow them." 469 U.S. 256, 257-58 (1985). The Court based its decision on the plain text of the federal statute and garden-variety application of the Supremacy Clause, not on any autonomy the school board supposedly enjoyed from the State. And in *Milliken v. Bradley*, the Supreme Court addressed the scope of a multidistrict desegregation plan imposed in Michigan by a federal court. *See* 418 U.S. 717 (1974). The Court's comment about the "deeply rooted" tradition of "local control over the operation of schools," *id.* at 741-42, had nothing to do with **the State's** authority over school districts nor did it address whether the State adequately represents the interests of its own school districts and boards when it settles common claims of state-wide concern. The same is true of *Board of Education of City School District of Cincinnati v. Walter*. In that case, the Ohio Supreme Court considered a challenge to state statutes dealing with allocating aid among school districts. *See* 390 N.E.2d 813, 816 (1979). It did not address any issue relevant to privity.

McKinsey does not dispute that the School District Plaintiffs exercise some level of autonomy in the discharge of their governmental duties. But that broad statement does not mean they lack privity with the State for purposes of *res judicata*. The School District Plaintiffs are seeking to represent the same public interests already litigated by the States. That is all privity requires. (*See* Mot., ECF No. 310 at 24-25 & Appendix C.)

5

### III. CONCLUSION

For all of the foregoing reasons, and the reasons set forth in the Motion and McKinsey's reply in response to the Political Subdivision Plaintiffs' opposition, McKinsey respectfully requests that the Court dismiss in their entirety the claims of the School District Plaintiffs in Kentucky, New York, Ohio and Florida.

Dated: New York, New York
March 21, 2022

**STROOCK & STROOCK & LAVAN LLP**

By: /s/ *David M. Cheifetz*
James L. Bernard (Admitted *Pro Hac Vice*)
(jbernard@stroock.com)
David M. Cheifetz (Admitted *Pro Hac Vice*)
(dcheifetz@stroock.com)
Daniel J. Yost (Admitted *Pro Hac Vice*)
(dyost@stroock.com)
180 Maiden Lane
New York, NY 10038
Phone: (212) 806-5400

**HINSHAW & CULBERTSON LLP**

Vaishali S. Rao
(vrao@hinshawlaw.com)
Sarah E. King
(sking@hinshawlaw.com)
151 North Franklin Street
Chicago, IL 60606
Phone: (312) 704-3000

**MORRISON & FOERSTER LLP**

Jessica Kaufman (Admitted *Pro Hac Vice*)
(jkaufman@mofo.com)
Mark David McPherson (CA SBN 307951)
(mmcpherson@mofo.com)
250 West 55th Street
New York, NY 10019
Phone: (212) 468-8000

**CLARENCE DYER & COHEN LLP**

Josh A. Cohen (CA SBN 217853)
(jcohen@clarencedyer.com)
Shaneeda Jaffer (CA SBN 253449)
(sjaffer@clarencedyer.com)
899 Ellis Street
San Francisco, CA 94109
Phone: (415) 749-1800

*Attorneys for Defendants McKinsey & Company, Inc., McKinsey & Company, Inc. United States, McKinsey & Company, Inc. Washington D.C., and McKinsey Holdings, Inc.*