MARK DAVID MCPHERSON (CA SBN 307951)
mmcpherson@mofo.com
CAITLIN SINCLAIRE BLYTHE (CA SBN 265024)
CBlythe@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000

JESSICA KAUFMAN (ADMITTED *PRO HAC VICE*)
jkaufman@mofo.com
MORRISON & FOERSTER LLP
250 55th Street
New York, NY 10019
Telephone: 212.468.8000

Attorneys for Defendants
McKINSEY & COMPANY, INC.
McKINSEY & COMPANY, INC. UNITED STATES
McKINSEY & COMPANY, INC. WASHINGTON D.C.
McKINSEY HOLDINGS, INC.

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates to:<br><br>Cases Listed in Appendix A | Case No. 3:21-md-02996-CRB (SK)<br><br>**McKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:        March 31, 2022<br>Time:        10:00 a.m.<br>Courtroom:   Courtroom 6, 17th Floor<br>Judge:       Hon. Charles R. Breyer |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ ii

I.     INTRODUCTION ............................................................................................ 1

II.    ARGUMENT ..................................................................................................... 3

    A.   Plaintiffs Concede that McKinsey Is Not Subject to General Jurisdiction in the Subject States. .......................................................................................... 3

    B.   McKinsey Is Not Subject to Specific Jurisdiction in the Subject States. ................ 3

        1.   McKinsey Did Not Expressly Aim Any "Campaign Promoting the Use and Sale of Opioids" at the Subject States. ........................................ 4

        2.   Allegations that McKinsey Helped "Implement" Its Advice Do Not Establish that McKinsey Expressly Aimed Any Conduct at the Subject States. ......................................................................................... 8

        3.   McKinsey Did Not Target the Subject States in Any Other Manner. ........ 11

        4.   Plaintiffs' Claims Do Not Arise from or Relate to McKinsey's Activities in the Subject States. ................................................................ 12

    C.   Plaintiffs' Conclusory Allegations of a Conspiracy Cannot Satisfy Their Burden of Establishing Jurisdiction Over McKinsey. ........................................... 14

    D.   The Exercise of Jurisdiction over McKinsey Would Be Unreasonable. ................ 16

    E.   Jurisdictional Discovery Is Not Warranted. ......................................................... 17

    F.   The Court Should Not Defer Ruling on Personal Jurisdiction. .............................. 19

III.   CONCLUSION ................................................................................................ 20

i

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
5
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ..................................................................13

6

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987) ........................................................................... 7fn. 5
7

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
8
    874 F.3d 1064 (9th Cir. 2017) ..............................................................5

9

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
10
    11 F.4th 972 (9th Cir. 2021) ...................................................5, 6, 13

11

*B. Bullen v. CohnReznick, LLP*,
    No. 1884-cv-03802-BLS2, 2019 WL 3331280 (Mass. Super. Ct. June 17,
12
    2019) ...................................................................................8

13

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .............................................................18
14

15

*Brown v. 140 NM LLC*,
    No. 17-CV-05782-JSW, 2019 WL 118425 (N.D. Cal. Jan. 7, 2019) ......................14

16

*Calder v. Jones*,
17
    465 U.S. 783 (1984) ....................................................................6, 7

18

*Chirila v. Conforte*,
19
    47 F. App'x 838 (9th Cir. 2002) .....................................................14, 15

20

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
    77 F. Supp. 3d 887 (N.D. Cal. 2014) ......................................................15

21

*Cisco Systems, Inc. v. Dexon Computer, Inc.*,
22
    541 F. Supp. 3d 1009 (N.D. Cal. 2021) ............................................... 6fn. 3

23

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ..............................................................16
24

25

*Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*,
    89 Mass. App. Ct. 718 (2016) ............................................................8

26

*Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*,
27
    No. C12–2082JLR, 2013 WL 566949 (W.D. Wash. Feb. 13, 2013) ......................15

28

ii

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ............................................................................... 13, 13fn. 8

*Gutierrez v. Givens*,
   1 F. Supp. 2d 1077 (S.D. Cal. 1998) ..................................................................14

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ......................................................................................... 6fn. 4

*In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ...........................................................5, 6, 20

*In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   533 F. Supp. 3d 858 (N.D. Cal. 2021) ...............................................................15

*Krypt, Inc. v. Ropaar LLC*,
   No. 19-cv- 03226-BLF, 2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ...................15, 16

*LaSala v. Marfin Popular Bank Pub. Co.*,
   410 F. App'x 474 (3d Cir. 2011).......................................................................14

*Lions Gate Entertainment Inc. v. TD Ameritrade Services Co., Inc.*,
   170 F. Supp. 3d 1249 (C.D. Cal. 2016).............................................................6, 7

*Livnat v. Palestinian Auth.*,
   82 F. Supp. 3d 19 (D.D.C. 2015), *aff'd*, 851 F.3d 45 (D.C. Cir. 2017) ...................19

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)............................................................................10

*Mee Indus., Inc. v. Adamson*,
   No. 218CV003314CASJCX, 2018 WL 6136813 (C.D. Cal. July 27, 2018)............15

*Mitan v. Feeney*,
   497 F. Supp. 2d 1113 (C.D. Cal. 2007)..............................................................18

*Nat'l Indus. Sand Ass'n v. Gibson*,
   897 S.W.2d 769 (Tex. 1995)..............................................................................14

*New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*,
   376 F. Supp. 3d 683 (E.D. Va. 2019).................................................................7

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...............................................................15

*Osborne v. Nat'l Truck Funding*,
   No. 2:12-cv-02510, 2013 WL 3892946 (E.D. Cal. July 26, 2013).........................10

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006)............................................................................18

iii

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015)...................................................................................12

*Pyle v. Hatley*,
    239 F. Supp. 2d 970 (C.D. Cal. 2002).......................................................................16

*Rickman v. BMW of N. Am. LLC*,
    538 F. Supp. 3d 429 (D.N.J. 2021) ...........................................................................14

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999).................................................................................................19

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)..............................................................................3, 16

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008)......................................................................................3

*Smith v. Jefferson Cty. Bd. of Educ.*,
    378 F. App'x 582 (7th Cir. 2010) ........................................................................14, 15

*Tadros v. Am. Coll. of Forensic Exam'rs Inst.*,
    No. 11-cv-2622, 2012 WL 1154448 (S.D. Cal. Apr. 5, 2012)..................................10

*Trierweiler v. Croxton & Trench Holding Corp.*,
    90 F.3d 1523 (10th Cir. 1996)....................................................................................8

*Verbick v. Movement Tech. Co.*,
    No. 20-CV-611 TWR (DEB), 2021 WL 5449251 (S.D. Cal. Nov. 19, 2021)..........13

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................................19

*Wescott v. Reisner*,
    No. 17-CV-06271-EMC, 2018 WL 2463614 (N.D. Cal. June 1, 2018) ...................14

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013).....................................................................................13

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) .......................................................................... 13fn. 7

## I.  INTRODUCTION

Plaintiffs' opposition to McKinsey's motion to dismiss for lack of personal jurisdiction in 19 states leaves only one narrow, legal question for resolution. As Plaintiffs concede that McKinsey is not subject to general jurisdiction in those states, the question is only whether McKinsey is subject to specific jurisdiction in states where it provided no advice concerning sales, marketing, manufacturing, or distribution of opioids, merely because Plaintiffs allege either that they were injured there, or that other third parties sold opioids in Plaintiffs' states?

McKinsey's motion establishes the answer is no. To suggest a different answer, Plaintiffs ask a different question: did McKinsey expressly target the Subject States with its supposed "national strategy to increase opioid sales intentionally in all fifty states"? (ECF 347 at 1.)

The answer to that question is also no. The premise of Plaintiffs' argument is that McKinsey designed a strategy that *its clients used* to increase opioid sales in every state, as the first sentence of their opposition concedes: "McKinsey engineered the aggressive marketing strategies *Purdue Pharma, Mallinckrodt, Endo Pharmaceuticals, and others used* to cause the opioid crisis . . . ." (*Id.* (emphasis added).)

Plaintiffs' premise confirms that Plaintiffs attempt to ground jurisdiction over McKinsey not in *McKinsey's* conduct, as the law requires, but in McKinsey's *clients'* conduct. Plaintiffs cannot allege that McKinsey manufactured opioids that were later sold in the Subject States. They cannot allege that McKinsey created advertisements for opioids that were distributed in the Subject States. They cannot allege that McKinsey made any representations to distributors or prescribers in the Subject States, much less any representations designed to increase opioid sales. They cannot allege that McKinsey did anything other than provide advice to its clients (Purdue Pharma, Mallinckrodt, and Endo Pharmaceuticals). And Plaintiffs' Complaints are filled with admissions that those clients were free to accept or reject McKinsey's advice, and to decide for themselves how to implement McKinsey's suggestions, if at all. (*See* ECF 296 ¶¶ 196, 262, 276, 358 (summarizing how McKinsey clients allegedly acted on its advice), ¶ 59 ("The strategy consultant provides a plan to the client that the client may choose to adopt or not.").)

1

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1       The law does not permit the Subject States to exercise specific jurisdiction over McKinsey

2  based on anyone's conduct but McKinsey's. Here, for all their effort, Plaintiffs cannot point to

3  any conduct by *McKinsey*—as opposed to its clients—expressly aimed at the Subject States.

4  Plaintiffs either lump McKinsey together with its clients to obfuscate whose conduct they are

5  trying to tie to the Subject States, or they try but fail to point to McKinsey's alleged conduct.

6  Either way, they never say what *McKinsey* did that was allegedly aimed at the Subject States.

7       The closest Plaintiffs come is their reference to three documents suggesting that

8  McKinsey consultants may have conducted "ride-alongs" with Purdue sales representatives in 3

9  of the 19 Subject States. Regardless of whether such ride-alongs actually occurred, they do not

10  establish that McKinsey directed its conduct at the Subject States. The documents show that

11  potential ride-alongs were meant to gather information from sales representatives, information

12  that McKinsey then used to provide analysis to its clients, much like a law firm might use a 50-

13  state survey to help inform its advice to clients.

14       Plaintiffs' failure to point to anything McKinsey did that was expressly aimed at the

15  Subject States resolves the personal jurisdiction issue, as the law (even in Plaintiffs' summary of

16  it) requires Plaintiffs to establish that McKinsey expressly aimed its own conduct at the Subject

17  States in order for McKinsey to be haled into court there.

18       There is no reason for the Court to put off deciding McKinsey's motion indefinitely, as

19  Plaintiffs request. First, Plaintiffs' plea for jurisdictional discovery would be unsupported in any

20  case and is especially so here. Plaintiffs had access to "[a]ll communications with" Purdue, Endo,

21  J&J, and Mallinckrodt, and "[a]ll documents reflecting or concerning McKinsey's work for"

22  Purdue, Endo, J&J, and Mallinckrodt—more than 115,000 documents totaling more than 353,000

23  pages—even *before* they filed their Master Complaints. Despite that unusual access, Plaintiffs ask

24  for yet more discovery and more time to review what they have, without even suggesting what

25  more they need, or how it would establish jurisdiction.

26       Second, Plaintiffs' argument that the motion is pointless because they could sue

27  McKinsey in McKinsey's home states finds no support in the law or even the "pragmatic"

28  approach they urge. That argument is available to any plaintiff who sues a defendant in an

improper forum. The law still calls for dismissal where, as here, the Subject States lack personal

jurisdiction over the defendant. The fact that this is an MDL Proceeding does not relieve

Plaintiffs' burden of establishing jurisdiction wherever they have sued McKinsey. Plaintiffs also

ignore the important consequences if the Court chooses not to resolve McKinsey's motion: the

Court would need to grapple with choice of law issues from 34 states (and counting), issues that

could be substantially simplified if the Court properly dismisses suits in the Subject States.

## II.    ARGUMENT

### A.    Plaintiffs Concede that McKinsey Is Not Subject to General Jurisdiction in the Subject States.

McKinsey established that it is not subject to general jurisdiction in any of the Subject

States, because the McKinsey entities are incorporated in either New York or Delaware and

maintain their principal places of business in New York. (ECF 313 at 13.) By failing to argue

otherwise in their opposition, Plaintiffs have waived the argument. *Shakur v. Schriro*, 514 F.3d

878, 892 (9th Cir. 2008) (litigants waive arguments they fail to raise in opposition to a motion).

### B.    McKinsey Is Not Subject to Specific Jurisdiction in the Subject States.

Plaintiffs' argument for specific jurisdiction over McKinsey in the Subject States confirms

that there is very little in dispute. Plaintiffs agree on the test for specific jurisdiction: they must

establish that McKinsey "purposefully direct[ed] . . . activities" to the Subject States, meaning

they must show that McKinsey "(1) committed an intentional act, (2) expressly aimed at the

forum state, (3) causing harm that [it] knows is likely to be suffered in the forum state." (ECF 347

at 8-9 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)).)

The parties agree with how that test must be applied. Plaintiffs agree that their injuries in

the Subject States alone cannot satisfy that test. (ECF 347 at 14, 18 ("Plaintiffs do not . . . claim

that the second prong [of the minimum contacts test] is met by virtue of Plaintiffs' mere presence

in the Subject States…"); *cf.* ECF 313 at 17.) Plaintiffs also acknowledge that mere foreseeability

of possible harm in the Subject States does not satisfy that test. (ECF 347 at 11 (acknowledging

that "'[S]omething more . . . that could be construed as being directed at the forum state'—rather

than mere possible effect—was required" to establish jurisdiction); *cf.* ECF 313 at 18-19.) And

3

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1   they agree that only McKinsey's contacts with the forum are relevant when determining specific

2   jurisdiction. (ECF 347 at 12 ("a defendant's relationship with a third party *standing alone* is an

3   insufficient basis for jurisdiction.") (emphasis in original); *cf.* ECF 313 at 17-18.)

4       There is even little disagreement over the conduct of McKinsey at issue. The only dispute

5   comes when, notwithstanding these settled principles, Plaintiffs try to paint McKinsey's conduct

6   as expressly aimed at the Subject States. To do so, Plaintiffs make two arguments: (a) "McKinsey

7   was the architect of nationwide campaigns promoting the use and sale of opioids"; and

8   (b) "McKinsey employed granular analysis for its clients, specifically targeting the Subject

9   States." (ECF 347 at 9.) Even assuming these conclusory allegations were true—McKinsey

10   rejects both—neither argument establishes personal jurisdiction over McKinsey in the Subject

11   States.

12           **1.   McKinsey Did Not Expressly Aim Any "Campaign Promoting the Use and Sale of Opioids" at the Subject States.**

14       In analyzing Plaintiffs' argument that McKinsey is subject to personal jurisdiction because

15   it "was the architect of nationwide campaigns promoting the use and sale of opioids" (ECF 347 at

16   9), the Court must first ascertain exactly what they are alleging McKinsey, as opposed to its

17   clients, did. Plaintiffs repeatedly allege McKinsey acted "in concert with" or "together" with its

18   clients in an effort to hold McKinsey responsible for its clients' conduct.[1]

19       There are two ways to read Plaintiffs' allegations here, and neither of them suffices to

20   establish jurisdiction over McKinsey. If Plaintiffs mean that *McKinsey* engaged in conduct

21   expressly aimed at the Subject States (as its clients did), then they need to identify that conduct

22   and show how it was so aimed. We explain below why Plaintiffs fail to do so. *See infra* at 8-12.

24       [1] *See, e.g.,* ECF 347 at 14 ("McKinsey is subject to jurisdiction in the Subject States because McKinsey, *acting in concert with its clients*, engaged in targeted marketing and sales

25   campaigns in the Subject States with the intent and purpose to increase the distribution of opioids in those states.") (emphasis added), 3 ("Together, McKinsey and Purdue devised broad national

26   plans to expand the overall market for prescription opioids in general and to increase sales for Purdue's opioids specifically."), 10 ("McKinsey, together with Purdue, Endo, Johnson &

27   Johnson, and others, increased the market for prescription opioids in all fifty states."), 14-15 "McKinsey *and its clients* specifically targeted the Subject States, where Plaintiffs happened to

28   reside.") (emphasis added).

4

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

If, on the other hand, Plaintiffs mean to impute manufacturers' conduct to McKinsey by lumping them together with McKinsey,[2] that is not sufficient. As Plaintiffs themselves acknowledge, McKinsey's relationship with manufacturers "*standing alone* is an insufficient basis for jurisdiction." (ECF 347 at 12 (emphasis in original).) Rather, "the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the 'defendant *himself*' creates with the forum State.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (emphasis added).

The cases Plaintiffs cite—*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021), and *In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020)—do not permit jurisdiction based on Plaintiffs' allegation that McKinsey was the "architect of nationwide campaigns" that other third-party manufacturers used to sell opioids. Both cases dealt with defendants who manufactured products, used nationwide marketing campaigns, and distributed their own products throughout the United States. Neither involved a consultant collecting data and providing advice to a client.

In *Ayla*, for example, the defendant's conduct was materially different from any conduct alleged here. In that trademark infringement case, an Australian manufacturer specifically targeted the United States with marketing materials directed to U.S. consumers and had control over the ultimate distribution of its products throughout the U.S. 11 F.4th at 981-82 (holding defendant specifically targeted Americans by including references to "USA babes" and Black Friday in social media posts, representing to customers that its products were FDA approved, and choosing a fulfilment center located in Idaho to distribute products throughout the U.S.).

*JUUL Labs* is inapposite for similar reasons. In that case, Plaintiffs sued the manufacturer of an electronic cigarette, and several of its officers and directors, for allegedly directing a deceptive marketing strategy to sell its product to teenagers. While Plaintiffs alleged defendants utilized a nationwide marketing strategy, the court did not stop its jurisdictional analysis there.

---

[2] *See, e.g.*, ECF 347 at 13 ("*Regardless of whether McKinsey employees personally performed some of the actions* that led to the opioid crisis, McKinsey provided its advice with the intent that *its clients would act* consistent with that advice in each of the Subject States.") (emphasis added).

The court held that defendants directed their actions at each of the forum states because the manufacturer's website directly offered JUUL products for sale in all states, shipped products directly to online purchasers in the forum states, required users to identify their state of residence, and included a "store locator" feature that allowed users to find JUUL retailers throughout the country. *JUUL Labs*, 497 F. Supp. 3d at 675. The court found the marketing strategy relied heavily on social media posts, messages to social media followers, and in-person events and presentations that the manufacturers directed into those states. *Id.* Thus, it was defendants' targeting of the forum states to sell their own products—not a nationwide marketing campaign created by a service provider—that established specific jurisdiction.[3]

*Ayla* and *JUUL* thus have nothing to say on the different jurisdictional question here: can a *service provider* be subject to jurisdiction based on its *clients'* contacts with the forum state?

On that issue, Plaintiffs cite only one case, *Lions Gate Entertainment Inc. v. TD Ameritrade Services Co., Inc.*, 170 F. Supp. 3d 1249 (C.D. Cal. 2016).[4] There, a New York-based advertising firm created an advertising campaign consisting of various media advertisements for its client; the advertising firm (along with the client) was sued for trademark and copyright infringement for its unauthorized use of a trademarked phrase from the movie *Dirty Dancing*. *Id.* at 1255. The court drew a close comparison to *Calder v. Jones*, 465 U.S. 783 (1984), to conclude that the advertising firm created a campaign aimed at California, as plaintiffs specifically alleged.

Here, though, McKinsey was not engaged in "intentional tortious conduct expressly aimed at" the Subject States, 170 F. Supp. 3d at 1261, and Plaintiffs do not adequately allege, much less establish, otherwise. In both *Lions Gate* and *Calder*, the defendants intentionally targeted

---

[3] Plaintiffs also cite *Cisco Systems, Inc. v. Dexon Computer, Inc.*, 541 F. Supp. 3d 1009 (N.D. Cal. 2021), to argue that "a defendant's efforts to exploit a market . . . may be" sufficient to establish jurisdiction. (ECF 347 at 13.) The "exploitation" of the market in *Cisco* was defendant's sale of counterfeit goods in the state. *Id.* at 1017. That case has no application here, where McKinsey made no effort to "exploit a market" for its own services.

[4] Plaintiffs also cite *Hanson v. Denckla*, 357 U.S. 235 (1958), to argue that the rule holding unilateral activity by a third party insufficient for purposes of jurisdiction varies depending on the quality and nature of defendant's activity. (ECF 347 at 13.) Plaintiffs ignore the key passage in that decision making clear that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253.

6

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

California consumers with an infringing ad (*Lions Gate*) or intentionally targeted a libelous article to a California audience (*Calder*). Unlike those defendants, McKinsey did not create content aimed at an audience that another party published; McKinsey provided advice to clients, who then chose to act on the advice or not. That makes all the difference. Because McKinsey was not speaking to anyone but its client, its conduct was not aimed at any state except those in which its clients were located. And because McKinsey's advice was not inherently tortious (the claims against McKinsey turn on how its clients acted on McKinsey's advice), this is not a case like *Lions Gate* or *Calder* in which another party simply published the defendant's own words.

In any event, *Lions Gate* has been appropriately distinguished based on its unique facts. In *New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683 (E.D. Va. 2019), the court analyzed *Lions Gate* and noted that advertising agencies are only subject to jurisdiction in states where they directed some activity. *Id.* at 697. To hold otherwise would subject professional service firms like advertising agencies and law firms to jurisdiction in a state merely because its clients do business there. *Id.* The court declined to adopt, and was not aware of any other courts that adopted, such an expansive view of personal jurisdiction. *Id.*

No doubt for similar reasons, other courts that have analyzed the issue have concluded that a service provider cannot be haled into court as a result of its client's actions, even if such actions were foreseeable. (ECF 313 at 21 (collecting cases).)

Plaintiffs cannot distinguish these cases by quibbling about the extent of the services the defendants in those cases provided to their clients, compared to the services McKinsey is alleged to have provided here.[5] (ECF 347 at 15.) These cases were not based on the extent of the services provided to their clients. Rather, the courts considered the individual defendant's conduct in the

---

[5] Just as they try to distinguish the service provider cases McKinsey cites, Plaintiffs argue this case is not like *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). (ECF 347 at 15.) McKinsey agrees, to the extent that McKinsey is not a manufacturer. (ECF 313 at 20-21.) Since there is no jurisdiction over a manufacturer who simply puts products into the stream of commerce (and therefore could have foreseen consequences in a forum state), there is *a fortiori* no jurisdiction over McKinsey, which is not a manufacturer and did not put any products into the stream of commerce. Plaintiffs do not explain why McKinsey—which is further removed from the sale and distribution of opioids than a manufacturer—is subject to jurisdiction when there would be no jurisdiction over a manufacturer who creates a defective product, places the product into the stream of commerce, and foresees the possibility of harm in the forum.

forum state, rather than another third party's conduct. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) ("purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction as the result of another party's unilateral acts") (internal quotation marks omitted). In each case, the courts held that they could not exercise jurisdiction over the service provider as a result of its client's actions, even if such actions were foreseeable. *See Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*, 89 Mass. App. Ct. 718, 723-24 (2016) (holding no jurisdiction over out-of-state defendant where it sent audit reports to client and client forwarded those papers to Massachusetts, even assuming defendant knew or should have known its client would do so); *B. Bullen v. CohnReznick, LLP*, No. 1884-cv-03802-BLS2, 2019 WL 3331280, at *6 (Mass. Super. Ct. June 17, 2019) (same).

### 2. Allegations that McKinsey Helped "Implement" Its Advice Do Not Establish that McKinsey Expressly Aimed Any Conduct at the Subject States.

Plaintiffs' argument that McKinsey was an "active participant" in its clients' conduct (ECF 347 at 13) does not help them establish jurisdiction over McKinsey. Plaintiffs' labeling of McKinsey as an "active participant" is based on their allegation that McKinsey helped its clients implement its advice—a factually unsupported allegation that is far too conclusory to establish that McKinsey expressly aimed conduct at the Subject States.

Even a cursory review of their complaints exposes their allegations of "implementation" to be hollow. In general, Plaintiffs charge McKinsey with developing a nationwide strategy to get doctors to prescribe more opioid products. (ECF 347 at 10, 15, 22.) To that end, they point to various kinds of advice, recommendations, or studies McKinsey offered its clients, all allegedly meant to increase opioid sales and prescriptions (ECF 296 ¶¶ 237, 261.)

To try to paint McKinsey as having "implemented" this advice, Plaintiffs begin with a general statement about "implementation" consulting, alleging that such consulting occurs after the client adopts the consultant's plan and "the implementation consultant remains in place with the client to actually do the necessary work and execute on the plan." (*Id.* ¶ 60.) But Plaintiffs fail to then allege how McKinsey supposedly implemented any of its advice with any of the manufacturing clients at issue in this case. At most, Plaintiffs simply repeat the conclusion that

8

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-MD-02996-CRB (SK)

McKinsey did so. (*See id.* ¶ 138 ("Within weeks, McKinsey was working with Purdue to devise

and implement new marketing strategies for OxyContin."), ¶ 144 ("Purdue hired McKinsey not

only to give advice, but to devise and then implement a deceptive marketing strategy"), ¶ 343

("McKinsey remained in place at Endo to implement the launch of Endo's Buprenorphine

product.").) Plaintiffs' opposition brief echoes the Complaints' references to McKinsey

"implementing" strategies for clients, but offers no further clarification of what McKinsey

actually did to "implement" its advice—much less where any such "implementation" supposedly

occurred or how the "implementation" was ostensibly aimed at the Subject States. (*See* ECF 347

at 1, 3, 5, 11, 13, 16, 22, 27.)

The one place Plaintiffs provide any factual support for their "implementation"

allegation—the E2E project, the engagement on which Plaintiffs dwell most—makes it clear that

McKinsey's supposed conduct was *not* aimed at the Subject States. Plaintiffs allege McKinsey

took on the "role of 'executive oversight' of projects including the creation of target lists, internal

dashboards to track progress, and changes to Purdue's incentive compensation plan," through the

E2E Executive Oversight Team and Project Management Office. (ECF 296 ¶ 254; *see* ¶¶ 247-49,

500 (all alleging oversight of Purdue).) In other words, McKinsey was, at most, doing what

consultants often do, serving as internal project management support for a client's program.

Plaintiffs point to no facts supporting an allegation that McKinsey implemented Purdue's

initiative by interacting with any prescribers, or indeed anyone else, in the Subject States.

Elsewhere, Plaintiffs' Complaints undermine any notion that McKinsey helped

"implement" advice. The Complaints acknowledge the obvious fact that as a consultant,

McKinsey merely *advised* its clients, who then chose to accept, adjust, or reject the advice. The

Complaints allege, at most, that McKinsey provided "insights," "strategies," "recommendations,"

"plans," and "suggestions" for its clients to consider and implement to whatever extent they

chose. (*See* ECF 296 ¶ 196 ("Purdue trained its sales force in tactics to market to these high

prescribers based on McKinsey's insights and designed in conjunction with McKinsey."), ¶ 218

("By 2010, Purdue had implemented a four-year plan, consistent with McKinsey's strategy."),

¶ 244 ("the following month Purdue implemented Project Turbocharge based on McKinsey's

9

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1  recommendations."), ¶ 262 ("Purdue moved quickly to do as McKinsey advised. . . ."), ¶ 276

2  ("[McKinsey] presented specific plans to Purdue, which Purdue adopted and spent hundreds of

3  millions of dollars implementing."), ¶ 358 ("Upon McKinsey's suggestion, Endo began

4  reallocating sales force resources to Opana . . . .").)

5      At bottom, then, Plaintiffs' allegation that McKinsey "implemented" a nationwide

6  strategy is just a conclusion, bereft of any indication that McKinsey aimed its conduct at the

7  Subject States. Repeating the empty mantra that McKinsey helped to "implement" its advice is

8  nowhere near sufficient to establish a *prima facie* case for jurisdiction in the Subject States. *See*

9  *Osborne v. Nat'l Truck Funding*, No. 2:12-cv-02510, 2013 WL 3892946, at *3 (E.D. Cal. July 26,

10  2013) ("jurisdictional facts cannot, however, be established by nonspecific, conclusory

11  statements"); *Tadros v. Am. College of Forensic Examiners Inst*., No. 11-cv-2622, 2012 WL

12  1154448, at *4 (S.D. Cal. Apr. 5, 2012) ("A conclusory allegation that jurisdiction exists,

13  however, falls far short of the 'prima facie showing of jurisdictional facts' that is required").

14      Indeed, because McKinsey's personal jurisdiction motion is based on evidence showing

15  that it had no substantial contact with the Subject States, Plaintiffs cannot rest on their conclusory

16  allegations to establish jurisdiction. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

17  1223 (9th Cir. 2011) ("[W]e may not assume the truth of allegations in a pleading which are

18  contradicted by affidavit . . . .") (citation omitted). The declaration from Gretchen Scheidler,

19  McKinsey's Director of Professional Development, confirms that McKinsey's engagements with

20  clients identified in Plaintiffs' Complaints originated outside the Subject States, and that

21  McKinsey's work on those engagements was directed at clients located outside the Subject States.

22  (ECF 313-2 ¶ 24.)

23      Plaintiffs do not dispute the admissibility of Scheidler's declaration. They merely take

24  issue with her statement that McKinsey did not anticipate performing work outside the Subject

25  States, suggesting that this was an artful construction that conceals where the work was actually

26  performed. (ECF 347 at 7.) As the totality of Scheidler's declaration makes clear, however,

27  McKinsey has assumed for purposes of this motion that work was performed in every state where

28  a McKinsey consultant who worked on an opioid engagement was based, and every state where

10

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

an opioid client was located. By contrast, there is no plausible allegation, let alone evidence, that any cognizable opioid-related work was performed by any McKinsey consultant in any of the Subject States.

In short, Plaintiffs' allegations that McKinsey "implemented" its own advice are too conclusory to contradict the facts established in Scheidler's declaration.

### 3. McKinsey Did Not Target the Subject States in Any Other Manner.

Nor do Plaintiffs succeed in establishing jurisdiction over McKinsey based on allegations that McKinsey "employed granular analysis for its clients, specifically targeting the Subject States." (ECF 347 at 9.) By "granular analysis," Plaintiffs refer to data McKinsey allegedly collected and analyzed to help inform the advice it gave its clients. (ECF 347 at 4-6, 9-10, 13, 22.) Plaintiffs point, for example, to a slide deck with a map of the United States, showing patterns of market attractiveness by geography, and another map showing prescribing patterns in different states. (*Id.* at 4.) Several cities, including some cities in the Subject States, were used as examples of how external market factors impacted sales of OxyContin. (ECF 347-2 at 51.)

But the mere fact that McKinsey collected data from all fifty states, including data delineated by zip codes, and identified patterns in sales and prescriptions does not establish that McKinsey targeted the Subject States. It indicates at most that McKinsey collected data relating to Subject States to inform advice that it gave its clients in other states (where its clients were located). And Plaintiffs do not allege that McKinsey developed a specific marketing or sales strategy for the Subject States or any state in particular; Plaintiffs allege instead that McKinsey used this granular data to devise a nationwide strategy for opioid marketing and sales. (ECF 347 at 5.) But even an allegation that specific marketing messages or sales strategies were developed with the information McKinsey collected would not establish jurisdiction, because—again— McKinsey's clients made the ultimate decision of how, when, and where to market, sell, and distribute their products. Even Plaintiffs concede as much. (ECF 296 ¶ 59 ("The strategy consultant provides a plan to the client that the client may choose to adopt or not.").)

11

McKinsey Defendants' Reply in Support of Motion to Dismiss For Lack of Personal Jurisdiction
Case No. 3:21-md-02996-CRB (SK)

1    The closest Plaintiffs come to pointing to any McKinsey conduct directed at the Subject

2    States is their argument that McKinsey consultants may have conducted "ride-alongs" with

3    Purdue sales representatives in three states, Tennessee, Maryland, and Louisiana.[6]

4    It is far from clear, based on the documents Plaintiffs cite, that any ride-alongs actually

5    occurred. But even if the Court assumes for the sake of argument that they did occur, they do not

6    confer jurisdiction in the Subject States for the simple reason that ride-alongs were merely to

7    gather information McKinsey could use to provide advice in the states where advice was

8    provided. The purpose of potential ride-alongs was to collect data from Purdue's sales force

9    regarding current and future product trends. (*See, e.g.*, ECF 347-11 at 1; 347-2 at 67.) Contrary to

10   Plaintiffs' unsupported assertion that consultants conducted ride-alongs to monitor its clients'

11   salesforces (ECF 347 at 11), the July 2013 slide deck Plaintiffs cite shows that ride-alongs were

12   intended to "inform mapping of territories to test & learn initiatives" (ECF 347-9 at 6) and the

13   observations were later compiled into a chart in a September 13, 2013 slide deck (ECF 347-2 at

14   67). That chart conveys information in a general form; it does not provide location-specific

15   recommendations. (*Id.*)

16   Here, therefore, even if the collection of nationwide data and ride-alongs that purportedly

17   occurred in Tennessee, Maryland, and Louisiana are considered jurisdictional contacts, those

18   contacts were not "meaningful enough to create a substantial connection" with any of the Subject

19   States. *See Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (holding no substantial

20   connection to forum based on incidental trips to California).

21
       **4.    Plaintiffs' Claims Do Not Arise from or Relate to McKinsey's**
22           **Activities in the Subject States.**

23   For all of those reasons, Plaintiffs cannot establish that McKinsey—as opposed to its

24   clients—expressly aimed any conduct at the Subject States. That alone precludes a finding of

25   specific jurisdiction over McKinsey in the Subject States.[7]

26   _____

27   [6] While Plaintiffs also argue there may have been ride-alongs in Indiana, all Plaintiffs
     from Indiana have since dismissed their complaints, making any contacts with Indiana moot.

28   [7] Given Plaintiffs' failure to establish any contacts with the Subject States, much less a
     "strong showing," they are not entitled to rely on a "lesser showing" on the other prongs. (ECF

12

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

Plaintiffs' case for jurisdiction fails for an additional independent reason: Plaintiffs cannot establish that their claims arise from or relate to any of the limited contacts Plaintiffs allege McKinsey had with the Subject States. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).[8] Plaintiffs argue that McKinsey "targeted forum health care providers and made representations in the Subject States" (ECF 347 at 17), but those allegations are just Plaintiffs' legal conclusions. And even if the Court assumes that ride-alongs occurred in three states, Plaintiffs' claims—*e.g.*, public nuisance, unfair competition, and fraud—do not "arise out of" or "relate to" the ride-alongs. Indeed, Plaintiffs have asserted substantially identical claims in *every* Subject State, including many states in which Plaintiffs do not even suggest that a ride-along occurred.

On this point, moreover, Plaintiffs' citation to *Ayla* is particularly inapt. *Ayla* was a trademark infringement case. *See Ayla*, 11 F.4th at 977. "[I]n trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, [the "arising out of"] element is satisfied." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015). By contrast, Plaintiffs here cannot establish personal jurisdiction based on conduct by McKinsey outside the Subject States. *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716 (9th Cir. 2013), is also distinguishable because that case arose from defendants' forum related activities—artificially inflating the price of gas. *Id.* at 742. That McKinsey consultants may have gone on ride-alongs in some states and collected data from others—the most forum-related conduct Plaintiffs can hope to establish—is too attenuated from McKinsey's clients' ultimate decision to market, sell, and distribute opioid products in the Subject States to establish jurisdiction over McKinsey. *See Verbick v. Movement Tech. Co.*, No. 20-CV-611 TWR (DEB), 2021 WL 5449251, at *4 (S.D. Cal. Nov. 19, 2021) (holding link

---

347 at 17 (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).)

[8] While Plaintiffs are correct that *Ford Motor*, recognized that strict "but for" causation was not required for jurisdiction, the Supreme Court did not eliminate the requirement that plaintiffs' claims must arise from or be related to defendant's conduct. *Id.*

13

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1   between meeting where parties discussed potential applications of a platform at issue in the case

2   was too attenuated to find the underlying harm arose from that initial meeting).

3           **C.      Plaintiffs' Conclusory Allegations of a Conspiracy Cannot Satisfy
                       Their Burden of Establishing Jurisdiction Over McKinsey.**

4

5           Plaintiffs concede that the Ninth Circuit has not adopted a conspiracy theory of

6   jurisdiction (ECF 347 at 23), and there is no reason for this Court to apply it here. As the Ninth

7   Circuit noted, "[t]here is a great deal of doubt surrounding the legitimacy of this conspiracy

8   theory of personal jurisdiction." *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002).

9   Without Ninth Circuit authority, courts in this circuit have appropriately rejected the conspiracy

10  theory of jurisdiction. *See, e.g.*, *Brown v. 140 NM LLC*, No. 17-CV-05782-JSW, 2019 WL

11  118425, at *5 (N.D. Cal. Jan. 7, 2019). As courts within the Circuit have held, "an exercise of

12  personal jurisdiction must be based on forum-related acts that were personally committed by each

13  nonresident defendant, and acts of an alleged co-conspirator—cannot be imputed to establish

14  jurisdiction over the third party defendant." *Wescott v. Reisner*, No. 17-CV-06271-EMC, 2018

15  WL 2463614, at *4 (N.D. Cal. June 1, 2018) (holding jurisdiction lacking where alleged acts,

16  even if considered "in furtherance" of conspiracy, occurred outside of California); *see Gutierrez

17  v. Givens*, 1 F. Supp. 2d 1077, 1083 n.1 (S.D. Cal. 1998) (noting that "an individual's connection

18  with the forum state must be examined independently to determine jurisdiction").

19          For good reason, other courts have rejected the conspiracy theory of jurisdiction, noting

20  that the "requirements of minimum contacts analysis 'must be met as to each defendant over

21  whom a state court exercises jurisdiction.'" *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F.

22  App'x 474, 478 (3d Cir. 2011) (applying New Jersey law); *see Smith v. Jefferson Cty. Bd. of

23  Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010) (noting that the conspiracy jurisdiction theory may

24  not be valid in Illinois); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)

25  (rejecting conspiracy jurisdiction theory). As these decisions confirm, the conspiracy jurisdiction

26  theory does not comport with federal due process, which requires a showing that each defendant

27  deliberately targeted the state. *See Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 440

28

14

1   (D.N.J. 2021) (rejecting conspiracy jurisdiction theory); *Smith*, 378 F. App'x at 586 (requiring

2   allegations that particular person reached out to Illinois).

3        Contrary to Plaintiffs' argument, *JUUL Labs* did not show a willingness to apply the

4   conspiracy theory of jurisdiction. In that case, the court did not find jurisdiction based solely on

5   the director defendants' positions on the board. The court found that each director was a "primary

6   participant" in the wrongdoing intentionally directed at the forum. *See In re JUUL Labs, Inc.*

7   *Mktg., Sales Pracs., & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 879 (N.D. Cal. 2021)

8   (distinguishing cases where Plaintiffs merely alleged conduct of the entire board without

9   allegations concerning personal participation). The other two trade secrets cases Plaintiffs cite are

10  similarly inapposite. In both cases, the courts found jurisdiction was established because

11  defendants purposefully directed conduct at the forum by competing with plaintiff. *See Mee*

12  *Indus., Inc. v. Adamson*, No. 218CV003314CASJCX, 2018 WL 6136813, at *4 (C.D. Cal. July

13  27, 2018) (alleging former employee defendant misappropriated trade secrets from plaintiff to

14  create defendant company in order to compete with plaintiff); *Fluke Elecs. Corp. v. CorDEX*

15  *Instruments, Inc.*, No. C12–2082JLR, 2013 WL 566949, at *6 (W.D. Wash. Feb. 13, 2013) ("A

16  defendant's acts are purposefully directed at [the forum state] if they were committed in order to

17  compete against a plaintiff in [the forum state].") (citation omitted).

18       There is, therefore, no legal basis for Plaintiffs' conspiracy theory of jurisdiction within

19  this Circuit. But even if there were, "the formation and operation of the conspiracy and damage

20  resulting to plaintiff from an act or acts done in furtherance of the common design" would need to

21  be pleaded with particularity that Plaintiffs' Complaints lack. *Cisco Sys., Inc. v.*

22  *STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 894 (N.D. Cal. 2014). Plaintiffs cannot rely on

23  conclusory allegations that McKinsey was in a conspiracy (ECF 296 ¶¶ 495, 497, 499, 523), or

24  that it operated "in concert" with its clients. (*Id.* ¶¶ 767, 780.) Not only should the Court disregard

25  such conclusory allegations, *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999), but

26  the cases are unanimous that bare allegations of conspiracy are insufficient to establish

27  jurisdiction. *See Chirila*, 47 F. App'x at 843 (holding bare allegation of conspiracy insufficient);

28  *Krypt, Inc. v. Ropaar LLC*, No. 19-cv- 03226-BLF, 2020 WL 32334, at *5 (N.D. Cal. Jan. 2,

15

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1   2020) (holding statement that defendants were "acting in concert" not entitled to assumption of

2   truth); *Pyle v. Hatley*, 239 F. Supp. 2d 970, 979 (C.D. Cal. 2002) (holding that "conclusory

3   conspiracy allegations are insufficient to establish . . . personal jurisdiction").

4        Plaintiffs point to nothing in their Complaints making their allegations of a conspiracy

5   anything more than conclusory. The fact that McKinsey and its clients entered into a consulting

6   agreement regarding strategies for opioid products does not establish an agreement to *unlawfully*

7   increase opioid sales. (ECF 296 ¶¶ 109-11.) Nor does the fact that Purdue engaged McKinsey to

8   work on its opioid products strategy following Purdue's guilty plea in May 2007 create an

9   agreement to engage in *unlawful* conduct. (*See id.* ¶¶ 129-43.) *See Krypt*, 2020 WL 32334, at *6

10  (declining to infer a conspiracy based almost entirely on timing of the alleged theft).

### D.   The Exercise of Jurisdiction over McKinsey Would Be Unreasonable.

12       Given Plaintiffs' failure to establish that McKinsey purposefully directed conduct at the

13  Subject States and that the claims arise out of that forum-related conduct, jurisdiction is not

14  warranted. The Court thus need not determine whether the exercise of jurisdiction over McKinsey

15  in the Subject States would be reasonable. *See Schwarzenneger*, 374 F.3d at 802. Nevertheless,

16  McKinsey has shown that the exercise of jurisdiction over it would be unreasonable in the Subject

17  States based on the seven relevant factors:

18  - **First**, Plaintiffs failed to show McKinsey purposefully interjected its activities into the

19     Subject States, because Plaintiffs failed to show McKinsey directed any conduct at the

20     Subject States. Even if the Court finds sufficient minimum contacts with the Subject

21     States, any contact was attenuated, which weighs in McKinsey's favor. *See Core-Vent*

22     *Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (exiguity of defendants

23     contacts weighed against assertion of jurisdiction).

24  - **Second**, as set forth in McKinsey's moving brief, it would be unreasonably burdensome

25     for McKinsey to try actions in 19 different jurisdictions, rather than the jurisdictions

26     where Plaintiffs could assert personal jurisdiction over it. While the number of trials

27     would remain the same, the burden on McKinsey would be substantial if it is required to

28     travel to 19 different jurisdictions. Although McKinsey has offices in Colorado and

16

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

Washington, Plaintiffs have not established how those offices are relevant to this factor, because neither office played any role in the challenged conduct. And as set forth below, Plaintiffs' assertion of burden is based solely on the location of their evidence and the need for local officials to travel, which is minimal compared to the burden imposed on McKinsey.

- **Third,** the parties agree that the third factor, the extent of conflict with the sovereignty of Delaware or New York, is neutral.

- **Fourth,** as detailed above and in McKinsey's opening brief, the Subject States have no interest in resolving this dispute because McKinsey did not target the Subject States.

- **Fifth,** judicial efficiency weighs against finding jurisdiction in the Subject States. McKinsey's work took place outside the Subject States, so the relevant evidence and witnesses would also be outside of the Subject States. Plaintiffs do not identify any evidence or witnesses, other than themselves, to support their argument that it would be unduly burdensome to litigate in another state.

- **Sixth,** Plaintiffs concede that plaintiff's interest in forum selection is nominal and should not significantly influence the Court's decision. (ECF 347 at 20.)

- **Seventh,** Plaintiffs concede that an alternative forum is available: they could bring their claims in Delaware or New York by virtue of McKinsey's incorporation or maintenance of its principal places of business there. (*Id.* at 20-21.)

### E.    Jurisdictional Discovery Is Not Warranted.

The Court should deny Plaintiffs' request for jurisdictional discovery. This is not the ordinary case where a motion to dismiss was brought before discovery commenced. Here, Plaintiffs have already obtained voluminous documents through discovery that McKinsey produced in MDL 2804, documents McKinsey submitted to the Attorneys General, and data produced by manufacturer defendants, distributor defendants, pharmacy defendants, and other third parties in MDL 2804. This includes more than 115,000 documents totaling more than 353,000 pages worth of "[a]ll communications with" and "[a]ll documents reflecting or

17

MCKINSEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 3:21-md-02996-CRB (SK)

1    concerning McKinsey's work for" Purdue, Endo, J&J, and Mallinckrodt, which McKinsey

2    produced to the Attorneys General and Plaintiffs.

3          Plaintiffs have not identified any additional discovery they would need. Plaintiffs attach a

4    set of document requests they served on McKinsey on January 26, 2022. (ECF 347 at 26; ECF

5    347-12.) But these document requests largely go to the merits of Plaintiffs' claims, not to

6    jurisdiction. (ECF 347-12 at 4-10.) Of the few requests aimed at jurisdiction, most concern

7    general jurisdiction, a theory Plaintiffs have abandoned. (*Id.* at 9.) The only discovery request

8    concerning specific jurisdiction requests travel records (*id.* at 10), but as detailed above, Plaintiffs

9    supply no reason to believe that McKinsey traveled to the Subject States to aim any conduct at

10   those states, *see supra* at 8-12.

11         Instead, Plaintiffs ask for additional time to review the previously produced documents.

12   Their assertion that they have not finished reviewing documents does not warrant jurisdictional

13   discovery, especially because the parties negotiated a schedule that permitted Plaintiffs ample

14   time to review documents before filing their Master Complaints. (ECF 313 at 29.)

15         Although Plaintiffs posit "it is highly likely" that the review of existing discovery would

16   yield further evidence supporting jurisdiction (ECF 347 at 26), their guess is not enough to justify

17   yet more discovery. Courts in this circuit have required a plaintiff to establish a "colorable basis"

18   for personal jurisdiction before discovery is ordered. *See, e.g.*, *Mitan v. Feeney*, 497 F. Supp. 2d

19   1113, 1119 (C.D. Cal. 2007) (holding "colorable basis" to be "something less than a prima facie

20   showing," but "requir[es] the plaintiff to come forward with 'some evidence' tending to establish

21   personal jurisdiction over the defendant.") (citation omitted). The request for jurisdictional

22   discovery cannot be based on "a hunch that it might yield jurisdictionally relevant facts." *See*

23   *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that the plaintiff failed to

24   establish personal jurisdiction over the defendant and that allegations in plaintiff's complaint and

25   affidavit were nothing more than speculative). "[W]here," as here, "a plaintiff's claim of personal

26   jurisdiction appears to be both attenuated and based on bare allegations in the face of specific

27   denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*

28   *Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (citation omitted).

**F.     The Court Should Not Defer Ruling on Personal Jurisdiction.**

Finally, there is nothing to Plaintiffs' argument that addressing the personal jurisdiction issues now would "simply lead to an unnecessary delay, only to leave all parties in the same position a short time later." (ECF 347 at 25.) Plaintiffs' argument is based on the view that they could simply re-file their complaints against McKinsey in McKinsey's home states, and those cases would be transferred to this MDL Proceeding again.

For one thing, this is an argument any plaintiff who sues in an improper forum could make. That a plaintiff could simply re-file their case in the defendant's home state does not make the case for dismissal any less compelling. Indeed, constitutional due process demands that the Court dismiss a defendant from a lawsuit brought in a forum in which it has no minimum contacts. *See Walden v. Fiore*, 571 U.S. 277, 288 (2014); *see also Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 36 (D.D.C. 2015) (dismissing case for lack of personal jurisdiction, despite plaintiff's request to defer the motion, due to plaintiff's failure to establish specific jurisdiction), *aff'd*, 851 F.3d 45 (D.C. Cir. 2017); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999) (holding court did not abuse its discretion by turning directly to personal jurisdiction before subject matter jurisdiction and merits). Plaintiffs cite no case easing these due process requirements simply because the cases form part of an MDL Proceeding.

Instead, Plaintiffs appeal only to the "pragmatic" concerns in MDL litigation. (ECF 347 at 25.) But Plaintiffs ignore the very pragmatic reason compelling the Court to grant McKinsey's motion in this MDL proceeding: personal jurisdiction over McKinsey in more than half of the states represented in this MDL Proceeding is a crucial threshold issue because it bears on which states' laws will govern their claims. This motion therefore seeks to narrow the number of states whose laws will need to be analyzed. Additionally, any cases remaining at the conclusion of pretrial proceedings will be remanded to their original forum states, requiring McKinsey to defend itself at trial there—an inefficient (and unreasonable) result given that all evidence pertaining to liability is located elsewhere. Though they ask the Court to use a "pragmatic lens" to assess McKinsey's motion, Plaintiffs' opposition says nothing whatsoever about these real pragmatic concerns that favor resolving the issue of personal jurisdiction now.

19

MᴄKɪɴsᴇʏ Dᴇғᴇɴᴅᴀɴᴛs' Rᴇᴘʟʏ ɪɴ Sᴜᴘᴘᴏʀᴛ ᴏғ Mᴏᴛɪᴏɴ ᴛᴏ Dɪsᴍɪss Fᴏʀ Lᴀᴄᴋ ᴏғ Pᴇʀsᴏɴᴀʟ Jᴜʀɪsᴅɪᴄᴛɪᴏɴ
Cᴀsᴇ Nᴏ. 3:21-md-02996-CRB (SK)

1

### III.   CONCLUSION

2        For these reasons, and as detailed in McKinsey's motion, Plaintiffs fail to establish that

3   the Subject States may exercise jurisdiction over McKinsey consistent with the limits of due

4   process. Because the transferor courts in the Subject States lack personal jurisdiction over

5   McKinsey, this Court does, too. *JUUL Labs*, 497 F. Supp. 3d at 674. Plaintiffs' claims against

6   McKinsey in the Subject States should therefore be dismissed.

7

8   Dated: March 21, 2022                    **MORRISON & FOERSTER LLP**

9

10                                           By: */s/ Mark David McPherson*
                                                MARK DAVID McPHERSON
11                                              CAITLIN SINCLAIRE BLYTHE
                                                JESSICA KAUFMAN
12

13                                           **STROOCK & STROOCK & LAVAN LLP**

14
                                             James L. Bernard (Admitted *Pro Hac Vice*)
15                                           jbernard@stroock.com
                                             David M. Cheifetz (Admitted *Pro Hac Vice*)
16                                           dcheifetz@stroock.com
                                             Daniel J. Yost (Admitted *Pro Hac Vice*)
17                                           dyost@stroock.com
                                             180 Maiden Lane
18                                           New York, NY 10038
                                             Phone: (212) 806-5400
19

20                                           **CLARENCE DYER & COHEN LLP**

21                                           Josh A. Cohen (CA SBN 217853)
                                             jcohen@clarencedyer.com
22                                           Shaneeda Jaffer (CA SBN 253449)
                                             sjaffer@clarencedyer.com
23                                           899 Ellis Street
                                             San Francisco, CA 94109
24                                           Phone: (415) 749-1800

25                                           Attorneys for Defendants
                                             McKINSEY & COMPANY, INC.
26                                           McKINSEY & COMPANY, INC. UNITED STATES
                                             McKINSEY & COMPANY, INC. WASHINGTON D.C.
27                                           McKINSEY HOLDINGS, INC.

28