James L. Bernard (Admitted *Pro Hac Vice*)
(jbernard@stroock.com)
David M. Cheifetz (Admitted *Pro Hac Vice*)
(dcheifetz@stroock.com)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
Telephone:  (212) 806-5400

Josh A. Cohen (CA SBN 217853)
(jcohen@clarencedyer.com)
Shaneeda Jaffer (CA SBN 253449)
(sjaffer@clarencedyer.com)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Telephone:  (415) 749-1800

*Attorneys for Defendants McKinsey & Company, Inc., McKinsey & Company, Inc. United States, McKinsey & Company, Inc. Washington D.C. and McKinsey Holdings, Inc.*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This document relates to:<br><br>Master Complaint (Subdivision)<br>Master Complaint (School Districts)<br>Cases Listed in Appendix L | Case No. 3:21-md-2996-CRB (SK)<br><br>**MCKINSEY DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF *RES JUDICATA* AND RELEASE** |

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT ...............................................................................................................2

    A.    In Every Subject State, the Attorney General Has Authority to Bring the Public Interest Claims Plaintiffs Allege......................................................2

    B.    The Authorities Plaintiffs Cite on Pages 38-58 of Their Opposition Do Not Establish that They Have the Exclusive Right to Bring These Claims.................20

          1.    None of the First Eleven States Plaintiffs Identify Bar the Attorney General from Litigating Public Claims Raising Statewide Interests (Responding to Pages 40-50 of Plaintiffs' Opposition)............................22

          2.    In the Remaining Eleven States, Plaintiffs Concede that No Authority Prevents Attorneys General from Bringing the Same Claims as Plaintiffs (Responding to Pages 50-58 of Plaintiffs' Opposition) .............29

    C.    The Attorneys General Have the Authority to Settle and Release the Claims at Issue ........................................................................................................36

    D.    *Res Judicata* Independently Bars Plaintiffs' Claims ...........................................39

III.    CONCLUSION..........................................................................................................40

- i -

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Love Canal Revitalization Agency*,
522 N.Y.S.2d 53 (App. Div. 1987) ...................................................13

*Alabama v. Epic Tech, LLC*,
323 So. 3d 572 (Ala. 2020) ............................................................3

*Alaska Sport Fishing Ass'n v. Exxon Corp.*,
34 F.3d 769 (9th Cir. 1994) ..........................................................21

*State ex rel. Attorney Gen. v. Burning Tree Club, Inc.*,
481 A.2d 785 (Md. 1984) ..........................................................10, 25

*State ex. rel. Attorney Gen. v. Reese*,
430 P.2d 399 (N.M. 1967) ...........................................................26

*N.M. ex rel. Balderas v. Purdue Pharma L.P.*,
323 F. Supp. 3d 1242 (D.N.M. 2018) ...............................................13

*People ex rel. Barrett v. Finnegan*,
38 N.E.2d 715 (Ill. 1941) ..........................................................7, 24

*State ex rel. Bingaman v. Valley Sav. & Loan Ass'n*,
636 P.2d 279 (N.M. 1981) ...........................................................13

*People ex rel. Board of Trustees of University of Illinois v. Barrett*,
46 N.E.2d 951 (Ill. 1943) .............................................................24

*State ex rel. Brown v. Newport Concrete Co.*,
336 N.E.2d 453 (Ohio Ct. App. 1975) ..............................................15

*Bondi v. Tucker*,
93 So. 3d 1106 (Fla. Dist. Ct. App. 2012) ............................................5

*Booth v. City of Owensboro*,
118 S.W.2d 684 (1938)...............................................................30

*Boothbay v. Getty Oil Co.*,
201 F.3d 429 (1st Cir. 1999) .........................................................22

*Brown & Williamson Tobacco Corp. v. Gault*,
627 S.E. 2d 549 (Ga. 2006)........................................................5, 39

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

*State ex rel. Brown v. Newport Concrete Co.,*
    336 N.E.2d 453 (Ohio Ct. App. 1975)...................................................................15

*Cal. Oregon Power Co. v. Superior Ct.,*
    291 P.2d 455 (Cal. 1955)............................................................................4, 32

*State ex rel. Caldwell v. Molina Healthcare, Inc.,*
    283 So. 3d 472 (La. 2019) ........................................................................24, 25

*State ex rel. Carmichael v. Jones,*
    41 So. 2d 280 (Ala. 1949)...........................................................................38

*In re Certified Question from U.S. Dist. Ct. for E. Dist. of Michigan,*
    638 N.W.2d 409 (Mich. 2002)............................................................... *passim*

*Chun v. Bd. of Trustees of Employees' Retirement Sys.,*
    952 P.2d 1215 (Haw. 1998)......................................................................6, 24

*City of San Francisco v. Purdue Pharma L.P.,*
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ......................................................32, 33

*City of Martinez v. Texaco Trading & Transp., Inc.,*
    353 F.3d 758 (9th Cir. 2003) .....................................................................39

*City of New York v. State of New York,*
    86 N.Y.2d 286 (1995).................................................................................27

*State ex rel. Com'r of Transp. v. Med. Bird Black Bear White Eagle,*
    63 S.W.3d 734 (Tenn. Ct. App. 2001) .........................................................17

*Com. ex rel. Conway v. Thompson,*
    300 S.W.3d 152 (Ky. 2009) .........................................................................8

*State ex rel. Cordray v. Marshall,*
    915 N.E.2d 633 (Ohio 2009)......................................................................15

*People ex rel. Cuomo v. First Am. Corp.,*
    960 N.E.2d 927 (N.Y. 2011).......................................................................13

*Curtis v. Altria,*
    813 N.W.2d 891 (Minn. 2012).....................................................................38

*D'Amico v. Bd. of Med. Examiners,*
    520 P.2d 10 (Cal. 1974) ..........................................................................3, 4

*State ex rel. Derryberry v. Kerr-McGee Corp.,*
    516 P.2d 813 (Okla. 1973).....................................................................15, 38

*People ex rel. Devine v. Time Consumer Mktg., Inc.*,
   782 N.E.2d 761 (Ill. App. Ct. 2002) ............................................................37, 38

*State ex rel. Doerfler v. Price*,
   128 N.E. 173 (Ohio 1920) ........................................................................15

*Empire State Chapter of Associated Builders v. Smith*,
   21 N.Y.3d 309 (2013) ..............................................................................30

*EPA v. Pollution Control Bd.*,
   372 N.E.2d 50 (Ill. 1977) ..........................................................................7

*Ewald's Ex'r v. Louisville*,
   232 S.W. 388 (1921) ................................................................................30

*Fergus v. Russel*,
   110 N.E. 130 (Ill. 1915) .............................................................................7

*Fogle v. State*,
   295 S.W.3d 504 (Mo. Ct. Ap. 2009) .........................................................12

*Gandy v. Reserve Life Ins. Co.*,
   279 So. 2d 648 (Miss. 1973) .....................................................................11

*Green v. Santa Fe Indus., Inc.*,
   514 N.E.2d 105 (N.Y. 1987) .....................................................................39

*Hancock v. Terry Elkhorn Mining Co.*,
   503 S.W.2d 710 (Ky. Ct. App. 1973) ..........................................................8

*Hansen v. Utah State Retirement Board*,
   652 P.2d 1332 (Utah 1982) .......................................................................28

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
   607 N.E.2d 165 (Ill. 1992) ......................................................................7, 8

*Boyd Cnty. ex rel. Hedrick v. MERSCORP, Inc.*,
   614 F. App'x 818 (6th Cir. 2015) ................................................................9

*Holland v. Watson*,
   14 So. 2d 200 (Fla. 1943).....................................................................22, 23

*Hood v. AstraZeneca Pharma., LP*,
   744 F. Supp. 2d 590 (S.D. Miss. 2010).......................................................11

*State, by Major ex rel. Hopkins v. Excelsior Powder Mfg. Co.*,
   169 S.W. 267 (Mo. 1914) .........................................................................12

*State ex rel. Hunter v. Johnson & Johnson*,
   499 P.3d 719 (Okla. 2021) ............................................................................16

*Oklahoma ex rel. Hunter v. McKesson Corp.*,
   Case No. CIV-20-172-RAW, 2020 WL 5814161 (E.D. Okla. Sept. 14, 2020) ......................16

*Hussey v. Say*,
   384 P.3d 1282 (Haw. 2016) ............................................................................6

*State ex rel. Ieyoub v. Classic Soft Trim, Inc.*,
   663 So. 2d 835 (La. Ct. App. 1995) ...................................................................9

*State ex rel. Inman v. Brock*,
   622 S.W.2d 36 (Tenn. 1981) ...........................................................................17

*Johnson v. Indus. Comm'n*,
   267 N.W. 286 (Wis. 1936) .............................................................................20

*Kennington-Saenger Theatres, Inc. v. State ex rel. Dist. Attorney*,
   18 So. 2d 483 (Miss. 1944) ...........................................................................38

*Ex parte King*,
   59 So. 3d 21 (Ala. 2010) ...........................................................................3, 38

*In re Louisiana Riverboat Gaming Comm'n*,
   659 So. 2d 775 (La. Ct. App. 1995) ...................................................................9

*Loyd v. Ala. Dept. of Corr.*,
   176 F.3d 1336 (11th Cir. 1999) .......................................................................30

*Lyle v. Luna*,
   338 P.2d 1060 (N.M. 1959) ............................................................................38

*Mich. State Chiropractic Ass'n v. Kelley*,
   262 N.W.2d 676 (Mich. Ct. App. 1977) .................................................................10

*Mundy v. McDonald*,
   185 N.W. 877 (Mich. 1921) ............................................................................10

*Nash Cnty. Bd. of Ed. v. Biltmore Co.*,
   640 F.2d 484 (4th Cir. 1981) .........................................................................21

*Nationwide Biweekly Admin., Inc. v. Superior Ct.*,
   462 P.3d 461 (Cal. 2020) .............................................................................4

*New Jersey v. New York*,
   345 U.S. 369 (1953) ..................................................................................30

- iv -

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

*State ex rel. Nixon v. American Tobacco Co.*,
    34 S.W.3d 122 (Mo. 2000) ................................................................................26

*Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*,
    885 A.2d 1127 (Pa. Commw. Ct. 2005) ..................................................16, 17

*State ex rel. Patterson for the Use & Benefit of Adams Cnty. v. Warren*,
    180 So. 2d 293 (Miss. 1965).............................................11, 21, 33, 34

*People by Schneiderman v. Credit Suisse Sec. (USA) LLC*,
    107 N.E.3d 515 (N.Y. 2018)...........................................................................13

*People v. Bunge Corp.*,
    25 N.Y.2d 91 (N.Y. 1969) .....................................................................14, 36

*People v. Glenn-Colusa Irr. Dist.*,
    15 P.2d 549 (Cal. Dist. Ct. App. 1932)..........................................................32

*People v. Ingersoll*,
    58 N.Y. 1 (1874) .............................................................................................27

*People v. New Penn Mines, Inc.*,
    212 Cal. App. 2d 667 (Ct. Dist. App. 1963) ..................................................32

*People v. Townsend*,
    233 N.Y.S. 632 (N.Y. Sup. Ct. 1929) ............................................................27

*Perdue v. Baker*,
    586 S.E.2d 606 (Ga. 2003).................................................................................5

*Perry v. Del Rio*,
    67 S.W.3d 85 (Tex. 2001) ..............................................................................17

*State ex rel. Petro v. Marshall*,
    No. 05CA3004, 2006 WL 2924762 (Ohio Ct. App. Oct. 10, 2006)...........15, 34

*Pierce v. Superior Ct.*,
    37 P.2d 460 (Cal. 1934) ....................................................................................4

*Respass v. Commonwealth*,
    115 S.W. 1131 (Ky. 1909)................................................................................8

*People ex rel. Roberts v. Beaudry*,
    27 P. 610 (1891)..............................................................................................32

*Saint v. Allen*,
    134 So. 246 (La. 1931) ...................................................................................25

- v -

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

*People ex rel. Scott v. Briceland*,
    359 N.E.2d 149 (Ill. 1976) ..................................................................7

*Security State Bank of San Juan v. State*,
    169 S.W.2d 554 (Tex. Civ. App. 1943) ............................................35

*State of Florida ex rel. Shevin v. Exxon Corp.*,
    526 F.2d 266 (5th Cir. 1976) ...............................................2, 22, 23

*State of Maryland, Dep't of Nat. Res. v. Amerada Hess Corp.*,
    350 F. Supp. 1060 (D. Md. 1972) ....................................................10

*Hood ex rel. State v. BASF Corp.*,
    No. 56863, 2006 WL 308378 (Miss. Ch. Ct. Jan. 17, 2006) ............11

*State v. City of Dover*,
    891 A.2d 524 (N.H. 2006) ................................................................22

*State v. Eli Lilly & Co.*,
    509 F. Supp. 2d 1016 (D. Utah 2007) .............................................19

*State v. Excel Mgmt. Servs., Inc.*,
    331 N.W.2d 312 (Wis. 1983) ......................................................20, 28

*State v. Heath*,
    806 S.W.2d 535 (Tenn. Ct. App. 1990) .....................................17, 28

*State v. Int'l & G.N. Ry. Co.*,
    35 S.W. 1067 (Tex. 1896) .................................................................18

*State v. Jimenez*,
    588 P.2d 707 (Utah 1978) ...........................................................18, 19

*State v. Local 1115 Joint Bd. Nursing Home & Hosp. Emp. Div.*,
    392 N.Y.S.2d 884 (App. Div. 1977) .................................................14

*State v. Paris Ry. Co.*,
    55 Tex. 76 (1881) .............................................................................18

*State v. Quality Egg Farm, Inc.*,
    311 N.W.2d 650 (Wis. 1981) ......................................................20, 28

*State v. Schenectady Chems., Inc.*,
    479 N.Y.S.2d 1010 (App. Div. 1984) ...............................................14

*State v. Sw. Bell Tel. Co.*,
    526 S.W.2d 526 (Tex. 1975) .............................................................18

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

*State v. Tensas Delta Land Co.*,
    52 So. 216 (La. 1910) ............................................................................25

*Sunshine Anthracite Coal Co. v. Adkins*,
    310 U.S. 381 (1940)............................................................................39

*State ex rel. Taylor v. Wade*,
    231 S.W.2d 179 (Mo. 1950) ............................................................12

*State ex rel. Templeton v. Goodnight*,
    11 S.W. 119 (Tex. 1888)...................................................................18

*Terry v. Wilder*,
    Chancery No. HC-1307-2, 1992 WL 885093 (Va. Cir. Ct. Dec. 29, 1992) ...........................19

*Thompson v. Wainwright*,
    714 F.2d 1495 (11th Cir. 1983) .........................................................5

*Thrasher v. Atlanta*,
    173 S.E. 817 (Ga. 1934)....................................................................5

*United States v. Ndutime Youth & Family Servs., Inc.*,
    No. 3:16cv653, 2020 WL 5507217 (E.D. Va. Sept. 11, 2020)................19

*Va. House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019)......................................................................19

*Virginia v. McKesson Corp.*,
    No. C 11–02782 SI, 2011 WL 4853369 (N.D. Cal. Oct. 13, 2011) ........19

*Wade v. Miss. Cooperative Extension Serv.*,
    392 F. Supp. 229 (N.D. Miss. 1975)............................................11, 21

*Watson v. Caldwell*,
    27 So. 2d 524 (Fla. 1946)..............................................................22, 23

*Wilson v. City of Cent. City*,
    372 S.W.3d 863 (Ky. 2012) ..............................................................30

*Yett v. Cook*,
    281 S.W. 837 (Tex. 1926)..................................................................17

**Statutes**

Ala. Code § 6-5-1(a) ...................................................................................3

Ala. Code § 6-5-121 ...................................................................................3

Ala. Code § 6-5-155.2 ........................................................................................................3

Ala. Code § 8-19-4(a) ........................................................................................................3

Ala. Code § 36-15-1.1 .......................................................................................................2

Ala. Code § 36-15-12 ........................................................................................................2

Ala. Code § 36-15-21 ........................................................................................................3

Cal. Bus. & Prof. Code § 17204 .......................................................................................4

Cal. Bus. & Prof. Code § 17535 .......................................................................................4

Cal. Civ. Code § 3494 ......................................................................................................32

Cal. Civ. Proc. Code § 731 ..............................................................................................31

Cal. Gov't Code § 12652(a) .............................................................................................31

Cal. Gov't Code § 12652(b)(2) ........................................................................................31

Cal. Gov't Code § 12652(b)(3)(8) ...................................................................................31

Fla. Stat. Ann. § 16.01(4) ..................................................................................................4

Fla. Stat. Ann. § 16.01(5) ..................................................................................................4

Fla. Stat. Ann. § 16.01(7) ..................................................................................................4

Fla. Stat. Ann. § 16.015 .....................................................................................................5

Fla. Stat. Ann. § 501.203(2) ..............................................................................................5

Fla. Stat. Ann. § 501.207(1) ..............................................................................................5

Ga. Code Ann. § 45-15-3(6) ..............................................................................................5

Ga. Code Ann. § 45-15-3(7) ..............................................................................................5

Haw. Rev. Stat. Ann. § 26-7 ..............................................................................................6

Haw. Rev. Stat. Ann. § 28-1 ..............................................................................................6

815 Ill. Comp. Stat. Ann. § 505/2 .....................................................................................8

815 Ill. Comp. Stat. Ann. § 505/7(a) .................................................................................8

Ky. Rev. Stat. Ann. § 15.020(1) ........................................................................................8

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

Ky. Rev. Stat. Ann. § 15.020(3) .................................................................................8

La. Rev. Stat. Ann. § 49:257(D) ...............................................................................39

La. Stat. Ann. § 13:4711(A)(4)(b) .............................................................................9

La. Stat. Ann. § 13:4712 .............................................................................................9

La. Stat. Ann. § 49:257(A) .........................................................................................9

La. Stat. Ann. § 51:1407(A) .......................................................................................9

Md. Code Ann., State Gov't § 6-106 ........................................................................10

Mich. Comp. Laws Ann. § 14.28 ..............................................................................10

Miss. Code Ann. § 7-5-1 ...........................................................................................11

Miss. Code Ann. § 95-3-5 .........................................................................................11

Mo. Ann. Stat. § 27.060 ............................................................................................12

N.M. Stat. Ann. § 8-5-2(A) .......................................................................................13

N.M. Stat. Ann. § 8-5-2(B) .......................................................................................13

N.M. Stat. Ann. § 8-5-3 ............................................................................................26

N.M. Stat. Ann. § 30-8-8(A) .....................................................................................13

N.Y. Exec. Law § 63(1) .............................................................................................13

N.Y. Exec. Law § 63(12) ...........................................................................................13

N.Y. Gen. Bus. Law § 349(b) ............................................................................13, 14

N.Y. Gen. Bus. Law § 350 ........................................................................................14

N.Y. Soc. Serv. Law § 2(7) .......................................................................................14

N.Y. Soc. Serv. Law § 61 ..........................................................................................14

N.Y. Soc. Serv. Law § 145-b(2) ...............................................................................14

N.Y. Exec. Law § 63-c(1) .........................................................................................27

Ohio Rev. Code Ann. § 715.44 .................................................................................34

Ohio Rev. Code Ann. § 2307.60(A)(1) .....................................................................15

Ohio Rev. Code Ann. § 2307.011(f) .................................................................................15

Okla. Stat. Ann. tit. 74, § 18b(3) ......................................................................................35

Okla. Stat. Ann. tit. 74, § 18b(A)(3) ................................................................................15

73 Pa. Stat. § 201-4 ...........................................................................................................16

71 Pa. Stat. § 732-204(c) ...................................................................................................16

Tenn. Code Ann. § 8-6-109(b)(1) ...............................................................................17, 27

Tenn. Code Ann. § 8-6-109(b)(14) ...................................................................................28

Tenn. Code Ann. § 20-13-203 ...........................................................................................28

Tenn. Code Ann. § 29-3-102 .............................................................................................17

Tenn. Code Ann. § 29-3-103 .............................................................................................17

Tenn. Code Ann. § 47-18-108(a)(1) ..................................................................................17

Utah Code Ann. § 67-5-1(2) ..............................................................................................18

Va. Code Ann. § 2.2-507(A) ..............................................................................................19

Va. Code Ann. § 15.2-900 ..................................................................................................36

Wis. Stat. Ann. § 110.18(11)(d) ..................................................................................20, 28

Wis. Stat. Ann. § 110.18(11)(e) ..................................................................................20, 28

Wis. Stat. Ann. § 165.12(1) ...............................................................................................29

Wis. Stat. Ann. § 165.12(7) ...............................................................................................29

Wis. Stat. Ann. § 823.02 ....................................................................................................28

**Other Authorities**

Cal. Const. art. V, § 13 .........................................................................................................3

Fla. Const. art. IV, § 4(b) .....................................................................................................4

Ill. Const. art. V, § 15 ..........................................................................................................6

- x -

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

Jeremy Pelzer, *Bill seeks to give Ohio AG Dave Yost control over local opioid lawsuits* (Aug. 28, 2019), *available at* https://www.cleveland.com/open/2019/08/bill-seeks-to-give-ohio-ag-dave-yost-control-over-local-opioid-lawsuits.html ................................................................................................34

La. Const. art. IV, § 8...........................................................................................9

Md. Const. art. V, § 3(a) ...............................................................................9, 10

Miss. Const. art. VI, § 173 ................................................................................11

Ohio Const. art. III, § 1 .....................................................................................15

Pa. Const. art. 4, § 4.1 .......................................................................................16

Tenn. Const. art. VI, § 5.....................................................................................17

Tex. Const. art. IV, § 22.............................................................................18, 35

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-2996-CR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

McKinsey respectfully submits this supplemental brief as requested by the Court to further establish that the Attorneys General have at least concurrent authority to bring and resolve the claims Plaintiffs are asserting.  The chart requested by the Court is exhibited hereto.

Plaintiffs conceded at oral argument that if the Attorneys General "could have brought" or had "concurrent jurisdiction" to bring the claims, then Plaintiffs are barred from relitigating them under the doctrines of both release and *res judicata*.[1]  That is fatal to Plaintiffs' claims. Under the laws of all Subject States, the Attorneys General, at a minimum, had concurrent authority to bring and settle each and every one of the claims Plaintiffs assert.  In fact, the claims are classic, statewide governmental public interest claims that fall squarely within the constitutional, statutory, or common law authority of the Attorneys General.

Accordingly, Plaintiffs' assertion at oral argument that they had exclusive authority to bring certain claims is incorrect.  Plaintiffs have not identified any proprietary or uniquely local legal interests that only they, and not the Attorneys General, had the authority to litigate.[2]  And they have failed to cite a single case or statute that strips the Attorneys General of their authority to resolve the same public interest claims Plaintiffs now wish to bring.  Instead, Plaintiffs rely on irrelevant statutory provisions providing only that local governments may sue and be sued in their own name or hire their own legal counsel.  None of those provisions puts Plaintiffs in "exclusive" control of the claims here.  Rather, courts have uniformly held that such provisions do not undermine the authority of the Attorneys General to sue in matters of state interest.

Moreover, the power to litigate statewide, public claims includes the power to release

---

[1] 3/31/2022 Hr. Tr. (hereafter cited as "Hr. Tr.") at 8:5-8, 13:21-14:4, 32:12-15 (ECF 371).

[2] McKinsey has briefed whether Plaintiffs' legal interests are the same as the States' and provided the Court with pertinent authority in all Subject States.  *See* Reply at 5-20, 27-30 & App. M (ECF 357 & 357-1).

them.  The Attorneys General thus acted well within their authority when they negotiated a

global release of any and all opioid-related claims that were or could have been brought against

McKinsey.  And, in any event, because the Plaintiffs are pursuing identical legal interests to

those pursued by the Attorneys General, Plaintiffs' claims are barred by *res judicata*.

## II.      ARGUMENT

### A.      In Every Subject State, the Attorney General Has Authority to Bring the Public Interest Claims Plaintiffs Allege

The office of Attorney General is older than the United States.  Absent "legislative

action" stripping "the attorney general of specific powers[,] . . . he typically may exercise all

such authority as the public interest requires" and "has wide discretion in making the

determination as to the public interest."  *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d

266, 268-69 (5th Cir. 1976).  For certain types of claims, the States will sometimes expressly

authorize the Attorney General to bring such claims by statute or judicial decision.  More often,

however, the States provide that the Attorney General is authorized to act broadly in litigation

involving the States' interests rather than trying to delineate each and every type of claim the

Attorney General is authorized to bring.  Regardless of whether the authority is general, specific,

or a combination, in all the Subject States, the Attorney General has constitutional, statutory,

and/or common law powers to represent the State in civil litigation and bring claims that

implicate the States' interests.  These broad grants of power authorize the Attorneys General to

bring the same public interest claims Plaintiffs allege against McKinsey.

**Alabama.**  Alabama's Attorney General "retain[s] all of the powers, duties, and authority

heretofore granted or authorized by the constitution, statutory law, or the common law," and is

"authorized to institute and prosecute, in the name of the state, all civil actions and other

proceedings necessary to protect the rights and interests of the state."  Ala. Code §§ 36-15-1.1,

36-15-12.  The Supreme Court of Alabama has interpreted the Attorney General's authority

broadly, holding that "the attorney general's common law powers . . . to control litigation

involving state and public interests" is "far-reaching," and includes authority over litigation

"filed in the State's name and on its behalf to vindicate its policies and concerns."  *Ex parte*

*King*, 59 So. 3d 21, 26-27 & n.4 (Ala. 2010).  Further, Alabama law also states that "[a]ll

litigation concerning the interest of the state, or any department of the state, shall be under the

direction and control of the Attorney General."  Ala. Code § 36-15-21.  And "[t]he state may

commence an action in its own name and is entitled to all remedies provided for the enforcement

of rights between individuals."  *Id.* § 6-5-1(a).

In addition to these general grants of power, Alabama's Attorney General is also

specifically authorized to "take whatever action is appropriate" to enforce Alabama's Deceptive

Trade Practices Act.  Ala. Code § 8-19-4(a).  As for Plaintiffs' statutory and common law

nuisance claims, under Alabama law, "a public nuisance . . . must be abated by a process

instituted in the name of the state."  *Id.* § 6-5-121.  The Attorney General is expressly authorized

by statute to file actions "to abate, enjoin, and prevent [a] drug-related nuisance."  *Id.* § 6-5-

155.2.  And, "under its police power," Alabama, acting through its Attorney General, "has the

authority to abate nuisances offensive to the public health, welfare, and morals."  *Alabama v.*

*Epic Tech, LLC*, 323 So. 3d 572, 579 (Ala. 2020).

**California.**  Under California's Constitution, "the Attorney General shall be the chief law

officer of the State," and it "shall be the duty of the Attorney General to see that the laws of the

State are uniformly and adequately enforced."  Cal. Const. art. V, § 13.  The Attorney General

"possesses not only extensive statutory powers but also broad powers derived from the common

law relative to the protection of the public interest."  *D'Amico v. Bd. of Med. Examiners*, 520

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

P.2d 10, 20 (Cal. 1974).  Accordingly, "in the absence of any legislative restriction," the

Attorney General "has the power to file any civil action or proceeding directly involving the

rights and interests of the state, or which he deem[s] necessary for the enforcement of the laws of

the state, the preservation of order, and the protection of public rights and interest." *Id.*  And the

mere fact that a statutory scheme in California might provide a remedy to third parties is not

sufficient to deprive the Attorney General of the power to bring a similar claim.  According to

the Supreme Court of California, "[t]he fact that a remedy is given to a private individual to

institute such an action could not operate to deny the power of the Attorney General to bring a

similar action on behalf of the state, which power exists independent of said section." *Pierce v.*

*Superior Ct.*, 37 P.2d 460, 461 (Cal. 1934).

In addition to these broad general grants of power, the Supreme Court of California has

also held that "[t]he attorney general may bring an action to abate a nuisance on behalf of the

state and the people." *Cal. Oregon Power Co. v. Superior Ct.*, 291 P.2d 455, 463 (Cal. 1955).

And, under California's "unfair competition law (UCL) and [its] false advertising law (FAL)[,]

the Attorney General or local prosecuting authorities may bring a civil action against a business

that has allegedly engaged in an unfair, unlawful or deceptive business act or practice or false or

misleading advertising." *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 462 P.3d 461, 464

(Cal. 2020) (internal citations omitted); *see also* Cal. Bus. & Prof. Code §§ 17204, 17535.

**Florida.**  Under Florida's Constitution, "[t]he Attorney General shall be the chief state

legal officer."  Fla. Const. art. IV, § 4(b).  The Attorney General is statutorily authorized to

"appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in

equity, in which the state may be a party, or in anywise interested."  Fla. Stat. Ann. § 16.01(4);

*see also id.* § 16.01(5).  She may also "perform all powers and duties incident or usual to such

office." *Id.* § 16.01(7).  Under this statute, "as at common law, the Attorney General has broad authority to litigate matters in the public interest," and may "institute litigation on her or his own initiative." *Bondi v. Tucker*, 93 So. 3d 1106, 1109 (Fla. Dist. Ct. App. 2012).  And it is the Attorney General's "duty . . . to use means most effectual to the enforcement of the laws, and the protection of the people." *Thompson v. Wainwright*, 714 F.2d 1495, 1500–01 (11th Cir. 1983).

In addition, Florida also specifically authorizes the Attorney General, through its Department of Legal Affairs, to bring actions under its Deceptive and Unfair Trade Practices Act.  Under the Act, the "enforcing authority" is authorized to bring certain statutory actions, including "[a]n action on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of this part."  Fla. Stat. Ann. § 501.207(1).  And, in cases where, as here, "the [alleged] violation occurs in or affects more than one judicial circuit," the term "Enforcing authority" is defined as "the Department of Legal Affairs," which, in Florida, refers to the Attorney General's office.  *Id.* § 501.203(2); *see also id.* § 16.015.

**Georgia.**  Georgia law provides that "[i]t is the duty of the Attorney General . . . [t]o represent the state in all civil actions tried in any court," and "[t]o perform such other services as shall be required of him by law."  Ga. Code Ann. § 45-15-3(6), (7).  The Supreme Court of Georgia has held that the Governor and the Attorney General have concurrent constitutional and statutory authority to "decide what is in the best interest of the people of the State in every lawsuit involving the State of Georgia." *Perdue v. Baker*, 586 S.E.2d 606, 610 (Ga. 2003).  And the Attorney General has authority to bring "public claims" – *i.e.*, claims that "seek compensation for sovereign or quasi-sovereign" interest. *Brown & Williamson Tobacco Corp. v. Gault*, 627 S.E. 2d 549, 551 (Ga. 2006); *see also Thrasher v. Atlanta*, 173 S.E. 817, 820 (Ga.

1934) ("Generally, a public nuisance gives no right of action to any individual, but must be

abated by a process instituted in the *name of the State*.") (emphasis added).

   **Hawai'i.**  In Hawai'i, "unless otherwise provided by law," the Attorney General is

authorized to "prosecute cases involving violations of state laws and cases involving agreements,

uniform laws, or other matters which are enforceable in the courts of the State."  Haw. Rev. Stat.

Ann. § 26-7.  Hawai'i law also provides that "[t]he attorney general shall be charged with such

other duties and have such other authority as heretofore provided by common law or statute."  *Id.*

And "[t]he attorney general" is statutorily charged with "appear[ing] for the State personally or

by deputy, in all the courts of record, in all cases criminal or civil in which the State may be a

party, or may be interested."  *Id.* § 28-1.  Thus, "the attorney general may appear for the state in

civil cases as an interested party if the attorney general regards the public interest as being

implicated."  *Chun v. Bd. of Trustees of Employees' Retirement Sys.*, 952 P.2d 1215, 1233 (Haw.

1998) (internal quotation marks and punctuation omitted).  And "[t]he Attorney General's

common law duty to protect the public interest is subject to his or her definition of what is in the

best interests of the state or the public at large."  *Hussey v. Say*,  384 P.3d 1282, 1291 n.15 (Haw.

2016).  Accordingly, Hawai'i's Attorney General has elsewhere brought the very same claims

Plaintiffs allege here, including claims for negligence, civil conspiracy, fraud, aiding and

abetting, unjust enrichment, and common law public nuisance.  *See* Decl. of David M. Cheifetz

in Supp. of Supplemental Br. ("Cheifetz Decl."), Ex. DDD ¶¶ 423-52; *id.* Ex. EEE ¶¶ 236-44,

251-53, 258-62, 273-89, 319-26.

   **Illinois.**  Under Illinois's Constitution, "[t]he Attorney General shall be the legal officer

of the State, and shall have the duties and powers that may be prescribed by law."  Ill. Const. art.

V, § 15.  The Supreme Court of Illinois has interpreted this provision as "ingraft[ing] upon the

office all the powers and duties of an Attorney General as known at the common law." *People ex rel. Barrett v. Finnegan*, 38 N.E.2d 715, 717 (Ill. 1941).  Under the common law, the Attorney General "may exercise all such power and authority as public interest may from time to time require," including the power and authority to "institute, conduct and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order and the protection of public rights." *Id.*  And the Attorney General also has "complete authority as the representative of the State or any of its political subdivisions to recover damages whether under state or federal law alleged to have been sustained by any such agency or political subdivisions, even though those subdivisions may not have affirmatively authorized suit." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 170-71 (Ill. 1992) (internal quotation marks and punctuation omitted).

Moreover, the Attorney General's common law powers cannot be modified by legislative action.  The Legislature is able "to impose upon [the Attorney General] new duties growing out of public policy or convenience." *Fergus v. Russel*, 110 N.E. 130, 144 (Ill. 1915).  But "it cannot strip him of his time-honored and common-law functions, and devolve them upon incumbents of other offices, created by legislative authority." *Id.*  Accordingly, under Illinois's Constitution, "the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional directive." *People ex rel. Scott v. Briceland*, 359 N.E.2d 149, 156 (Ill. 1976); *see also EPA v. Pollution Control Bd.*, 372 N.E.2d 50, 51-52 (Ill. 1977) (recognizing that the Attorney General "has the prerogative of conducting legal affairs for the State"); *id.* at 53 ("The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the

broader interests of the State.").  In short, the Attorney General has standing to prosecute all the common law and statutory claims Plaintiffs' allege.  *See E &E Hauling*, 607 N.E.2d at 169-71 (discussing standing to pursue statutory claims, common law fraud claims, and claim for unjust enrichment); *see also* 815 Ill. Comp. Stat. Ann., § 505/7(a) (authorizing Attorney General to "bring an action in the name of the People of the State" whenever a person engages in conduct declared unlawful by the Consumer Fraud and Deceptive Business Practices Act); *id.* § 505/2 (declaring "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'" to be unlawful).

**Kentucky.**  In Kentucky, the Attorney General "shall exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment," and shall also "appear for the Commonwealth" and "attend to all litigation and legal business in or out of the state . . . in which the Commonwealth has an interest." Ky. Rev. Stat. Ann. § 15.020(1), (3).  Under this broad grant of power, Kentucky's Attorney General is able "to institute, conduct, and maintain suits and proceedings for the enforcement of the laws of the state, the preservation of order, and the protection of public rights." *Com. ex rel. Conway v. Thompson*, 300 S.W.3d 152, 173 (Ky. 2009).  Thus, "[u]nder the common law, the attorney general has the power to bring any action which he or she thinks necessary to protect the public interest, a broad grant of authority which includes the power to act to enforce the state's statutes." *Id.*; *see also Respass v. Commonwealth*, 115 S.W. 1131, 1132 (Ky. 1909) (recognizing Attorney General's authority to institute action to enjoin a public nuisance); *Hancock v. Terry Elkhorn Mining Co.*, 503 S.W.2d 710, 715 (Ky. Ct. App. 1973) ("The Attorney General, as chief law officer of this Commonwealth, charged with the duty of protecting the interest of all the people, the traveling public, the school children in the school

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

buses, and the very existence of the roads, had such a vital interest in this litigation that he had a

right to intervene at least insofar as the public issues advanced in the action were involved.");

*Boyd Cnty. ex rel. Hedrick v. MERSCORP, Inc.*, 614 F. App'x 818, 823 (6th Cir. 2015)

(recognizing authority of Kentucky Attorney General to bring suit to enforce laws that broadly

affected the interests of 41 counties across the Commonwealth but rejecting counties' "novel . . .

theory" that they had analogous authority to bring such suits).

      **Louisiana.**  Louisiana's Constitution provides: "As necessary for the assertion or

protection of any right or interest of the state, the attorney general shall have authority . . . to

institute, prosecute, or intervene in any civil action or proceeding."  La. Const. art. IV, § 8.  And

it further provides that "[t]he attorney general shall exercise other powers and perform other

duties authorized by this constitution or by law."  *Id.*; *see also In re Louisiana Riverboat Gaming

Comm'n*, 659 So. 2d 775, 783 (La. Ct. App. 1995).  By statute, the Attorney General similarly is

authorized to "represent the state and all departments and agencies of state government in all

litigation arising out of or involving tort or contract."  La. Stat. Ann. § 49:257(A).  In addition to

these general grants of power, Louisiana's Attorney General also has express statutory authority

to abate drug-related public nuisances.  *See* La. Stat. Ann. §§ 13:4711(A)(4)(b), 13:4712.  And

Louisiana's Unfair Trade Practices and Consumer Protection Law likewise "specifically

authorize[s] the Attorney General to bring and prosecute . . . unfair trade practices actions."

*State ex rel. Ieyoub v. Classic Soft Trim, Inc.*, 663 So. 2d 835 (La. Ct. App. 1995); *see also* La.

Stat. Ann. § 51:1407(A).

      **Maryland.**  Under Maryland's Constitution, the Attorney General is given the power to

"[p]rosecute and defend on the part of the State all cases . . . in which the State may be

interested, except those criminal appeals otherwise prescribed by the General Assembly."  Md.

Const. art. V, § 3(a).  And, by statute, "the Attorney General has general charge of the legal business of the State."  Md. Code Ann., State Gov't § 6-106.  Thus, the Attorney General's duties under state law "include prosecuting and defending cases on behalf of the State in order to promote and protect the State's policies, determinations, and rights."  *State ex rel. Attorney Gen. v. Burning Tree Club, Inc.*, 481 A.2d 785, 797 (Md. 1984); *see also State of Maryland, Dep't of Nat. Res. v. Amerada Hess Corp.*, 350 F. Supp. 1060, 1066-67 (D. Md. 1972) (even in the absence of specific legislation on a given subject, Maryland had standing to bring a common law nuisance claim because, in addition to the right to legislate, "the state also has the inherent power to protect the public welfare by bringing common law suits").

**Michigan.**  In Michigan, "[t]he attorney general . . . may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested."  Mich. Comp. Laws Ann. § 14.28.  This power includes the authority to initiate actions that raise matters of state interest: "it is widely acknowledged that Michigan's Attorney General has broad authority to bring actions that are in the interest of the state of Michigan."  *In re Certified Question from U.S. Dist. Ct. for E. Dist. of Michigan*, 638 N.W.2d 409, 413 (Mich. 2002) ("*Certified Question*").  And "[a] broad discretion is vested in this officer in determining what matters may, or may not, be of interest to the people generally."  *Mundy v. McDonald*, 185 N.W. 877, 880 (Mich. 1921); *see also Mich. State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677 (Mich. Ct. App. 1977) (holding that (a) the Attorney General "has the authority to sue to abate a public nuisance," (b) "he has statutory and common law authority to act on behalf of the people of the State of Michigan in any cause or matter, such authority being

liberally construed," and (c) "[s]uch liberally construed authority and discretion should only be interfered with where his actions are clearly inimical to the people's interest").

**Mississippi.**  In Mississippi, the Attorney General "is charged with managing all litigation on behalf of the state" and "shall have the powers of the Attorney General at common law."  Miss. Code Ann. § 7-5-1.  As "a constitutional officer possessed of all the power and authority inherited from the common law as well as that specifically conferred upon him by statute," the Attorney General has "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights."  *Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (Miss. 1973); *State ex rel. Patterson for the Use & Benefit of Adams Cnty. v. Warren*, 180 So. 2d 293, 299 (Miss. 1965) (common law powers included "authority to institute proceedings to abate public nuisances affecting public safety and convenience, to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public"); *see also* Miss. Const. art. VI, § 173; Miss. Code Ann. § 95-3-5 (nuisance claims may be brought "in the name of the State of Mississippi" by "the attorney-general," among others).  Because the Attorney General has "constitutional and common-law authority," she "alone has the right to represent the state" in "all litigation, the subject-matter of which is of state-wide interest."  *Wade v. Miss. Cooperative Extension Serv.*, 392 F. Supp. 229, 233 (N.D. Miss. 1975).  Using these broad powers, Mississippi's Attorney General has previously brought suit alleging the same types of public interest claims Plaintiffs allege here.  *See Hood v. AstraZeneca Pharma., LP*, 744 F. Supp. 2d 590, 595 (S.D. Miss. 2010) (on motion for remand, discussing claims brought by Attorney General under state consumer protection laws and for various state law torts); *Hood ex rel. State*

*v. BASF Corp.*, No. 56863, 2006 WL 308378, at *3-4 (Miss. Ch. Ct. Jan. 17, 2006) (Attorney

General had standing to bring claims to protect "quasi-sovereign interest[s]").

      **Missouri.**  Missouri authorizes the Attorney General to "institute, in the name and on

behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary

to protect the rights and interests of the state."  Mo. Ann. Stat. § 27.060.  The Attorney General

is further empowered to "enforce any and all rights, interests or claims against any and all

persons, firms or corporations in whatever court or jurisdiction such action may be necessary;

and he may also appear . . . in any proceeding or tribunal in which the state's interests are

involved."  *Id.*  Thus, "[t]he Attorney General is authorized to represent the interests of the State

generally."  *Fogle v. State*, 295 S.W.3d 504, 510 (Mo. Ct. Ap. 2009).  And "[t]he Attorney

General, both because of his statutory and common law powers, is a proper party to bring an

action for the state which involves [public] rights and seeks . . . enforcement of [public] duties,

and which would prevent injury to the general welfare."  *State ex rel. Taylor v. Wade*, 231

S.W.2d 179, 182 (Mo. 1950).  Using these powers, Missouri's Attorney General has previously

alleged claims like those here, including claims for public nuisance, negligence, negligence per

se, civil conspiracy, fraud, aiding and abetting, and unjust enrichment.  *See* Cheifetz Decl., Ex.

FFF ¶¶ 139-48, Ex. GGG ¶¶ 336-65, Ex. HHH ¶¶ 294-97, 303-40; *see also State, by Major ex

rel. Hopkins v. Excelsior Powder Mfg. Co.*, 169 S.W. 267, 274 (Mo. 1914) (in suit by Attorney

General, holding that there was "no practical way in which [public] interests [could] be

adequately protected except by abating the nuisance").

      **New Mexico.**  New Mexico authorizes "the attorney general" to "prosecute and defend

all causes in the supreme court and court of appeals in which the state is a party or interested,"

and also to "prosecute and defend in any other court or tribunal all actions and proceedings, civil

or criminal, in which the state may be a party or interested when, in his judgment, the interest of

the state requires."  N.M. Stat. Ann. § 8-5-2(A), (B).  This statute gives "the attorney general . . .

the power to initiate civil lawsuits when, in his judgment, the interest of the state is in need of

protection."  *State ex rel. Bingaman v. Valley Sav. & Loan Ass'n*, 636 P.2d 279, 281 (N.M.

1981); *see also* N.M. Stat. Ann. § 30-8-8(A) ("civil action[s] to abate a public nuisance may be

brought . . . in the name of the state . . . by any public officer or private citizen").  New Mexico's

Attorney General has used these powers to initiate multiple lawsuits to vindicate statewide

claims, including claims for negligence, fraud, common law public nuisance, and unjust

enrichment.  *See N.M. ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1245-46

(D.N.M. 2018) (on remand motion, discussing claims for negligence, negligence per se, and

conspiracy); *see also* Cheifetz Decl., Ex. III ¶¶ 138-46, 175-77, JJJ ¶¶ 124-38, KKK ¶¶ 157-89.

    **New York.**  In New York, the Attorney General is authorized to "[p]rosecute and defend

all actions and proceedings in which the state is interested."  N.Y. Exec. Law § 63(1).  This

power gives the Attorney General "standing to take appropriate action to protect . . . interests"

that "are of statewide concern."  *Abrams v. Love Canal Revitalization Agency*, 522 N.Y.S.2d 53,

54 (App. Div. 1987).  In addition, the New York Attorney General also has specific statutory

authorization to sue "[w]henever any person shall engage in repeated fraudulent or illegal acts or

otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transacting

of business."  N.Y. Exec. Law § 63(12).  Under this provision, "the Attorney General [has]

standing to redress liabilities recognized elsewhere in the law," including for "fraud recognized

in the common law."  *People by Schneiderman v. Credit Suisse Sec. (USA) LLC*, 107 N.E.3d

515, 521-22 (N.Y. 2018); *see also People ex rel. Cuomo v. First Am. Corp.*, 960 N.E.2d 927, 935

(N.Y. 2011) (Attorney General has the "authority under Executive Law § 63(12) and General

Business Law § 349" to "assert[] both common law and statutory claims," including unjust enrichment); *State v. Local 1115 Joint Bd. Nursing Home & Hosp. Emp. Div.*, 392 N.Y.S.2d 884, 889 (App. Div. 1977) (internal citations omitted) ("[T]the Attorney-General enjoys common-law authority as well as statutory powers.").  The Attorney General also has "the discretion" to decide whether to "maintain[] or discontinu[e] an action," and, "in the absence of a clear expression by the Legislature to the contrary," her exercise of discretion "may not be made the subject of inquiry by the courts."  *People v. Bunge Corp.*, 25 N.Y.2d 91, 98 (N.Y. 1969).

        As for Plaintiffs' other New York claims for common law nuisance, deceptive acts and practices, false advertising, and violations of New York's Social Services Law, the Attorney General is authorized by law to bring all of those claims.  "The Attorney-General is clearly authorized on behalf of the State to commence legal proceedings to abate a public nuisance."  *State v. Schenectady Chems., Inc.*, 479 N.Y.S.2d 1010, 1014 (App. Div. 1984).  New York law authorizes the Attorney General to "bring an action in the name and on behalf of the people of the state of New York to enjoin . . . [any] acts or practices [stated to be unlawful] and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices," including for false advertising.  N.Y. Gen. Bus. Law § 349(b); *see also id.* § 350 (providing that false advertising falls within the ambit of section 349(b)).  And New York's Social Services Law authorizes "the local social services district *or the state* . . . to recover civil damages."  N.Y. Soc. Serv. Law § 145-b(2) (emphasis added).[3]

        **Ohio.**  In Ohio, the Attorney General "is the constitutional legal officer for the state, and the officer generally relied upon to institute any necessary legal action to protect the property

---

[3] The term "local social services" is defined to include the City of New York and "[e]ach of the counties of the state."  N.Y. Soc. Serv. Law § 61; *see also id.* § 2(7).  Accordingly, it is unclear if the city (except for New York City) and town plaintiffs even have authority to assert this claim.

rights of the state, and the rights of its citizens pertaining to the use and enjoyment of such property." *State ex rel. Brown v. Newport Concrete Co.*, 336 N.E.2d 453, 458 (Ohio Ct. App. 1975); *see also* Ohio Const. art. III, § 1.  The State Constitution was "adopted with a recognition of established contemporaneous common-law principles," meaning Ohio "did not repudiate, but cherished, the established common law."  *State ex rel. Cordray v. Marshall*,  915 N.E.2d 633, 638 (Ohio 2009).  Thus, "the attorney general has common-law—as well as statutory—authority to institute suits on behalf of the public" and can "bring the suit 'without a relator.'"  *Id.*; *see also State ex rel. Doerfler v. Price*, 128 N.E. 173, 175 (Ohio 1920) ("So that the Attorney General of Ohio is a constitutional officer of the state, in the executive department thereof, chargeable with such duties as usually pertain to an Attorney General . . . ."); *State ex rel. Petro v. Marshall*, No. 05CA3004, 2006 WL 2924762, at *4-5 (Ohio Ct. App. Oct. 10, 2006) (holding that the attorney general "has common law standing to bring [an] action" for public nuisance).  As for Plaintiffs' claim under Ohio's Injury Through Criminal Acts, that statute applies to "[a]nyone injured in person or property," Ohio Rev. Code Ann. § 2307.60(A)(1), and the term "Person" is defined to include "the state," *id.* § 2307.011(F).

**Oklahoma.**  Under Oklahoma law, the Attorney General has the power "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue." Okla. Stat. Ann. tit. 74, § 18b(A)(3).  According to the Supreme Court of Oklahoma, "[i]n the absence of explicit legislative or constitutional expression to the contrary, [the Attorney General] possesses complete dominion over every litigation in which he properly appears in the interest of the State, whether or not there is a relator or some other nominal party."  *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 818 (Okla. 1973).  Using these broad powers, Oklahoma's Attorney General has previously brought similar claims arising out of the opioid epidemic,

including claims for negligence, public nuisance, . . . and unjust enrichment." *Oklahoma ex rel. Hunter v. McKesson Corp.*, Case No. CIV-20-172-RAW, 2020 WL 5814161, at *1 (E.D. Okla. Sept. 14, 2020) (decision on remand).  And the Attorney General also brought a substantially similar opioid-related public nuisance claim against Johnson & Johnson.  *See State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 731 (Okla. 2021).  The Supreme Court of Oklahoma rejected the Attorney General's "unprecedented expansion of public nuisance law" and therefore vacated a judgment against Johnson & Johnson.  *Id.*  But had the public nuisance claim been viable, there was no question that the Attorney General had the authority to allege it.

**Pennsylvania.**  Pennsylvania's Constitution provides that the "Attorney General . . . shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law."  Pa. Const. art. 4, § 4.1.  By statute, the Attorney General is charged with "represent[ing] the Commonwealth . . . in any action brought by or against the Commonwealth."  71 Pa. Stat. § 732-204(c).  And, "[w]henever the Attorney General or a District Attorney has reason to believe that any person is" violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), "he may bring an action in the name of the Commonwealth against such person to restrain [the violations] by temporary or permanent injunction."  73 Pa. Stat. § 201-4.  In addition to these statutory grants of power, the Attorney General also has standing to bring claims that raise "a quasi-sovereign interest," including interests that affect the "well-being of its populace."  *Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1144 (Pa. Commw. Ct. 2005) (affirming Attorney General's standing to bring claims for unjust enrichment, violations of the UTPCPL, fraud or misrepresentation, and civil conspiracy).  Acting pursuant to all of these powers, Pennsylvania's Attorney General has previously brought claims in the public interest for negligence, civil

conspiracy, fraud, public nuisance, unjust enrichment, and violations of the UTPCPL.  *See id.* at

1135, 1144; *see also* Cheifetz Decl., Ex. LLL ¶¶ 172-208, 225-39, 251-56.

    **Tennessee.**  Tennessee's Attorney General is a constitutional officer.  *See* Tenn. Const.

art. VI, § 5.  By statute, he is given authority over "[t]he trial and direction of all civil litigated

matters and administrative proceedings in which the state . . . may be interested."  Tenn. Code

Ann. § 8-6-109(b)(1).  The Supreme Court of Tennessee has recognized that this "statute is very

broad in both its specific language and intent" and that "[a] broad discretion is vested in [the

Attorney General] in determining what matters may, or may not, be of interest to the people

generally."  *State ex rel. Inman v. Brock*, 622 S.W.2d 36, 41-42 (Tenn. 1981).  In addition, "[a]s

the chief law enforcement officer of the state, the attorney general may exercise such authority as

the public interest may require and may file suits necessary for the enforcement of state laws and

public protection."  *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990).  In exercising

these duties, "the Attorney General has both extensive statutory power and the broad common-

law powers of the office except where these powers have been limited by statute."  *State ex rel.*

*Com'r of Transp. v. Med. Bird Black Bear White Eagle*, 63 S.W.3d 734, 772 (Tenn. Ct. App.

2001).  Additionally, Tennessee's Attorney General is also specifically authorized to bring

actions to abate a statutory public nuisance, *see* Tenn. Code Ann. §§ 29-3-102, 29-3-103, and for

violations of Tennessee's Consumer Protection Act, *see id.* § 47-18-108(a)(1).

    **Texas.**  In Texas, "the State, the guardian and protector of all public rights . . . [may] in

general protect the interest of the people at large in matters in which they can not act for

themselves."  *Yett v. Cook*, 281 S.W. 837, 842 (Tex. 1926).  And the Supreme Court of Texas

has "recognized that the Attorney General, as the State's chief legal officer, has broad

discretionary power in carrying out his responsibility to represent the State."  *Perry v. Del Rio*,

67 S.W.3d 85, 92 (Tex. 2001); *see also State ex rel. Templeton v. Goodnight*, 11 S.W. 119, 119 (Tex. 1888) (Attorney General has authority to seek abatement of nuisance "whether viewed as a wrong merely to the body politic or as an infringement of the privileges of its citizens"). In addition, Texas's Constitution provides: "The Attorney General shall . . . from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power . . . not authorized by law." Tex. Const. art. IV, § 22. Under this broad grant of power, the Attorney General is authorized to "institute and maintain suit to prevent the exercise by a corporation of a power not conferred by law when it is made to appear that the exercise of the power by the corporation in question will be hurtful to some interest essentially public." *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 531 (Tex. 1975); *see also State v. Paris Ry. Co.*, 55 Tex. 76, 80 (1881) ("[T]he Attorney General may institut[e] . . . suits in the name of the state to enjoin private corporations from exceeding their powers and thereby creating public nuisances."); *State v. Int'l & G.N. Ry. Co.*, 35 S.W. 1067, 1068 (Tex. 1896) (explaining that the constitutional grant of authority to the Attorney General concerning corporations "evidences an intent to make such authority exclusive in such officer, and must be held as an exception to the general authority conferred upon the county attorney to 'represent the state in all cases in the district and inferior courts in their respective counties'").

**Utah.** Utah provides that "[t]he attorney general shall . . . prosecute or defend all causes to which the state . . . is a party, and take charge, as attorney, of all civil legal matters in which the state is interested." Utah Code Ann. § 67-5-1(2). And "as chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require." *State v. Jimenez*, 588 P.2d 707, 709 (Utah 1978). Thus, "the Attorney General's powers are as broad as

the common law unless restricted or modified by statute." *Id.* Utah's Attorney General has used these powers in the past to bring public interest claims for negligence, civil conspiracy, fraud, aiding and abetting, unjust enrichment, and public nuisance. *See State v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1018 (D. Utah 2007) (decision on remand discussing claims brought by Attorney General for fraud and negligence); *see also* Cheifetz Decl., Ex. MMM ¶¶ 135-74, Ex. NNN ¶¶ 225-40, 247-50, 273-302, 316-19.

**Virginia.** In Virginia, "[a]ll legal service in civil matters for the Commonwealth . . . , including the conduct of all civil litigation in which [the Commonwealth is] interested, shall be rendered and performed by the Attorney General." Va. Code Ann. § 2.2-507(A). "Virginia has thus chosen to speak as a sovereign entity with a single voice" by "centraliz[ing]" the control of litigation in which the State is interested in the Attorney General. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951-52 (2019). And, "[a]lthough in Virginia, the common law authority of the Attorney General has not been explicitly recognized by the courts, the constitutional and statutory scheme strongly suggests such a conclusion." *Terry v. Wilder*, Chancery No. HC-1307-2, 1992 WL 885093, at *7 (Va. Cir. Ct. Dec. 29, 1992). Virginia's Attorney General has accordingly brought common law claims elsewhere for public nuisance, civil conspiracy, fraud, and unjust enrichment. *See United States v. Ndutime Youth & Family Servs., Inc.*, No. 3:16cv653, 2020 WL 5507217, at *17-19 (E.D. Va. Sept. 11, 2020) (denying motion to dismiss claims brought by Virginia's Attorney General for common law fraud and unjust enrichment); *Virginia v. McKesson Corp.*, No. C 11–02782 SI, 2011 WL 4853369, at *4 (N.D. Cal. Oct. 13, 2011) (denying motion to dismiss civil conspiracy claim brought by Virginia's Attorney General); *see also* Cheifetz Decl., Ex. OOO ¶¶ 248-62.

**Wisconsin.**  In Wisconsin, "[t]he Attorney General is the chief law officer of the state." *Johnson v. Indus. Comm'n*, 267 N.W. 286, 287 (Wis. 1936).  By statute, Wisconsin authorizes the Attorney General to commence "[a]n action to enjoin a public nuisance."  Wis. Stat. Ann. § 823.02 (providing that such actions "may be commenced and prosecuted in the name of the state . . . by the attorney general"); *see also State v. Quality Egg Farm, Inc.*, 311 N.W.2d 650, 652 (Wis. 1981) ("The department of justice has independent jurisdiction under sec. 823.02, Stats., to seek abatement of public nuisances.") (internal footnote omitted).  Wisconsin also gives the Attorney General broad statutory authority to sue to enjoin fraudulent and deceptive trade practices.  *See* Wis. Stat. Ann. § 110.18(11)(d).  His authority includes the discretion to "accept a written assurance of discontinuance of any act or practice alleged to be [fraudulent or deceptive in violation of the statute]."  *Id.* § 110.18(11)(e).  And, once the Attorney General commences an action, "the trial court may order restoration of pecuniary losses which are suffered as a result of the practices forming the basis for the action" because, under the statute, "the trial court should not limit itself only to giving injunctive relief but should also determine what losses have been suffered by individuals and attempt to fashion relief for those injured persons."  *State v. Excel Mgmt. Servs., Inc.*, 331 N.W.2d 312, 315-16 (Wis. 1983).

**B.     The Authorities Plaintiffs Cite on Pages 38-58 of Their Opposition Do Not Establish that They Have the Exclusive Right to Bring These Claims**

Unable to dispute the general and specific powers of Attorneys General to litigate public claims in which the state is interested, Plaintiffs strain to portray their claims as proprietary or purely local in order to contend they have the exclusive right to bring them.  *See* Opp'n Br. at 38-40 (ECF 345); *see also* Hr. Tr. at 32:15-34:24, 36:14-23.[4]  Plaintiffs' premise is wrong.  None of

---

[4] Plaintiffs' car accident hypothetical is especially strained. Hg. Tr. at 36:14-23 (arguing that they have exclusive authority to bring the claims here because, like accident victims, they are "independent rights holders"). The relationship between unified governmental entities is entirely different than the one between unrelated car accident

their claims are proprietary or purely local.  *See* Reply at 5-20 & App. M; *see also* Hr. Tr. at 41:1-44:18.  Accordingly, their argument that McKinsey must show that each "state attorney general" has the authority to step into their counsel's shoes and "actually represent[] a subdivision," Opp'n Br. at 39, is irrelevant.  State Attorneys General do not need to actually represent subdivisions to litigate and finally resolve, on a statewide basis, public claims that raise statewide interests.  Similarly, Plaintiffs are wrong that their statutory authority to sue or be sued in their own name gives them any exclusive authority over these claims.[5]  These statutes do not in any way limit the broad authorities granted the Attorneys General to litigate public, governmental claims in which the States are interested, nor do the statutes empower Plaintiffs to re-litigate those same claims after the Attorneys General have already settled and released them.  Various plaintiffs in numerous other cases have made this exact argument over and over again and, in each instance, courts have rejected it, holding that similar statutes do not strip attorneys' general of their own powers.  This Court should do the same.  *See, e.g.*, *Certified Question*, 638 N.W.2d at 414 ("[T]he authority of counties to sue in matters of local interest cannot be used to undermine the authority of the state to sue in matters of state interest . . . .").[6]

---

victims.  When performing the governmental functions from which their lawsuits arise, the local governments and school districts were not acting independently of the States, they were acting *for* the States.  *See* Reply at 6-12.  Thus, unlike car accident passengers, who may have distinct legal interests and injuries, Plaintiffs have the same legal interests and pursue relief for the same harms already litigated by the States.  And unlike individual citizens in the car accident example, local governments do not have any protectable due process rights that somehow prevent the States from exercising their authority to resolve or release the same claims.  *See* Reply at 24-25 (citing cases).

[5] While individual citizens also have the right to sue and be sued in their own name and hire their own counsel, that does not mean they have exclusive authority to bring public-oriented claims. To the contrary, just like the Plaintiffs, they are barred from doing so if the state has already represented the same legal interests by litigating such claims itself. *See Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994) (affirming dismissal of public loss of use claims arising from oil spill brought by individual fishermen as barred by *res judicata*).

[6] *See also Warren*, 180 So. 2d at 300 ("The fact that the district attorney, with the consent of the attorney general, may bring a suit of this type, does not limit or exclude the latter's general authority."); *Wade*, 392 F. Supp. at 233 ("Mississippi's Attorney General is granted plenary authority, as the State's chief officer, to defend the Board in this lawsuit of undoubted statewide significance, irrespective of the Board's wishes to proceed through counsel of its own choice."); *Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 495-96 (4th Cir. 1981) (rejecting argument that statute authorizing "local school boards to sue and be sued in their own behalf" superseded the Attorney

The cases Plaintiffs cite on pages 40-58 of their opposition do not alter this straightforward conclusion.

### 1. None of the First Eleven States Plaintiffs Identify Bar the Attorney General from Litigating Public Claims Raising Statewide Interests (Responding to Pages 40-50 of Plaintiffs' Opposition)

Given the overwhelming constitutional, statutory, and common law framework discussed above, *see supra* at 2-20, Plaintiffs faced a heavy burden to demonstrate their "exclusive" right to bring the claims they now seek to relitigate. They failed to satisfy that burden because none of the cases they cite suggest that the Attorney General lacks the power to bring the subject claims.

**Florida.** Relying primarily on *Holland v. Watson*, 14 So. 2d 200 (Fla. 1943), and *Watson v. Caldwell*, 27 So. 2d 524 (Fla. 1946), Plaintiffs' main argument is that "Florida cities and counties are created by statute with express powers, including to sue and be sued." Opp'n Br. at 40-41. In *Shevin*, the Fifth Circuit considered this exact argument, based on these exact cases, and rejected it. Specifically, the Fifth Circuit addressed whether the Florida Attorney General's "common law powers" authorized "the institution of an action under federal law, to recover damages sustained by departments, agencies, and political subdivisions which have not affirmatively authorized suit." 526 F.2d at 270. The Court held that the Attorney General *did* have that power and that the power was not legislatively overridden because of statutes giving state attorneys authority to sue in certain cases. According to the Court, "the Attorney General's authority [was not] seriously cast in doubt by the Florida statutes" because "[t]he fact that

General's powers because "common sense dictates that when an alleged wrong affects governmental units on a state-wide basis, the state should seek redress on their behalf as well as on its own rather than parceling out the actions among local agencies"); *Boothbay v. Getty Oil Co.*, 201 F.3d 429, at *2 (1st Cir. 1999) (rejecting town's argument that statutes reserving right of municipalities to bring their own lawsuits gave them the right "to bring the same environmental enforcement claim where the state has already done so"); *State v. City of Dover*, 891 A.2d 524, 532-33 (N.H. 2006) (rejecting argument that statutes granting political subdivisions the right to sue also give them the right to maintain lawsuits duplicating the States' interests).

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

various statutes delegate specific portions of Florida's litigation power to state's attorneys in no way indicates an abrogation of the Attorney General's common law powers as to other types of litigation; those powers still obtain in the absence of express legislative provision to the contrary." *Id.* at 273.  That holding controls here.

Recognizing that their argument has already been rejected by *Shevin*, Plaintiffs strain to distinguish it.  Their attempt fails.  Quoting one portion of *Shevin*, Plaintiffs claim that the Court was only able to distinguish *Caldwell* and *Holland* because "those cases dealt with a situation in which there was a conflict between the wishes of the Attorney General and the government body as to the body's legal representation."  Opp'n Br. at 41.  Thus, they speculate, had *Shevin* involved a conflict over representation, it would have come out the other way.  But the lack of conflict was not, as Plaintiff's suggest, the only (or even main) reason the Court offered for distinguishing *Caldwell* and *Holland*.  The Court relied first and foremost on the fact that neither case addressed "the Attorney General's litigation power" over claims "in which the State is a party or is otherwise interested."  526 F.2d at 272-73.  That is the precise issue raised here.  And when the Attorney General's litigation power is at issue, the Fifth Circuit unequivocally recognized that those powers are "as broad as the 'protection and defense of the property and revenue of the state,' and, indeed, the public interest requires."  *Id.* at 271.  *Shevin*'s discussion of *Caldwell* and *Holland* was correct.  Neither case addressed the Attorney General's litigation power.  Nor did they hold that a political subdivision has the exclusive right to bring public claims that raise statewide interests.  Instead, they stand for the limited proposition that a state agency and state fund, respectively, were permitted to retain their own counsel and need not accept the Attorney General's legal representation, authority that McKinsey has not challenged.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hawai'i.**  Relying on *Chun*, Plaintiffs argue that "[e]ven assuming [the Attorney General has] authority to represent subdivisions" as a "statutory client," the subdivisions would have been entitled to "loyal representation," which they claim they did not receive.  Opp'n Br. at 41-42.  But McKinsey has never argued that Plaintiffs are the Hawai'i Attorney General's "statutory client[s]."  And in *Chun*, the Court expressly distinguished the facts at issue there from actions, such as those here, where the Attorney General "appears in a proceeding on behalf of the state in her name," and in which she is "entitled to represent what she perceives to be the interest of the state and the public at large."  952 P.2d at 1235 (internal citations omitted).  *Chun* is thus relevant because it recognizes the broad authority of the Attorney General to resolve the same public interest claims that Plaintiffs now seek to relitigate.

**Illinois**.  Plaintiffs cite *People ex rel. Board of Trustees of University of Illinois v. Barrett*, 46 N.E.2d 951 (Ill. 1943), to support their claim that the Illinois Attorney General lacks authority "to represent public corporations."  Opp'n Br. at 42.  But *Barrett* held only that the Attorney General could not unilaterally terminate the employment of the university's appointed counsel and appear on the university's behalf against its wishes.  *See* 46 N.E.2d at 960-65.  The university's power to manage its "internal corporate affairs" and "business affairs" were central to the holding.  *Id.* at 961-63 (noting that university had statutory authority to hire its own employees and was "given contractual powers in all matters relative to the administration of the university").  The case has nothing to do with whether a political subdivision is barred from re-asserting public, statewide claims already resolved by the Illinois Attorney General pursuant to its well-settled common law authority.  *See supra* at 6-8.

**Louisiana.**  Plaintiffs primarily rely on *State ex rel. Caldwell v. Molina Healthcare, Inc.*, 283 So. 3d 472 (La. 2019).  Opp'n Br. at 43-44.  There, the Court discussed the "general rule"

that "the state is without authority to institute suit on a cause of action belonging to a political

subdivision that possesses the right to sue and be sued." 283 So. 3d at 483.  Notwithstanding this

general rule, however, the Court held that the political subdivision and the Attorney General had

concurrent authority to bring contract claims against a healthcare provider because the Attorney

General's claims involved "activities integral to governmental functions."  *Id.* at 487.  In other

words, even though the claims were the proprietary, contract-based claims of a political

subdivision, the Attorney General still had "a right of action" because of the healthcare

provider's "involvement with governmental functions."  *Id.*  This holding is entirely consistent

with McKinsey's argument.[7]

**Maryland.**  Plaintiffs main argument is that "the Attorney General of Maryland

possesses no common law powers" and lacks the statutory authority to "represent '[p]olitical

subdivisions.'"  Opp'n Br. at 44 (citing *Burning Tree Club, Inc.*, 481 A.2d at 796, and Md. State

Gov't Code § 6-107).  Again, McKinsey has never argued that any Attorney General needs

statutory authority to represent political subdivisions to bring claims that address statewide

interests.  Notwithstanding its discussion of common law powers, the Court in *Burning Tree*

confirmed the Maryland Attorney General's constitutional and statutory authority to prosecute

cases "on behalf of the State in order to promote and protect the State's policies, determinations,

and rights."  *Id.* at 797.  That broad grant of authority is more than sufficient to allow the

Attorney General to litigate and release the public interest claims at issue here.

---

[7] Plaintiffs also cite *State v. Tensas Delta Land Co.*, 52 So. 216 (La. 1910), and *Saint v. Allen*, 134 So. 246 (La. 1931).  But nothing in those cases suggest that the Attorney General lacks authority to bring statewide public interest claims.  *See Caldwell*, 283 So. 3d at 480-81 (relying on *Tensas Delta Land* and *Saint* as support for the general rule, but nevertheless deciding that the Attorney General could maintain claim relating to governmental functions).

**Missouri.**  Plaintiffs rely primarily on *State ex rel. Nixon v. American Tobacco Co.*, 34 S.W.3d 122 (Mo. 2000), for the proposition that the Missouri Attorney General lacks authority to "represent subdivisions" and settle their claims.  Opp'n Br. at 44-45.  The Court in *Nixon* had no occasion to consider whether the City was asserting strictly local, proprietary claims, or the same statewide interest claims being settled by the Attorney General.  *See* Reply at 40-41. Whether the City "ha[d] a [proprietary] claim against the tobacco defendants [was] not before [the appellate court]." 34 S.W.3d at 128.  If the City's strictly local proprietary interests were at stake, it would have had "the power to litigate claims in its own right." *Id.*  McKinsey does not contend otherwise.  But that does not mean Plaintiffs can re-litigate the same claims already resolved by the Attorney General where those claims do *not* involve strictly local proprietary matters.

**New Mexico.**  Plaintiffs rely primarily on *State ex. rel. Attorney Gen. v. Reese*, 430 P.2d 399 (N.M. 1967), and N.M. Stat. Ann. § 8-5-3.  Opp'n Br. at 45-46.  *Reese*, however, confirms that, in New Mexico, the Attorney General and district attorneys sometimes seek to represent the same state interests.  There, the district attorney filed an action "on behalf of the state," and the Attorney General sought to "displace the district attorney."  430 P.2d at 403.  Interpreting section 8-5-3 and other state statutes relating to the duties of the Attorney General and district attorneys, the Court held that the Attorney General had no "right to supplant or take over from a district attorney who [was] performing his legal duties." *Id.* at 404.  Nevertheless, the Court confined its holding to the specific facts presented, suggesting that the Attorney General had the "concurrent right with the district attorney to bring an action." *Id.* at 403.  *Reese* does not hold that the Attorney General lacked the authority to bring statewide claims in the first instance.  Nor does it suggest that a district attorney has the right to supplant the Attorney General after the fact by bringing the same statewide claims the Attorney General already litigated, settled, and released.

**New York.**  Plaintiffs rely primarily on *People v. Ingersoll*, 58 N.Y. 1 (1874).  *See* Opp'n Br. at 46-47.  There, the Court's decision turned on the distinction between the "corporate" property of a county—in which the State held no interest—and property held by the county for "public use"—which was subject to the "sovereign" power of the State and for which the Attorney General could generally sue.  *Id.* at 14-18; Reply at 11; Hr. Tr. at 43:6-20.  *Ingersoll* does not suggest that Plaintiffs have the exclusive right to bring public claims to vindicate statewide issues.  *See id.*; *see also City of New York v. State of New York*, 86 N.Y.2d 286, 293 (1995) (citing *Ingersoll* and explaining that general statutory power of municipalities to sue and be sued in own name is at most "concurrent" and "has always been limited '[i]n political and governmental matters [because] municipalities are the representatives of the sovereignty of the State, and auxiliary to it'").  Otherwise, Plaintiffs are correct that New York Executive Law § 63-c(1) was passed in reaction to *Ingersoll*.  *See People v. Townsend*, 233 N.Y.S. 632, 636 (N.Y. Sup. Ct. 1929); *see* Opp'n Br. at 47.  That law allows the New York Attorney General to sue on behalf of political subdivisions in order to recover embezzled funds *even though* such funds belong to the subdivisions.  *See id.*  It does not purport to limit the New York Attorney General from pursuing claims on behalf of the statewide, public interests at issue here.

**Tennessee.**  Plaintiffs fail to cite a single case from Tennessee supporting their position.  *See* Opp'n Br. at 47-48.  Rather, they argue that political subdivisions are not "instrumentalities" that the Attorney General is authorized to represent under Tenn. Code Ann. § 8-6-109(b)(1).  McKinsey never argued that they are, but instead cites section 8-6-109(b)(1) to demonstrate the Attorney General's authority to act in cases where "the state . . . may be interested."  Plaintiffs do not dispute that the Attorney General has such power and, in fact, characterize it as "exclusive."  Opp'n Br. at 47.  Otherwise, Plaintiffs cite one statute permitting the Tennessee Attorney

General to directly represent local governments when funds have been misappropriated, *see* Tenn. Code Ann. § 8-6-109(b)(14), and one statute passed in connection with the J&J/Distributor Settlement confirming that the Attorney General may release political subdivision claims, *see id.* § 20-13-203.  Neither statute limits in any way the Tennessee Attorney General's right to exercise his vast common law authority "as the public interest may require" and to "file suits necessary for the enforcement of state laws and public protection."  *Heath*, 806 S.W.2d at 537.

**Utah.**  *Hansen v. Utah State Retirement Board* (Opp'n Br. at 48-49) held that the Utah Attorney General could not prohibit the state retirement board and trust fund from retaining special counsel in place of his office.  *See* 652 P.2d 1332 (Utah 1982).  But the court's holding turned expressly on the *proprietary* nature of the funds: "The various funds are administered as a common trust fund, known as the Utah State Retirement Fund, solely for the benefit of the beneficiaries *and not for the public at large*."  *Id.* at 1338 (emphasis added); *see also id.* at 1339 ("The Insurance Fund resembles a private insurance company . . . .").  Not only is the case inapposite because nobody is forcing legal representation upon Plaintiffs, the relevant interests supporting the holding were private and proprietary in direct contrast to Plaintiffs' interests here.

**Wisconsin.**  Plaintiffs' primary argument is that Wisconsin's Attorney General "may 'prosecute' litigation in the trial court 'in which the state or the people of this state may be interested' only '[i]f requested by the governor or either house of the legislature.'"  Opp'n Br. at 49 (quoting Wis. Stat. Ann. § 165.25(1m)).  This ignores the Attorney General's express statutory powers to sue to abate nuisances and to enjoin and obtain monetary relief for fraudulent and deceptive trade practices.  *See* Wis. Stat. Ann. § 823.02; *Quality Egg Farm, Inc.*, 311 N.W.2d at 652; *see also* Wis. Stat. Ann. § 110.18(11)(d)-(e); *Excel Mgmt. Servs., Inc.*, 331 N.W.2d at 315-16.  Finally, Plaintiffs' reliance on a recently enacted statute relating to opioid

settlements also fails.  That statute does not apply to this case (or to the private agreement

between McKinsey and the Wisconsin Attorney General).  Instead, it only applies to "the [opioid

MDL in Ohio] and any proceeding filed in a circuit court in [Wisconsin] containing allegations

and seeking relief that is substantially similar to allegations contained and relief sought in [that

MDL]."  Wis. Stat. Ann. § 165.12(1).  And even if the statute did apply, it would bar Plaintiffs'

complaints against McKinsey because they were filed in December, 2021, and therefore not

"pending as of June 1, 2021."  *Id.* § 165.12(7).

> **2.      In the Remaining Eleven States, Plaintiffs Concede that No Authority Prevents Attorneys General from Bringing the Same Claims as Plaintiffs (Responding to Pages 50-58 of Plaintiffs' Opposition)**

Plaintiffs' arguments with respect to the second grouping of eleven states are even further

afield than the first.  For this group, Plaintiffs concede there is no clear authority prohibiting

Attorneys General from directly representing political subdivisions (an issue that is, in any event,

irrelevant to McKinsey's motion).  But more to the point, Plaintiffs again fail to cite a single

statute or case suggesting that the Attorneys General lack the power to represent and resolve

statewide claims on behalf of their States as a whole.  Instead, they primarily attempt to muddy

the waters by variously arguing that, under certain state statutes, cities or counties do not qualify

as "the State," a "department of the state," "political subdivisions," "state agenc[ies]," "the

Commonwealth," "Commonwealth agencies," or different forms of governmental entities

referenced in the statutes.  Opp'n Br. at 50-57 (discussing state statutes in Alabama, Kentucky,

Mississippi, Pennsylvania, and Virginia).  McKinsey's motion does not depend on a finding that

Plaintiffs satisfy any of these statutory definitions.  It is based on the broad authority the Attorneys General have to litigate claims in which their respective States are interested.[8]

And Plaintiffs once again wrongly rely on statutes that recognize them as bodies politic with authority to sue in their own name.  Opp'n Br. at 50-57 (discussing statutes in Alabama, California, Georgia, Mississippi, Ohio, Oklahoma, and Virginia); *see also supra* at 21 & n.6.[9]

Plaintiffs' remaining state-specific arguments are equally unavailing.

**Alabama.**  Plaintiffs cite *Loyd v. Ala. Dept. of Corr.*, 176 F.3d 1336 (11th Cir. 1999), as support for their argument that "the AG [lacks] the authority to represent the county itself." Opp'n Br. at 51.  That issue was not raised or addressed in *Loyd*, and is, in any event, irrelevant to McKinsey's motion.  The Attorney General does not need specific authority to represent counties because he already has the general authority to raise and resolve claims in which the state is interested.  Moreover, *Loyd* supports McKinsey's argument that the Attorney General

---

[8] Plaintiffs concede that, in Kentucky, counties are "generally recognized" as subdivisions.  Opp'n Br. at 53.  Thus, even under Plaintiffs' unduly restrictive argument concerning the Kentucky Attorney General's powers, the claims asserted by various Kentucky counties should be dismissed.  As for Plaintiffs' assertion that Kentucky cities are not political subdivisions, they are incorrect.  *Wilson v. City of Cent. City*, 372 S.W.3d 863, 868 (Ky. 2012), considered the particular language of the statute at issue (the State's Whistleblower Act) but explained that for other purposes cities are considered subdivisions.  *See id* at 867; *accord Ewald's Ex'r v. Louisville*, 232 S.W. 388, 391 (1921) (describing city as "an arm and subdivision of the Commonwealth"), *Booth v. City of Owensboro*, 118 S.W.2d 684, 685 (1938) (describing cities as "instrumentalities of the Commonwealth").

[9] Plaintiffs have also argued that "home rule rights," *see* Opp. Br. at 52, or, put differently, "rights . . . typically assigned to local entities," *see* Hr. Tr. at 48:16-22, establish that local governments have exclusive authority to litigate these claims.  But Plaintiffs previously argued that home rule rights apply only to legislation not litigation. Reply at 16 n.9.  Even if home rule rights authorized any Plaintiffs to litigate, such rights would not be *exclusive* unless Plaintiffs were litigating *strictly* local and not, as here, statewide issues.  *See New Jersey v. New York*, 345 U.S. 369, 372-73 (1953) (noting that even if city was responsible for its own water system, that responsibility was shared by state's position as *parens patriae* in protecting all citizen's rights to equitable apportionment of water rights); *cf. Empire State Chapter of Associated Builders v. Smith*, 21 N.Y.3d 309, 316-17 (2013) ("[T]here must be an area of overlap, indeed a very sizeable one, in which the state legislature acting by special law and local governments have concurrent powers. . . . 'The test is . . . that if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality. . . . I assume that if the affair is partly State and partly local, the city is free to act until the State has intervened.  As to concerns of this class there is thus concurrent jurisdiction for each in default of action by the other.'" (citing *Adler v. Deegan*, 251 N.Y. 467, 491 (1929) (Cardozo, J.))).  *See also* Reply at 15-18 (citing additional cases).

---

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

may have a concurrent legal interest with local governments where, like here, the legal "interests of the State" are implicated.  176 F.3d at 1340.

**California.**  Plaintiffs similarly cite a pair of California cases for the proposition that the Attorney General typically cannot (though sometimes does) directly represent a subdivision that is seeking to recover for the subdivision's own injuries.  Opp'n Br. at 52 (citing *People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921 (Ct. App. 2013), and *Pac. Gas & Elec. Co. v. Cnty. of Stanislaus*, 947 P.2d 291 (Cal. 1997)).  But McKinsey acknowledges that a state attorney general ordinarily does not step in to represent an individual subdivision in a matter in which the state has no legal interest.  On the other hand, an Attorney General can – and often does, and rightfully should – represent the state in connection with issues that concern the state as a whole, even when individual subdivisions have overlapping legal interests.  Unsurprisingly, none of Plaintiffs' cited authorities prohibit the California Attorney General from pursuing claims to vindicate such interests.  Put differently, none of Plaintiffs' authorities establish that the Attorney General lacks what this Court has termed "concurrent" authority to file the claims in this case.[10]

Although Plaintiffs claimed public nuisance in California was their "most clear-cut" example of exclusive authority, Hr. Tr. at 33:21-24, the law is clear that the California Attorney General has, at least, the same authority to file public nuisance actions as Plaintiffs.  It is true that, in California, actions to abate a public nuisance may be brought "by the district attorney or

---

[10] The third authority cited by Plaintiffs – California Government Code § 12652(a) – reinforces the conclusion that the Attorney General has the authority to pursue claims that implicate a subdivision's legal interests.  That provision specifically authorizes the Attorney General to bring an action under the False Claims Act to recover state and "political subdivision funds," while allowing the affected subdivision to intervene in any such action.  *Id.* § 12652(a)(2)-(3).  Notably, the same provision also authorizes a political subdivision to bring an action involving state funds.  *Id.* § 12652(b)(2).  In that event, the Attorney General has the prerogative to "assume primary responsibility for conducting the action," with the subdivision continuing as a party.  *Id.* § 12652(b)(3)(A).  At a minimum, therefore, the AG has concurrent authority to bring claims under this section when state funds are involved, even though political subdivisions' interests are affected.

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists," provided that they bring such actions "in the name of the people of the State of California."  Cal. Civ. Proc. Code § 731.[11]  But it does not follow – and the Code nowhere states – that the Attorney General lacks concurrent authority to also bring claims to abate such public nuisances, especially statewide.  To the contrary, "[a] public nuisance may be abated by any public body or officer authorized thereto by law," which of course includes the Attorney General.  Cal. Civ. Code § 3494.  Indeed, history is replete with public nuisance actions initiated by the California Attorney General to abate all manner of harms, from stream pollution to river diversion to obstructing public highways.  *See, e.g.*, *Cal. Oregon Power Co.* 291 P.2d at 463 ("attorney general may bring an action to abate a nuisance" against hydroelectric company for causing abrupt fluctuations in river flows); *People v. Glenn-Colusa Irr. Dist.*, 15 P.2d 549 (Cal. Dist. Ct. App. 1932) (action against irrigation district for harming fish by diverting river water); *People ex rel. Roberts v. Beaudry*, 27 P. 610, 611-12 (1891) (action against private citizens for erecting illegal obstructions on a public street); *see also People v. New Penn Mines, Inc.*, 212 Cal. App. 2d 667, 671 (Ct. Dist. App. 1963) (collecting cases in which California courts have "distinctly sanctioned the Attorney General's maintenance of nuisance abatement actions aimed at stream pollution harmful to fish life").[12]  Public nuisance claims do not exclusively belong to political subdivisions.[13]

---

[11] Thus, even if § 731 provided Plaintiffs with concurrent authority to bring a public nuisance claim, as with many similar statutes discussed previously and herein, the real party in interest is the State.  *See* Reply at 44-46.

[12] Plaintiffs rely on *New Penn Mines*, *see* Opp'n Br. at 36.  But that case involved the Dickey Act, a specific statutory scheme that the court found precluded the AG from controlling water pollution litigation, in contrast to the otherwise "undoubtedly broad and substantial powers of the Attorney General in public nuisance abatement."  212 Cal. App. 2d at 675.

[13] At oral argument, Plaintiffs' counsel also argued that a local government has the exclusive right to bring a public nuisance claim "existing in that community," citing this Court's ruling in *City of San Francisco v. Purdue Pharma L.P.* for that proposition.  Hr. Tr. at 31:10-32:6.  But *City of San Francisco* recognized no such thing.  Instead, the Court explained that "[t]he City . . . alleges that Defendants' conduct created a public nuisance—the opioid

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Michigan.**  Plaintiffs' only reference to Michigan in this part of their brief is their claim that *Certified Question* "is distinguishable for the reasons explained in Section 4.c."  Opp'n Br. at 50.  But this case and *Certified Question* present nearly identical facts.  In *Certified Question*, a single county brought suit seeking recovery "for damages incurred in providing health care services to smokers" and the Michigan Supreme Court concluded that the suit was barred by the State's prior settlement.  638 N.W.2d at 411-12.  Plaintiffs do not explain why tobacco-related claims brought by a single county should be deemed "exclusively statewide" (Opp'n Br. at 35), and thus within the Attorney General's authority, while opioid-related claims brought by political subdivisions (including class claims on behalf of all such subdivisions) within a state should be deemed strictly local.  There is no basis for this Court to depart from *Certified Question*'s holding as applied to Michigan, and that same holding shows why Plaintiffs' argument fails in the other Subject States.

**Mississippi.**  Plaintiffs cite *Warren* (discussed above, *see supra* at 11) but only in an unsuccessful attempt to distinguish it.  *See* Opp'n Br. at 55.  There, the Court held that the Attorney General could even directly represent a county (though again that is not at issue here) because the lawsuit addressed "a matter of statewide concern," one that pertained to matters in "all . . . eighty-two counties" in Mississippi.  180 So. 2d at 300.  The same is true of a nationwide opioid epidemic, as demonstrated by, among other things, Plaintiffs' own allegations acknowledging the epidemic's statewide (and nationwide) impact and the fact that more than 35

---

epidemic—in San Francisco . . . . Although the Court uses 'the City' as shorthand, its use encompasses both the City and County of San Francisco *and* the People of the State of California for the state law claims."  491 F. Supp. 3d 610, 669 & n.35 (N.D. Cal. 2020) (emphasis in original).  At most, therefore, the case demonstrates that the state and local governments have concurrent authority to bring such claims because they share the same legal interests. *See id.*; *see also* Hr. Tr. at 41:5-42:3 (discussing *City of San Francisco*).  Similarly, whatever authority Plaintiffs may or may not have to bring a RICO claim is coextensive with (and not exclusive to) the States' authority to do so and, in any event, is a question of federal, not state law. *See id.*

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

cities and counties in Mississippi have brought identical claims premised on nearly identical allegations.[14]  Given the realities of the opioid epidemic, Plaintiffs' continued argument that "opioid litigation raises particularized local concerns" rings hollow.  The fact that *Warren* did not involve issues of release or *res judicata* does not negate application of the Court's actual holding about the scope and breadth of the Attorney General's powers.

**Ohio.**  Plaintiffs agree that "[t]he AG 'is the chief law officer for the state and all its departments' and 'shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested.'"  Opp'n Br. at 55-56 (quoting Ohio Rev. Code Ann. § 109.02).  They do not argue or even suggest that the State of Ohio was not directly interested in litigating claims relating to the opioid epidemic.  Plaintiffs also rely on Ohio Rev. Code Ann. § 715.44, which authorizes "a municipal corporation" to [a]bate any nuisance."  As with their reliance on a similar provision in California, nothing in section 715.44 indicates that a municipal corporation's authority to abate a nuisance is exclusive.  It is not.  *See State ex rel. Petro*, 2006 WL 2924762, at *4-5.  And finally, Plaintiffs' reliance on a press report discussing proposed legislation has no bearing on the Attorney General's powers under Ohio law or on his ability to litigate, settle, and release public, statewide claims.[15]

---

[14] Compl., *Benton Cty. v. McKinsey & Co., Inc.*, Case No. 3:21-cv-09917-CRB, ¶ 223 (N.D. Cal. Nov. 12, 2021) (ECF 1) (alleging that "[d]eceptive marketing . . . substantially contributed to an explosion in the use of opioids across the country, including in this State and in Plaintiffs' Communities"); Compl., *Amite Cty. v. McKinsey & Co., Inc.*, Case No. 3:21-cv-09831-CRB, ¶ 228 (N.D. Cal. Nov. 12, 2021) (ECF 1) (identical allegation).

[15] The article cited by Plaintiffs does not include the text of the proposed legislation, which it reports as a "draft bill" that had "not yet been introduced," though it explains that the bill aimed to give the Ohio AG the "sole and exclusive authority" to file certain lawsuits.  Jeremy Pelzer, *Bill seeks to give Ohio AG Dave Yost control over local opioid lawsuits*, Cleveland.com (Aug. 28, 2019), *available at* https://www.cleveland.com/open/2019/08/bill-seeks-to-give-ohio-ag-dave-yost-control-over-local-opioid-lawsuits.html.  Plaintiffs have conceded that, even if the Attorney General never obtained "sole and exclusive authority" to bring the claims here, Plaintiffs' claims were nevertheless released if the Attorney General had concurrent authority over the claims.  *Id.*; *see also* Hr. Tr. at 8:5-8, 13:21-14:4, 32:12-15.  Nothing in the proposed bill suggests the Attorney General did not have such authority.  Plaintiffs' similar contention at oral argument that the Ohio Attorney General tried to argue in the Ohio MDL that he had "exclusive authority . . . to bring these claims," Hr. Tr. at 14:16-23, is therefore also beside the point.  And, in any event, the issue in the Ohio MDL was whether the Plaintiffs had concurrent standing to bring the claims in the

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Oklahoma.**  Plaintiffs downplay the broad statutory grant of authority Oklahoma's Attorney General enjoys.  He is not just "authorized '[t]o appear for the state' in civil actions," as Plaintiffs claim.  Opp'n Br. at 56 (quoting Okla. Stat. Ann. tit. 74, § 18b).  He is also authorized "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue," a standard easily satisfied with respect to opioid-related litigation.  Okla. Stat. Ann. tit. 74, § 18b(3).  Contrary to Plaintiffs' suggestion, neither of the cases they cite discuss circumstances where "the Oklahoma legislature . . . transfer[red] litigation authority from subdivisions to state entities."  Opp'n Br. at 56 (citing *Marshall Cnty. v. Homesales, Inc.*, 339 P.3d 878, 884 (Okla. 2014); *R.J. Edwards, Inc. v. Hert*, 504 P.2d 407, 418-19 (Okla. 1972)).  And, regardless, McKinsey has never argued that the authority to litigate opioid claims resided with Plaintiffs but was transferred to the Attorney General.  The Attorney General is authorized to litigate these claims even if Plaintiffs may also have the concurrent authority to do so.

**Texas.**  Plaintiffs' main claim is that "[t]he Texas Attorney General's authority is circumscribed by statute" and that he "does not even have general authority to bring affirmative litigation in the trial courts."  Opp'n Br. at 58.  This argument ignores the broad authority the Attorney General has, under Texas's Constitution, to "take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power . . . not authorized by law."  Tex. Const. art. IV, § 22; *see also supra* at 17-18.  Accordingly, Plaintiffs miss the mark by relying on specific statutory grants of power in an effort to demonstrate that those statutes limit the Attorney General's authority.  The Attorney General primarily derives his

---

first instance, over the objection of the Attorney General, not whether the Attorney General could later release those same claims or whether *res judicata* would preclude Plaintiffs from continuing to litigate claims that the Attorney General already settled.  *Id.* at 45:13-46:16.

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

relevant power from the Constitution and, indeed, in some instances his power is "exclusive." *Security State Bank of San Juan v. State*, 169 S.W.2d 554, 561 (Tex. Civ. App. 1943).

**Virginia.**  Other than their general points (addressed above), Plaintiffs also cite Va. Code Ann. § 15.2-900, which provides that "localit[ies] may maintain an action to compel a responsible party to abate . . . a public nuisance."  Again, the statute does not confer exclusive rights in the localities.  And Virginia's Attorney General has broad authority to serve the interests of the State, including the common law authority to abate nuisances.  *See supra* at 19.

### C.    The Attorneys General Have the Authority to Settle and Release the Claims at Issue

Two principles are clear from the discussion above.  First, the Attorneys General all have broad powers to litigate public claims in which their States are interested.  And second, none of Plaintiffs' claims are exclusive to political subdivisions or school districts.  Whatever authority they might have to litigate opioid-related claims, at most, that authority is concurrent with, and does not supersede, the powers of the Attorneys General. From those two principles, a third naturally follows: the Attorneys General are authorized to release the claims at issue because the power to litigate statewide, public claims must include the power to release them.  *See, e.g.*, *Bunge Corp.*, 25 N.Y.2d at 98 ("Implicit in any authority to commence an action is power over its disposition by discontinuance or otherwise.").  Indeed, any contrary conclusion would create an untenable situation where the Attorney General is authorized to bring claims of statewide interest on behalf of the State, yet unable to finally and fully resolve those claims on a statewide basis.  Such an inherently inconsistent result would hamper Attorneys General from carrying out their constitutional, statutory, and common law duties, finds no support in the law, and should not be adopted.  *See, e.g.*, *Amici Curiae* States' Br. at 10-19 (ECF 317-1).

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

This Court need not blaze a new, uncharted path to rule for McKinsey. Multiple courts have addressed the right of Attorneys General to release statewide claims. Most notably, the Supreme Court of Michigan directly addressed this issue in *Certified Question*. There, the Court considered whether "the Michigan Attorney General [had] the authority to bind/release claims of a Michigan county as part of a settlement agreement in an action that the Attorney General brought on behalf of the State of Michigan." 638 N.W.2d at 412. In answering that question in the affirmative, the Court considered the interplay between the authority of the Attorney General and the counties in Michigan. It concluded that "the Attorney General has the authority to intervene in and to initiate litigation on behalf of the state" in "matters of state interest," whereas the counties have authority, to the exclusion of the Attorney General, "to sue in matters solely of local interest." *Id.* at 414. Relying on this clear delineation of authority, the Court held that, "[b]ecause the Attorney General possesses the authority to sue on behalf of the state in matters of state interest, it follows that the Attorney General necessarily has the authority to sue on behalf of the state's political subdivisions in matters of state interest." *Id.* The Court also held that "the Attorney General has broad authority to sue and settle with regard to matters of state interest, including the power to settle such litigation with binding effect on Michigan's political subdivisions." *Id.* And finally, the Court rejected "[t]he county's argument that it has the exclusive authority to bring suit" because, although "in some instances,  a county has the exclusive authority to sue, . . . that issue is not presented where, as here, the claims asserted by the county may be of state interest." *Id.* at 415.

*Certified Question* is hardly an outlier. In *People ex rel. Devine v. Time Consumer Mktg., Inc.*, the Appellate Court of Illinois held "that the Illinois Attorney General, as the chief legal officer of Illinois, had the authority to . . . releas[e] Time from liability for *all claims* which were

or could have been brought pursuant to the Consumer Fraud Act . . . , including the claims

asserted by [the State's Attorney for Cook County]."  782 N.E.2d 761, 768 (Ill. App. Ct. 2002)

(emphasis added).  Importantly, in *Time Consumer*, the Court held that the local prosecutor's

claims were released by a settlement executed by the Illinois Attorney General that released "all

claims on behalf of such State . . . with respect to all claims . . . which were asserted or could

have been asserted" even though the release made no express reference to other subordinate

governmental agencies or subdivisions.  *Id.* at 765.

In *Ex parte King*, the Supreme Court of Alabama acknowledged that the Attorney

General and the District Attorney had concurrent authority to prosecute "civil actions on behalf

of the State."  59 So. 3d at 28.  Nevertheless, relying on the Attorney General's broad powers

under Alabama law, the Court held that, "[w]here, as here, the attorney general clearly directs

and instructs that litigation on behalf of the State be dismissed, his instructions in that regard take

precedence over a district attorney's desire to proceed with the action."  59 So. 3d at 28.[16]

And in *State ex rel. Derryberry v. Kerr-McGee Corp.*, the Supreme Court of Oklahoma

held that, because "[t]he Attorney General has authority to bring law suits [under Oklahoma law]

and to assume and control the prosecution thereof *in the state's best interest*[, i]t must logically

follow that he has authority to compromise and dismiss the suit."  516 P.2d at 818 (emphasis

added); *see also Curtis v. Altria*, 813 N.W.2d 891, 902 (Minn. 2012) (holding individual's claims

released by Minnesota Attorney General settlement that released "any Claims relating to the

---

[16] *See also State ex rel. Carmichael v. Jones*, 41 So. 2d 280, 284 (Ala. 1949) ("Ordinarily the attorney general, both under the common law and by statute, is empowered to make any disposition of the state's litigation which he deems for its best interest. His power effectively to control litigation involves the power to discontinue if and when, in his opinion, this should be done.  Generally, therefore, the attorney general has authority to direct the dismissal of proceedings instituted in behalf of the state.").

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR

subject matter of this action which have been or asserted or could be asserted now or in the future" despite no express reference to individuals).[17]

The power to litigate must carry with it the power to settle.  Because the Attorneys General have authority to litigate all the same claims Plaintiffs are bringing, they also have the power to settle them on a statewide basis.

### D.    *Res Judicata* Independently Bars Plaintiffs' Claims

Regardless of the elements required to establish the defense of release, McKinsey prevails on the independent ground of *res judicata*.  Plaintiffs' attempt to create a new element for that separate defense—namely, that the Attorneys General were "authorized" to "represent subdivisions" or "bring subdivision claims" (Opp'n Br. at 39)—is unavailing.  As McKinsey showed in its reply, authority to represent a non-party is not an element of *res judicata*, and McKinsey does not need to show that the Attorneys General were empowered to serve as the subdivisions' direct legal representatives to demonstrate that Plaintiffs' claims are precluded. Reply at 34-37.  Rather, the law is clear that privity—the relevant element of *res judicata*— exists whenever "*the interests* of the nonparty can be said to have been represented in the prior proceeding." *Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987) (emphasis added); *see also City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 764 (9th Cir. 2003) (barring claims because the State "was clearly authorized to resolve the dispute involving

---

[17] Numerous Subject States also provide that Attorneys General have the ability to settle the claims they are authorized to bring.  *See, e.g.*, *Lyle v. Luna*, 338 P.2d 1060, 1065 (N.M. 1959) ("the attorney general possesses entire dominion over every suit instituted by him in his official capacity" including the power "to make any dispositions of such suits that he deems best for the interest of the State") (internal quotations and citations omitted); *Kennington-Saenger Theatres, Inc. v. State ex rel. Dist. Attorney*, 18 So. 2d 483, 488 (Miss. 1944) (holding that the district attorney would perform his or her "duties . . . within his territorial jurisdiction in connection with matters local to such jurisdiction, as distinguished from matters of state-wide public interest."); La. Rev. Stat. Ann. § 49:257(D) (Attorney General among state actors authorized "to determine the purposes of the state . . . to be served by the litigation or by the making of an offer or the acceptance of an offer to settle or compromise such litigation").

the oil spill on behalf of the public"); *Gault*, 627 S.E. 2d at 553-54 (applying *res judicata* to individual's "public claims" because same claims were released in a settlement executed by Georgia's Attorney General); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403 (1940) (holding privity turns on "whether or not in the earlier litigation the representative of the [government] had authority to represent [the non-party's] *interests* in a final adjudication of the issue in controversy") (emphasis added).  Plaintiffs do not dispute that the Attorneys General were authorized to represent the statewide public interests at issue here.  Nor do they identify any legal interests they are pursuing that the Attorneys General could not also have pursued.

In the final analysis, Plaintiffs are pursuing the exact same legal interests, and seeking to remediate the same harms, pursued and remediated by the Attorneys General. Therefore, they are in privity with the States and bound by the States' settlement with McKinsey under the doctrine of *res judicata*, regardless of who was authorized to bring any particular formal cause of action. Mot. at 18-32 (ECF 310); Reply at 5-20.

### III.  CONCLUSION

For the foregoing reasons, McKinsey respectfully requests that the Court dismiss in their entirety the claims of the Plaintiffs subject to this motion.

Dated:   New York, New York
        May 5, 2022

**STROOCK & STROOCK & LAVAN LLP**

By:    /s/ *David M. Cheifetz*
James L. Bernard (Admitted *Pro Hac Vice*)
(jbernard@stroock.com)
David M. Cheifetz (Admitted *Pro Hac Vice*)
(dcheifetz@stroock.com)
180 Maiden Lane
New York, NY 10038
Phone: (212) 806-5400

**HINSHAW & CULBERTSON LLP**

Vaishali S. Rao
(vrao@hinshawlaw.com)
Sarah E. King
(sking@hinshawlaw.com)
151 North Franklin Street
Chicago, IL 60606
Phone: (312) 704-3000

**MORRISON & FOERSTER LLP**

Jessica Kaufman (Admitted *Pro Hac Vice*)
(jkaufman@mofo.com)
Mark David McPherson (CA SBN 307951)
(mmcpherson@mofo.com)
250 West 55th Street
New York, NY 10019
Phone: (212) 468-8000

**CLARENCE DYER & COHEN LLP**

Josh A. Cohen (CA SBN 217853)
(jcohen@clarencedyer.com)
Shaneeda Jaffer (CA SBN 253449)
(sjaffer@clarencedyer.com)
899 Ellis Street
San Francisco, CA 94109
Phone: (415) 749-1800

*Attorneys for Defendants McKinsey &*
*Company, Inc., McKinsey & Company, Inc.*
*United States, McKinsey & Company, Inc.*
*Washington D.C., and McKinsey Holdings, Inc.*

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS
OF RES JUDICATA AND RELEASE, CASE NO. 3:21-MD-02996-CR