James L. Bernard (Admitted *Pro Hac Vice*)
(jbernard@stroock.com)
David M. Cheifetz (Admitted *Pro Hac Vice*)
(dcheifetz@stroock.com)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
Telephone:  (212) 806-5400

Josh A. Cohen (CA SBN 217853)
(jcohen@clarencedyer.com)
Shaneeda Jaffer (CA SBN 253449)
(sjaffer@clarencedyer.com)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Telephone:  (415) 749-1800

*Attorneys for Defendants McKinsey & Company, Inc., McKinsey & Company, Inc. United States, McKinsey & Company, Inc. Washington D.C. and McKinsey Holdings, Inc.*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This document relates to:<br><br>Master Complaint (Subdivision)<br>Master Complaint (School Districts)<br>Individual Cases Listed in Appendix L | Case No. 3:21-md-2996-CRB (SK)<br><br>**MCKINSEY DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINTS ON THE GROUNDS OF *RES JUDICATA* AND RELEASE** |

## I. INTRODUCTION

McKinsey's motion to dismiss is based on the routine application of principles of release and *res judicata* that preclude Plaintiffs from relitigating claims the Attorneys General already resolved in all of the Subject States. The Court has established a clear framework for resolving the motion: if the Attorney General in a state had at least **concurrent** legal authority to bring the claims now being asserted in this lawsuit by that state's political subdivisions, then Plaintiffs are barred from bringing those claims. On the other hand, if, and only if, political subdivisions in a state had the **exclusive** legal authority to bring certain claims, then Plaintiffs may proceed with those claims. Hr. Tr. 32:7-14. To help apply this framework, the Court directed the parties to submit supplemental briefs identifying the party authorized to assert each claim brought in this action. While McKinsey's brief demonstrated that the AGs had at least concurrent authority to bring **all** of the claims, Plaintiffs' brief fails to show that political subdivisions have exclusive authority over **any** of the claims. The Court should therefore grant the Motion.

## II. BACKGROUND

McKinsey's opening brief established that Plaintiffs represent the same legal interests and bring the same claims in these lawsuits that were previously resolved by the Attorneys General. Motion at 18-32, 37-44.

In opposition, Plaintiffs did not contest that they are asserting the same cause of action as the states because Plaintiffs' suits arise from the same operative facts as the states' suits. Instead, Plaintiffs asserted that political subdivisions have proprietary or local interests that sometimes diverge from the states' governmental interests. Opp. Br. at 21-25.

In reply, McKinsey explained that while a subdivision can sue to vindicate its proprietary or strictly local interests, that is not what happened here. Rather, Plaintiffs seek to redress the very same public, governmental interests in providing health and human services to abate the

opioid epidemic that were already redressed by the Attorneys General on a statewide basis. Reply at 5-20, 27-30, 37-38.

During oral argument, the Court described the inquiry it would undertake to resolve the motion. As the Court explained: "You've got to look state by state, and if the claims are exclusively within the jurisdiction of the entity that is now suing, they have incentive. If it's broader than that, that is, there's concurrent jurisdiction or even exclusive jurisdiction with the Attorney General of the state, then it's been released." Hr. Tr. at 32:9-14. Plaintiffs' counsel responded, "That's right." *Id.* at 32:15. Plaintiffs conceded at least two other times at oral argument that claims within the concurrent authority of the Attorneys General and the subdivisions are now barred. *Id.* at 8:5-8, 13:21-14:4. McKinsey agreed that the AG settlement does not bar claims that "only" political subdivisions are authorized to bring. *Id.* at 26:8-25.[1]

The Court's view at oral argument was that "the vast number of claims we're talking about are concurrent jurisdiction." Hr. Tr. at 19:11-15. The Court then asked for additional briefing to help determine, on a state-by-state and claim-by-claim basis, if Plaintiffs had an exclusive right to bring any claims here. ECF 370. However, as explained below, Plaintiffs' brief fails to address that question or establish that they have any such exclusive authority.

### III. PLAINTIFFS' SUPPLEMENTAL BRIEF FAILS TO ESTABLISH THEIR EXCLUSIVE AUTHORITY TO BRING ANY CLAIMS

Plaintiffs do not, because they cannot, point to a single state constitution, statute, or case that gives them the exclusive right to bring claims to abate a statewide epidemic like opioids. Lacking legal authority to support that argument, Plaintiffs now attempt to steer the Court away

---

[1] To be clear, however, McKinsey has never conceded that any such claims exist here.

from the framework it has established (and with which they agreed) and make a number of assertions that are neither supportive of nor relevant to their "exclusive authority" theory.

***First***, and most prominently, Plaintiffs recycle an argument they used at oral argument, Hg. Tr. at 36:14-23, comparing themselves (and their respective states) to victims of a car accident and suggesting that, like such victims, each should have an independent right to "prosecute claims in defense of [their] own interests." Supp. Opp. Br. at 1-2. But unlike the "simplest of tort cases" in which two unrelated people are hurt in a common accident and suffer distinct injuries, here the subdivisions and the states are directly related because the subdivisions acted as instrumentalities or agents of the state when they provided health and human services to the states' citizens. Supp. Br. at 20 n.4. Plaintiffs may not relitigate the ***same*** claims to recover for the same harms that the states were empowered to resolve on their behalf. *See id.*[2]

Plaintiffs' hypothetical reflects the fundamental error that permeates their entire argument. They assume, but never demonstrate, that they are bringing discrete claims for discrete injuries. The Court rightfully pressed Plaintiffs to explain their assertion at oral argument that their claims "exist discretely and separately on a local basis," but Plaintiffs failed to do so. Hr. Tr. at 32:15-34:24 (doubting Plaintiffs' argument that their claims are discrete because they involve different local "roles and responsibilities" and "impacts" and noting that "will always be" the case).[3] As McKinsey has previously established, Plaintiffs' claims are not proprietary, but governmental—and thus squarely within the AG's legal authority to assert, litigate, and

---

[2] Contrary to Plaintiffs' gross overstatement, McKinsey has never argued that the states are "empowered to assert all claims that any subdivision might put forward." Supp. Opp. Br. at 1. Nor is McKinsey "confuse[d]" by the Court's proposed framework. *Id.* McKinsey agrees that by "concurrent jurisdiction" what the Court meant was the "legal entitlement to bring the same claim." *Id.* What Plaintiffs refuse to acknowledge is that these ***are*** the same claims.

[3] The Court was right that the fact that Plaintiffs may have the delegated responsibility of dealing with opioids at the local level does not transform a statewide legal interest into a purely local one or allow the political subdivisions to pursue claims after the state has already done so. *See* Supp. Br. at 30 n.9; Reply at 11-12, 15-18, 22-24.

resolve. *See* Reply at 6-14 & n.5; Hr. Tr. at 28:13-30:3 (discussing governmental interest in various public services); *id.* at 41:1-44:1 (discussing governmental interest in abatement of drug paraphernalia on public property).[4] Nor are Plaintiffs' claims strictly local. Rather, the AGs share a common legal interest in addressing a statewide problem no matter how it manifests in any particular community. Reply at 15-18.[5] Plaintiffs, thus, lack exclusive authority to bring them.

*Second*, contrary to the plain language of statutes that confer express concurrent authority to Attorneys General and local state attorneys (and others) to bring claims, *see, e.g.*, Miss. Code § 95-3-5 ("Whenever a nuisance exists, the attorney-general of the state, the district attorney of the district, the county attorney, or any person who is a citizen of the county, may bring an action in equity in the name of the State of Mississippi . . ."), Plaintiffs argue (at 10, 19, 22, 25) those statutes grant authorized parties exclusive rights, rather than concurrent authority, to bring claims. Supp. Opp. Br. at 22 ("That both parties can bring the same cause of action does not mean they are bringing the same claim"). That argument incorrectly assumes that Plaintiffs' claims here are somehow different from the states' claims.[6] Where the claims are the same, as

---

[4] While Plaintiffs continue to parrot (at 2, 7, 31 n.22) their conclusory allegation that they are pursuing their "own interests," Subdivision MCC ¶ 541, that mantra does not somehow transform all of the specific **governmental** interests actually alleged in the MCC into **proprietary** interests outside of the authority of the AGs to resolve. *Id.* ¶ 542; Reply at 6-14 & App. M; Hr. Tr. at 28:13-30:3; *see also City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 648, 653 (N.D. Cal. 2020) (Breyer, J.) (holding that "the cost of providing governmental services to combat the opioid epidemic" did not "constitute injuries in the City's proprietary capacity").

[5] Plaintiffs point (at 7-8) to other trials they say demonstrate that "abatement measures required to abate the public nuisance . . . are all distinctly local," and will depend on proof of local harm, but this does not mean they have identified any distinctly local **legal interest** that the state, itself, does not share and cannot resolve. *See, e.g., City of Martinez v. Texaco Trading & Transp. Inc.*, 353 F.3d 758, 764 (9th Cir. 2003) (resolution by state of public, governmental interests in abating purely local oil spill confined to one city barred later claims by city in pursuit of same legal interest); *Cnty. of Boyd v. US Ecology, Inc.*, 858 F.Supp. 960, 971-72 (D. Neb. 1994) (county claims to recover for increased governmental expenditures caused by impact of nuclear waste plant in only one county barred by prior state resolution of "common public rights" and interest in protecting "health and welfare of its residents"); *New Hampshire v. Dover*, 891 A.2d 524, 531 (N.H. 2006) (local government claims barred regardless of greater contamination levels in waterways of two counties where state shared same interest in remediating contamination).

[6] Plaintiffs also do not explain how statutes that expressly require claims to be brought "in the name of the state" can provide local governments with independent claims or exclusive authority. *See* Motion at 35-36; Reply at 44-46.

here, then such statutes on their face provide concurrent authority to Attorneys General and others to resolve them. Indeed, Plaintiffs concede the principle that statutes that provide "express concurrent authority" mean that an Attorney General "could release [such] statutory claims on behalf of the political subdivisions." Supp. Opp. Br. at 31 n.22. Plaintiffs also repeatedly say that McKinsey's concurrent authority argument must be wrong, otherwise any party that is statutorily authorized to sue could bring and release an AG's claims. Supp. Opp. Br. at 10, 13, 21, 23, 25, 27. Not so. AGs, unlike other officials, are authorized to represent statewide legal interests (and are presumed to do so adequately). Motion at 25-30; Reply at 20-22. Thus, while AGs can bind local governments to statewide resolutions, local governments cannot bind AGs when doing so would be inconsistent with the proper allocation of power between the two entities. *See* Motion at 26 (citing authority).

*Third*, Plaintiffs argue that the consideration or passage of various statutes before and after the distributors' settlement demonstrates that the AGs lack "residual authority" to bring or release the claims asserted by the subdivisions. Supp. Opp. Br. at 4-5, 14. For example, Plaintiffs say that the Ohio AG advocated for a bill giving him "sole and exclusive" authority to resolve opioid claims, but Ohio ultimately rejected that bill in favor of a different one allocating funds from the distributors' settlement among state and local governments. *Id.* at 4-5. But that argument ignores important context. Unlike here, where the AG reached a settlement with McKinsey prior to almost all subdivision complaints being filed, in the Ohio MDL, thousands of political subdivisions had already filed suit and had thus interfered with the states' ability to reach a statewide resolution with other defendants. The Ohio AG's effort challenging the legal standing of subdivisions to bring concurrent claims, and the ensuing political compromise, does not mean the Plaintiffs have exclusive authority to bring and to resolve the claims here. The AG

was already authorized to settle those claims before Plaintiffs ever brought suit without the need to pass any special new legislation. The same goes for all other recent opioid legislation upon which Plaintiffs rely.

*Fourth*, Plaintiffs assert that, "to assure an effective global release," McKinsey could have pursued the "alternative" settlement model utilized by Plaintiffs, states, and other defendants in the Ohio MDL. Supp. Opp. Br. at 5-6. This is entirely irrelevant to the question of whether Plaintiffs have any exclusive authority to bring the claims here. And there is no legal doctrine that says that just because one group of parties worked out one mechanism to finally resolve opioid liability that is the proper and lawful way to deal with it.

*Fifth*, Plaintiffs suggest that McKinsey only bargained for "protection from the claims for which there is specific state statutory authorization for the AGs to bring" such as unfair trade practice claims. Supp. Opp. Br. at 30.[7] But Plaintiffs already conceded that McKinsey bargained for and obtained much more than that. *See* Hr. Tr. at 13:17-14:4 (conceding McKinsey obtained release of any claims that the AGs "could have brought" without limitation); *id.* at 50:22-51:3 (counsel explaining "necessity to drill down" into each state's "**constitutional** and statutory and **case law**") (emphasis added). Indeed, Plaintiffs bring a variety of common law claims that the AGs are also authorized to bring under the states' common law or constitution. Supp. Br. at 2-20.

*Sixth*, Plaintiffs brush aside *res judicata* by saying "it would make no sense for a state to allocate causes of action in a deliberate and specific way, and then undo that allocation through principles of preclusion." Supp. Opp. Br. at 32. Again, however, Plaintiffs ignore that they are

---

[7] Plaintiffs argue that AGs "typically have exclusive authority to bring such claims" but do not say what must become of Plaintiffs' entirely duplicative unfair trade practice claims in places like California, Pennsylvania, Florida, and other states that provide concurrent authority to local officials. The implication is that they are independent claims that survive the AG settlement. But this would be an absurd result and shows why the Court should reject Plaintiffs' effort to interpret such statutes as providing them with any exclusive authority here.

bringing the *same* cause of action as the states. Motion at 18-24. Nor do Plaintiffs identify any discrete *legal interests* here that were not adequately represented in the prior lawsuits by the AGs. Accordingly, *res judicata* bars Plaintiffs from relitigating the same cause of action. *See* Supp. Br. at 39-40.

In sum, Plaintiffs fail to show they have "exclusive" authority to bring any of the claims at issue. Under the framework articulated by the Court, it follows that all of the claims are covered by the releases in the AG settlements (and also barred by *res judicata*)—and hence that the claims must be dismissed.

## IV.   SOME FINAL STATE-SPECIFIC POINTS[8]

**Alabama**.  Plaintiffs continue to discuss the law of Alabama even though there are no longer any Alabama political subdivision cases left in the MDL. *See Walker County, Alabama et al. v. McKinsey & Co., Inc. et al.*, No. 21-cv-04960-CRB, ECF 13 (voluntarily dismissing case brought by Alabama subdivisions).

**California**. Contrary to their assertion (at 31 n.22), Plaintiffs did in fact plead UCL and FAL claims in one of their original complaints[9], which they incorporated by reference into the Subdivision MCC (in its "Preamble"). Significantly, Plaintiffs concede that "the California AG could release *those* statutory claims on behalf of the political subdivisions" because the statutes give the AG concurrent authority. Supp. Opp. Br. at 31 n.22. McKinsey, of course, agrees. The Court should thus dismiss those claims. But the same reasoning should apply to *every* claim the Attorneys General have concurrent authority to bring in California (or elsewhere). That includes a public nuisance claim under Cal. Civ. Code §§ 3479 and 3480, which Plaintiffs wrongly say

---

[8] The discussion below is limited to states in which Plaintiffs raise new arguments and other points not already covered above.

[9] *See* Complaint, *County of San Mateo, California v. McKinsey & Co., et al.*, No. 21-cv-06009-CRB, ¶¶ 168-86.

"provide for independent subdivision authority to sue for their own harms." *See id.; see also* Supp. Br. at 31-32 (citing § 3494, which gives authority to bring a nuisance claim to "any public body or officer authorized by law," and over a century of caselaw giving the AG such authority).

**Illinois**. Contrary to Plaintiffs' suggestion (at 16), McKinsey does not "concede" that the Illinois political subdivisions (or any other subdivisions) would even "have standing to bring their claims." Illinois is a good example of a state in which the authority of the Attorney General over these claims may very well be exclusive (a point McKinsey need not establish to prevail on this motion under the Court's preferred framework). *See* Introduction to State-by-State Chart.

**Louisiana**. Plaintiffs rely on a new case, *Jefferson Parish v. Stansbury*, 228 So. 2d 743 (La. Ct. App. 1969), for the proposition that local governments have a "separate and distinct right and cause of action" for public nuisance. Supp. Opp. Br. at 19. This is misleading and further highlights Plaintiffs' lack of exclusive authority here. In *Jefferson Parish*, the court considered an earlier version of La. Stat. § 13:4712 that used the conjunctive "and" when referring to various parties authorized to bring a nuisance action and, to avoid an "absurd result," merely found that this language did not require all such parties to be joined to a single suit. 228 So. 2d at 744-45. The statute was later amended to include the Attorney General as an authorized party, and the word "and" was changed to the disjunctive "or." La. Stat. § 13:4712. Contrary to Plaintiffs' argument, it would be an "absurd result" to read this concurrent authority statute as providing exclusive authority to local governments here. *Jefferson Parish*, 228 So. 2d at 744-45.

**Michigan**. Plaintiffs wrongly claim that the reasoning of *In re Certified Question*, 638 N.W.2d 409 (Mich. 2002) has been called into doubt by *Associated Builders & Contractors v. City of Lansing*, 880 N.W.2d 765 (Mich. 2016), a case they cite for the first time. Supp. Opp. Br. at 20. Relying on the 1963 Michigan Constitution, the Michigan Supreme Court overruled its

earlier decision from 1923 (*Lennane*), said nothing about *Certified Question*, and held only that a city had the legal authority to enact a local ordinance concerning payment of fair wages to city contractors. *Associated Builders*, 880 N.W.2d at 771-73. *Certified Question* (which nowhere relies on *Lennane*) carefully compared the authority of local governments provided in the 1963 Constitution with the authority of the Attorney General and unequivocally found that "the authority of counties to sue in matters of local interest cannot be used to undermine the authority of the state to sue in matters of state interest." 638 N.W.2d at 414-15. Plaintiffs note (at 20-21) that the court in *Associated Builders* found that matters of state concern can be matters of local concern and vice versa. 880 N.W.2d at 770-71 & n.27. But this point only underscores the court's holding in *Certified Question*: even where there are overlapping local and state interests in abating a statewide nuisance like opioids (or tobacco), the Attorney General has the authority to bring and resolve those claims on a statewide basis. 638 N.W.2d at 414-15 ("The county's argument that it has the exclusive authority to bring suit must fail. We acknowledge that in some instances, a county has the exclusive authority to sue, but that issue is not presented where, as here, the claims asserted by the county may be of state interest.").

**New York**. McKinsey does not ask the Court to "ignore the New York AG's understanding of the scope of her own authority." Supp. Opp. Br. at 23. As the New York Attorney General previously argued, she has "exclusive authority to negotiate and accept terms for the resolution and discontinuance of actions '[i]n any case where the attorney general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state'" and thus political subdivisions ". . . lack the capacity to contest State decisions that 'affect them in their governmental capacity'. . ." Opp. Br., Ex. C (NYAG brief) at 19-21 (citing authority). That is entirely consistent with McKinsey's position. Moreover,

the New York subdivisions previously acknowledged that the release obtained from the NYAG bars their claims. Reply at 48; Hr. Tr. at 25:17-26:7. And the after-the-fact comments made by the NYAG do not compel a different result. *See* Reply at 48-49 (citing authority).

**V.    CONCLUSION**

For the foregoing reasons, McKinsey respectfully requests that the Court grant the motion to dismiss.

| | |
|---|---|
| Dated: New York, New York<br>June 15, 2022 | **STROOCK & STROOCK & LAVAN LLP**<br><br>By:  /s/ *David M. Cheifetz*<br>James L. Bernard (Admitted *Pro Hac Vice*)<br>(jbernard@stroock.com)<br>David M. Cheifetz (Admitted *Pro Hac Vice*)<br>(dcheifetz@stroock.com)<br>180 Maiden Lane<br>New York, NY 10038<br>Phone: (212) 806-5400<br><br>**HINSHAW & CULBERTSON LLP**<br><br>Vaishali S. Rao<br>(vrao@hinshawlaw.com)<br>Sarah E. King<br>(sking@hinshawlaw.com)<br>151 North Franklin Street<br>Chicago, IL 60606<br>Phone: (312) 704-3000<br><br>**MORRISON & FOERSTER LLP**<br><br>Jessica Kaufman (Admitted *Pro Hac Vice*)<br>(jkaufman@mofo.com)<br>Mark David McPherson (CA SBN 307951)<br>(mmcpherson@mofo.com)<br>250 West 55th Street<br>New York, NY 10019<br>Phone: (212) 468-8000<br><br>**CLARENCE DYER & COHEN LLP**<br><br>Josh A. Cohen (CA SBN 217853)<br>(jcohen@clarencedyer.com)<br>Shaneeda Jaffer (CA SBN 253449)<br>(sjaffer@clarencedyer.com)<br>899 Ellis Street<br>San Francisco, CA 94109<br>Phone: (415) 749-1800<br><br>*Attorneys for Defendants McKinsey & Company, Inc., McKinsey & Company, Inc. United States, McKinsey & Company, Inc. Washington D.C., and McKinsey Holdings, Inc.* |