Elizabeth J. Cabraser (SBN 083151)
Eric B. Fastiff (SBN 182260)
Miriam E. Marks (SBN 332351)
ecabraser@lchb.com
efastiff@lchb.com
mmarks@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Plaintiffs' Lead Counsel*

James L. Bernard (*Pro Hac Vice*)
jbernard@stroock.com
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
Telephone: 212.806.5400

Josh A. Cohen (SBN 217853)
jcohen@clarencedyer.com
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Telephone: 415.749.1800

Caitlin Sinclaire Blythe (SBN 265024)
CBlythe@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Ingrid S. Martin (*Pro Hac Vice*)
imartin@toddweld.com
TODD & WELD LLP
One Federal Street
Boston, MA 02110
Telephone: 617.720.2626

*Attorneys for McKinsey Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No.  21-md-02996-CRB (SK)<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE CONCERNING MCKINSEY GOVERNMENT INVESTIGATION DOCUMENTS**<br><br>Judge: Hon. Charles R. Breyer<br><br>Magistrate Judge: Hon. Sallie Kim |

Before filing this letter, the parties met and conferred telephonically and exchanged various redlines of each side's proposal in an effort to narrow this dispute. The parties further attest that they have complied with section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: March 10, 2023

Respectfully submitted,

By: */s/ Miriam E. Marks*

Elizabeth J. Cabraser (SBN 083151)
Eric B. Fastiff (SBN 182260)
Miriam E. Marks (SBN 332351)
ecabraser@lchb.com
efastiff@lchb.com
mmarks@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs' Lead Counsel and on behalf of the Plaintiffs' Steering Committee*

By: */s/ Josh A. Cohen*

Josh A. Cohen (SBN 217853)
jcohen@clarencedyer.com
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Telephone: (415) 749-1800

*Attorney for McKinsey Defendants*

The parties respectfully seek the Court's assistance in resolving a dispute regarding Plaintiffs' requests for discovery related to any subpoenas, civil investigative demands, or other requests for documents and communications from any government entity, and McKinsey's responses, in connection with McKinsey's opioid-related work.

As part of Consent Orders and Judgments McKinsey reached with attorneys general, it agreed to make public non-privileged documents it produced in response to governmental investigative demands related to opioids in a number of categories, including communications with Purdue, Endo, Johnson & Johnson, or Mallinckrodt; documents and communications sent or received by certain consultants; and a number of other specified documents. McKinsey eventually settled with all States and territories for $656 million.[1]

McKinsey produced to Plaintiffs roughly 115,000 documents that McKinsey also produced to the AGs for inclusion in the public repository. Plaintiffs served McKinsey with Requests for Production (RFPs) that seek copies of other productions that McKinsey made to government entities; copies of subpoenas and civil investigative demands (CIDs) issued to McKinsey; and communications between McKinsey and government entities relating to the requests. McKinsey served objections, and the parties met and conferred. During these discussions, McKinsey agreed to produce copies of all documents McKinsey produced that relate to (i) McKinsey's opioid-related work for opioid manufacturers[2] in the United States; (ii) McKinsey's opioid-related work for state governments, non-profits, hospital systems, and governor transition teams; and (iii) allegations concerning the deletion of opioid-related documents. McKinsey objected to the RFPs to the extent they seek documents outside these categories.

The parties exchanged correspondence, held a Zoom meet and confer, and are at impasse.

**A.     Plaintiffs' Position**

McKinsey should be ordered to produce documents responsive to Plaintiffs' RFPs. The RFPs target relevant documents, as they are tailored to government investigations of McKinsey in

---

[1] This amount includes $15 million in costs to the National Association of Attorneys General.

[2] McKinsey did not perform any opioid-related work for distributors, pharmacies, or other entities in the opioid supply chain.

1  connection with McKinsey's *opioid-related* work.  And any burden on McKinsey is low, as the
2  requested documents are limited to communications and documents that already were collected
3  and/or produced.  Plaintiffs' RFP No. 1 (First Set) seeks documents related to the Judgments,
4  including investigatory requests and documents produced in response to such requests.  *See* Ex. A
5  at 6.  Plaintiffs' RFP Nos. 1 and 2 (Second Set) seek the same "from any government entity" in
6  connection with McKinsey's opioid-related work.  Ex. B at 6-7.  McKinsey has agreed to produce
7  some of the documents it produced to the requesting entities, but flatly refuses to produce the
8  requesting documents and any responsive and limiting correspondence and agreements.
9  McKinsey has not said why it refuses to produce the subpoenas and CIDs; it appears to be hiding
10 something it doesn't want Plaintiffs to know.

11 **1.     The scope of the RFPs is appropriate.**

12       The Court should reject McKinsey's objections to scope.  McKinsey would narrow the
13 relevant universe of documents to those "reflecting opioid-related work for opioid manufacturers
14 in the U.S. produced to regulators," Ex. B at 7, as well as those related to opioid-related work
15 McKinsey performed for government entities or agencies which addressed efforts to abate the
16 opioid crisis, but this limitation is inappropriately circumscribed.  Plaintiffs' complaints allege
17 that McKinsey worked not only with opioid manufacturers but also distributors, pharmacies, and
18 even the FDA.  *See* ECF No. 300 (Tribal Compl.) ¶¶ 10, 446-72;[3] *see also* Opp'n to Mot. to
19 Dismiss (ECF No. 481) at 8 (explaining that McKinsey's work with Purdue is alleged in greater
20 detail because Purdue's guilty plea and bankruptcy have revealed more about the McKinsey-
21 Purdue relationship).  Any discovery related to McKinsey's activity across the opioids industry,
22 including regulation, is relevant.
23       Also relevant are topics that are not opioid-specific but are still connected to McKinsey's
24 opioid-related work—*e.g.*, those regarding the nature of McKinsey's close-knit client
25 relationships, *see* ECF No. 300 ¶¶ 109-52; McKinsey's role in aggressively growing the overall
26 market for opioids, *see, e.g.*, *id.* ¶¶ 473-76; and the lesser-known role of its hedge fund in opioid-

27
28 [3] Similar factual assertions are also contained in the TPP (ECF No. 299) and NAS (ECF No. 298) Plaintiffs' Master Complaints.

1  related investments that benefitted current and former McKinsey partners, *see id.* ¶¶ 557-73.  To
2  the extent documents related to any of these topics have been requested and produced in
3  government investigations, they would be responsive to Plaintiffs' three discovery requests.
4  McKinsey's effort to narrow discovery to exclude these topics draws an arbitrary line that should
5  be rejected.

6  Furthermore, the scope of Plaintiffs' RFPs is designed to ensure that Plaintiffs can
7  determine what the Attorneys General (and other government entities) sought from McKinsey.
8  This includes the content of any subpoenas, CIDs, and other requests; the relevant dates and/or
9  custodians identified in such requests; and any agreements reached between McKinsey and the
10 government entities that limited the scope.  As McKinsey has only produced to Plaintiffs what it
11 ultimately produced to the Attorneys General, it is critically important that Plaintiffs understand
12 the compromises that unfolded.  Plaintiffs cannot tailor their discovery requests until they have
13 specific information regarding the subjects, timing, and nature of the prior.  In other words,
14 Plaintiffs need to know what documents, about what, from whom, and when, that McKinsey is
15 and is not producing.  Discovery is not supposed to be a guessing game.

16 **2.     The RFPs are not impermissible "cloned discovery."**

17 Contrary to McKinsey's arguments, there is no exception to Rules 26 or 34 for "cloned
18 discovery."  Instead, courts in this Circuit permit requests for documents related to government
19 investigations—what McKinsey calls "cloned discovery"—so long as the documents are
20 relevant.  *See, e.g.*, *Munoz v. PHH Corp.*, No. 08-cv-0759, 2013 WL 684388, at *4 (E.D. Cal.
21 Feb. 22, 2013) (granting plaintiffs' motion to compel, rejecting cloned discovery argument,
22 noting that "[t]he Court need not make an illogical leap to conclude that the documents that
23 [defendant] has produced to [a government agency] are relevant to subject matter in this case"
24 where "[the government agency] is investigating the same alleged wrongful conduct as is alleged
25 by Plaintiffs").

26 Courts in this circuit also regularly order production of documents between two actions
27 where "substantial overlap in the factual allegations" may "streamline discovery."  *See, e.g.*, *Hall*
28 *v. Marriott Int'l, Inc.*, No. 19-cv-01715, 2021 WL 1906464, at *8 (S.D. Cal. May 12, 2021)

(granting in part plaintiff's motion to compel where there was "substantial overlap in the factual allegations in [another] action and the instant case"); *Schneider v. Chipotle Mexican Grill*, No. 16-cv-2200, 2017 WL 1101799, at *3-4 (N.D. Cal. Mar. 24, 2017) (finding plaintiff was entitled to discovery in related case within relevant time period where both actions had significant factual and legal overlap).

Here, the Court would need no "illogical leap" to connect government investigations of McKinsey's opioid-related work to the claims at issue. It is logical that these investigations sought documents related to Plaintiffs' allegations which, among other things, describe how McKinsey devised and implemented fraudulent marketing strategies that helped to fuel a national opioid epidemic, worked with clients throughout the opioid supply chain to accomplish its sales goals, and manipulated federal regulators to further its profit-driven motives. Where government entities have sought to hold McKinsey accountable for this behavior, any documents arising from their investigations of McKinsey's opioid-related work are relevant to Plaintiffs' claims.

Moreover, there is little burden to McKinsey. Courts overseeing MDLs (in contrast to McKinsey's single-plaintiff, single-defendant case, *King County*) view similar requests as an efficient form of early discovery given the low burden on the producing party. In *3M*, the court ordered defendants to reproduce any documents collected under FOIA, as well as substantially all documents previously produced in several related actions. PTO No. 10 at 13-14, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 19-md-2885 (N.D. Fla. June 17, 2019) (ECF No. 443); *see also* Discovery Order No. 1 at 2, *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (N.D. Cal. Dec. 29, 2022) (ECF No. 125) ("[P]roduction of previously-produced relevant materials imposes little burden on the defendants and promotes judicial efficiency in this multi-district litigation."); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, 2017 WL 4417447, at *7 (N.D. Ill. Sept. 28, 2017) (ordering production where the parties' ability to begin "intelligently discussing the appropriate parameters of more fulsome discovery" "outweigh[ed] the incremental expense and burden" to defendants of producing documents already produced to the Florida Attorney General).

1   Also relevant is the *fact* that McKinsey was subject to government investigation related to
2   its opioid work.  Plaintiffs' allegations discuss "McKinsey's manipulation of regulatory
3   requirements" and describe various (known) government investigations of McKinsey as a result.
4   ECF No. 300 ¶¶ 471-72.  These allegations are directly connected to McKinsey's decades-long
5   pattern of working with its clients to fraudulently market and sell opioids.  Given Plaintiffs'
6   allegations that McKinsey engaged in this illegal behavior *while* undergoing government
7   investigations, any communications about or documents produced as a result of those
8   investigations are plainly relevant to McKinsey's scienter.

9   Up until the Parties' composition of this letter brief, McKinsey relied on one case: *King*
10  *County v. Merrill Lynch & Co., Inc.*, No. 10-cv-1156, 2011 WL 3438491 (W.D. Wash. Aug. 5,
11  2011).  *King County* is distinguishable for two reasons.  First, the discovery requests were, on
12  their face, overbroad.  The case was about certain securities, but the requests sought documents
13  related to *other* securities, so that the court "ha[d] no method of determining which of those
14  documents are relevant, and which are not."  *Id.* at *3.  Here, Plaintiffs' requests are limited to
15  "opioid-related work," exactly the subject of this case.  Second, in *King County*, "Plaintiff [did]
16  not contend that the *fact* that Defendants produced documents to investigating government bodies
17  is relevant to their claim."  *Id.*  Not only are the documents Plaintiffs seek here relevant to their
18  claims by virtue of their connection to McKinsey's opioid-related work, but, as discussed above,
19  they are inherently relevant as evidence of the occurrence of government investigations.  In any
20  event, even if *King County* did support McKinsey's position, it would not stand against the
21  weight of authority cited above.

22  **B.    McKinsey's Position**

23  Plaintiffs' requests seeking clones of any production McKinsey has made to a regulator –
24  including documents McKinsey produced to a regulator that do not pertain to McKinsey's opioid-
25  related work – are overbroad and disproportionate to the needs of this case. McKinsey has agreed
26  to produce all documents produced to regulators pertaining to (1) its opioid-related work for
27  opioid manufacturers in the U.S.; (2) its opioid-related work for state governments, non-profits,
28  hospital systems and governor transition teams; and (3) allegations concerning the deletion of

1 opioid-related documents. Any materials produced to regulators that do not concern these subjects
2 are categorically irrelevant to Plaintiffs' claims, which pertain exclusively to McKinsey's
3 allegedly "central role in the unfolding, propagation, and exploitation of the opioid crisis by
4 advising multiple opioid manufacturers and other industry participants how to sell as many
5 opioids as conceivably possible." Dkt. 300 (Master Complaint (Tribal Plaintiffs)), at 2. Because
6 Plaintiffs' requests sweep within their ambit materials that are not relevant to this MDL, the
7 requests are improper and McKinsey's objection should be sustained.

It is well-established that "'[c]loned discovery,' requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the instant case."[4] Instead, when parties are interested in the *contents* of documents, rather than the *fact* of their production, courts consistently require that they "make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them – and each category must be relevant to its claims and defenses."[5] Similarity or overlap in subject matter is "not enough to require a *carte blanche* production of all documents" from other cases or investigations.[6]

The reason for this rule is straightforward: parties requesting cloned discovery cannot meet their burden to show the request is relevant and proportional to the needs of the case because they are "not in a position to even know what they are actually asking for," let alone that the materials sought are pertinent to their claims.[7] "Although some portion of documents

---

[4] *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000); *see also see also In re Volkswagen "Clean Diesel" Mktg. Sales Practices & Prods. Liab. Litig.*, No. 15-md-02672 CRB (JSC), 2017 WL 4680242, at *1-2 (N.D. Cal. Oct. 18, 2017) (denying request for cloned discovery), *Goro v. Flowers Foods, Inc.*, No. 17-CV-02580-JLS, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("Asking for all documents produced in another matter is not generally proper.").
[5] *King County v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011); *see also Midwest Gas*, 2000 WL 760700, at *1 ("[P]laintiffs are interested in the content of documents and for that they must make proper requests describing the information in which they are interested."); *Volkswagen* 2017 WL 4680242, at *2 (ordering plaintiffs to serve specific RFPs "in accordance with the Federal Rules")
[6] *Chen v. Ampco Sys. Parking*, No. 08-CV-0422-BEN, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009); *see also Volkswagen*, 2017 WL 4680242, at *2 (plaintiffs are "not entitled to complete access to the [prior productions] simply because there may be an overlap between their claims and those in the … [prior] action").
[7] *Goro*, 2019 WL 6252499, at *18.

1    encompassed by Plaintiffs' request may be relevant, the Court has no method of determining

2    which of those documents are relevant, and which are not."[8]

3          This concern is especially pronounced when a plaintiff seeks a clone of materials

4    produced to a regulator or other government entity with sweeping authority to compel production

5    of a wide range of materials. As courts recognize, "[g]overnment investigations [] may be much

6    broader than the limited subject matter of a lawsuit."[9] Accordingly, a civil litigant cannot say

7    "you gave some documents to the government concerning another investigation, so give them to

8    me."[10]

9          Here, McKinsey has already agreed to give Plaintiffs every document it produced to a

10   regulator that is relevant to the claims at issue – that is, every document that pertains to

11   McKinsey's opioid-related work or allegations concerning deletion of opioid-related documents.

12   What Plaintiffs ask the Court to compel, therefore, is production of materials that are *not* relevant

13   – that is, documents that do *not* pertain to McKinsey's opioid-related work or allegations

14   concerning deletion. As McKinsey explained to Plaintiffs during the meet-and-confer process,

15   many of the documents that would potentially be responsive to Plaintiffs' sweeping request have

16   nothing to do with Plaintiffs' claims. For example, a regulator sought certain McKinsey

17   consultants' entire email mailboxes and all of their texts and chats for a fifteen-year period with

18   no restrictions on subject matter, resulting in the production of every extant email, text, and chat

19   those consultants sent or received during that lengthy period. Given that McKinsey consultants

20   work on a wide variety of matters over the course of their careers – many of which have nothing

21   to do with healthcare, let alone opioids – McKinsey's production of the requested consultants'

22   emails and messages necessarily included thousands of documents that are plainly irrelevant to

---

[8] *King County*, 2011 WL 3438491, at *3.
[9] *Capital Ventures Int'l v. J.P. Morgan Mortgage Acquisition Corp.*, No. 12-10085-RWZ, 2014 WL 1431124 (D. Mass. Apr. 14, 2014), at *2; *In re Spectrametics Corp. Sec. Litig.*, No. 08-CV-02078-MSK, 2009 WL 3346611, at *3 (D. Colo. Oct. 14, 2009) (denying request because documents "previously produced to investigators might be irrelevant").
[10] *New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08-cv-05653-PAC, Dkt. 134 (S.D.N.Y. Mar. 2, 2012); *accord Pensacola Firefighters' Relief Pension Fund Bd. v. Merrill Lynch, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) (denying plaintiffs' request for cloned regulatory production because "production of all the documents produced to the SEC, without a more particularized request, could potentially allow plaintiff to bypass the limitations on the scope of discovery established by the Rules").

this MDL, including many that contain confidential client information (wholly unrelated to this matter) and personal materials. Plaintiffs have no need for those documents – and thus no right to a clone of the regulatory production that contained them.[11]

Plaintiffs' request for copies of subpoenas, civil investigative demands, and communications between regulators and McKinsey is likewise misplaced. The fact that a regulator requested a document of McKinsey is irrelevant to Plaintiffs' claims, as is the back-and-forth between McKinsey and the regulator that preceded the document production.[12] What McKinsey may have said to a regulator about the regulator's subpoena, and what the regulator said in response, has no tendency to make any fact in dispute in this MDL more or less probable, nor will it add anything pertinent to the universe of information McKinsey has already agreed to produce.

Finally, in light of McKinsey's agreement to give Plaintiffs every document produced to regulators that pertains to McKinsey's opioid-related work or deletion issues, Plaintiffs' request for cloned discovery is needlessly burdensome.[13] This burden would only expand if Plaintiffs' additional request for subpoenas and communications were granted, as these materials have not been assembled and exist in the files of various outside counsel, firms, and vendors.[14] The burden of collecting and reviewing such materials is undue given (1) those materials' irrelevance, and (2) the documents McKinsey has already agreed to produce.

---

[11] This is not the only way in which Plaintiffs' request calls for documents that are irrelevant to Plaintiffs' claims. McKinsey can provide the Court with additional information concerning regulatory productions *in camera* upon request.

[12] *See Capital Ventures*, 2014 WL 1431124, at *3 (denying as irrelevant plaintiff's request for communications between J.P. Morgan and its regulators regarding RMBS practices); *Connex R.R. LLC v. AXA Corp. Solutions Assurance*, No. CV 16-02368-ODW, 2017 WL 3433542, at *10 (C.D. Cal. Feb. 22, 2017) (denying requests for communications with government authorities about train accident, which sought "information with only minimal relevance to this action, and thus [were] not proportional to the needs of the case").

[13] *See Goro*, 2019 WL 6352499, at *18 ("[C]ompelling a responding party to do duplicate searches – one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation – is definitionally unduly burdensome, as it would consume resources without providing any additional benefit to the propounding party.").

[14] *See Capital Ventures*, 2014 WL 1431124, at *2 (rejecting argument that burden would be "near zero" and finding that the "time, expense, and coordination required for multiple reproductions" of cloned discovery would be substantial).

| | | |
|---|---|---|
| 1 | Dated: March 10, 2023 | Respectfully submitted, |
| 2 | | |
| 3 | | By: _Miriam E. Marks_ |
| 4 | | Elizabeth J. Cabraser (SBN 083151)<br>Eric B. Fastiff (SBN 182260) |
| 5 | | Miriam E. Marks (SBN 332351)<br>ecabraser@lchb.com |
| 6 | | efastiff@lchb.com<br>mmarks@lchb.com |
| 7 | | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor |
| 8 | | San Francisco, CA  94111-3339<br>Telephone: (415) 956-1000 |
| 9 | | Facsimile: (415) 956-1008 |
| 10 | | *Plaintiffs' Lead Counsel and on behalf of the* |
| 11 | | *Plaintiffs' Steering Committee* |
| 12 | | |
| 13 | | By: _Josh. A. Cohen_ |
| 14 | | Josh A. Cohen (SBN 217853)<br>jcohen@clarencedyer.com |
| 15 | | CLARENCE DYER & COHEN LLP<br>899 Ellis Street |
| 16 | | San Francisco, CA 94117<br>Telephone: 415.749.1800 |
| 17 | | *Attorney for McKinsey Defendants* |