1    ROBBINS GELLER RUDMAN
       & DOWD LLP
2    AELISH M. BAIG (201279)
     TAEVA C. SHEFLER (291637)
3    HADIYA K. DESHMUKH (328118)
     Post Montgomery Center
4    One Montgomery Street, Suite 1800
     San Francisco, CA  94104
5    Telephone:  415/288-4545
     415/288-4534 (fax)
6    aelishb@rgrdlaw.com
     tshefler@rgrdlaw.com
7    hdeshmukh@rgrdlaw.com

8    PSC Member – Political Subdivisions

9    [Additional counsel appear on signature page]

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12   SANTA CRUZ COUNTY, CALIFORNIA;          )   Case No. 3:21-md-02996-CRB
     POPE COUNTY, ILLINOIS; and THE          )
13   VILLAGE OF EDDYVILLE, ILLINOIS,         )   PLAINTIFFS' NOTICE OF UNOPPOSED
     Individually and on Behalf of a Class of )  MOTION AND MOTION FOR
14   Entities Similarly Situated             )   PRELIMINARY APPROVAL OF CLASS
                                             )   ACTION SETTLEMENT; MEMORANDUM
15   In re MCKINSEY & CO., INC. NATIONAL     )   OF POINTS AND AUTHORITIES IN
     PRESCRIPTION OPIATE CONSULTANT          )   SUPPORT
16   LITIGATION                              )
     ─────────────────────────────          )   DATE:    TBD
17                                           )   TIME:    TBD
     This Document Relates To:               )   DEPT:    Courtroom 6, 17th Floor
18                                           )   JUDGE:   Honorable Charles R. Breyer
           ALL SUBDIVISION ACTIONS          )
19   ─────────────────────────────          )

20

21

22

23

24

25

26

27

28

4894-1883-9159.v1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.     INTRODUCTION ......................................................................................................2

II.    BACKGROUND .........................................................................................................3

    A.     Summary of the Opioids Litigation and Procedural History ...................................3

    B.     Settlement Negotiations and Mediation ..................................................................6

III.   PROPOSED SETTLEMENT ....................................................................................6

    A.     Proposed Class .........................................................................................................6

    B.     Settlement Consideration and Plan of Allocation ...................................................7

    C.     Release .....................................................................................................................9

    D.     Settlement Notice and Right to Opt Out ...............................................................10

    E.     Attorneys' Fees and Expenses ..............................................................................11

IV.    ARGUMENT .............................................................................................................11

    A.     Legal Standard on Preliminary Approval .............................................................11

    B.     The Court Will Be Able to Certify the Proposed Class for Settlement
        Purposes upon Final Approval ...............................................................................12

        1.     Every Class Member Has Article III Standing ..........................................13

        2.     The Class Meets the Rule 23(a)(1)-(4) Requirements ...............................13

            a.     Rule 23(a)(1): The Class Is Sufficiently Numerous .....................13

            b.     Rule 23(a)(2): The Class's Claims Present Common
                Questions of Law and Fact ............................................................14

            c.     Rule 23(a)(3): Settlement Class Representatives' Claims
                Are Typical of Other Class Members' Claims ..............................15

            d.     Rule 23(a)(4): Settlement Class Representatives and Class
                Counsel Have Protected and Will Protect the Interests of
                the Class ........................................................................................15

        3.     The Class Meets the Rule 23(b)(3) and 23(c)(4) Requirements ...............18

**Page**

          a.      Common Issues of Law and Fact Predominate.............................18

          b.      Class Treatment Is Superior to Other Available Methods for the Resolution of This Case ....................................................20

          c.      The Court Should Appoint Interim Settlement Class Counsel Under Rule 23(g)(3)...........................................21

C.     The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2).............21

    1.     Rule 23(e)(2)(A): Settlement Class Counsel and the Settlement Class Representatives Will Continue to Zealously Represent the Class...............................................................................22

    2.     Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations .......................................22

    3.     The Extent of Discovery Taken Across Opioids Cases and the Stage of the Proceedings Favor Preliminary Approval............................24

    4.     Rule 23(e)(2)(C): The Settlement Provides Substantial Compensation in Exchange for the Compromise of Strong Claims ..........25

          a.      The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation .........................26

          b.      The Proposed Plan of Allocation, Including the Method of Processing Class Member Claims, Is Effective and Based on Objective Factors ....................................................28

          c.      The Terms Relating to Attorneys' Fees Are Reasonable...............29

    5.     The Settlement Treats Class Members Equitably in Relation to One Another...............................................................30

    6.     The Northern District of California Guidance Factors Support Settlement Approval ...................................................32

          a.      Guidance Factor 1: Differences, Range, and Plan of Allocation...................................................................32

          b.      Guidance Factor 2: Proposed Settlement Administration.............34

          c.      Guidance Factor 3: Proposed Notice to the Class Is Adequate .................................................................34

          d.      Guidance Factors 4-5: Exclusions and Objections ......................35

          e.      Guidance Factor 6: Intended Attorneys' Fees and Expenses Request...................................................................35

1

2

Page

3

4

f.    Guidance Factor 7: Proposed Service Awards.............................36

g.    Guidance Factor 8: *Cy Pres* Awardees ...........................................36

h.    Guidance Factor 9: Proposed Timeline.........................................36

i.    Guidance Factor 10: Class Action Fairness Act Notice................36

j.    Guidance Factor 11: Comparisons.................................................37

D.    The Form and Manner of Notice Are Proper.........................................................38

1.    The Settlement Provides the Best Class Notice Practicable ....................38

2.    The Notice Provides a Clear Explanation to Class Members of Their Opportunity to Opt Out of the Settlement and Weigh the Settlement Benefits .......................................................................................38

E.    Escrow Agent Appointed .......................................................................................39

F.    Maintain Order Continuing McKinsey's Rule 12(b)(6) Motion............................39

CONCLUSION...............................................................................................................................40

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

4

**CASES**

5

*Akaosugi v. Benihana Nat'l Corp.*,
   282 F.R.D. 241 (N.D. Cal. 2012) ..........................................................................13

6

7

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..........................................................................12, 18, 19

8

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017),
   *aff'd*, 674 F. App'x 654 (9th Cir. 2017) ..........................................................................14

9

10

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012) ..........................................................................18

11

12

*Carlotti v. ASUS Comput. Int'l*,
   No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ..........................................................................25

13

14

*City & Cnty. of S.F. v. Purdue Pharma, L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ..........................................................................26

15

16

*City & Cnty. of S.F. v. Purdue Pharma, L.P.*,
   No. 3:18-cv-07591-CRB, ECF 1578 (N.D. Cal. Aug. 10, 2022) ..........................................................................26

17

*Clemens v. Hair Club for Men, LLC*,
   No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016) ..........................................................................15, 21

18

19

*Evon v. Law Offs. of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ..........................................................................15

20

21

*Friedman v. 24 Hour Fitness USA, Inc.*,
   No. CV 06-6282 AHM, 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009) ..........................................................................19

22

23

*G.F. v. Contra Costa Cnty.*,
   No. 13-cv-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ..........................................................................24

24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..........................................................................15, 18, 20, 23

25

26

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ..........................................................................15

27

28

*Hernandez v. Dutton Ranch Corp.*,
   No. 19-cv-00817-EMC, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ..........................................................................29

**Page**

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018)...........................................................................................22

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) .......................................................................................11, 23

*In re First All. Mortg. Co.*,
 471 F.3d 977 (9th Cir. 2006) ................................................................................................18

*In re Hyundai & Kia Fuel Econ. Litig.*,
 926 F.3d 539 (9th Cir. 2019) ................................................................................................12

*In re McKinsey & Co., Inc., Nat'l Opiate Consultant Litig.*,
 637 F. Supp. 3d 773 (N.D. Cal. 2022) ....................................................................................5

*In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*,
 543 F. Supp. 3d 1377 (J.P.M.L. 2021).....................................................................4, 20, 32

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) .........................................................................................22, 27

*In re Myford Touch Consumer Litig.*,
 No. 13-cv-03072-EMC, 2018 WL 10539266 (N.D. Cal. June 14, 2018).........................28, 33

*In re Nat'l Prescription Opiate Litig.*,
 332 F.R.D. 532 (N.D.Ill. 2019),
 *rev'd on other grounds*, 976 F.3d 664 (6th Cir. 2020) ..........................................................19

*In re Nat'l Prescription Opiate Litig. (Lake & Trumbull Cntys., Ohio)*,
 No. 1:17-md-2804, ECF 4611 (N.D. Ohio Aug. 17, 2022) ...................................................26

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ................................................................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 229 F. Supp. 3d 1052 (N.D. Cal. 2017) .................................................................................27

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)...........................27

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 No. 15-md-02672-CRB, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) .........................13, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016)....................................12

1

2                                                                                            **Page**

3

4    *Kim v. Space Pencil, Inc.*,
        No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) .....................................27

5    *Lembeck v. Arvest Cent. Mortg. Co.*,
        No. 3:20-cv-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ...............................24

6

7    *Linney v. Cellular Alaska P'ship*,
        151 F.3d 1234 (9th Cir. 1998) ...........................................................................................23

8    *Lujan v. Defenders of Wildlife*,
9        504 U.S. 555 (1992)............................................................................................................13

10   *Mullins v. Premier Nutrition Corp.*,
        No. 13-cv-01271-RS, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)...................................15

11

12   *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
        221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................................32

13

14   *Nobles v. MBNA Corp.*,
        No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................................26

15   *Noroma v. Home Point Fin. Corp.*,
        No. 17-cv-07205-HSG, 2019 WL 1589980 (N.D. Cal. Apr. 12, 2019) ...............................24

16

17   *Palmer v. Stassinos*,
        233 F.R.D. 546 (N.D. Cal. 2006)........................................................................................13

18

19   *Rodriguez v. Hayes*,
        591 F.3d 1105 (9th Cir. 2010) ...........................................................................................15

20   *Rodriguez v. W. Publ'g Corp.*,
        563 F.3d 948 (9th Cir. 2009) ........................................................................................24, 27

21

22   *Roes 1-2 v. SFBSC Mgmt., LLC*,
        944 F.3d 1035 (9th Cir. 2019) ...........................................................................................12

23

24   *TransUnion LLC v. Ramirez*,
        ___ U.S. ___, 141 S. Ct. 2190 (2021)................................................................................13

25   *Trosper v. Stryker Corp.*,
        No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014)............................16, 20

26

27   *Tyson Foods, Inc. v. Bouaphakeo*,
        ___ U.S. ___, 136 S. Ct. 1036 (2016)............................................................................18, 19

28

**Page**

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ..............................................................................29

*Wahl v. Yahoo! Inc.,*
    No. 17-cv-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ................................23

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..............................................................................14

*Weinberger v. Thornton,*
    114 F.R.D. 599 (S.D. Cal. 1986) ..............................................................................15

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ..............................................................................18, 20

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23.............................................................................................11, 14
    Rule 23(a)........................................................................................12
    Rule 23(a)(1).....................................................................................12, 13
    Rule 23(a)(2).....................................................................................12, 13, 14
    Rule 23(a)(3).....................................................................................12. 13. 15
    Rule 23(a)(4).....................................................................................12. 13. 15, 16
    Rule 23(b)(1).....................................................................................12
    Rule 23(b)(2).....................................................................................12
    Rule 23(b)(3)............................................................................... *passim*
    Rule 23(c)........................................................................................11
    Rule 23(c)(2)(B)..............................................................................12, 38, 39
    Rule 23(c)(4).....................................................................................18, 19
    Rule 23(e)........................................................................................1, 12, 27
    Rule 23(e)(1).....................................................................................1, 12
    Rule 23(e)(1)(B)..............................................................................11, 21, 38
    Rule 23(e)(2).....................................................................................1, 11, 12, 21
    Rule 23(e)(2)(A)..............................................................................21, 22
    Rule 23(e)(2)(B)..............................................................................21, 22
    Rule 23(e)(2)(C)..............................................................................21, 25
    Rule 23(e)(2)(C)(iii)........................................................................29
    Rule 23(e)(2)(D)..............................................................................21
    Rule 23(e)(3).....................................................................................30
    Rule 23(e)(5).....................................................................................12, 35
    Rule 23(g)........................................................................................16, 21
    Rule 23(g)(3).....................................................................................1, 21
    Rule 23(h)........................................................................................11

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on a date to be determined by the Court, in Courtroom 6 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the undersigned Plaintiffs' Steering Committee ("PSC") members, representing a proposed Settlement Class of government subdivisions, will and hereby do move the Court for an order granting preliminary approval of the Class Action Settlement and directing notice to the Class under Federal Rule of Civil Procedure 23(e)(1); appointing Interim Settlement Class Counsel and Class Representatives under Rule 23(g)(3); and scheduling a final approval hearing under Rule 23(e)(2).

Class Representatives City of Santa Cruz, California; Pope County, Illinois; and The Village of Eddyville, Illinois notice this motion for a date to be determined by the Court in accordance with Civil Local Rule 7-2(a) and this Court's Standing Orders. However, the parties are prepared to present the proposed Settlement to the Court on an earlier hearing date and time at the Court's convenience, or for the Court to decide this matter on the papers, if the Court is so inclined.

This Motion is supported by the following memorandum of points and authorities and the accompanying Declaration of Aelish M. Baig ("Baig Declaration" or "Baig Decl.") and the exhibits thereto, including the Settlement Agreement Among Political Subdivisions and McKinsey Defendants ("Settlement Agreement" or "Agreement"), which is attached as Exhibit 1 to the Baig Declaration.

**MEMORANDUM OF POINTS AND AUTHORITIES**

City of Santa Cruz, California; Pope County, Illinois; and The Village of Eddyville, Illinois ("Settlement Class Representatives") respectfully submit this Memorandum of Points and Authorities in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement between the Subdivision Plaintiffs and the McKinsey Defendants (the "Action") and entry of the [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Direction of Notice under Federal Rule of Civil Procedure 23(e) ("Preliminary Approval Order").

1   The Preliminary Approval Order will: (i) grant preliminary approval of the proposed class action

2   settlement on the terms set forth in the Settlement Agreement and plan of allocation; (ii) appoint

3   Interim Settlement Class Counsel; (iii) approve the form and manner of notice of the proposed

4   Settlement to the Settlement Class; (iv) preliminarily approve the plan of allocation; (v) authorize

5   and direct Plaintiffs to retain Epiq and BrownGreer PLC as the Notice Administrator and Claims

6   Administrator, respectively; (vi) approve an escrow agreement regarding the Settlement

7   consideration described in §§IV.2. and IV.5. of the Settlement Agreement; (vii) continue

8   McKinsey's pending *res judicata* motion in place until the Court renders a final decision regarding

9   the approval of the Settlement; and (viii) schedule a hearing date to consider the final approval of

10   the Settlement ("Final Approval Hearing") and establish a schedule for various deadlines in

11   connection with the Settlement.

12   **I.      INTRODUCTION**

13          The Plaintiff Class of political subdivisions, represented by members of the Court-

14   appointed PSC, and the McKinsey Defendants have reached a settlement on behalf of

15   Subdivisions.[1]  McKinsey will pay the Class Members $207 million, less Court-approved fees and

16   costs, in one payment upon finality of the Settlement.  The Class Members will receive their

17   portion of the settlement amount pursuant to their stated allocation formula that governed the

18   multi-state opioids industry settlements with Janssen Pharmaceuticals, Inc., McKesson

19   Corporation, Cardinal Health, Inc., and AmerisourceBergen Corporation (the "2021 National

20   Settlements"), as posted on nationalopioidsettlement.com.  Consistent with the previous national

21   settlements, class members shall be required to use the settlement funds exclusively for approved

22   uses designed to abate the opioid epidemic as set forth in Exhibit E ("List of Opioid Remediation

23   Uses") of the prior MDL 2804 settlements.

24

25

26

27   _____
     [1]    The Settlement excludes Subdivisions in U.S. territories and in Indiana.  (Indiana passed
28   legislation prohibiting its subdivisions from pursuing additional opioids-related cases.)

## II.  BACKGROUND

### A.  Summary of the Opioids Litigation and Procedural History

This action against McKinsey, and the proposed Settlement, should be viewed against the backdrop of the opioid litigation and the settlements that precede it.  *In re Nat'l Prescription Opiate Litigation*, MDL 2804, centralized in the Northern District of Ohio before Judge Dan Aaron Polster, consists of thousands of lawsuits, primarily filed by cities and counties (commonly referred to as "subdivisions"), and by school districts, Native American tribal governments and related tribal entities ("Tribes"), hospitals, third-party payors ("TPP"), and parents and guardians making claims on behalf of children born with neo-natal abstinence syndrome ("NAS plaintiffs"). The MDL 2804 plaintiffs allege that opioid manufacturers, distributors, and opioid-selling pharmacies acted in concert to aggressively market prescription opioids to vastly increase their sales and revenues, misleading medical professionals into prescribing, and millions of Americans into taking and often becoming addicted to, opioids.  Plaintiffs in MDL 2804 and in this multi-district litigation allege that approximately 350,000 individuals in the United States died from an opioid overdose between 1999 and 2016.  The opioid industry's practices harmed government plaintiffs by forcing them to divert significant funding to emergency public health, public safety, and public education responses to the crisis.  Here, Plaintiffs allege that McKinsey strategized and acted with Purdue and various other MDL 2804 opioid defendants to create and employ such marketing and sales practices to maximize opioid revenues.

Because the claims against McKinsey involve factual and legal questions common to claims against other opioid defendants, the majority of the early complaints against McKinsey were directly filed in MDL 2804.  As with MDL 2804 plaintiffs, the Plaintiffs suing McKinsey can be categorized into five groups: political subdivisions, school districts, Tribes, TPPs, and NAS plaintiffs.  Many of the Subdivision Class members here also filed cases in MDL 2804, and virtually all such Class members are now participating in a series of national settlements with the defendants named in MDL 2804: major distributors, pharmacies, and the manufacturers Johnson & Johnson ("J&J"), Teva, and Allergan.  Claims against major opioids manufacturer Purdue are being resolved through bankruptcy proceedings.  A supermajority of Purdue's creditors

1   (the categories of plaintiffs described above) voted to approve a Plan of Reorganization that

2   featured a negotiated allocation of Plan proceeds among them.

3        In or about February 2021, McKinsey reached settlements with the attorneys general of

4   virtually all states that provided generally for releases, to the full extent of the AGs' authority, of

5   all opioids-related claims against McKinsey, for which McKinsey paid a total of approximately

6   $641.5 million.

7        On March 5, 2021, McKinsey filed a Motion to Transfer before the Judicial Panel on

8   Multidistrict Litigation asking for the cases against it to be consolidated and transferred to the

9   U.S. District Court for the Southern District of New York – both the location of its principal

10  executive office and of Purdue's bankruptcy proceeding.  On June 7, 2021, the JPML instead

11  centralized the actions in the Northern District of California before the Honorable Charles R.

12  Breyer.  *In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, 543 F. Supp. 3d

13  1377 (J.P.M.L. 2021).

14       After transfer, this Court appointed Lead Counsel and a PSC comprised of attorneys

15  representing all five plaintiff groups.  ECF 211.  On December 6, 2021, Plaintiffs filed Master

16  Complaints on behalf of the political subdivisions, school districts, NAS plaintiffs, and Tribes, as

17  well as a Consolidated Class Action Complaint on behalf of the TPPs.  *See* ECF 296-300.

18       On December 23, 2021, McKinsey filed two Rule 12 motions: one for lack of personal

19  jurisdiction in certain states against all plaintiff groups, and a second on grounds of *res judicata*

20  and release against the subdivision and school district plaintiffs.  *See* ECF 310, 313.  As noted

21  above, McKinsey has maintained, as to most states, that its AG releases from February 2021 bar

22  opioids-related claims by the states' political subdivisions (*e.g.*, cities, counties, and schools).

23       Plaintiffs opposed both Rule 12 motions, and the Court conducted an initial hearing on

24  these motions on March 31, 2022, requested and received additional briefing, and scheduled a

25  subsequent hearing for October 28, 2022.  On October 26, 2022, the parties notified the Court that

26  McKinsey and the Subdivision and School District Plaintiffs had reached an agreement in principle

27  to resolve those Plaintiffs' claims, and they requested that the Court not adjudicate the *res judicata*

28  motion at that time.  ECF 436.  On October 27, 2022, the Court denied McKinsey's motion to

dismiss for lack of personal jurisdiction. *In re McKinsey & Co., Inc., Nat'l Opiate Consultant Litig.*, 637 F. Supp. 3d 773 (N.D. Cal. 2022). At the joint request of the parties, determination of McKinsey's motion to dismiss the subdivision and school district master complaints on *res judicata* grounds has been stayed to enable this Settlement to be considered for Court approval, which would moot both the motion and the threshold *res judicata* issue as to the Settlement Class Members. ECF 562.

On October 27, 2022, this Court also adopted a joint discovery schedule. McKinsey responded to Plaintiffs' Requests for Production and produced hundreds of thousands of documents. Plaintiffs have been reviewing McKinsey's production to the state AGs as part of McKinsey's February 4, 2021 settlement, as well as additional productions. Two joint discovery dispute letters were submitted to Magistrate Judge Sallie Kim, which she resolved by orders by Magistrate Kim on March 17, 2023 and May 9, 2023. ECF 489, 543. This Court overruled Defendants' objection to Magistrate Kim's March 17, 2023 Order on April 12, 2023. ECF 510. On May 5, 2023, Magistrate Kim granted a stipulation between the parties regarding interrogatory limits. ECF 542.

On January 9, 2023, McKinsey filed a third Rule 12(b)(6) motion, this time to dismiss the Tribes' and NAS plaintiffs' Master Complaints and the TPPs' Consolidated Class Action Complaint. ECF 462. Plaintiffs opposed the motion. ECF 481.

On May 19, 2023, the Court continued oral argument on the Rule 12 motion as to the Tribes and TPPs. ECF 552.

On June 23, 2023, the parties jointly advised the Court that the Tribal Plaintiffs and Third-Party Payor Plaintiffs had reached agreements in principle with McKinsey to resolve those Plaintiffs' claims. ECF 562. The parties also jointly requested discovery be stayed for all but the NAS Plaintiffs.

On July 20, 2023, the Court granted McKinsey's motion to dismiss as to the NAS plaintiffs' cases. ECF 573. The Court found that those plaintiffs have not adequately pled that McKinsey owed them a duty or that they relied on McKinsey's alleged false or misleading statements. *Id.* The Court also found that these plaintiffs did not adequately plead standing for a

public nuisance claim. *Id.* On August 24, 2023, these plaintiffs amended their complaint. ECF 582.

### B. Settlement Negotiations and Mediation

The subdivisions and school districts agreed to mediate before Jed D. Melnick, Esq. of JAMS. Mr. Melnick has mediated full time since 2005 and is an experienced, skilled, neutral mediator accustomed to handling complex litigation, including class actions; he has resolved over 1,000 disputes, with an aggregate value in the billions of dollars. The parties participated in a two-day mediation in person at JAMS in New York City on August 8-9, 2022 with Mr. Melnick and Simone Lelchuk, his colleague, and continued the process remotely under Mr. Melnick's supervision from August 2022 through early 2023. This Settlement is the result of those extensive arm's-length negotiations.

## III. PROPOSED SETTLEMENT

### A. Proposed Class

The Settlement is conditioned upon the approval, for settlement purposes only, of the following Class definition,[2] which is generally consistent with eligible participants in the national opioids settlements:

> any (1) General Purpose Government (including, but not limited to, a municipality, county, county subdivision, city, town, township, parish, village, borough, gore, or any other entity that provides municipal-type government), (2) Special District within a State, and (3) any other subdivision, subdivision official (acting in an official capacity on behalf of the subdivision) or sub-entity of or located within a State (whether political, geographical or otherwise, whether functioning or non-functioning, regardless of population overlap, and including, but not limited to, nonfunctioning governmental units and public institutions). The foregoing shall specifically include but not be limited to the litigating subdivisions listed in Schedule A. The foregoing shall exclude any sub-entity of Indiana, American Samoa, the Commonwealth of Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, and all school districts. "General Purpose Government," and "Special District" shall correspond to the "basic types of local governments" recognized by the U.S. Census Bureau and match the 2017 list of

---

[2]   Pursuant to Indiana House Enrolled Act No. 1193, after January 1, 2021: "no political subdivision shall initiate or file opioid litigation in any court." Thus, the Class excludes any subdivisions from Indiana. The territories of American Samoa, the Commonwealth of Guam, the Commonwealth of the Northern Mariana Islands, and the U.S. Virgin Islands are excluded from the Class because there are no subdivisions in those territories that are eligible to participate in the settlement.

Governmental Units.[3]  The General Purpose Governments are county, municipal, and township governments.[4]  "Fire District," "Health District," "Hospital District," and "Library District" shall correspond to categories of Special Districts recognized by the U.S. Census Bureau.[5]  References to a State's Subdivisions or to a Subdivision "in," "of," or "within" a State include Subdivisions located within the State even if they are not formally or legally a sub-entity of the State; provided, however, that a "Health District" that includes any of the following words or phrases in its name shall not be considered a Subdivision: mosquito, pest, insect, spray, vector, animal, air quality, air pollution, clean air, coastal water, tuberculosis, and sanitary.

## B.    Settlement Consideration and Plan of Allocation

McKinsey has agreed to create a Settlement Fund of $207 million.  This monetary recovery to government subdivisions is in addition to the approximately $641.5 million that McKinsey already paid to the states to the National Association of Attorneys General and the valuable injunctive relief provided for under the AG Agreements and under the resulting consent judgments. *See, e.g.*, https://www.mass.gov/doc/massachusetts-mckinsey-consent-judgment/download.  Each Class member with a population above 10,000 or that filed a lawsuit against McKinsey raising the issues alleged in the Master Complaint shall be eligible for a *pro rata* share of the Net Settlement Fund based on a proposed plan of allocation, which, in turn, will follow the allocation agreements reached between the states and their subdivisions as to the portion of each state's share under the 2021 National Settlements.  In those states without negotiated agreements, the plan will follow the default allocation provided for in the national settlements, *i.e.*, the "default" direct-to-subdivision

---

[3]    https://www.census.gov/data/datasets/2017/econ/gus/public-use-files.html.

[4]    *E.g.*, U.S. Census Bureau, "Technical Documentation: 2017 Public Use Files for State and Local Government Organization at 7 (noting that "the Census Bureau recognizes five basic types of local governments," that three of those are "general purpose governments" (county governments, municipal governments, and township governments), and that the other two are "school district and special district governments"), https://www2.census.gov/programssurveys/gus/datasets/2017/2017_gov_org_meth_tech_doc.pdf.

[5]    A list of 2017 Government Units provided by the Census Bureau identifies 38,542 Special Districts and categorizes them by "FUNCTION_NAME," Govt_Units_2017_Final" spreadsheet, "Special District" sheet, included in "Independent Governments – list of governments with reference information," https://www.census.gov/data/datasets/2017/econ/gus/public-use-files.html.  As used herein, "Fire District" corresponds to Special District function name "24 – Local Fire Protection," "Health District" corresponds to Special District function name "32 – Health," "Hospital District" corresponds to Special District function name "40 – Hospitals," and "Library District" corresponds to Special District function name "52 – Libraries."  *See id.*

1    allocation of 15% will be used, with the remaining net settlement funds going to an abatement

2    fund.  The Settlement Class Members have prior experience with these allocation agreements, and

3    the McKinsey plan of allocation will track them.

4          Consistent with the previous national settlements, class members shall be required to use

5    the net settlement funds for approved uses designed to abate the opioid epidemic as set forth in

6    Exhibit E ("List of Opioid Remediation Uses") of the prior MDL 2804 settlements.  The McKinsey

7    settlement preserves 15% to cover Court-approved costs, fees, and administrative expenses.  No

8    portion of the Net Settlement Fund will revert to McKinsey.  Agreement at ¶V(6).  Moreover,

9    Class Members shall be paid by check or electronic payment, at their election, in a process

10   substantially similar to that employed in the previous national settlements, by the same settlement

11   administrator, BrownGreer.

12         As noted above and discussed further below, the plan of allocation applies state-by-state

13   percentages reflected in Memoranda of Understanding ("MOUs") that the Class members

14   previously negotiated with their state AGs and each other to implement the national opioids

15   settlements, including the 2021 National Settlements.  *See* National Opioids Settlement, Janssen

16   Settlement     Agreement,     https://nationalopioidsettlement.com/wp-content/uploads/2023/01/

17   Janssen-agreement-03302022-FINAL2-Exhibit-G-as-of-1.9.23.pdf.   Those MOUs are publicly

18   posted on the National Opioids Settlement website.  *See* National Opioids Settlement, State

19   Participation Status, https://nationalopioidsettlement.com/state-participation-status/.  As set forth

20   in the 2021 National Settlements: "[t]he allocation of the Settlement Fund allows for different

21   approaches to be taken in different states, such as through a State-Subdivision Agreement.  Given

22   the uniqueness of States and their Subdivisions, Settling States and their Subdivisions [we]re

23   encouraged to enter into State Subdivision Agreements in order to direct the allocation of their

24   portion of the Settlement Fund."  Janssen Agreement at 30; Distributor Agreement at 28.[6]  The

25   states agreed amongst themselves as to inter-state allocations, and most states also came to

26

27   [6]    The 2021 National Settlements are located on the nationalopioidsettlement.com website, as are

28   each of the State-subdivision agreements.

1   agreements with their subdivisions in the MDL settlements, which included a percentage of the

2   abatement fund for each participating subdivision in the state. *See, e.g.*, the "California State-

3   Subdivision Agreement Regarding Distribution and Use of Settlement Funds – Distributor

4   Settlement."[7]   Appendix 1 of that agreement sets forth abatement percentages for each

5   participating subdivision in California. The intent is to use the same allocation percentages in the

6   McKinsey settlement. By way of example, if local government X received .069% of the 2021

7   National Settlements' abatement funds directed to local governments in California, local

8   government X would receive .069% of the McKinsey settlement abatement funds to local

9   governments in California.

10          The Settlement is accordingly designed to provide the direct payments that subdivisions

11  negotiated in the earlier national settlements but that were missing from the McKinsey-AG

12  settlement. Plaintiffs' intention with this plan of allocation is to put Class members in, as nearly

13  as possible, the position they would have been had they had the opportunity to actively negotiate

14  the AG Settlement (as they did with every other national opioids settlement), while recognizing

15  the risk of an adverse ruling on the threshold *res judicata* and lack of duty issues, raised in the

16  motions to dismiss described above.

17          **C.      Release**

18          In exchange for the settlement relief detailed above, McKinsey will receive from the Class

19  a release of claims related to McKinsey's consulting work for opioid manufacturers' prescription

20  opioid products. Agreement at 10. The release covers claims that were actually litigated in this

21  action, or could have been, whether through formal motion practice or in terms of information

22  sought and produced in discovery.

23

24

25

26

---

27  [7]     https://nationalopioidsettlement.com/wp-content/uploads/2021/10/final-proposed-ca-state-
    subdivision-agreement-distributors-settlement.pdf.

28

1

      **D.**      **Settlement Notice and Right to Opt Out**

2           Class members will be notified by the methods ordered by the Court, and notice to the

3  Class and the costs of administration will be funded from the Gross Settlement Fund.[8]  Agreement

4  at 8-9.

5           Proposed Class Counsel intend to retain Epiq to provide notice to the Class, subject to the

6  Court's approval.  In order to ensure comprehensive notice is disseminated to Settlement Class

7  Members here, proposed Class Counsel propose to engage Epiq, which successfully provided

8  hard-copy mail notice to subdivisions pursuant to the Class of subdivisions certified by Judge

9  Polster in 2019, MDL 2804, ECF 2590-2591, prior to the Sixth Circuit's reversal.

10         Proposed Class Counsel also intend to retain BrownGreer, a nationally recognized

11  settlement claims administrator, subject to the Court's approval.  For the 2021 National

12  Settlements, BrownGreer has begun making claims distributions using final participation data.

13  BrownGreer has also been retained to make distributions under the second round of national

14  opioids settlements.  As a result of this previous (and ongoing) settlement administration work,

15  BrownGreer possesses, and has recently confirmed the accuracy of, the contact and payment

16  information for government subdivisions that, *inter alia*, have a population above 10,000.  These

17  entities, together with litigating subdivisions in the McKinsey MDL, comprise the Class members

18  that are eligible for an allocation under this Settlement.

19         Epiq will provide notice to Class members of the Settlement and of Class members' rights

20  to opt out.  Epiq will use direct email notice or a hard copy parallel postcard using the best available

21  contact information.  Epiq will also engage in a limited and targeted media campaign to raise

22  awareness of the new settlement among sophisticated and opioid-settlement experienced Class

23  members in order to ensure comprehensive notice.  The proposed Class Notice, additional

24  explanatory information, and settlement documents will also be posted on the Settlement website,

25  created and maintained by Epiq, which will be cross-linked from the national opioids settlements

26

27  ―――――――――――――――
[8]  Capitalized terms not defined herein shall have the meaning attributed to them in the

28  Settlement Agreement.

1   website.   Moreover, the content of the proposed Notice clearly articulates the terms of the

2   Settlement and Class members' rights and options in plain, easily understood language and

3   provides the data points suggested by this Court's Guidance Factor 2.  *See* Baig Decl., Ex. 2.

4        While Class members will be provided with instructions for opting out of the Settlement

5   class, they need not be required to file claim forms in order to participate.  The identities of Class

6   members eligible for direct allocations can be, and already have been, verified with public

7   government sources.  If they do not choose to opt out, and the Court grants final approval of the

8   Settlement and plan of allocation, then each Class member will receive a one-time direct

9   distribution through BrownGreer using the same payment processing instructions they provided to

10  receive the previous national opioids settlement payments.

11       **E.      Attorneys' Fees and Expenses**

12       Pursuant to Rule 23(h) and this Court's Pretrial Order No. 3: Protocol for Common Benefit

13  Work and Expenses, ECF 215 at 2, Plaintiffs intend to apply to the Court for attorneys' fees and

14  costs in an amount not to exceed 15% of the Gross Settlement Fund, which shall be deducted and

15  paid from the Fund.  Agreement at ¶IV(2).  This is well below the Ninth Circuit's benchmark of

16  25% for the "percent-of-recovery method" of allocation (*In re Online DVD-Rental Antitrust Litig.*,

17  779 F.3d 934, 949 (9th Cir. 2015) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

18  935, 941-42 (9th Cir. 2011)), and is consistent with the national MDL 2804 settlements.  This 15%

19  also includes the full common benefit assessment due to the Fee Fund, prior to any contingency

20  counsel fee distributions.

21  **IV.   ARGUMENT**

22       **A.      Legal Standard on Preliminary Approval**

23       Federal Rule of Civil Procedure 23(c) governs a district court's analysis of the fairness of

24  a proposed class action settlement and creates a three-stage process for approval.  First, a court

25  must determine that it is likely to: (i) approve the proposed settlement as fair, reasonable, and

26  adequate, after considering the factors outlined in Rule 23(e)(2); and (ii) certify the settlement

27  class after the final approval hearing.  *See* Fed. R. Civ. P. 23(e)(1)(B); *see also* 2018 Advisory

28  Committee Notes to Rule 23 (standard for directing notice is whether the Court "likely will be able

1    both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes

2    of judgment on the proposal").  Second, a court must direct notice to the proposed settlement class,

3    describing the terms of the proposed settlement and the definition of the proposed class, to give

4    class members an opportunity to object or to opt out.  *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R.

5    Civ. P. 23(e)(1), (5).  Third, after a hearing, the court may grant final approval of the proposed

6    settlement by certifying the settlement class and finding that the settlement is fair, reasonable, and

7    adequate.  Fed. R. Civ. P. 23(e)(2).  In this District, a movant's submission should also include the

8    information called for under the District's Procedural Guidance for Class Action Settlements.

9    Where, as here, "the parties negotiate a settlement agreement before the class has been certified,

10   'settlement approval "requires a higher standard of fairness" and "a more probing inquiry than

11   may normally be required under Rule 23(e)."'"  *Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

12   1048 (9th Cir. 2019).[9]

13   **B.     The Court Will Be Able to Certify the Proposed Class for Settlement
             Purposes upon Final Approval**

14

15           Certification of a settlement class is "a two-step process."  *In re Volkswagen "Clean

16   Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at

17   *10 (N.D. Cal. July 26, 2016) (Breyer, J.) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

18   613 (1997)).  First, the Court must find that the proposed settlement class satisfies the requirements

19   of Rule 23(a).  *Id.* (citing Fed. R. Civ. P. 23(a)).  Second, the Court must find that "a class action

20   may be maintained under either Rule 23(b)(1), (2), or (3)."  *Id.* (citing *Amchem*, 521 U.S. at 613).

21   The proposed Settlement Class here readily satisfies the Rule 23(a)(1)-(4) and (b)(3) certification

22   requirements.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (*en

23   banc*) (upholding district court's preliminary approval and certification of nationwide settlement

24   class).

25

26

27

28   ─────────────────────
     [9]    Citations are omitted and emphasis is added throughout unless otherwise noted.

1

### 1.      Every Class Member Has Article III Standing

As an initial matter, "[c]ourts considering class action settlements must verify that every

class member has standing, and, as in the non-class action context, it is the plaintiffs' burden to

establish standing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

No. 15-md-02672-CRB, 2022 WL 17730381, at *1 (N.D. Cal. Nov. 9, 2022) (Breyer, J.) (citing

*TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2207-08 (2021)).   However, they

must do so only with "'the manner and degree of evidence required at the successive stages of the

litigation.'" *TransUnion*, 141 S. Ct. at 2208 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561 (1992)).   Because the Subdivision Master Complaint and the underlying subdivision cases

remain at the pleading stage, "general factual allegations of injury resulting from the defendant's

conduct may suffice." *Lujan*, 504 U.S. at 561.

Here, Plaintiffs alleged violations of the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. §1961 *et seq.*, negligence, negligence *per se*, civil conspiracy, fraud, aiding and

abetting, and public nuisance in their Subdivision Master Complaint.   The accompanying

Consolidated Class Action Complaint, filed for settlement approval purposes, adds class

allegations to the factual and charging allegations of this Master Complaint.   As a result of this

alleged misconduct, Plaintiffs allege that McKinsey directly contributed to the opioid epidemic

that now plagues every United States city and county.   No area in this country remains unharmed

by this crisis.

### 2.      The Class Meets the Rule 23(a)(1)-(4) Requirements

#### a.      Rule 23(a)(1): The Class Is Sufficiently Numerous

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is

impracticable."   Generally, numerosity is satisfied when the class comprises 40 or more members.

*Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012).   Here, the Class includes

over 25,000 cities and counties in the United States.   "Joinder of thousands of class members is

'clearly impractical.'" Fed. R. Civ. P. 23(a)(1).   *Volkswagen*, 2022 WL 17730381, at *2 (quoting

*Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006)).   Therefore, the Class easily satisfies

Rule 23(a)(1).

1     Moreover, while the Ninth Circuit has squarely held that the administrative feasibility of

2   identifying class members is generally not a reason to deny certification, *Briseno v. ConAgra*

3   *Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), *aff'd*, 674 F. App'x 654 (9th Cir. 2017), the

4   proposed Class presents none of the concerns that might need to be addressed within the Rule 23

5   analysis.   The Class members are known entities easily identifiable through records of the

6   U.S. Census Bureau – an independent government agency – whose contact information has already

7   been collected and recently vetted by the proposed Notice and Claims Administrators through their

8   noticing and claims processing of the prior national opioids settlements.

9                    **b.     Rule 23(a)(2): The Class's Claims Present Common**
                          **Questions of Law and Fact**

10

11          Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The

12   Supreme Court has held: "for purposes of Rule 23(a)(2), even a single common question will do."

13   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted).  The *Dukes*

14   standard focuses on whether a class action will "generate common answers apt to drive resolution

15   of the litigation."  *Id.* at 350.  Plaintiffs, including Settlement Class Representatives, bring claims

16   against McKinsey for violation of RICO and consumer protection laws and for common law claims

17   such as public nuisance, negligence, fraud, and unjust enrichment.   Underlying each of these

18   claims is a core set of common questions about, *inter alia*: (i) McKinsey's knowledge of and

19   conduct regarding the alleged improper marketing of opioid medications by its manufacturer

20   clients; (ii) McKinsey's conduct in creating, proposing, and/or implementing sales and marketing

21   strategies for opioids manufactured by Purdue before and after Purdue's first guilty plea in 2007

22   relating to misbranding of OxyContin; and (iii) whether McKinsey's strategies for promotion and

23   collaboration with its opioid manufacturer clients caused or contributed to the devastating result

24   of opioid addiction and death on communities across the country.  The answers to these questions

25   will be the same across Class members and are central to each Class member's claims.

26   Rule 23(a)(2) is satisfied.

27

28

### c.   Rule 23(a)(3): Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims

Rule 23(a)(3) requires that class representatives' claims or defenses be "typical of the claims or defenses of the class." "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interest of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Rule 23(a)(3) is satisfied when Plaintiffs' claims, including those of the Settlement Class Representatives, arise from the same conduct and are based on the same legal theories as the claims of Class members. *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *4 (N.D. Cal. Apr. 15, 2016) ("Putative class members' claims are usually typical if their claims 'arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (alteration in original).

### d.   Rule 23(a)(4): Settlement Class Representatives and Class Counsel Have Protected and Will Protect the Interests of the Class

Rule 23(a)(4)'s adequacy requirement is met where, as here: "the representative parties will fairly and adequately protect the interests of the class." Adequacy entails a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). Both prongs are readily satisfied here.

The Settlement Class Representatives have no interests antagonistic to Class members and will continue to protect the Class' interests in overseeing the Settlement administration and through any appeals. *See Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944, at *2-*3 (N.D. Cal. Apr. 14, 2016). Indeed, Settlement Class Representatives align with the Class

in their interest in proving that McKinsey worked with other opioid industry participants to cause and worsen the opioid crisis.  Settlement Class Representatives – Named Plaintiffs in the underlying actions centralized in this MDL and in the previously filed Master Complaint – understand their duties, have agreed to consider the interests of absent Class members, and have reviewed and uniformly endorsed the Settlement terms.  *See* Baig Decl., ¶33; *see also, e.g.*, *Trosper v. Stryker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *12 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a 'rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.'") (ellipsis in original).  The proposed Settlement Class Representatives are more than adequate.

Similarly, as demonstrated throughout this litigation, proposed Settlement Class Counsel and many of the PSC firms have undertaken the ongoing pleading, briefing, and investigative and discovery work, as well as the expense of this MDL.  They have demonstrated their willingness to devote whatever resources were necessary to reach a successful outcome throughout the two years since filing their complaints.  They, too, satisfy Rule 23(a)(4).

Having been previously appointed by this Court, through an open application process, to represent the Subdivision Plaintiffs on the PSC, each proposed Interim Settlement Class Counsel is experienced, qualified, more than adequate, and should be appointed under Rule 23(g).

**Aelish M. Baig of Robbins Geller Rudman & Dowd LLP:** Ms. Baig is a partner in Robbins Geller Rudman & Dowd LLP's San Francisco office.  She has focused her practice on consumer and securities fraud litigation.  She recently co-led the CT4 bellwether case of MDL 2804 on behalf of the City and County of San Francisco against the opioid industry, culminating in the 2023 trial, numerous settlements, and a verdict against Walgreens.  She has also been appointed to the PSC in the *In re Juul Labs, Inc.* MDL, where she represents one of the bellwether plaintiffs, and successfully opposed all dispositive motions prior to the proposed settlement.  Ms. Baig also litigated securities fraud claims against Wells Fargo & Co. ($480 million recovery), Chemical Mining Co. of Chile ($62.5 million recovery), and Prudential Fin., Inc. ($33 million recovery), among others.  Ms. Baig's firm, Robbins Geller Rudman & Dowd LLP, was a member of the MDL 2804 Settlement Negotiating Committee that participated

1  with the Attorneys General and has led to numerous national settlements with opioid

2  manufacturers, distributors, and pharmacies.

3      **Emily Roark of Bryant Law Center, PSC:** Ms. Roark is a partner at Bryant Law

4  Center, PSC in Louisville, Kentucky.  She has been involved in MDL and class actions involving

5  train derailments; medical devices such as Essure, transvaginal mesh, and IVC filters;

6  pharmaceuticals such as Abilify and Zantac; products such as 3M earplugs and Roundup; and

7  several different manufacturers of hip replacements, among others.   In June 2021, she was

8  appointed to the Plaintiffs Executive Committee in *Ranitidine Product Cases*, JCCP No. 5150.

9      **Jayne Conroy of Simmons Hanly Conroy, LLC:** Ms. Conroy is a named shareholder at

10  Simmons Hanly Conroy, LLC and oversees practice areas in the Complex Litigation Department.

11  Ms. Conroy's most recent MDL appointments include the PSC Leadership in *In re Social Media*

12  *Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*  She also serves as co-lead of MDL 2804,

13  the national opiate MDL litigation, and successfully litigated opioid cases as co-lead counsel

14  through trial in MDL 2804 CT1 in Cleveland, CT4 in San Francisco, and in state court in

15  New York.   Ms. Conroy also serves as a member of the MDL 2804 Settlement Negotiating

16  Committee.   Ms. Conroy served as co-chair of the Environmental Testing Committee for the

17  Deepwater Horizon oil disaster MDL and has brought individual cases against a variety of

18  religious, educational, and civic organizations for hundreds of sex abuse victims.

19      **Joseph F. Rice of Motley Rice, LLC:** Mr. Rice is co-lead counsel in the National

20  Prescription Opiate MDL, and he serves as a member of the MDL 2804 Settlement Negotiating

21  Committee.   He served as one of the lead negotiators in the $15 billion Volkswagen Diesel

22  Emissions Fraud class action settlement.  He also serves as a member of the PEC for *In re Gen.*

23  *Motors LLC Ignition Switch Litig.* and was appointed to the PSC for *In re Chrysler-Dodge-Jeep*

24  *Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*   Mr. Rice led negotiations on behalf of

25  thousands of women who allege complications and severe health effects caused by transvaginal

26  mesh and sling products, including litigation that has five MDLs pending in the State of

27  West Virginia.   He is also a member of the PSC for the Lipitor® MDL, filed for patients who

28  allege the cholesterol drug caused their Type 2 diabetes.   Mr. Rice also served as a co-lead

1   negotiator for the PSC in reaching the two settlements with BP, one of which is the largest civil

2   class action settlement in U.S. history.

3   **Matthew Browne of Browne Pelican, PLLC:** Mr. Browne is counsel for entities that filed

4   the initial opioid liability cases against McKinsey prior to the announcement of the McKinsey

5   settlement with state AGs.

6   Each of these PSC members actively participated in drafting the pleadings and briefing

7   promoting and protecting the Subdivisions' claims in this MDL, the settlement negotiation

8   process, and the prosecution of Plaintiffs' claims, together with Elizabeth J. Cabraser as Plaintiffs'

9   Lead Counsel.

10   **3.      The Class Meets the Rule 23(b)(3) and 23(c)(4) Requirements**

11   **a.      Common Issues of Law and Fact Predominate**

12   "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the

13   case are more prevalent or important than the non-common, aggregation-defeating, individual

14   issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016). "When

15   'one or more of the central issues in the action are common to the class and can be said to

16   predominate, the action may be considered proper under Rule 23(b)(3) even though other

17   important matters will have to be tried separately, such as damages or some affirmative defenses

18   peculiar to some individual class members.'" *Id.*   At its core, "[p]redominance is a question of

19   efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).  Thus, "'[w]hen

20   common questions present a significant aspect of the case and they can be resolved for all members

21   of the class in a single adjudication, there is clear justification for handling the dispute on a

22   representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022.

23   The Ninth Circuit favors class treatment of fraud claims stemming from a "'common

24   course of conduct.'" *See In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *Hanlon*,

25   150 F.3d at 1022-23.  Even outside of the settlement context, predominance is readily satisfied for

26   consumer claims arising from the defendants' common course of conduct.  *See Amchem Prods.*,

27   521 U.S. at 625; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173, 1176 (9th Cir.

28   2010) (consumer claims based on uniform omissions certifiable where "susceptible to proof by

1   generalized evidence" even if individualized issues remain); *Friedman v. 24 Hour Fitness*

2   *USA, Inc.*, No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009)

3   (common issues predominate where alleged injury is a result "of a single fraudulent scheme").

4          Central to each of Plaintiffs' claims are allegations that McKinsey perpetrated the same

5   fraud in the same manner against all Class members: namely, that it conspired with its opioid

6   manufacturer clients in a scheme to unlawfully increase sales of opioids – and to grow their share

7   of the prescription painkiller market and the market as a whole – through repeated and systematic

8   misrepresentations, concealments, and omissions of material fact about the safety and efficacy of

9   opioids for treating long-term chronic pain, together with fraudulent and deceptive marketing

10  campaigns and abusing their access to prescriber data to target high prescribing doctors.  Whether

11  McKinsey engaged in this conduct is a question that is susceptible to common proof, and the

12  answer as to one Plaintiff's case is the answer as to all.  That question can be resolved using the

13  same evidence for all Class members and thus is the precise type of predominant question that

14  makes a Class-wide adjudication worthwhile.  *See Tyson Foods*, 136 S. Ct. at 1045 ("When 'one

15  or more of the central issues in the action are common to the class and can be said to predominate,

16  the action may be considered proper under Rule 23(b)(3) . . . .'").

17         Plaintiffs, including Settlement Class Representatives, also allege a common kind of injury.

18  Their injuries, like every other Class member's injuries, arise from the inordinate increase in opioid

19  sale and diversion that occurred in every community throughout the country, beginning after the

20  1996 launch of OxyContin.

21         Rule 23(b)(3)'s trial manageability requirements are irrelevant for settlement class

22  certification because, as the Supreme Court observed in *Amchem*, 521 U.S. at 620, a settlement

23  means there will be no trial.  Were the Subdivisions' claims to be tried, the court might elect to

24  proceed under Rule 23(c)(4), designating one or more particular claims or issues for Class-wide,

25  binding treatment, while leaving others for individualized pursuit.  Given the significance of any

26  of the common questions of law or fact described above, Rule 23(c)(4) also provides an additional

27  or alternative basis for settlement- purposes certification, and was invoked by the court in MDL

28  2804 to certify the negotiation class of subdivisions in that litigation.  *In re Nat'l Prescription*

1    *Opiate Litig.*, 332 F.R.D. 532, 542-43 (N.D.Ill. 2019), *rev'd on other grounds*, 976 F.3d 664 (6th

2    Cir. 2020).

3                    **b.    Class Treatment Is Superior to Other Available
                            Methods for the Resolution of This Case**

4

5          Superiority asks "whether the objectives of the particular class action procedure will be

6    achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  In other words, it "requires the court

7    to determine whether maintenance of this litigation as a class action is efficient and whether it is

     fair." *Wolin*, 617 F.3d at 1175-76.

8
                   Under Rule 23(b)(3), the Court evaluates whether a class action is a superior
9          method of adjudicating plaintiff's claims by evaluating four factors: "(1) the
           interest of each class member in individually controlling the prosecution or defense
10         of separate actions; (2) the extent and nature of any litigation concerning the
           controversy already commenced by or against the class; (3) the desirability of
11         concentrating the litigation of the claims in the particular forum; and (4) the
           difficulties likely to be encountered in the management of a class action."
12
     *Trosper*, 2014 WL 4145448, at \*17.
13
           Class treatment here is far superior to the litigation of thousands of individual government
14
     actions.  "From either a judicial or litigant viewpoint, there is no advantage in individual members
15
     controlling the prosecution of separate actions.  There would be less litigation or settlement
16
     leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d
17
     at 1023; *see also Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their
18
     cases, particularly where common issues predominate for the proposed class, is an inferior method
19
     of adjudication.").
20
           Class resolution is also superior from an efficiency and resource perspective if Class
21
     members had to bring individual lawsuits against McKinsey; each Class member would have to
22
     prove the same wrongful conduct to establish liability and thus would offer the same evidence.
23
     Given that Class members number in the tens of thousands, there is the potential for just as many
24
     lawsuits with the possibility of inconsistent rulings and results.  *In re Nat'l Opiate Litig.* and the
25
     parallel state court opioid actions against manufacturers, distributors, and pharmacies demonstrate
26
     exactly this possibility.
27

28

1    Thus, Class-wide resolution of Class members' claims, especially when they are against a

2    single defendant family, is clearly favored over other means of adjudication, and Rule 23(b)(3)'s

3    superiority requirement is met.

4    For the reasons set forth above, Settlement Class Representatives respectfully submit that

5    the Court will – after notice is issued and Class member input received – "likely be able to . . .

6    certify the class for purposes of judgment on the proposal." *See* Fed. R. Civ. P. 23(e)(1)(B).

7                        **c.    The Court Should Appoint Interim Settlement Class**
                               **Counsel Under Rule 23(g)(3)**

8

9    The Court is required to appoint class counsel to represent the Class.   *See* Fed. R.

10   Civ. P. 23(g).  At the outset of the MDL, as part of a competitive application process, the Court

11   chose Lead Counsel and each member of the PSC due to their qualifications, experience, and

12   commitment to the successful prosecution of this litigation.  *See* ECF 211.  The criteria the Court

13   considered in appointing Lead Counsel and the PSC align with the considerations set forth in

14   Rule 23(g).  *See, e.g.*, *Clemens*, 2016 WL 1461944, at *2.  As noted above, Lead Counsel and

15   several of the PSC firms, including Settlement Class Counsel, have undertaken an enormous

16   amount of work, effort, and expense in this MDL on behalf of the Class.  *See* Baig Decl., ¶45.

17   Plaintiffs therefore submit that the six firms should be appointed as Interim Settlement Class

18   Counsel under Rule 23(g)(3) to conduct the necessary steps in the Settlement approval process.

19            **C.    The Settlement Is Fair, Reasonable, and Adequate Under**
                     **Rule 23(e)(2)**

20   Rule 23(e)(2) identifies several criteria for the Court to use in deciding whether to grant

21   preliminary approval of a proposed class settlement and direct notice to the proposed class,

22   including whether the class has been adequately represented, the proposal was negotiated at arm's

23   length, the relief is adequate, and class members are treated equitably relative to one another.

24   Rule 23(e)(2)(A)-(D).  The Settlement proposed here readily satisfies the criteria for preliminary

25   approval.

26

27

28

1

2

> **1.      Rule 23(e)(2)(A): Settlement Class Counsel and the Settlement Class Representatives Will Continue to Zealously Represent the Class**

3

Settlement Class Counsel and Settlement Class Representatives fought hard to protect the

4

interests of the Class, as evidenced by the significant compensation available to the Class through

5

the proposed Settlement.  Settlement Class Counsel prosecuted this Action and its fair resolution

6

with vigor and dedication since filing their clients' complaints.  *See* Fed. R. Civ. P. 23(e)(2)(A).

7

Settlement Class Counsel undertook significant efforts to uncover the facts to continuously

8

prosecute and refine the Class claims.  Settlement Class Counsel also engaged in robust Rule 12

9

motion practice – researching, drafting, and filing three thorough opposition briefs, totaling well

10

over 100 pages, to Defendants' motions to dismiss.

11

Settlement Class Representatives each worked with counsel to review and evaluate the

12

terms of the proposed Settlement Agreement and have endorsed its terms.  Each Representative

13

has also expressed its continued willingness to protect the Class until the Settlement is approved

14

and its administration completed.  *See* Baig Decl., ¶33.

15

> **2.      Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations**

16

17

Counsel for the Settling Parties undertook serious, informed, and arm's-length negotiations

18

over several months – including in-person negotiation sessions and multiple remote sessions via

19

video and telephone.  *Id.*, ¶17.  These detailed discussions culminated in the proposed Settlement

20

now before the Court.  *See* Fed. R. Civ. P. 23(e)(2)(B).

21

Where extensive information has been exchanged, "[a] court may assume that the parties

22

have a good understanding of the strengths and weaknesses of their respective cases and hence

23

that the settlement's value is based upon such adequate information."  William B. Rubenstein, *et*

24

*al.*, 4 Newberg on Class Actions §13:49 (5th ed. 2012); *cf. In re Anthem, Inc. Data Breach Litig.*,

25

327 F.R.D. 299, 320 (N.D. Cal. 2018) (concluding that the "extent of discovery" and factual

26

investigation undertaken by the parties gave them "a good sense of the strength and weaknesses

27

of their respective cases in order to 'make an informed decision about settlement'") (citing *In re*

28

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

1    Here, too, the volume of documents and information supports the parties' ability to make

2    a well supported settlement decision.  Notably, discovery supporting a settlement does not need to

3    have been formally produced and can include documents and information learned in related

4    proceedings.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-41 (9th Cir. 1998) (noting

5    formal discovery is not required for settlement approval and, "[i]n particular, the district court and

6    plaintiffs may rely on discovery developed in prior or related proceedings"); *Wahl v. Yahoo! Inc.*,

7    No. 17-cv-02745-BLF, 2018 WL 6002323, at *4 (N.D. Cal. Nov. 15, 2018) (granting final

8    approval of class settlement although "little formal discovery" was conducted, noting relevant

9    inquiry was whether parties had "sufficient information to evaluate the case's strengths and

10   weaknesses").  Here, Defendants have produced or made available hundreds of thousands of

11   documents relevant to their involvement in developing opioid marketing schemes, including those

12   previously produced to the AGs in connection with that settlement, which informed Plaintiffs'

13   understanding of their claims' strengths and weaknesses.  Baig Decl., ¶16.

14   "Collusion may not always be evident on the face of a settlement, and courts therefore must

15   be particularly vigilant not only for explicit collusion, but also for more subtle signs that class

16   counsel have allowed pursuit of their own self-interests and that of certain class members to infect

17   the negotiations." *In re Bluetooth Headset*, 654 F.3d at 947.  Such signs include "'when counsel

18   receive a disproportionate distribution of the settlement,'" *id.* (quoting *Hanlon*, 150 F.3d at 1021);

19   the inclusion of "clear sailing" provisions whereby fees are funded separately from the class funds;

20   and when the unawarded fees revert to defendants.  *Id.*  None of these flags is present.  Plaintiffs

21   plan to request 15% of the settlement fund for attorneys' fees and for litigation and administrative

22   costs, far less than the standard Ninth Circuit benchmark for counsel fees and costs.  Consistent

23   with all national opioids settlements to date, it reserves 85% of the Fund to be used by the Class

24   for opioids abatement.  Also, McKinsey has not taken the position that it will not contest any

25   attorneys' fees application that Plaintiffs will make, and thus reserves the ability to make such an

26   objection, and no portion of the Fund will revert to McKinsey even if this Court makes no award

27   of fees.

28

Additionally, the parties formally negotiated the Settlement over months, under the oversight of Mr. Melnick, a sophisticated and objective mediator with decades of proven experience in complicated litigation and class actions. Baig Decl., ¶17. In approving a class action settlement, the Ninth Circuit puts "a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "'The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'" *G.F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015); *see also Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 1589980, at *7 (N.D. Cal. Apr. 12, 2019) (settlements resulting from formal mediations with experienced mediator weigh in "favor of granting preliminary settlement approval"). Indeed, Judge Chhabria preliminarily approved a class settlement negotiated with Mr. Melnick, finding: "the [s]ettlement was negotiated at arm's length and under circumstances evidencing a lack of collusion." *Lembeck v. Arvest Cent. Mortg. Co.*, No. 3:20-cv-03277-VC, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021). So should the Court here.

### 3. The Extent of Discovery Taken Across Opioids Cases and the Stage of the Proceedings Favor Preliminary Approval

While discovery against McKinsey is ongoing, the legal and factual issues surrounding the litigation have been thoroughly investigated. Years of discovery, starting with MDL 2804 and related actions, inform Plaintiffs' claims against McKinsey. This covers millions of pages of documents, terabytes of data, hundreds of depositions, expert reports, and testimony presented at several trials. Indeed, Plaintiffs and Class members have sued McKinsey's own clients – Purdue, Endo, J&J, Mallinckrodt – for the same course of false messages and aggressive promotional tactics that Plaintiffs and Class members allege McKinsey advised and facilitated. Plaintiffs have also reviewed documents that McKinsey produced to the AG's office and other document productions obtained pursuant to discovery requests. Baig Decl., ¶16. This Court lifted its stay of discovery in October 2022, *see* ECF 440; McKinsey has produced documents that Plaintiffs have diligently reviewed. While additional discovery would benefit all parties if Plaintiffs' and Class

1   members' cases were to proceed to trial, the degree of current and prior discovery informing

2   Plaintiffs' and Settlement Class Counsel's understanding and valuation "'suggests that the parties

3   arrived at a compromise [with] a full understanding of the legal and factual issues surrounding the

4   case.'"  *Carlotti v. ASUS Comput. Int'l*, No. 18-cv-03369-DMR, 2019 WL 6134910, at *6 (N.D.

5   Cal. Nov. 19, 2019).

6            **4.      Rule 23(e)(2)(C): The Settlement Provides Substantial
                        Compensation in Exchange for the Compromise of Strong
7                       Claims**

8            The Settlement provides substantial relief for the Class, especially considering: (i) the

9   costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan;

10  and (iii) the fair terms of the requested award of attorneys' fees.  *See* Fed. R. Civ. P. 23(e)(2)(C).

11  As noted above, the Settlement secures $207 million for Class members for the impacts of the

12  opioids crisis.

13           As an initial matter, Plaintiffs believe their case on the merits is a strong one.  First, on the

14  threshold *res judicata* issue, Plaintiffs believe they should ultimately prevail.  Through their

15  briefing, Plaintiffs have shown their claims are distinct from the *parens patriae* claims settled by

16  the AGs; the political subdivisions are "pursu[ing] damages and remedies for harm to themselves

17  for local undertakings in response to the opioid epidemic," not harm to residents under *parens*

18  *patriae*.  ECF 345 at 15.  They have further shown McKinsey has failed to carry its burden to

19  demonstrate that, under the laws of each state in which a Subdivision Plaintiff has asserted claims,

20  AGs' authority adequately extends to the ability for the state to resolve subdivision claims **and**

21  was properly executed in these circumstances.  ECF 345.  Indeed, the Subdivision Plaintiffs

22  provided evidence that, in at least 11 states AGs **lack** the authority to represent subdivisions in

23  claims such as these; and in an additional 11 states, the law is unclear at best as to whether an AG

24  holds that authority.  *Id.*  However, as set forth below, this threshold issue, absent from all other

25  opioids litigation (because the McKinsey settlement with the AGs uniquely excluded subdivisions

26  from the negotiations), injected into this McKinsey litigation complex and unsettled questions

27  regarding the legal and political relationships and divisions of power between states and

28

subdivisions.  The parties propose that these issues be resolved, rather than adjudicated, and the Settlement is designed to supply a direct payment to the subdivisions to do so.

Second, Plaintiffs believe their underlying claims are meritorious.  Plaintiffs allege McKinsey's actions created, assisted, or permitted the creation of a public nuisance, including conditions that are harmful to public health, in violation of state public nuisance laws.  *See* Master Complaint (Subdivision) §V.  The Rule 12(b)(6) briefing on behalf of Tribal and TPP plaintiffs previews the strength of arguments Plaintiffs would make if faced with a similar challenge.  *See* ECF 481.  Of course, opioid-related claims sounding in nuisance have already seen high profile trial wins, including before this Court.  *See City & Cnty. of S.F. v. Purdue Pharma, L.P.*, No. 3:18-cv-07591-CRB, ECF 1578 (N.D. Cal. Aug. 10, 2022) (Breyer, J.); *see also In re Nat'l Prescription Opiate Litig. (Lake & Trumbull Cntys., Ohio)*, No. 1:17-md-2804, ECF 4611 (N.D. Ohio Aug. 17, 2022).  While there is no trial opinion adjudicating the strength of the Subdivision Plaintiffs' RICO and common law claims, they too have survived multiple dispositive challenges in other opioid cases.  *See*, *e.g.*, Opinion and Order Regarding Defendants' Summary Judgment Motions on RICO and OCPA, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio Sept. 10, 2019); Opinion and Order Denying Manufacturer Defendants' Motion for Summary Judgment, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio Sept. 9, 2019); Short Form Order, *New York State Opioids Litig. Part 48 – Suffolk Cnty.*, Hon. Jerry Garguilo (N.Y. Sup. Ct. June 17, 2020).  *But see City & Cnty. of S.F. v. Purdue Pharma, L.P.*, 491 F. Supp. 3d 610, 659 (N.D. Cal. 2020) (Breyer, J.) (dismissing San Francisco's RICO claim for failure to plead proximate causation).

### a.    The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation

The Settlement benefits are even more impressive given the inherent uncertainties of continued litigation and the inevitable delay that would accompany it.  Settlement, by its very nature, does not require full recovery of actual damages, and a compromise of potential recovery in exchange for certain and timely provision of the benefits under the Settlement is an unquestionably reasonable outcome.  *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL

1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued

litigation are factors for the Court to balance in determining whether the Settlement is fair."); *Kim*

*v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012)

("The substantial and immediate relief provided to the Class under the Settlement weighs heavily

in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as

well as the financial wherewithal of the defendant.").

      Under Rule 23(e), the strength of Plaintiffs' claims must be "balanced by the risk, expense,

and complexity of their case, as well as the likely duration of further litigation." *In re Volkswagen*

*"Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL

6248426, at *11 (N.D. Cal. Oct. 25, 2016) (Breyer, J.) (citing *Mego*, 213 F.3d 458, as amended

(June 19, 2000)).

      First, this litigation poses real risks.  McKinsey's motion to dismiss on *res judicata* grounds

remains pending, and while Plaintiffs believe they are likely to prevail, the motion is not baseless.

The Court has asked for extensive briefing, including supplemental briefing, on the issue of AGs'

authority to settle claims, and it is possible the answer may differ by state.  Moreover, even

assuming that Plaintiffs prevail, their claims would still need to succeed through motion practice,

including a Rule 12(b)(6) motion, a motion for class certification and likely appeal thereof,

summary judgment, and *Daubert* motions.  As demonstrated by the Court's recent Order Granting

Defendants' Motion to Dismiss [ECF 573, issued 07/20/23] in the NAS track cases, there is no

guarantee the Subdivision Plaintiffs would be able to pass through even the first dispositive hurdle.

*See* ECF 573 (dismissing negligence for failure to plead duty, fraud for failure to plead reliance,

public nuisance for lack of standing as private actors, and other claims dependent on the underlying

dismissed torts).

      Almost all class actions involve a high level of risk, expense, and complexity, which is one

reason judicial policy so strongly favors resolving class actions through settlement.  *See In re*

*Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1065

(N.D. Cal. 2017) (Breyer, J.) ("Settlement is favored in cases that are complex, expensive, and

lengthy to try.") (citing *Rodriguez*, 563 F.3d at 966).  This is not only a complex class case but

1   involves a newly revived and quickly developing field of litigation: public nuisance.  No putative

2   class action on behalf of government subdivisions bringing nuisance claims has yet been certified

3   for litigation purposes.  If Plaintiffs' claims were certified for litigation here, significant discovery

4   would need to be undertaken and expert analysis conducted not only to prove McKinsey's liability

5   but to quantify the degree of harm and abatement needs of every Class member (and potentially of

6   every community in the United States if a nationwide class were certified).  The costs of doing so

7   would be extraordinarily high with no guarantee of success.

8          Of course, the true risk – the one that drives Plaintiffs, Class Counsel, the PSC, and Class

9   members throughout this country to pursue such complicated litigation – is that the opioid

10  epidemic is ongoing.  People die every day of opioid overdoses.  Abatement is needed now.

11         Second, similar cases against opioid manufacturers, distributors, and retailers have been

12  pending in MDL 2804 for more than five years.  The time it has taken bellwethers to proceed

13  through discovery and then through trial or to another resolution has averaged approximately two

14  to three years; and even then, trial wins have been and are subject to ongoing appeals.  Should

15  Settlement Class Counsel prosecute Class members' claims, it would similarly take two to three

16  years and then would likely be followed by a lengthy appeals process.

17         Given the risks, complexity, expense, and delay posed by further litigation, this Settlement

18  represents a fair and adequate resolution for the Class.

19             **b.     The Proposed Plan of Allocation, Including the Method
                        of Processing Class Member Claims, Is Effective and
20                      Based on Objective Factors**

21         The proposed plan of allocation is based on neutral, objective criteria; is the product of

22  extensive, informed negotiations between sophisticated Class members and state AGs advised in

23  connection with the previous national settlements; and will ensure a fair distribution of the Net

24  Settlement Fund among Class members.  Accordingly, Settlement Class Counsel expect a

25  comparably low opt out and high participation rate compared to other class action settlements.  No

26  claim form will be required, so nothing will be required of Class members in order to process their

27  claims.  For the sake of comparison – where a claim form must be submitted, average class

28  settlement claims rates range between 1% and 10%.  *See In re Myford Touch Consumer Litig.*,

1   No. 13-cv-03072-EMC, 2018 WL 10539266, at *2 (N.D. Cal. June 14, 2018) (collecting cases).

2   Here, the Notice and Claims Administrators are uniquely qualified.  Epiq and BrownGreer have

3   demonstrated success in providing notice to the Class members and in processing subdivision

4   payment distributions in the MDL 2804 national opioids settlements.  Though it is too soon to

5   report final statistics on the second round of settlements, the 2021 National Settlements saw

6   average participation rates between litigating and non-litigating subdivisions at above 98%, and

7   the five "new" settlements are trending toward similar participation levels.  https://nationalopioid

8   settlement.com/state-participation-status.   Class members' enthusiasm and support for other

9   national opioids settlements are encouraging.  Given the low expected opt outs here and the high

10  participation rate in similar national settlements, there is virtually zero risk of money remaining

11  after distribution.  Even so, there will be no reversions of the Net Settlement Fund to McKinsey;

12  all Settlement Fund money, net of fees and costs, shall be distributed to the Class.

13  **c.**       **The Terms Relating to Attorneys' Fees Are Reasonable**

14          Plaintiffs plan to seek attorneys' fees and costs, together, of up to 15% of the Gross

15  Settlement Fund – the same amount sought in the seven MDL 2804 settlements.  Baig Decl., ¶48.

16  Fed. R. Civ. P. 23(e)(2)(C)(iii).  This request is below the range regularly approved in common

17  fund settlements in this Circuit.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th

18  Cir. 2002) (observing Ninth Circuit cases support that between 20% and 30% of the settlement

19  common fund in attorneys' fees is within the "usual range"); *Hernandez v. Dutton Ranch Corp.*,

20  No. 19-cv-00817-EMC, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) (collecting cases and

21  finding that "[d]istrict courts within this circuit, including this Court, routinely award attorneys'

22  fees that are one-third of the total settlement fund . . . .  Such awards are routinely upheld by the

23  Ninth Circuit").

24          Settlement Class Counsel will file their fee application, which will provide the supporting

25  basis for their request in advance of the objection deadline, and it will be available on the

26  Settlement website after it is filed.  This application will include common benefit time incurred by

27  the PSC members and others, operating under this Court's common benefit Orders, as

28  recommended by Plaintiffs' Lead Counsel.  Counsel of record for subdivisions with cases on file

1  against McKinsey as of the date of announcement of the settlement in principle may apply to

2  Plaintiffs' Lead Counsel for payment on their contingency fee agreements, net of the 7.5%

3  common benefit assessment applied to all settlements and paid from the attorneys' fee portions

4  thereof, pursuant to this Court's June 30, 2023 Pretrial Order No. 9 [Common Benefit Order].

5  Private contingency fee agreements are otherwise unaffected.  Any attorneys' fees and expenses

6  awarded by the Court will be paid from the Gross Settlement Fund following the Effective Date

7  of the Settlement.  Based on their preliminary review, the total combined common benefit hours

8  in this case through August 30, 2023 are over 29,000 hours, for a total combined lodestar of

9  approximately $16.9 million during that period.  The total combined litigation expenses in this

10  case through August 30, 2023 are approximately $350,000.  Based on the above statistics, a fee

11  and expense award equal to 15% of the Gross Settlement Fund plus costs, after subtracting the

12  expenses portion, would represent approximately a 1.6 multiplier on the common benefit lodestar.

13  Settlement Class Counsel will continue to incur time in seeking settlement approval and on

14  implementation efforts should the Settlement be approved.  Plaintiffs' Lead Counsel will provide

15  additional information in the fee application, to be filed and posted on the Settlement website prior

16  to the opt-out/objection deadline, so that Class members will have the opportunity to comment on

17  or object to the requested fees prior to the Final Approval Hearing.[10]

18      Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid

19  only after the Court grants Final Approval.  The Court's ultimate decision on whether to award

20  fees and expenses does not impact or terminate the underlying Settlement Agreement.

21          **5.      The Settlement Treats Class Members Equitably in Relation to
                       One Another**

22

23      No Class member receives preferential treatment under the Settlement.  Any and every

24  Class member is entitled to a *pro rata* portion of the Net Settlement Fund based on the pre-

25  negotiated terms applied in the plan of allocation.

26

27  _____

[10]   Finally, there are no agreements between the parties other than the Settlement.  *See* Fed. R.
28  Civ. P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement
    made in connection with the proposal").

1       Specifically, the proposed plan of allocation calculates a *pro rata* share of the Net

2  Settlement Fund for each eligible county, city, and special district – those with a population above

3  10,000 or that have brought suit – by applying formulas and eligibility criteria that Class members

4  themselves have already had the opportunity to negotiate with their state AGs.  It is also based on

5  prolonged and intensive research, analysis, and discussion by and among members of the Court-

6  appointed MDL 2804 PEC and Settlement Committee – which overlaps in part with the leadership

7  appointed in this MDL – and government subdivisions and public health and health economic

8  experts.

9       When the 2021 National Settlements were secured, state AGs negotiated a state-level

10  allocation formula, largely based on relative population, resulting in the state allocations listed on

11  Exhibit F of the Janssen Settlement Agreement.

12       From there, a standard formula was applied to each state, in which 15% of settlement funds

13  would go directly to the state, 15% would go directly to the counties, and 70% would be shared.

14  This 15/70/15 allocation, which originated with the negotiation class, is known as the "default

15  formula," from which subdivisions and states had the opportunity to negotiate modifications.

16  Many subdivisions and states did just that – resulting in intra-state, state-subdivision agreements,

17  commonly known as "MOUs", and in some cases enabling legislation, that ultimately governed

18  city- and county-level distributions in the J&J Settlement and, with slight alterations, in every

19  national opioids settlement since.  Those default and, where applicable, negotiated allocations,

20  agreements, and statutes can all be found in the State Agreements section of the National Opioids

21  Settlement website.[11]

22       This Settlement is a more accurate and direct reflection of **equitable** treatment because the

23  Class members are sophisticated government entities that have had the opportunity to test and

24  exercise their bargaining power.  The J&J MOUs that subdivisions and AGs negotiated in each

25  state directly reflect the relative strength of AG power to litigate and release subdivision claims in

26  their own states, as well the substantive state law on subdivisions' claims.  They are therefore an

27

28  ---

[11]   https://nationalopioidsettlement.com/state-participation-status/.

1   apt proxy for the allocation percentages that subdivisions would have received here had they been

2   active participants in the AG negotiations with McKinsey.

            **6.    The Northern District of California Guidance Factors Support
                    Settlement Approval**

                **a.    Guidance Factor 1: Differences, Range, and Plan of
                        Allocation**

6       **Guidance Factors 1(a)-(b):** The class definition, proposed in the first instance for the

7   specific purposes of this Settlement, is derived directly from the objective identification and

8   participation eligibility criteria of the previous national opioids settlements.

9       **Guidance Factor 1(c):** This litigation poses many unknowns that make it difficult to

10  quantify what Class members could receive at trial.  Of the opioid-related cases across the country

11  that have gone to trial thus far, some plaintiffs have won and some have lost, but only one yielded

12  a monetary verdict.  *See Opiate Litig. (Lake & Trumbull Cntys.)*, ECF 4611 (awarding injunctive

13  relief and $650.6 million to be paid over 15 years to two Ohio counties for nuisance claim against

14  three pharmacy defendants).  That order is currently on appeal to the Sixth Circuit and does not

15  provide an adequate touchstone for what any particular Class member could receive in their

16  individual cases against one category of defendants.

17      That said, the Court and the parties are in the unique position of having seven national

18  settlements from which to draw comparisons.  While subdivisions were not privy to their AGs'

19  rationales for their states' settlement amounts, they can draw conclusions about their lost share in

20  the AG Settlement.  The seven prior settlements in MDL 2804 demonstrate the negotiating power

21  of subdivisions when included in the process and working alongside state AGs.  This Settlement

22  recaptures the subdivisions' lost share of the AG settlement and avoids the risk, costs, and delay

23  of further litigation, including the dual risks of dismissal on the *res judicata* and Rule 12 motions.

24      While it is possible that Class members could win large trial awards if they survived *res*

25  *judicata* and Rule 12 hurdles and proceeded with their claims (that they would then have to defend

26  on appeal), Plaintiffs submit that this Settlement represents an excellent value in recovery for the

27  Class.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)

28

1  ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to

2  only a fraction of the potential recovery that might be available to the class members at trial.").

3      **Guidance Factor 1(d):** Plaintiffs and Settlement Class Counsel are aware of only two

4  cases that the proposed Settlement may affect, a case on behalf of Anderson County, Tennessee,

5  pending in Tennessee state court. *Anderson Cnty., et al. v. Bearden Healthcare*

6  *Assocs., Inc., et al.*, No. 22-CV-138-IV (Tenn. Cir. Ct., Sevier Cnty. 2022), and a case on behalf

7  of a public health department and community based organization in Mobile County, pending in

8  Alabama state court, *Mobile Cnty. Bd. of Health, et al. v. Mitchell "Chip" Fisher, et al.*,

9  No. 02-CV-2019-902806.00 (Ala. Cir. Ct., Mobile Cnty. 2023).  Also, McKinsey has not taken

10  the position that it will not contest any attorneys' fees application that Plaintiffs will make, and

11  thus reserves the ability to make such an objection, and no portion of the Fund will revert to

12  McKinsey even if this Court makes no award of fees..  All federally filed cases are under this

13  Court's purview.  To the extent this Settlement could theoretically release school district claims,

14  those plaintiffs are excluded from the Class definition, and school districts are represented by PSC-

15  appointed counsel Cyrus Mehri, who separately negotiated a settlement on their behalf.

16      **Guidance Factor 1(e):** The plan of allocation applies a neutral mathematical formula that

17  is, first, derived from objective data points aimed at assessing a proportional degree of harm and

18  second, reflective of Class members' relative bargaining power and of the strength of their claims,

19  across each state.  Applying the MOUs from the 2021 National Settlements will ensure a fair and

20  equitable distribution of the Settlement Fund among Class members.

21      **Guidance Factor 1(f):** Settlement Class Counsel expect a low opt-out rate (*i.e.*, a high

22  participation rate) compared to ordinary class action settlements, which range from 1% to 10%.

23  *See Myford Touch*, 2018 WL 10539266, at *2.

24      **Guidance Factor 1(g):** Given the expected low opt outs here and the high participation

25  rate in similar national settlements, there is little to no risk of money remaining after initial

26  distributions.  Even so, there will be no reversions of the Net Settlement Fund to McKinsey.  All

27  Settlement Fund money, net of fees and costs, shall be distributed among Class members.

28

### b. Guidance Factor 2: Proposed Settlement Administration

Plaintiffs propose that Epiq and BrownGreer be appointed as the Notice Administrator and Claims Administrator, respectively, based on their previous experience in the national opioids settlements and the efficiencies to be gained. Epiq and BrownGreer were selected to provide notice and/or distribute payments in MDL 2804. In the case of BrownGreer, it was retained only after the AGs issued a Request for Proposals and a competitive selection process was overseen by AGs' offices and PEC counsel (some of whom are proposed Settlement Class Counsel). The MDL 2804 PEC members have a history of working successfully and efficiently with Epiq and BrownGreer in the opioids settlement context. Indeed, BrownGreer has now successfully made initial payments for some of the largest settlements in history.

The administrative costs for these services will be paid out of the Gross Settlement Fund. They are anticipated to be approximately between $82,000 and $87,000 for Notice (Epiq) and $250,000 for payment processing and distribution (BrownGreer). These amounts are significantly less than can be expected from notice and claims administrators Epiq and BrownGreer that would have to duplicate much of the groundwork already laid. Moreover, each has confirmed that it maintains insurance in case of errors, as well as industry standard procedures for securely handling Class member data, which generally includes contact information and payment instructions.

### c. Guidance Factor 3: Proposed Notice to the Class Is Adequate

The proposed Notice program provides for Class Notice to be distributed by: (i) direct email notice to the appropriate individuals on behalf of Class members eligible for a monetary distribution for which email information is available, which information has been recently vetted and confirmed in similar notice programs; and (ii) direct mail notice to verified and up-to-date contacts for all Class members. Additionally, the proposed notice program provides for a targeted media campaign and for the creation and maintenance of a dedicated settlement website where Class members will be able to review the Settlement Agreement; detailed notice materials, including the Notice itself, which provides clear and concise information concerning all relevant aspects of the litigation; the state MOUs; key deadlines; the Preliminary Approval Order, if and

1  when it is granted; and the briefs and declarations in support of preliminary approval, final

2  approval, and the fee award, once they are filed with the Court.

3         The proposed Notice includes contact information for Settlement Class Counsel; the

4  Settlement website URL; instructions on how to access the case docket via PACER or in person

5  at any of the Court's locations; the date and time of the Final Approval Hearing, as well as other

6  relevant dates, clearly stating that the date may change without further notice to the Class; and a

7  note to advise Class members to check the Settlement website or the Court's PACER site to

8  confirm that the date has not changed.  Settlement Class Counsel will also ensure that the dates on

9  the Settlement website will also be kept up to date.

10         The content and method of dissemination of the proposed Notice comports with the

11  requirements of due process, and the combination of these multiple forms of direct notice are

12  designed to provide the most comprehensive notice to the Class, which is composed of

13  sophisticated government entities that have received similar opioids settlement notices and are

14  accustomed to reviewing and understanding far more complicated legal materials.

15                  **d.**      **Guidance Factors 4-5: Exclusions and Objections**

16         Pursuant to Guidance Factors 4-5 and Rule 23(e)(5), the proposed Class Notice clearly

17  discusses the Class members' rights.  In particular, it includes information on Class members'

18  rights to: (1) request exclusion and the manner for submitting such a request; (2) comment on or

19  object to the Settlement, or any aspect thereof, and the manner for filing a comment or objection;

20  and (3) participate in the Settlement.  *See* Baig Decl., Ex. 2.  The proposed Class Notice also

21  provides contact information for Settlement Class Counsel, as well as the postal address for the

22  Court, and the URL for a Settlement website where Class members can seek additional information

23  or pose questions to the Notice and Claims Administrators.  *Id.*

24                  **e.**      **Guidance Factor 6: Intended Attorneys' Fees and**
                           **Expenses Request**

25
26         Plaintiffs will separately seek an award of attorneys' fees and payment of litigation costs

27  and expenses.  This payment, too, will come from McKinsey through the Gross Settlement Fund.

28  Agreement §VI.  The request for an award of attorneys' fees and costs, combined, will not exceed

1   15% of the Gross Settlement Fund.  The amount awarded will be held and ultimately allocated in

2   a manner to be set by the Court.

3            **f.**        **Guidance Factor 7: Proposed Service Awards**

4           Settlement Class Counsel will not seek Service Awards for the named plaintiffs.

5            **g.**        **Guidance Factor 8: *Cy Pres* Awardees**

6           No *cy pres* awards shall be made in this Settlement, and no portion of the Net Settlement

7   Fund shall revert to McKinsey.  Because there is no cap on distributions per Class member, all

8   Settlement Funds shall be paid pursuant to the plan of allocation and on a *pro rata* share to Class

9   members through a single payment.

10            **h.**        **Guidance Factor 9: Proposed Timeline**

11           In connection with preliminary approval of the Settlement, the Court must also set dates

12   for certain events.  The Settling Parties suggest a schedule based on the following intervals:

13

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for Plaintiffs to confirm with Notice Administrator the identities of all Class members who should be sent Notice | Not later than 30 days following entry of Preliminary Approval Order |
| Deadline for Notice Administrator to complete email and/or U.S. mail notice ("Notice Date") | Not later than 30 days following receipt of confirmed list of Class members |
| Deadline for objectors to deliver written objections by hand or postmarked/sent by first-class mail | Postmarked or submitted not later than 60 days from Notice Date |
| Deadline for Class members to submit Request for Exclusion, if desired | Postmarked or submitted not later than 60 days from Notice Date |
| Deadline to submit opening briefs and supporting materials in support of Final Approval of Settlement | Not later than 65 days prior to Final Approval Hearing |
| Deadline to submit opening briefs and supporting materials in support of motion for attorneys' fees and expenses | Not later than 65 days prior to Final Approval Hearing |
| Final Approval Hearing | Day and time chosen at Court's discretion |

23            **i.**        **Guidance Factor 10: Class Action Fairness Act Notice**

24           Pursuant to Guidance Factor 10, Defendants shall be responsible, at their own cost,

25   separate from the Gross Settlement Fund, for providing notice under the Class Action Fairness Act

26   of 2005, 28 U.S.C. §1711, *et seq.*, to state AGs and the U.S. Attorney General.  This notice shall

27   be provided within ten days of the filing of the instant motion with the Court.

28

1

           **j.**      **Guidance Factor 11: Comparisons**

2          Pursuant to Guidance Factor 11, Settlement Class Counsel submit that this Class

3 Settlement is *sui generis*.  However, the parties and the Court stand in the unique position of having

4 seven prior settlements between Class members and other defendants in the opioid supply chain

5 to inform their analysis.  In MDL 2804, plaintiffs brought and released claims that parallel those

6 brought here (*i.e.*, RICO, public nuisance, negligence, fraud).  The nominal amounts of each of

7 these settlements range from $2.02 billion to $18 billion, to be paid out on schedules of between

8 six and eighteen years.  Those amounts, which include AG-negotiated state amounts, are

9 contingent upon meeting certain participation benchmarks and are subject to suspensions and

10 offsets.  The AGs' settlements with McKinsey totaled approximately $641.5 million.  Here, the

11 total $207 million is due in one payment and is not subject to benchmarks or reductions.

12          The total number of participating entities in each of the national opioids settlements varies

13 somewhat depending on eligibility (*e.g.*, prior settling states or subdivisions would not be counted),

14 but the number and identities of participating entities in those agreements largely overlap with

15 Class members.  Similarly, in each of those seven settlements, 100% of this Class was notified

16 using identical methods.  Participation data is not yet available for the Allergan, Teva, Walgreens,

17 CVS, and Walmart settlements; but, as noted previously, participation rates for the J&J Settlement

18 is over 98%.

19          Class members here will recover using the same formulas applied in J&J.  Those formulas

20 and the underlying MOUs have been or are being renegotiated in some states for the later

21 settlements, but none of the newer MOUs are materially different from the initial J&J formulas.

22 Given the smaller amount at issue in this Settlement, those changes are likely to have a *de minimis*

23 impact on Class members' distribution amounts.  Like here, none of the seven previous national

24 opioids settlements provided for *cy pres* awards.

25          The percentage – 15% – to be requested for fees and costs here mirrors that approved by

26 the Class members themselves through their participation in the previous national opioids

27 settlements: in each of these, the basic principle of reserving 85% of the proceeds for abatement,

28 with 15% for fees and costs, is replicated.

1   Here, administrative costs will be minimized because Epiq and BrownGreer have already

2   identified and set up systems for notice and distribution of settlement proceeds to the subdivisions

3   that are members of the Class.

4       **D.      The Form and Manner of Notice Are Proper**

5           **1.      The Settlement Provides the Best Class Notice Practicable**

6   Under Rule 23(e)(1)(B): "[t]he court must direct notice in a reasonable manner to all class

7   members who would be bound by the [settlement] proposal."  Likewise, in directing notice "to a

8   class proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct

9   to class members the best notice that is practicable under the circumstances, including individual

10  notice to all members who can be identified through reasonable effort."      Fed. R.

11  Civ. P. 23(c)(2)(B).

12  The proposed Class Notice readily meets these requirements, and the Notice program

13  constitutes the best practicable notice under the circumstances of this case.  The proposed Class

14  Notice will be posted on the Settlement website, along with additional information and settlement

15  documents, which will be cross-linked from the National Opioids Settlements website.  It will also

16  be mailed or emailed directly to all Class members.  Epiq will provide email or postcard notice to

17  Class members using a prior compilation of contact information, which in 2019 successfully

18  disseminated class notice efforts in MDL 2804.  Class members are sophisticated government

19  entities that have been through this process twice before with the seven national settlements in

20  MDL No. 2804, to great success.  Based on currently available data, for example, the combined

21  participation rate across eligible litigating and non-litigating subdivisions in the J&J Settlement

22  was 98%, which certainly suggests they all received adequate notice that enabled them to make

23  informed decisions.

24          **2.      The Notice Provides a Clear Explanation to Class Members of
25                    Their Opportunity to Opt Out of the Settlement and Weigh the
                      Settlement Benefits**

26  Moreover, the Notice uses "plain English" to inform sophisticated Class members of,

27  among other things, the nature of the class claims; the essential terms of the Settlement; the date,

28  time and place of the Final Approval Hearing; how to object to or opt out of the Settlement; and

1  the binding effect of the Settlement on Class members.  The Notice also contains information

2  regarding Counsel's request for fees and expenses, along with the URL of the Settlement website

3  where the preliminary and approval motion materials, the fee and cost motion, other important

4  case documents, the plan of allocation, and additional information will be posted.  Thus, the Notice

5  satisfies the specific requirements of Rule 23(c)(2)(B), which, in relevant part, provides that the

6  notice shall apprise Class members that "the court will exclude from the class any member who

7  requests exclusion[, and] the time and manner for requesting exclusion."

8       **E.**     **Escrow Agent Appointed**

9       Under the Agreement: (1) "Defendants shall pay by wire transfer a portion of the

10 Settlement Amount sufficient to cover the Notice and Administrative Costs, but in no event greater

11 than $1,000,000.00, into an escrow account at" Citibank, the Escrow Agent, "within fourteen

12 calendar days of the later of (i) Preliminary Approval of the Settlement Agreement, or

13 (ii) Defendants' receipt of the information and instructions required to effectuate the wire

14 transfer"; and (2) "Defendants shall pay by wire transfer the remainder of the Settlement Amount

15 . . . into the Escrow Account within fourteen calendar days of Final Approval of the Settlement

16 Agreement."

17      Plaintiffs have arranged for an escrow account to be created at Citibank, with such bank

18 serving as the escrow agent.  Plaintiffs, with Defendants' consent, request that the Court supervise

19 and control the administration of the escrow account.

20      **F.**     **Maintain Order Continuing McKinsey's Rule 12(b)(6) Motion**

21      Plaintiffs and Defendants jointly request that the Court maintain its continuance of oral

22 argument and decision on McKinsey's motion to dismiss on *res judicata* grounds until such time

23 as the Court has considered and ruled on whether this Agreement and Settlement should be

24 communicated to the Class and ultimately approved.

25

26

27

28

1

**CONCLUSION**

2        For the foregoing reasons, Plaintiffs respectfully request that preliminary approval of the

3  Class Action Settlement be granted in accordance with the terms set forth herein.

4  DATED:  September 26, 2023              Respectfully submitted,

5                                  ROBBINS GELLER RUDMAN
                                      & DOWD LLP

6                                  AELISH M. BAIG
                                  TAEVA C. SHEFLER

7                                  HADIYA K. DESHMUKH

8

9                                        s/ Aelish M. Baig
                                    AELISH M. BAIG

10

11                                  Post Montgomery Center
                                  One Montgomery Street, Suite 1800

12                                  San Francisco, CA  94104
                                  Telephone:  415/288-4545

13                                  415/288-4534 (fax)
                                  aelishb@rgrdlaw.com

14                                  tshefler@rgrdlaw.com
                                  hdeshmukh@rgrdlaw.com

15                                  BRYANT LAW CENTER, PSC
                                  EMILY ROARK

16                                  601 Washington Street
                                  P.O. Box 1876

17                                  Paducah, KY  42002-1876
                                  Telephone:  270/442-1422

18                                  emily.roark@bryantpsc.com

19                                  *PSC Members – Political Subdivisions, Counsel*
                                  *for Proposed Named Plaintiffs and Proposed*

20                                  *Class Counsel*

21                                  SIMMONS HANLY CONROY, LLC
                                  JAYNE CONROY

22                                  112 Madison Avenue, Seventh Floor
                                  New York, NY  10016

23                                  Telephone:  212/257-8482
                                  212/213-5949

24                                  jconroy@simmonsfirm.com

25                                  MOTLEY RICE, LLC
                                  JOSEPH F. RICE

26                                  28 Bridgeside Boulevard
                                  Mt. Pleasant, SC  29464

27                                  Telephone: 843/216-9000
                                  843/216-9450

28                                  jrice@motleyrice.com

1

2     BROWNE PELICAN, PLLC
      MATTHEW BROWNE
3     7007 Shook Avenue
      Dallas, TX  75214
4     Telephone:  405/642-9588
      mbrowne@brownepelican.com
5
      *PSC Members – Political Subdivisions and*
6     *Proposed Class Counsel*

7     **Filing Authorized Pursuant to PTO 2:**
      DATED:  September 26, 2023      LIEFF CABRASER HEIMANN
8                                       & BERNSTEIN LLP
                                      ELIZABETH J. CABRASER
9

10
                                      _____
11                                        s/ Elizabeth J. Cabraser
                                         ELIZABETH J. CABRASER
12
                                      275 Battery Street, 29th Floor
13                                    San Francisco, CA  94111-3339
                                      Telephone:  415/956-1000
14                                    415/956-1008 (fax)
                                      ecabraser@lchb.com
15
                                      *Plaintiffs' Lead Counsel*
16
                   **ATTESTATION PURSUANT TO LOCAL RULE 5-1**
17
              I, Aelish M. Baig, am the ECF user whose identification and password are being used to
18
      file  the  PLAINTIFFS'  NOTICE  OF  UNOPPOSED  MOTION  AND  MOTION  FOR
19
      PRELIMINARY  APPROVAL  OF  CLASS  ACTION  SETTLEMENT;  MEMORANDUM  OF
20
      POINTS  AND  AUTHORITIES  IN  SUPPORT.    Pursuant  to  Local  Rule  5-1(i)(3)  and  in
21
      compliance  with  General  Order  No. 45X.B.,  I  hereby  attest  that  Elizabeth J. Cabraser  has
22
      concurred in this filing.
23
         DATED:  September 26, 2023
24
                                      _____
25                                        s/ Aelish M. Baig
                                         AELISH M. BAIG
26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2          I hereby certify under penalty of perjury that on September 26, 2023, I authorized the

3    electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4    send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

5    and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

6    to the non-CM/ECF participants indicated on the attached Manual Notice List.

7                                                       s/ Aelish M. Baig
                                                       ALEISH M. BAIG
8
                                                       ROBBINS GELLER RUDMAN
9                                                         & DOWD LLP
                                                       Post Montgomery Center
10                                                      One Montgomery Street, Suite 1800
                                                       San Francisco, CA  94104
11                                                      Telephone: 415/288-4545
                                                       415/288-4534 (fax)
12                                                      Email: aelishb@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 3:21-md-02996-CRB In re: McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Gregory R. Abboud**
  greg@abboudlawfirm.com

- **Mark Abramowitz**
  mabramowitz@dlcfirm.com,1064889420@filings.docketbird.com

- **Benjamin D. Adams**
  badams@cldlaw.com

- **Henry J. Avery**
  havery@zsz.com

- **Salvatore C. Badala**
  sbadala@napolilaw.com,1936354420@filings.docketbird.com

- **Salvatore Charles Badala**
  sbadala@napolilaw.com

- **Aelish Marie Baig**
  AelishB@rgrdlaw.com,kmccormack@rgrdlaw.com,pmitchell@rgrdlaw.com,e_file_sd@rgrdlaw.com,creis@rgrdlaw.com

- **Adam Phillip Bailey**
  abailey@hobbsstraus.com

- **Amanda K. Baker**
  AKBaker@hollandhart.com

- **Lauren G. Barnes**
  lauren@hbsslaw.com,racheld@hbsslaw.com,jennyo@hbsslaw.com

- **David R. Barney , Jr**
  drbarneywv@gmail.com

- **Talat Mahammad Bashir**
  talat4321@hotmail.com

- **Mark D. Bauman**
  mbauman@hinshawlaw.com

- **John C. Beiers**
  jbeiers@smcgov.org,slectura@smcgov.org,jbarbarotto@smcgov.org

- **TerriAnne Benedetto**
  tbenedetto@dugan-lawfirm.com

- **James Reginald Benjamin , Jr**
  jrbenjamin@baltimorecountymd.gov

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com,benh@hbsslaw.com,nicolleh@hbsslaw.com

- **James Lawrence Bernard**
  jbernard@stroock.com,trozina@stroock.com,mnathanson@stroock.com,rtrumbauer@stroock.com,docketing@stroock.com

- **Scott R. Bickford**
  srb@mbfirm.com,usdcedla@mbfirm.com

- **Andrea Bierstein**
  abierstein@simmonsfirm.com

- **Jonathan Blanton**
  jonathan.blanton@ohioattorneygeneral.gov

- **Caitlin Sinclaire Blythe**
  cblythe@mofo.com,npan@mofo.com,caitlyn-blythe-2697@ecf.pacerpro.com

- **Little Fawn Boland**
  littlefawn@ceibalegal.com,ellen@ceibalegal.com

- **Christopher Scott Boynton**
  cboynton@vbgov.com

- **Nicolle B Brito**
  NBrito@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com,khanson@rgrdlaw.com

- **Henry Donald Brock , Jr**
  don@whittingtonlaw.com

- **James M. Brodzik**
  jbrodzik@hinshawlaw.com

- **C. Ezra Bronstein**
  ebronstein@findjustice.com

- **Ezra Bronstein**
  ebronstein@findjustice.com

- **Matthew Browne**
  mbrowne@brownepelican.com

- **Matthew P Browne**
  mbrowne@brownepelican.com

- **Curtis Bruehl**
  cbruehl@fulmersill.com

- **Curtis N Bruehl**
  cbruehl@bruehllaw.com

- **Celeste Brustowicz**
  cbrustowicz@clfnola.com

- **Celeste L Brustowicz**
  cbrustowicz@sch-llc.com,taultman@clfnola.com

- **David G Bryant**
  david@davidbryantlaw.com

- **Mark P Bryant**
  mark.bryant@bryantpsc.com,joe.roark@bryantpsc.com,christina.ellegood@bryantpsc.com

- **Russell W. Budd**
  rbudd@baronbudd.com

- **Russell Wills Budd**
  rbudd@baronbudd.com

- **Kevin R. Budner**
  kbudner@lchb.com,kevin-budner-2411@ecf.pacerpro.com

- **Birch P. Burdick**
  sa-defense-notices@casscountynd.gov

- **Michael Burrage**
  mburrage@whittenburragelaw.com

- **Elizabeth Joan Cabraser**
  ecabraser@lchb.com,elizabeth-cabraser-1441@ecf.pacerpro.com

- **Hannah Honeycutt Calandro**
  hannah@fayardlaw.com

- **Ann E. Callis**
  acallis@hollandtriallawyers.com

- **W. Stuart Calwell**
  scalwell@calwelllaw.com

- **Gretchen Freeman Cappio**
  gcappio@kellerrohrback.com,bianca-nealious-3081@ecf.pacerpro.com,debra-wilcher-6644@ecf.pacerpro.com,cate-brewer-0141@ecf.pacerpro.com,bnealious@kellerrohrback.com,gretchen-freeman-cappio-5238@ecf.pacerpro.com

- **Edgar R. Cataxinos**
  cataxinos@mcgiplaw.com

- **David Cates**
  dcates@cateslaw.com

- **Daniel Carl Cederborg**
  dcederborg@yolocounty.org,bprice@yolocounty.org

- **D. Bryant Chaffin**
  bryant@mchughfuller.com

- **H. Truman Chafin**
  truman@thechafinlawfirm.com

- **Letitia Neese Chafin**
  Tish@thechafinlawfirm.com

- **Mark P. Chalos**
  mchalos@lchb.com,mark-chalos-5442@ecf.pacerpro.com

- **Deborah Chandler**
  dchandler@aklawfirm.com

- **David M. Cheifetz**
  dcheifetz@stroock.com,docketing@stroock.com

- **John Y. Choi**
  attorneyjohnchoi@gmail.com

- **Joseph L. Ciaccio**
  jciaccio@napolilaw.com

- **Edward J. Ciarimboli**
  ejc@fclawpc.com

- **City of Cleveland, Ohio**
  lawdepartment@city.cleveland.oh.us

- **Abbey Herrin Clarkson**
  abbey@theclarksonfirm.com

- **James Franklin Clayborne , Jr**
  jclayborne@cswlawllp.com,sebrecht@cswlawllp.com

- **John W. Cleary , Jr**
  jcleary@msprecoverylawfirm.com,serve@msprecoverylawfirm.com

- **John R. Climaco**
  jrclim@climacolaw.com

- **Paul D. Coates**
  pcoates@pckb-law.com

- **Victor Cobb**
  vcobb@clfnola.com

- **Christopher Luke Coffin**
  ccoffin@pbclawfirm.com,sshirey@pbclawfirm.com,mwaldrop@pbclawfirm.com,sbaudin@pbclawfirm.com,pwpendley@pbclawfirm.com

- **Thomas P. Colantuono**
  tcolantuono@wardlawnh.com

- **Adam P. Collins**
  admin@collinsconley.com

- **Joshua K Conaway**
  jconaway@fchclaw.com

- **Andrew Joseph Conn**
  aconn@hlmlawfirm.com

- **Matt Conn**
  mconn@friedman-lawyers.com

- **Matthew D. Conn**
  mconn@friedman-lawyers.com,tmartin@friedman-lawyers.com

- **Jayne Conroy**
  jconroy@simmonsfirm.com,ClassDocketing@ecf.courtdrive.com,esternickle@simmonsfirm.com,jkraus@simmonsfirm.com

- **Barry J. Cooper, Jr.**
  bcooper@clfnola.com

- **Joseph W. Cotchett**
  jcotchett@cpmlegal.com

- **Donald E. Creadore**
  donald@creadorelawfirm.com

- **R. Seth Crompton**
  scrompton@hollandtriallawyers.com

- **Leslie M. Cronen**
  lcronen@garycjohnson.com

- **Christina D Crow**
  ccrow@jinkslaw.com

- **Christina Diane Crow**
  christy.crow@jinkscrow.com,am.stewart@jinkscrow.com,ryan.mcferrin@jinkscrow.com,jodi.myers@jinkscrow.com,beth.warren@jinkscrow.com

- **Martin Francis Cunniff**
  martincunniff@fieldslawpllc.com,Schrader@fieldslawpllc.com

- **Jeffrey A Curran**
  jcurran@gablelaw.com

- **Steven W. Dahlem**
  sdahlem@mariposacounty.org

- **M. Stephen Dampier**
  stevedampier@dampierlaw.com

- **Matthew S. Daniel**
  mdaniel@lawyerworks.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com,MDearman@ecf.courtdrive.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com

- **Diandra S. Debrosse Zimmermann**
  fu@dicellolevitt.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **L. Dante DiTrapano**
  dditrapano@cldlaw.com

- **Nathan A. Dickson , II**
  ndickson@jinkslaw.com

- **Rodney Dillard , II**
  rdillard@friedman-lawyers.com

- **Holly H. Dolejsi**
  HDolejsi@RobinsKaplan.com

- **Spencer R Doody**
  srd@mbfirm.com,usdcedla@mbfirm.com

- **Anderson O. Dotson , III**
  dotsonfirm@gmail.com

- **Dan Drachler**
  ddrachler@lchb.com,dan-drachler-6676@ecf.pacerpro.com

- **Frank C. Dudenhefer**
  fcdlaw@aol.com

- **Frank C. Dudenhefer , Jr**
  fcdlaw@aol.com

- **James R. Dugan , II**
  jdugan@dugan-lawfirm.com,dscalia@dugan-lawfirm.com,bonnie@dugan-lawfirm.com,amcadam@dugan-lawfirm.com

- **Melissa Rose Ellsworth**
  mellsworth@thompsonbarneylaw.com

- **Sarah N. Emery**
  semary@justicestartshere.com

- **Sarah Nicole Emery**
  semery@justicestartshere.com,amcmullen@justicestartshere.com,tcoaston@justicestartshere.com

- **Kyle D Evans**
  kevans@gablelaw.com

- **Robert J. Evola**
  revola@hollandtriallawyers.com

- **Paul T. Farrell , Jr**
  paul@farrellfuller.com

- **Paul T. Farrell , Jr**
  paul@farrell.law

- **Paul T. Farrell, Jr.**
  paul@farrellfuller.com

- **Eric B. Fastiff**
  efastiff@lchb.com,catkins@lchb.com,elovell@lchb.com,eric-fastiff-2015@ecf.pacerpro.com,jremuszka@lchb.com

- **George H. Faulkner**
  faulkner@fhplaw.com

- **Calvin C. Fayard , Jr**
  calvinfayard@fayardlaw.com,wandaedwards@fayardlaw.com

- **Cathryn Caroline Fayard**
  caroline@fayardlegal.com

- **Cassandra L. Feeney**
  cfeeney@hwac.com

- **Gregory E. Fellerman**
  gef@fclawpc.com

- **Jarrett J. Ferentino**
  ferentino@pfslawyer.com

- **Richard W. Fields**
  fields@fieldslawpllc.com

- **Tiffani B. Figueroa**
  TFigueroa@mofo.com

- **John Paul Fiske**
  jfiske@baronbudd.com,kepeters@baronbudd.com,jhutchison@baronbudd.com,1869571420@filings.docketbird.com,chines@baronbudd.com

- **Crystal Gayle Foley**
  cfoley@simmonsfirm.com,ClassDocketing@ecf.courtdrive.com,ClassDocketing@simmonsfirm.com

- **W. Jesse Forbes**
  wjforbes@forbeslawwv.com

- **Jenna N. Forster**
  jforster@lchb.com,jenna-forster-0574@ecf.pacerpro.com

- **Alexander Chesney Frampton**
  alex.frampton@nelsonmullins.com

- **Andrew G Frank**
  afrank@kwdlaw.com

- **Jennifer Rachel Frankovich**
  jfrankovich@baltimorecountymd.gov

- **Richard S Frankowski**
  richard@frankowskifirm.com

- **T. Roe Frazer , II**
  roe@frazer.law,grant@frazer.law,angela@frazer.law,mac@frazer.law,elizabeth@frazer.law

- **Thomas Roe Frazer , II**
  roe@frazer.law

- **Andrew J. Freedman**
  afreedma@hodgsonruss.com

- **Jeff Friedman**
  jeff@hbsslaw.com

- **Jeffrey E. Friedman**
  jfriedman@friedman-lawyers.com

- **Jeffrey Edwin Friedman**
  jfriedman@friedman-lawyers.com,tmartin@friedman-lawyers.com

- **Brian C. Frontino**
  brian.frontino@morganlewis.com,lina.cocuyame@morganlewis.com

- **Michael J. Fuller**
  mike@farrellfuller.com

- **Michael J. Fuller , Jr**
  mike@mchughfuller.com

- **Michael Jay Fuller**
  mike@farrellfuller.com

- **Michael Jay Fuller , Jr**
  mike@farrellfuller.com

- **Michael J. Fuller, Jr.**
  mike@farrellfuller.com

- **Tara A. Fumerton**
  tfumerton@jonesday.com

- **Gregory Edward Gaskins**
  ggaskins@baltimorecountymd.gov

- **Daniel L. Gaustad**
  dan@grandforkslaw.com

- **Paul Jeffrey Geller**
  pgeller@rgrdlaw.com

- **Elmer J. George**
  Dana@kylawoffices.com

- **Matthew M. Gerend**
  mgerend@kellerrohrback.com,cathy-hopkins-4757@ecf.pacerpro.com,matthew-gerend-4891@ecf.pacerpro.com,chopkins@kellerrohrback.com

- **Marc P. Gertz**
  mpgertz@gertzrosen.com

- **Michael Gervais**
  mgervais@susmangodfrey.com,gfisk@susmangodfrey.com,greg-fisk-8459@ecf.pacerpro.com

- **Robert Cecil Gilbert**
  gilbert@kolawyers.com,dalia@gilbertpa.com

- **Scott D Gilbert**
  gilberts@gotofirm.com

- **Simarjit Singh Gill**
  sgill@slco.org

- **Leslie John Girard**
  girardlj@co.monterey.ca.us,OntiverosS@co.monterey.ca.us

- **Leslie A. Goller**
  Lgoller@terrellhogan.com

- **Edmund Clay Goodman**
  egoodman@hobbsstraus.com

- **R. Booth Goodwin , II**
  rbg@goodwingoodwin.com

- **Jonah D. Grabelsky**
  grabelsky@fhplaw.com

- **Andrew M. Grabhorn**
  a.grabhorn@grabhornlaw.com

- **Michael D. Grabhorn**
  m.grabhorn@grabhornlaw.com

- **Michael Douglas Grabhorn**
  m.grabhorn@grabhornlaw.com

- **Mark K. Gray**
  mgray@grayandwhitelaw.com

- **David C. Grossman**
  david@legalgrouphotline.com

- **Ed Han**
  edhan@fhcfirm.com

- **Troy W. Haney**
  thaney@troyhaneylaw.com

- **Gerald Logan Harris**
  glharris@vbgov.com

- **Edward B. Havas**
  ehavas@dkowlaw.com

- **William Hawal**
  wh@spanglaw.com

- **Joshua Patrick Hayes**
  jhayes@princelaw.net

- **Jason Michael Heath**
  Jason.Heath@co.santa.cruz.ca.us,pamela.iriguchi@santacruzcounty.us,csl054@co.santa-cruz.ca.us,annessa.wright@santacruzcounty.us,csl026@co.santa-cruz.ca.us

- **Derrick G. Helm**
  derrickhelm@ymail.com

- **Neil L Henrichsen**
  nhenrichsen@hslawyers.com

- **Jorge A. Herrera**
  jherrera@herreralaw.com

- **Kathryn Hettler**
  kh@hrsclaw.com

- **Joseph C. Hoffman , Jr**
  hoffman@fhplaw.com

- **Cameron L Hogan**
  clhogan@lloydhoganlaw.com

- **John Wayne Hogan**
  hogan@terrellhogan.com

- **D. Blayne Honeycutt**
  dbhoneycutt@fayardlaw.com

- **David Blayne Honeycutt**
  dbhoneycutt@fayardlaw.com,benita@fayardlaw.com

- **Hannah Elayne Honeycutt**
  hannah@fayardlaw.com

- **Robert L. Houston**
  rhouston@htllawyers.com

- **Jenna A. Hudson**
  hudsonj@gilbertlegal.com

- **James F. Humphreys**
  jhumphreys@jfhumphreys.com

- **Samuel Issacharoff**
  si13@nyu.edu

- **Michael L. Jackson**
  michaeljackson@jacksonbelllaw.net

- **P. Rodney Jackson**
  prodjackson27@yahoo.com

- **Christopher Isaac Jacobs**
  cij@knlegal.com

- **Jordan E. Jacobson**
  jjacobson@ktmc.com,courtney-hemsley-3395@ecf.pacerpro.com,megan-corson-3521@ecf.pacerpro.com

- **William M. Jay**
  WJay@goodwinlaw.com

- **William Joseph Jenner**
  jjenner@wjennerlaw.net

- **Crystal Goan Jessee**
  crystaljessee@jesseelawoffice.com

- **Lynn Wilson Jinks , III**
  ljinks@jinkslaw.com,sstuart@jinkslaw.com,ndickson@jinkslaw.com

- **Gary C. Johnson**
  gary@garycjohnson.com

- **Gillard B. Johnson , III**
  gjohnson@gbjlegal.com

- **Ronald E. Johnson , Jr**
  rjohnson@justicestartshere.com,amcmullen@justicestartshere.com,tcoaston@justicestartshere.com

- **Ryan Ronald Jones**
  rrj@jones-mayer.com

- **Joshua Karsh**
  jkarsh@findjustice.com

- **Andrew Kaufman**
  akaufman@lchb.com,korsland@lchb.com,andrew-kaufman-1312@ecf.pacerpro.com

- **Jessica Kaufman**
  jkaufman@mofo.com,jessica-kaufman-5947@ecf.pacerpro.com

- **Amy E. Keller**
  akeller@dicellolevitt.com,agreen@dicellolevitt.com,aotto@dicellolevitt.com,3336248420@filings.docketbird.com

- **Joseph L Kerr , Jr**
  jkerr@friedman-lawyers.com

- **Colin P. King**
  cking@dkowlaw.com

- **Sarah Erica King**
  sking@hinshawlaw.com

- **Debra Potter Klauber**
  dklauber@haliczerpettis.com

- **David J. Ko**
  dko@kellerrohrback.com,cbrewer@kellerrohrback.com,cate-brewer-0141@ecf.pacerpro.com,david-ko-8713@ecf.pacerpro.com

- **Karl W. Kristoff**
  kwk278@aol.com

- **Joseph Martin Kurt**
  jkurt@vbgov.com

- **John A Lancione**
  jal@lancionelaw.com

- **J. Burton LeBlanc , IV**
  bleblanc@baronbudd.com

- **J. Burton LeBlanc**
  bleblanc@baronbudd.com

- **Thomas J. Lech**
  tlech@ghalaw.com

- **Alan D Leeth**
  aleeth@burr.com

- **Whitney A. Leonard**
  whitney@sonosky.net,karin@sonosky.net,chloe@sonosky.net

- **Bruce W. Leppla**
  bleppla@lchb.com,bruce-leppla-7158@ecf.pacerpro.com

- **Richard J. Leveridge**
  leveridger@gilbertlegal.com

- **Michael Ian Levin-Gesundheit**
  mlevin@lchb.com,michael-levin-gesundheit-7686@ecf.pacerpro.com

- **Jamie A. Levitt**
  JLevitt@mofo.com,jamie-levitt-6630@ecf.pacerpro.com,docketny@mofo.com

- **Charles Coleman Lifland**
  clifland@omm.com,charles-lifland-4890@ecf.pacerpro.com

- **Jeff Link**
  jeff@jefflinklaw.com

- **William Litt**
  littwm@co.monterey.ca.us,edwardsg@co.monterey.ca.us,catod@co.monterey.ca.us,zarcoc@co.monterey.ca.us,britoa@co.monterey.ca.us,villad@co.monterey.ca.us

- **Amanda M. Lockaby**
  amanda.lockaby@dinsmore.com

- **Derek W. Loeser**
  dloeser@kellerrohrback.com

- **Derek William Loeser**
  dloeser@kellerrohrback.com,cbrewer@kellerrohrback.com,derek-loeser-0264@ecf.pacerpro.com,cate-brewer-0141@ecf.pacerpro.com

- **Casey Langston Lott**
  clott@langstonlott.com

- **Rebecca D. Louks**
  rlouks@ohlaw.com

- **Lower Brule Sioux Tribe**
  boydgourneau@yahoo.com

- **Stephen Glenn Lowry**
  steve@hpllegal.com

- **Harrison C Lujan**
  hlujan@fulmersill.com,shicks@fulmersill.com

- **W Jay Luneau**
  jay@luneaubecklaw.com

- **James L. Magazine**
  jim@lucasmagazine.com

- **James Lawrence Magazine**
  jim@lucasmagazine.com

- **James E. Magleby**
  magleby@mgpclaw.com

- **Anthony J. Majestro**
  amajestro@powellmajestro.com,amarshall@powellmajestro.com,jnelson@powellmajestro.com,jcpowell@powellmajestro.com,paula@powellmajestro.com,helen@po

- **Shauna D Manion**
  smanion@mzmilw.com

- **Christine C Mansour**
  cmansour@baronbudd.com

- **Christine C. Mansour**
  cmansour@baronbudd.com

- **Christine Cooney Mansour**
  cmansour@baronbudd.com

- **Justin Jerome Marcum**
  justin@marcumlawoffice.com

- **Miriam Ellora Marks**
  mmarks@lchb.com,miriam-marks-8754@ecf.pacerpro.com

- **Michael T. Maroney**
  michael.maroney@hklaw.com,HAPI@HKLAW.COM

- **Ingrid S. Martin**
  imartin@toddweld.com,mcottreau@toddweld.com

- **Juan Ramon Martinez**
  juanmartinez@forthepeople.com,acook@forthepeople.com

- **Rebeca Martinez Sicari**
  rmartinez@nsprlaw.com

- **Walter M. Mason**
  wmason@dkowlaw.com

- **Robert L. Massie**
  bob.massie@nelsonmullins.com

- **Julie G. Matos**
  jmatos@stroock.com,docketing@stroock.com

- **Caroline Mayhew**
  CMayhew@hobbsstraus.com

- **Robert G McCampbell**
  rmccampbell@gablelaw.com

- **Alexander D. McLaughlin**
  amclaughlin@cldlaw.com

- **Ian Ronald McLean**
  imclean@serklandlaw.com

- **Kelly Kristine McNabb**
  kmcnabb@lchb.com,kelly-mcnabb-1924@ecf.pacerpro.com

- **Mark David McPherson**
  mmcpherson@mofo.com,dara--pilgrim-4904@ecf.pacerpro.com,dpilgrim@mofo.com

- **Cyrus Mehri**
  cmehri@findjustice.com

- **Joseph H. Meltzer**
  jmeltzer@ktmc.com,kmarrone@ktmc.com,jwotring@ktmc.com,chemsley@ktmc.com,pleadings@ktmc.com,1472664420@filings.docketbird.com,KSheronas@ktmc.

- **Daniel P. Mensher**
  dmensher@kellerrohrback.com,lara-mishler-4166@ecf.pacerpro.com,daniel-mensher-8016@ecf.pacerpro.com

- **Donald A. Migliori**
  dmigliori@motleyrice.com

- **Charles M. Miller**
  charles.miller@ohioattorneygeneral.gov

- **Lloyd B. Miller**
  lloyd@sonosky.net,lydia@sonosky.net,karin@sonosky.net

- **Robert R Miller**
  rmiller@ohlaw.com

- **Emily Hawk Mills**
  emily@alalawyers.net

- **Michael J. Modl**
  mmodl@axley.com

- **Lucas C Montgomery**
  luke@montgomeryponder.com

- **Samuel Aitken Morris**
  smorris@burr.com

- **Peter James Mougey**
  pmougey@levinlaw.com,ldunning@ecf.courtdrive.com,mailsec@levinlaw.com

- **P. Matthew Muir**
  mmuir@aklawfirm.com

- **Anil A Mujumdar**
  anil@dagneylaw.com

- **Anne Marie Murphy**
  amurphy@cpmlegal.com,nkingra@cpmlegal.com,bkittle@cpmlegal.com,jdiaz-marquez@cpmlegal.com,shernandez@cpmlegal.com

- **Christopher Bryan Murray**
  christopher.murray@llojibwe.net

- **Dwayne M. Murray**
  dmm@murraylaw.net

- **N. Majed Nachawati**
  mn@ntrial.com

- **Rohit Dwarka Nath**
  rnath@susmangodfrey.com

- **William D. Nefzger**
  will@bccnlaw.com,andria@bccnlaw.com

- **Bryan S. Neiderhiser**
  bneiderhiser@marcusandmack.com

- **Stephen P New**
  steve@newlawoffice.com

- **John D. Nibbelin**
  jnibbelin@co.sanmateo.ca.us

- **Leslie C. Nixon**
  lcnixon56@gmail.com

- **Anthony E. Nowak**
  tony@smithphillips.com

- **Stephanie L. Ojeda**
  sojeda@handl.com

- **Oneida Nation**
  cartman@oneidanation.org

- **Jon B. Orndorff**
  jon.orndorff@om-pllc.com

- **Charles G. Orr**
  corr@baronbudd.com

- **Ralph J Overholt**
  ralph.overholt@llojibwe.net

- **Christine M. Palmer**
  cmpalmer@co.kitsap.wa.us

- **Daryl Dion Parks**
  dparks@darylparks.com

- **Ashley A Peck**
  aapeck@hollandhart.com

- **Julia Q. Peng**
  jpeng@cpmlegal.com,shernandez@cpmlegal.com

- **Dori Ann Persky**
  dpersky@baronbudd.com

- **James C. Peterson**
  jcpeterson@hpcbd.com

- **James Charles Peterson**
  jcpeterson@hpcbd.com

- **Eugene K. Pettis**
  EPettis@hpslegal.com

- **Kenneth C. Pierce , II**
  kpierce@blantonpierce.com

- **Mark Pifko**
  mpifko@baronbudd.com

- **Mark P Pifko**
  MPifko@baronbudd.com

- **Mark Philip Pifko**
  mpifko@baronbudd.com,awilson@baronbudd.com,jmartinez@baronbudd.com,jcampbell@baronbudd.com

- **J Bradley Ponder**
  brad@montgomeryponder.com

- **Timothy Q Purdon**
  tpurdon@robinskaplan.com

- **Marcus J Rael , Jr**
  marcus@roblesrael.com

- **John Warren Raggio**
  jraggio@fnlawfirm.com

- **John Warren Raggio**
  jraggio@ntrial.com,zbland@ntrial.com,filing@ntrial.com,vmcneme@ntrial.com,tbeasley@ntrial.com,blink@ntrial.com,sandrew@ntrial.com

- **Vaishali S. Rao**
  vrao@hinshawlaw.com

- **Randa Reeves**
  rreeves@whittenburragelaw.com

- **Emily Anne Reitmeier**
  emily.reitmeier@skadden.com,emily-reitmeier-
  8948@ecf.pacerpro.com,patrick.hernandez@skadden.com,deanna.pospisil@skadden.com,brigitte.travaglini@skadden.com

- **Kurt E. Reitz**
  kreitz@thompsoncoburn.com

- **Christopher L. Rhoads**
  chris@rhoadsandrhoads.com

- **Joseph F. Rice**
  jrice@motleyrice.com,gworthington@motleyrice.com

- **Bradley Joe Richardson**
  brichardson@co.nye.nv.us

- **Adam R. Rivera**
  arivera@msprecoverylawfirm.com

- **Emily Ward Roark**
  emily.roark@bryantpsc.com,david@davidbryantlaw.com,christina@bryant.law,kirsta.cruthis@bryantpsc.com

- **Luis E. Robles**
  luis@roblesrael.com

- **J. Robert Rogers**
  jrobertrogers@hotmail.com

- **Laurance Nicholas Chandler Rogers**
  chandler@rogerslawgroup.com

- **Anna Natalie Rol**
  arol@baronbudd.com

- **Bridget K. Romano**
  bromano@slco.org,ipittman@slco.org

- **Karen Rosenthal**
  krosenthal@smcgov.org,drosas@smcgov.org

- **Michael B. Rush**
  rushm@gilbertlegal.com

- **Daniel K. Ryan**
  dryan@hinshawlaw.com

- **Shayna E. Sacks**
  ssacks@napolilaw.com

- **Shayna Erin Sacks**
  ssacks@napolilaw.com

- **Lisa M. Saltzburg**
  lsaltzburg@motleyrice.com

- **Jaime Ann Santos**
  JSantos@goodwinlaw.com

- **Lynn Lincoln Sarko**
  lsarko@kellerrohrback.com,cengle@kellerrohrback.com

- **Ann Davison Sattler**
  sattler@aiken.com

- **David Scott Scalia**
  dscalia@dugan-lawfirm.com

- **Barry J. Scatton**
  bscatton@forthepeople.com

- **Frank Rocco Schirripa**
  fschirripa@hrsclaw.com

- **Carlos E Sedillo**
  csedillo@fchclaw.com

- **David Dale Seif, Jr. , Jr**
  dseif@law-oh.com

- **Sona R. Shah**
  sshah@zsz.com

- **Devon Shannon**
  devon.shannon@kingcounty.gov

- **Kevin H. Sharp**
  ksharp@sanfordheisler.com,skelly@sanfordheisler.com,mallen@sanfordheisler.com,jhannaway@sanfordheisler.com,ariddick@sanfordheisler.com,jtepe@sanfordheisl

- **Adam F. Shearer**
  ashearer@clarencedyer.com,achin@clarencedyer.com

- **Taeva Cantor Shefler**
  TShefler@rgrdlaw.com,pmitchell@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Thomas I Sheridan , III**
  tsheridan@simmonsfirm.com,jlucena@simmonsfirm.com

- **Hunter J. Shkolnik**
  hunter@nsprlaw.com,SSacks@Napolilaw.com,1505475420@filings.docketbird.com,nfarnolo@napolilaw.com,SBadala@NapoliLaw.com

- **Rebeca Martinez Sicari**
  rmartinez@nsprlaw.com

- **David Abraham Silberman**
  dsilberman@smcgov.org,klyssand@smcgov.org

- **James D Sill**
  jsill@fulmersill.com

- **Matthew J Sill**
  Matt@sill-law.com

- **Matthew James Sill**
  msill@fulmersill.com

- **Donald J. Simon**
  dsimon@sonosky.com, karin@sonosky.net

- **Scott D. Simpkins**
  sdsimp@climacolaw.com

- **Emilee N Sisco**
  emilees@hbsslaw.com

- **Steven James Skikos**
  sskikos@skikos.com

- **Steven Gerald Sklaver**
  ssklaver@susmangodfrey.com, GWise@susmangodfrey.com, jwilliams@susmangodfrey.com, jerod-williams-0433@ecf.pacerpro.com, ecf-d2dbeeed8fe0@ecf.pacerpro.com, gregory-wise-3486@ecf.pacerpro.com

- **Thomas M. Sobol**
  tom@hbsslaw.com, kristenjp@hbsslaw.com, AbbyeO@hbsslaw.com, marcellaj@hbsslaw.com, ChristineT@hbsslaw.com, achebes@hbsslaw.com, jessicao@hbsslaw.com

- **Rebecca Luise Solomon**
  rsolomon@tousley.com, 1362222420@filings.docketbird.com

- **Ike Spears**
  ikespears@gmail.com

- **Michael Gregory Stag**
  mstag@stagliuzza.com, jbatt@stagliuzza.com

- **Kim D. Stephens**
  kstephens@tousley.com, 3690889420@filings.docketbird.com, kkulgren@tousley.com, efile@tousley.com, erashby@tousley.com

- **Kara M. Stewart**
  kara.stewart@dinsmore.com, lynn.whitson@dinsmore.com, amanda.lockaby@dinsmore.com, janet.gross@dinsmore.com

- **Joshua Allen Stigdon**
  jstigdon@htllawyers.com

- **Mark Douglas Stiles**
  mstiles@vbgov.com

- **Heath P. Straka**
  hstraka@axley.com

- **Geoffrey D. Strommer**
  gstrommer@hobbsstraus.com, hclapp@hobbsstraus.com, emanning@hobbsstraus.com, rplumer@hobbsstraus.com, emanning@ecf.courtdrive.com

- **Robert Strongarone**
  rstrongarone@msprecoverylawfirm.com, jpupo@msprecoverylawfirm.com, serve@msprecoverylawfirm.com

- **Frank Sullivan , III**
  fsullivan@franksullivanlaw.com

- **Sarah J. Surber**
  ssurber@thompsonbarneylaw.com

- **Tara DeAnn Sutton**
  TSutton@RobinsKaplan.com, aguttormson@robinskaplan.com, sjump@robinskaplan.com

- **Teris Swanson**
  teris@bryant.law

- **Teris N. Swanson**
  teris@bryant.law

- **Charles Jones Swayze , III**
  cjsiii@whittingtonlaw.com

- **Christopher M Sylvia**
  cmsattorneyatlaw@yahoo.com

- **Tina M. Tabacchi**
  tmtabacchi@jonesday.com, jzhou@jonesday.com, nadiaz@jonesday.com

- **Fred N Tabak**
  fredtabak@gmail.com

- **Mark A. Tate**
  marktate@tatelawgroup.com, tlgservice@tatelawgroup.com, twells@tatelawgroup.com, mhayes@tatelawgroup.com

- **J. Scott Taylor**
  scott@wncjustice.com

- **Justin C. Taylor**
  jtaylor@baileywyant.com,jzubrzycki@baileywyant.com,rjburks@baileywyant.com

- **Michael W. Taylor**
  mtaylor@baileywyant.com

- **Kevin W. Thompson**
  kwthompsonwv@gmail.com

- **Thomas W. Tucker**
  ttucker@tuckerlong.com

- **Tracy L Turner**
  tturner@pbclawfirm.com

- **K Scott Wagner**
  swagner@mallerysc.com

- **Scott Jason Weiselberg**
  weiselberg@kolawyers.com

- **Christopher Weld , Jr**
  cweld@toddweld.com,jmcgonagle@toddweld.com

- **Richard Wesch**
  trialsection@leegov.com

- **Bradley C West**
  brad@thewestlawfirm.com

- **Lindsey Walker West**
  lwest@dinsmore.com

- **Terry W West**
  terry@thewestlawfirm.com

- **Richard Alan Weyrich**
  richardw@co.skagit.wa.us

- **Jessica Whelan**
  jewhelan@hollandhart.com

- **White Mountain Apache Tribe**
  ghesse@pinetoplawyers.com

- **Marc E. Williams**
  marc.williams@nelsonmullins.com

- **Roy W Williams , Jr**
  rwilliams@jacksonwilliams.org

- **Michael A. Woelfel**
  mikewoelfel3@gmail.com

- **Stephen H. Wussow**
  swussow@clfnola.com

- **Charles David Wysong**
  cwysong@hsplegal.com,rortiz@hsplegal.com

- **James Dennis Young**
  jyoung@forthepeople.com,acook@forthepeople.com

- **Gregory M Zarzaur**
  gregory@zarzaur.com

- **Gregory Martin Zarzaur**
  gregory@zarzaur.com

- **Terence Scott Ziegler**
  tziegler@ktmc.com,4689919420@filings.docketbird.com

- **Diandra S. Debrosse Zimmermann**
  fu@dicellolevitt.com

- **Paulina do Amaral**
  pdoamaral@lchb.com,elovell@lchb.com,paulina-do-amaral-4305@ecf.pacerpro.com,rmccullough@lchb.com,opioidsecfs@lchb.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Whitten            Burrage**
512 North Broadway Avenue,
 Suite 300
Oklahoma City,, OK 73102

**Allison            Cross**
Henrichsen Law
Ste. 800
655 15th Street NW
Washington, DC 20005

**David             J Hodge**
Attorney at Law
38 Miller Ave #157
Mill Valley, CA 94941

**L.                J. Hollenbach                              , III**
3836 Washington Square
Louisville, KY 40207

**Louis             J. Hollenbach**
3836 Washington Square
Louisville, KY 40207

**Archie            C Lamb                                    , Jr**
Levin Papantonio Thomas Mitchell Rafferty & Proctor, PA
316 S Baylen Street
Suite 600
Pansacola, FL 32502-5996

**Michael           P. McNamee**
McNamee & Hill
2371 Lakeview Drive
Beavercreek, OH 45431

**Jeffery           A Mobley**
Lowe, Mobley & Lowe
1210-21st Street
PO Box 576
Haleyville, AL 35565

**Montgomery County Public Schools**
,

**Jeffrey           D Moseley**
Buerger, Moseley & Carson, PLC
306 Public Square
Franklin, TN 37064

**Peter             J. Mougey**
Beggs & Lane
P.O. Box 12950
Pensacola, FL 32591

**Mark              P. Pikfo**
Baron & Budd, P.C.
15910 Ventura Blvd #1600
Encino, CA 91436

**Michael           L. Roberts**
Roberts Law Firm
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223-1790

**Santa Rosa County, Florida**
,

**State of Kansas**
Office of Kansas Attorney General
120 SW 10th Ave., 3rd Fl.
Topeka, KS 66612

**Peter             H. Weinberger**
Spangenberg Shibley & Liber LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44144

**Terence           S. Ziegler**
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Rador, PA 19087