1  [*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates to:<br><br>ALL THIRD PARTY PAYOR ACTIONS | Case No. 21-md-02996-CRB (SK)<br><br>**CLASS ACTION**<br><br>**THIRD PARTY PAYOR PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: July 26, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br><br>Judge: The Honorable Charles R. Breyer |

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that, on July 26, 2024, at 10:00 a.m., in Courtroom 6 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the undersigned Interim Settlement Class Counsel for Third-Party Payors will move for an order and judgment granting final approval of the Class Action Settlement under Federal Rule of Civil Procedure 23(e), appointing Settlement Class Counsel under Federal Rule of Civil Procedure 23(g)(1), and granting their motion for attorneys' fees, costs, and service awards under Federal Rule of Civil Procedure 23(h).

This Motion is supported by the following memorandum of points and authorities; the Declaration of Paul J. Geller, Interim Settlement Class Counsel; and the Declaration of Eric J. Miller, Senior Vice President of A.B. Data, Ltd.'s Class Action Administration Company.

TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 3

I. INTRODUCTION ................................................................................................................. 3
II. SETTLEMENT NOTICE AND ADMINISTRATION TO DATE ................................. 3
III. ARGUMENT ......................................................................................................................... 4
   A. The Court Should Certify the TPP Settlement Class. .................................................. 4
      1. The Settlement Class meets the requirements of Rule 23(a). ................................. 4
      2. The Settlement Class meets the requirements of Rule 23(b)(3). ............................ 5
   B. The Settlement Meets the Requirements of Rule 23(e)(2) ........................................... 6
      1. Plaintiffs and Class Counsel have adequately represented the Class. ..................... 6
      2. The Settlement negotiations satisfy Rule 23(e)(2)(B). ............................................ 7
      3. The relief is adequate pursuant to the Rule 23(e)(2)(C) factors .............................. 8
      4. Counsel's request for attorneys' fees is reasonable. ................................................ 8
   C. The Ninth Circuit's Prescribed Factors Support Approval of the Settlement .................. 8
   D. The Court Should Appoint Settlement Class Counsel Under Rule 23(g)(1). ................. 9
   E. The Court Should Award the Requested Attorneys' Fees and Expenses. ...................... 9
   F. The Court Should Award the Requested Service Awards. ........................................... 11
IV. CONCLUSION ................................................................................................................... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

Third-Party Payor (TPP) Plaintiffs allege that, as a result of McKinsey's conduct, TPPs paid for prescription opioids rather than safer, non-addictive, and lower-cost prescription drugs (including over-the-counter pain relievers) that would have been used otherwise, and further paid for opioid addiction-related treatment that followed.  This Settlement provides a non-reversionary fund of $78 million, inclusive of class counsel's attorneys' fees, expenses, and service awards to the Settlement Class Representatives, to resolve TPP Plaintiffs' claims.  The Settlement will help to mitigate the harm that TPPs have suffered as a result of McKinsey's alleged role in the nationwide opioid epidemic.  TPP Class members that choose to accept the Settlement terms will receive their portion of the Settlement Amount pursuant to the Plan of Allocation described in the Second Expert Report of Professor Meredith Rosenthal (ECF No. 699-4).

This Settlement is an excellent result for the TPP Class and marks the first settlement to TPPs in opioid-related multidistrict litigation.  The Court should approve the Settlement, appoint Settlement Class Counsel, certify the Class for settlement purposes, and award the requested fees, expenses, and service awards.

II. **SETTLEMENT NOTICE AND ADMINISTRATION TO DATE**

On April 8, 2024, the Court granted TPP Plaintiffs' motion for preliminary approval of the Settlement and authorized A.B. Data, Ltd. to commence notice to Class members (ECF No. 702). In the following week, approximately 42,000 TPP Class members were notified of the terms of the Settlement by several means: (1) directly, through a hard copy Postcard Notice mailed to approximately 42,000 TPPs and through emails sent to approximately 1,500 TPPs for whom email addresses were available; (2) through supplemental paid media in the form of customized digital banner ads on select industry-related websites; (3) through an earned-media news release; and (4) and through the Long-Form Notice, published on the national McKinsey-TPP Settlement website along with other case documents: www.McKinseyTPPSettlement.com.  *See* Geller Decl. ¶ 9; Miller Decl. ¶¶ 4-9.  This notice plan was rolled out on schedule, and mailed notice was

completed on April 15, 2024. *Id.* Initial responses from TPPs have been positive and encouraging. *See* Miller Decl. ¶ 10.

### III. ARGUMENT

#### A. The Court Should Certify the TPP Settlement Class.

In granting preliminary approval and directing notice to the Class, the Court concluded that the TPP Class and its Representatives likely meet all relevant requirements of Rules 23(a) and 23(b)(3). ECF No. 702 ¶ 7.[1] TPP Plaintiffs analyzed these requirements in their Motion for Preliminary Approval (ECF No. 645) and briefly summarize them again below.

##### 1. The Settlement Class meets the requirements of Rule 23(a).

Rule 23(a) sets out four "class-qualifying criteria" for a class action: numerosity, commonality, typicality, and adequacy. *Amchem Prods. v. Windsor*, 521 U.S. 591, 597 (1997). The TPP Settlement Class satisfies each.

Numerosity: The numerosity requirement is satisfied where: "the class is so numerous that joinder of all numbers is impracticable." Fed. R. Civ. P. 23(a)(1). In practice, numerosity generally is met when a class comprises 40 or more members. *See, e.g.*, *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012). Here, the Class includes over 40,000 TPPs across the country, for which joinder is "clearly impractical." *Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006). Numerosity is satisfied.

Commonality: Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). TPP Class members' claims are founded in a core set of common questions related to McKinsey's alleged collaboration with its opioid manufacturer clients and whether/how such conduct caused or contributed to the harm alleged by TPP Plaintiffs. Because McKinsey's knowledge, duties, and actions were the same toward all TPP Class members, the answers to these questions would be the same across Class members, and commonality is met.

Typicality: Typicality requires that class representatives' claims or defenses be "typical of the claims or defenses of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

---

[1] Based on context, the reference to (b)(2) is a scrivener's error meant to refer to (b)(3).

Cir. 1992). The four named TPP Plaintiffs (which are four of the five Settlement Class Representatives) assert the same claims, which arise from McKinsey's conduct, and rely on the same legal theories to allege the same types of injuries as suffered by other TPP Class members—primarily, that McKinsey's conduct led to TPPs' increased payments for prescription opioids and treatment for opioid-related addiction. The fifth Class Representative is also a TPP Class member relying on the same legal theories and alleging the same types of injuries arising from McKinsey's conduct. Thus, typicality is met.

Adequacy: "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (discussing Rule 23(a)(4)). First, the five Settlement Class Representatives—District Council 37 Benefits Fund Trust; Cleveland Bakers and Teamsters Health & Welfare Fund; BCTGM Atlantic Health & Welfare Fund; International Union of Operating Engineers Stationary Engineers Local 39 Health & Welfare Trust Fund; and Teamsters Local 404 Health Services and Insurance Plan—have no interests antagonistic to the Class and will continue to protect TPP Class Members' interests in overseeing administration of the Settlement and through any appeals. *See Clemens v. Hair Club for Men, LLC*, No. 15-cv-01431-WHA, 2016 WL 1461944, at *2-3 (N.D. Cal. Apr. 14, 2016). In addition, Interim Settlement Class Counsel, who collectively represent four of the five Settlement Class Representatives, have undertaken the effort and expense of this MDL, and thereby demonstrated their willingness to devote the necessary resources to reach a successful outcome. They have and will continue to vigorously prosecute this action. *See* Geller Decl. ¶¶ 12-13.

### 2. The Settlement Class meets the requirements of Rule 23(b)(3).

Predominance: Rule 23(b)(3)'s "predominance" inquiry required by Rule 23(b)(3) "asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks and citation omitted). Predominance is satisfied here. McKinsey's liability turns on whether and how TPP Class

members were financially harmed when they spent more money on prescription opioids and opioid-related addiction treatment than they would have absent McKinsey's conduct.  The finding as to McKinsey's liability for one TPP Class member will be the answer as to all TPP Class members.  Accordingly, common issues of law and fact predominate.

Superiority:  Rule 23(b)(3) also requires that a class action be "superior" to other available methods for "fairly and efficiently" adjudicating a controversy. Fed. R. Civ. P. 23(b)(3).  The "matters pertinent to" this finding include: (A) class members' possible "interests in individually controlling the prosecution" of their claims through "separate actions"; (B) "the extent and nature" of any rival or overlapping litigation they have filed; (C) the "desirability or undesirability" of "concentrating" litigation in this forum; and (D) any "likely difficulties" in "managing" a class action.  *Id.* at 23(b)(3)(A)-(D).  These factors are satisfied here.  First, "from either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.  The aggregation of TPP Class members' claims saves time, effort, and expense, and promotes uniformity without sacrificing fairness.  Second, TPP Class members' responses so far suggest strong support for the Settlement, and there is no rival or overlapping litigation at issue.  Third, the Judicial Panel on Multidistrict Litigation has already consolidated actions in this forum.  And, lastly, the fourth of these factors is not relevant here because, at settlement, "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  All four factors of the superiority analysis thus favor TPPs' Class-wide adjudication.

### B.      The Settlement Meets the Requirements of Rule 23(e)(2).

#### 1.      Plaintiffs and Class Counsel have adequately represented the Class.

The Settlement between McKinsey and TPPs was reached in the context of years of litigation with numerous other defendants in the opioid industry, defendants against which Interim Settlement Class Counsel have now litigated (and will continue to litigate) for years. Interim Settlement Class Counsel have provided more than adequate representation in that time. *See* Fed. R. Civ. P. 23(e)(2)(A).  By the time of this case, Interim Settlement Class Counsel had

1  received millions of pages of documents, terabytes of data, hundreds of depositions, expert
2  reports, and testimony presented at several trials in the *National Opiate Prescription Litigation*,
3  MDL No. 2804. McKinsey also produced or made available additional hundreds of thousands of
4  documents, including those previously produced to the State Attorneys General in connection
5  with that settlement. As a result, Interim Settlement Class Counsel were able to make informed
6  evaluations of their claims as well as the adequacy of McKinsey's settlement offers. *See also*
7  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998) (noting that "the district
8  court and plaintiffs may rely on discovery developed in prior or related proceedings" for
9  settlement approval (citations omitted)).

The adequacy of Interim Settlement Class Counsel's representation is further evident from the precedent set by this result: the first opioid-related settlement for TPP plaintiffs in the country. And the five Settlement Class Representatives have also demonstrated their adequacy throughout their participation in this case, from initiating the discovery process to helping to develop the TPP Class notice program. *See* Geller Decl. ¶ 28.

### 2. The Settlement negotiations satisfy Rule 23(e)(2)(B).

Settlement negotiations were conducted at arm's length with assistance from experienced, neutral, and nationally recognized mediators. Specifically, the TPP settlement was negotiated in live and remote sessions with the ongoing participation and assistance of preeminent mediators Eric Green and Fouad Kurdi, who have unparalleled experience and expertise in the resolution of Opioids-related litigation in both this MDL 2996 and the related Opioids MDL 2804, including the post-liability trial phase settlement of the City and County of San Francisco's claims, and national settlements with the major pharmacy chain defendants and several manufacturer defendants. *See* Geller Decl. ¶ 6.

These mediators' involvement provides additional functional and structural assurances that negotiations were serious and non-collusive, in accordance with Rule 23(e)(2)(B).[2] In

---

[2] *See also* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2009 amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.");

addition, the Settlement Amount is non-reversionary, and the Settlement Agreement does not propose to give TPP Class Counsel a disproportionate share of the Settlement Fund.

### 3. The relief is adequate pursuant to the Rule 23(e)(2)(C) factors.

The $78 million Settlement Amount is substantial in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Those risks were serious and included potentially adverse rulings (by this Court or on appeal) concerning the scope of McKinsey's duties to third parties and causation, and the delays attendant to continuing to litigate. Moreover, the Plan of Allocation developed by Professor Meredith Rosenthal (ECF No. 699-4) is central to the Settlement and will distribute relief effectively and equitably. *See id.* at 23(e)(2)(C)(ii). This plan was informed by Dr. Rosenthal's experience in TPP litigation and in opioids litigation specifically, and by input from TPPs themselves.

### 4. Counsel's request for attorneys' fees is reasonable.

Interim Settlement Class Counsel are requesting an attorney's fee award of 20% of the Settlement Amount, including expenses, and net of notice costs, expert costs, and Settlement Class Representative service awards. This amount is below the range regularly approved in common fund settlements in this Circuit. *See, e.g.*, *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-00817-EMC, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund. Such awards are routinely upheld by the Ninth Circuit" (collecting cases) (citations omitted)). An attorneys' fees award of 20% is not disproportionate and should not bar approval of this Settlement. Counsel's fee request satisfies Rule 23(e)(2)(C)(iii).

### C. The Ninth Circuit's Prescribed Factors Support Approval of the Settlement.

The Ninth Circuit advises that courts "generally must weigh" eight factors when considering a settlement: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

---

*G.F. v. Contra Costa County*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quotation marks and citation omitted)).

1 throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed
2 and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a
3 governmental participant; and (8) the reaction of the class members of the proposed settlement."
4 *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Five of these
5 factors overlap with the revised Rule 23(e) and have already been discussed, and the seventh
6 factor is inapplicable, as this Settlement does not involve governmental participants.  With respect
7 to the eighth factor, TPP Class members' initial reactions have been positive.  While the opt-out
8 and objection deadline is June 1, 2024, which has not yet passed, the reaction of TPP Class
9 members so far suggests their support for the Settlement.  *See* Miller Decl. ¶ 10.  This is
10 particularly so in light of the revisions to the Plan of Allocation and objecting counsels'
11 subsequent withdrawal of their prior objections (ECF No. 700).  After June 1, 2024, and before
12 the July 26, 2024 Final Approval Hearing, Interim Settlement Class Counsel will provide further
13 information to the Court on opt-outs and objections.[3]

### D. The Court Should Appoint Settlement Class Counsel Under Rule 23(g)(1).

15 The Court should confirm the three Interim Settlement Class Counsel as Settlement Class
16 Counsel under Rule 23(g)(1).  Paul Geller represents BCTGM Atlantic Health & Welfare Fund (a
17 Settlement Class Representative), and his firm is also on the Plaintiffs' Steering Committee.  Ms.
18 Cabraser is Lead Counsel in this litigation, and her firm represents Settlement Class
19 Representative District Council 37 Benefits Fund Trust.  Mr. Dugan has served on the Plaintiffs'
20 Steering Committee for TPPs, and his firm represents Settlement Class Representatives
21 International Union of Operating Engineers Stationary Engineers Local 39 Health & Welfare
22 Trust Fund, and Teamsters Local 404 Health Services and Insurance Plan.  *See* Geller Decl. ¶ 12.

### E. The Court Should Award the Requested Attorneys' Fees and Expenses.

24 Courts in this Circuit "typically consider" the following factors in awarding attorneys' fees
25 and expenses at the conclusion of a class action: "(1) the results achieved for the class; (2) the

---

[3] TPP Class members will have until December 15, 2024 to submit Claim forms.  This date was amended from a prior date of September 18, 2024, in order to provide more time for TPPs to gather the necessary claims data.  TPP Counsel will submit to the Court a further Joint Status Report with an update on Claims after this date.

1  risks of the litigation; (3) whether there are benefits to the class beyond the immediate generation
2  of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the
3  contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions
4  from the class; and (7) a lodestar cross-check." *In re Volkswagen Clean Diesel Mktg., Sales*
5  *Pracs., & Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2022 WL 17730381, at *9 (N.D. Cal. Nov.
6  9, 2022) (citation omitted), *appeal dismissed*, *In re Volkswagen Clean Diesel Mktg., Sales Pracs.,*
7  *& Prods. Liab. Litig.*, No. 22-16898, 2024 WL 1635593 (9th Cir. Apr. 12, 2024).  Application of
8  these factors supports granting TPP Class Counsel's request for attorneys' fees and costs,
9  together, of 20% of the Settlement Fund.
10       First, the results achieved for the class here are precedent-setting, as this is the first TPP
11  settlement in the nationwide civil opioids litigation.  Second, this litigation involved a number of
12  considerable risks—particularly given the uncertain scope of McKinsey's duty owed to TPPs.
13  Third, counsel's requested fee percentage is below the Night Circuit benchmark of 25% of a
14  common fund.  *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  TPP counsel request
15  a total amount of approximately $15.5 million, which includes $15.1 million in attorneys' fees
16  and $400,000 as reimbursement for Class Counsel's combined related expenses, inclusive of the
17  common benefit assessment.  Geller Decl. ¶¶ 15, 23.  This amount constitutes 20% of the
18  Settlement Amount net of an estimated $350,000 for costs of A.B. Data's settlement
19  administration, estimated expert costs for Professor Meredith Rosenthal of $125,000,[4] and
20  Settlement Class Representatives' combined service awards of $50,000.  *Id.*  These fees and
21  expenses account for TPP Class members' common benefit obligations under PTO No. 9 (ECF
22  No. 567), including payment under pre-existing contingent fee contracts of counsel specifically
23  authorized to represent individual class members in the claims process, net of the PTO 9 common
24  benefit assessment.  *Id.*  Thus, the requested Rule 23(h) fees and expenses are all that TPP Class
25  members will be responsible for paying.

---

[4] These are conservative estimates.  TPP Class Counsel will submit final figures to the Court in connection with further briefing related to Final Approval.

1    Fourth, a lodestar cross-check confirms the reasonableness of counsel's fee request. TPP counsel's lodestar fees are approximately $22.46 million. Geller Decl. ¶ 18. Counsel's requested attorneys' fee of $15.1 million thus currently reflects a negative multiplier of 0.67. *Id.* ¶ 25. This multiplier is below the 1.0-4.0 range that is "presumptively acceptable" in this Circuit. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014). Moreover, as Interim Settlement Class Counsel continue to facilitate the notice program and claims process, their lodestar will increase, and the multiplier will further decrease. *See* Geller Decl. ¶ 25.

   **F.   The Court Should Award the Requested Service Awards.**

   The requested service awards of $10,000 for each of the five TPP Settlement Class Representatives are warranted for these TPPs' time, efforts, and leadership in this litigation. From the $78 million Settlement Amount, a $10,000 service award for each of the five TPPs is a modest recognition for their commitment to the success of this litigation.

**IV.  CONCLUSION**

   For all the reasons stated above, TPP Plaintiffs ask the Court to grant final approval to the TPP Class Settlement, including their requested attorneys' fees, expenses, and service awards.

Dated: April 22, 2024                              Respectfully submitted,

                                                   By: */s/ Paul J. Geller*
                                                   Paul J. Geller
                                                   Mark J. Dearman
                                                   **ROBBINS GELLER RUDMAN & DOWD LLP**
                                                   225 NE Mizner Boulevard, Suite 720
                                                   Boca Raton, FL 33432
                                                   Telephone: (561) 750 3000
                                                   pgeller@rgrdlaw.com
                                                   mdearman@rgrdlaw.com

                                                   *Interim Settlement Class Counsel, Counsel for BCTGM Atlantic Health & Welfare Fund, and Plaintiffs' Steering Committee Member*

                                                   By: */s/ Elizabeth J. Cabraser*
                                                   Elizabeth J. Cabraser

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com

*Interim Settlement Class Counsel, Counsel for District Council 37 Benefits Fund Trust, and Plaintiffs' Lead Counsel*

By: */s/ James R. Dugan*
James R. Dugan, II
**DUGAN LAW FIRM, APLC**
One Canal Place, Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648 0180
jdugan@dugan-lawfirm.com

*Interim Settlement Class Counsel, Counsel for International Union of Operating Engineers Stationary Engineers Local 39 Health & Welfare Trust Fund, Counsel for Teamsters Local 404 Health Services and Insurance Plan, and Plaintiffs' Steering Committee Member*