**NAPOLI SHKOLNIK**
HUNTER J. SHKOLNIK
PAUL J. NAPOLI
NESTOR D. GALARZA
REBECA MARTINEZ
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
Hunter@nsprlaw.com
PNapoli@nsprlaw.com
NGalarza@NSPRLaw.com
RMartinez@NSPRLaw.com

SALVATORE C. BADALA
NAPOLI SHKOLNIK
400 Broadhollow Road, Suite 305
Melville, NY 11747
Tel: (212) 397-1000
SBadala@napolilaw.com

SHAYNA E. SACKS
NAPOLI SHKOLNIK
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:21-cv-04386-CRB<br><br>Case No. 3:21-cv-05467-CRB | Case No.: 21-md-02996-CRB<br><br>**PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR REMAND OR ABSTENTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

1
2

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3

**PLEASE TAKE NOTICE** that on August 9, 2024, at 10 a.m. Pacific Time, or as soon

4

thereafter as counsel may be heard, in the courtroom of the Hon. Charles R. Breyer of the United

5

States District Court of the Northern District of California, San Francisco Courthouse, located at

6

450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs in **Case No. 3:21-cv-04386-CRB**

7

(The County of Genesee, The Town of Auburn, The City of Buffalo, The County of Chautauqua,

8

The County of Chemung, The County of Chenango, The County of Clinton, The County of

9

Cortland, The County of Hamilton, The City of Ithaca, The City of Kingston, The County of

10

Livingston, The County of Madison, The City of Mount Vernon, The County of Niagara, The

11

County of Orleans, The City of Poughkeepsie, The Town of Poughkeepsie, The County of

12

Rensselaer, The City of Saratoga Springs, and The County of Steuben ("**Genesee Plaintiffs**")) and

13

Plaintiffs in **Case No. 3:21-cv-05467-CRB** (The County of Westchester, The County of Allegany,

14

the Town of Amherst, The City of Amsterdam, The County of Cattaraugus, The County of Cayuga,

15

The County of Cheektowaga, The County of Essex, The County of Franklin, The City of Lancaster,

16

The County of Nassau, The City of Ogdensburg, The County of Otsego, The County of Putnam,

17

The City of Rochester, The County of Saratoga, The County of Schoharie, The County of Schuyler,

18

The County of Tioga, The County of Tompkins, The City of Tonawanda, The County of Warren,

19
20

and The County of Yates ("**Westchester Plaintiffs**"))—collectively, "**Plaintiffs**"—by their

21

counsel Napoli Shkolnik PLLC, will move for entry of an order pursuant to 28 U.S.C. §§ 1407(a)

22
23

and/or 1447(c), granting Plaintiffs' Consolidated Motion for Remand or Abstention.

24

This Motion is based on this Notice, the accompanying Memorandum of Points and

25

Authorities, the attached declaration and exhibits thereto, and the Proposed Order lodged herewith.

26
27
28

i

Dated:  June 14, 2024

Respectfully submitted,

**NAPOLI SHKOLNIK**
*Hunter J. Shkolnik*
HUNTER J. SHKOLNIK
PAUL J. NAPOLI
NESTOR D. GALARZA
REBECA MARTINEZ
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
Hunter@nsprlaw.com
PNapoli@nsprlaw.com
NGalarza@NSPRLaw.com
RMartinez@NSPRLaw.com

SALVATORE C. BADALA
NAPOLI SHKOLNIK
400 Broadhollow Road, Suite 305
Melville, NY 11747
Tel: (212) 397-1000
SBadala@napolilaw.com

SHAYNA E. SACKS
NAPOLI SHKOLNIK
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

*Counsel for Plaintiffs*

## SUMMARY OF THE ARGUMENTS

As this Court is aware, given its experience overseeing the trial of the San Francisco Bellwether against Walgreens, the opioid epidemic is a serious public health crisis that has ravaged this country. The resulting societal and economic damage has triggered an avalanche of lawsuits and enforcement actions in recent years against those who have caused or contributed to this epidemic. McKinsey & Company, Inc., is one such entity.  Plaintiffs sued McKinsey, whose principal office is in New York, in state court asserting exclusively state-law tort claims (the "Actions") based on McKinsey's role in marketing opioids manufactured by Purdue Pharma, L.P. ("Purdue") and its affiliates, as well as companies in the opioid distribution chain, including pharmacies such as Walgreens. McKinsey removed the Actions to federal court, arguing that subject-matter jurisdiction exists on the basis that the Actions are "related to" Purdue's bankruptcy proceedings. McKinsey bases its argument on the fact that it is alleged to be a joint tortfeasor with Purdue and potentially has claims to indemnification or contribution from Purdue if judgment is entered against it in the Actions. As is more fully set forth below, this is a false narrative under New York law as McKinsey's alleged rights to contribution are fully protected under New York law given its right to obtain a set off of any of its liability related to Purdue's conduct. And, assuming there is some esoteric right to proceed on a claim for contribution, against Purdue in Bankruptcy, which there is not under New York law, McKinsey, made an obvious business decision not to file a claim against its former client in the Purdue Bankruptcy, and is now without any standing to pursue such claim in the Bankruptcy.

McKinsey's arguments are without merit. To begin with, removal of "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power" is expressly precluded under 28 U.S.C. § 1452(a), because Plaintiffs are governmental units seeking to enforce their police or regulatory powers.

Nor is there "related to" jurisdiction under 28 U.S.C. § 1334(b). McKinsey forfeited any indemnification or contribution claims it may have had by failing to file a timely proof of claim in Purdue's bankruptcy proceedings. Nor does McKinsey have contribution claims, given that Plaintiffs' claims against McKinsey are not ones on which McKinsey would be entitled to seek contribution. Although McKinsey and Purdue may be joint tortfeasors, without any indemnification or contribution claims McKinsey cannot demonstrate that Plaintiffs' Actions could have any conceivable effect on Purdue's bankruptcy proceedings. In any event, under N.Y. Gen. Oblig. Law § 15-108 (McKinney), McKinsey is not entitled to contribution, but rather a setoff if it is able to prove at trial that Purdue (or any other settling defendant) contributed to Plaintiffs' losses.[1] Accordingly, there is no "related to" jurisdiction and the Actions must be remanded pursuant to 28 U.S.C. § 1447(c).

Even if "related to" jurisdiction existed, the proper course would be not to retain jurisdiction over the cases, but instead to remand them based on the doctrine of abstention. On the circumstances presented by these cases, abstention is mandatory because Plaintiffs timely sought abstention and the Actions: (1) were commenced in state court and assert only state-law claims, (2) are not core bankruptcy proceedings, (3) provide no basis for federal jurisdiction other than 28 U.S.C. § 1334, and (4) can be timely adjudicated in state court. Even if abstention were not mandated, the Court can and should exercise its discretion to abstain and/or equitably remand the Actions in the interests of justice or comity, or on any other equitable ground.

---

[1] A copy of the actual New York State Opioid trial verdict sheet is attached to the Shkolnik Declaration as **Ex. 9**. A review of the verdict form clearly shows that Purdue Pharma and other settling and bankrupt defendants, Mallinckrodt and Rochester Drug Cooperative, were included on the verdict form and for consideration by the jury for apportionment of liability purposes under N.Y. Gen. Oblig. Law § 15-108 (McKinney). Had the jury found any liability percentage on the part of these bankrupt defendants the remaining defendants would have had a reduction of the jury award by either the greater of the percent of liability or the dollar amount paid through settlement or the bankruptcy estate.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND PROCEDURAL HISTORY ................................................................. 1

BACKGROUND ........................................................................................................................ 2

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT ............................................................................................................................. 5

I.   REMOVAL OF PLAINTIFFS' ACTIONS IS
     PRECLUDED UNDER 28 U.S.C. § 1452(A) ............................................................... 5

II.  THIS COURT LACKS SUBJECT-MATTER
     JURISDICTION OVER THE ACTIONS ........................................................................ 7

     A.  McKinsey's Indemnification Claims Do Not Support
         the Exercise of "Related to" Jurisdiction, Because
         McKinsey Has No Reasonable Legal Basis for Those Claims ......................... 8

     B.  McKinsey's Contribution Claims Do Not Support the
         Exercise of "Related to" Jurisdiction, Because McKinsey
         Has No Reasonable Legal Basis for Those Claims ........................................ 11

     C.  McKinsey's Mere Status as a Joint Tortfeasor With Purdue
         Does Not Give Rise to "Related to" Jurisdiction ........................................... 16

III. ALTERNATIVELY, THIS COURT SHOULD ABSTAIN AND
     REMAND THE CLAIMS AGAINST MCKINSEY ........................................................ 19

     A.  Section 1334(c)(2) Requires Mandatory Abstention in This Case .................. 19

     B.  This Court Should Exercise its Discretion to Permissively Abstain
         From Hearing the Actions and/or Equitably Remand the Actions .................. 21

CONCLUSION ......................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC)*,
  2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ..................................................... 10, 11

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
  405 F. Supp. 3d 947 (D. Colo. 2019) ...................................................................... 7

*Bd. of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*,
  517 N.E.2d 1360 (N.Y. 1987) ................................................................................ 12

*Celotex Corp. v. Edwards*,
  514 U.S. 300 .............................................................................................................. 8

*Children's Corner Learning Ctr. v. A. Miranda Contr. Corp.*,
  64 A.D.3d 318 (1st Dept. 2009) ............................................................................. 12

*City & County of San Francisco v. PG & E Corp.*,
  433 F.3d 1115 (9th Cir. 20006) ............................................................................... 5

*Contra Costa County v Fitch, Inc.*, No. C,
  2011 WL 13247847 (N.D. Cal. Jan. 31, 2011) ........................................................ 9

*Cty. of San Mateo v. Chevron Corp.*,
  294 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................................. 6, 7

*Dillon v. Peak Envtl., LLC*,
  173 A.D.3d 1637 (4th Dept. 2019) ........................................................................ 12

*Gaus v. Miles*,
  980 F.2d 564 (9th Cir. 1992) ................................................................................... 5

*Gruber v. Gilbertson*,
  647 F. Supp. 3d 100 (S.D.N.Y. Dec. 21, 2022) ..................................................... 16

*Haas v. Tishman Const. Corp. of New York*,
  1987 WL 5792 (S.D.N.Y. Jan. 13, 1987) .............................................................. 13

*Harrington v. Purdue Pharma, L.P.*,
  144 S. Ct. 44 (2023) ................................................................................................. 4

*Harris v. Bankers Life and Cas. Co.*,
  425 F.3d 689 (9th Cir. 2005) ................................................................................... 5

*Hendricks v. Detroit Diesel Corp.*,
  2009 WL 4282812 (N.D. Cal. 2009) ........................................................................ 19

*Homes Ins. Co. v. Cooper & Cooper Ltd.*,
  889 F.2d 746 (7th Cir. 1989) ................................................................................... 16

*In re AMR Corp.*,
  492 B.R. 660 (Bankr. S.D.N.Y. 2013) ..................................................................... 14

*In re Enron Corp.*,
  419 F.3d 115 (2d Cir. 2005) ..................................................................................... 14

*In re Harris Pine Mills*,
  44 F.3d 1431 (9th Cir. 1995) .................................................................................... 20

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
  829 F.2d 1171 (D.C. Cir. 1987) ............................................................................... 19

*In re Methyl Tertiary Butyl Ether ("MBTE") Products Liability Litigation*,
  241 F.R.D. 435 (S.D.N.Y. 2007) ............................................................................. 19

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007) .................................................................................. 5, 7

*In re Motors Liquidation Co. ("Motors*,
  598 B.R. 744 (Bankr. S.D.N.Y. 2019) ................................................................. 9, 14

*In re Opioid Litigation*,
  2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) ............................................. 21, 22

*In re Opioid Litigation*,
  2019 WL 2996569 (N.Y. Sup. Ct. June 21, 2019) ................................................... 21

*In re Opioid Litigation*,
  2019 WL 2996570 (N.Y. Sup. Ct. June 21, 2019) ................................................... 21

*In re Opioid Litigation*,
  2020 WL 8011988 (N.Y. Sup. Ct. Feb. 03, 2020) ................................................... 21

*In re Platinum Beechwood Litig.*,
  2023 WL 6210626, 2023 U.S. Dist. LEXIS 167343 (S.D.N.Y. Sept. 25, 2023) ...... 15

*In re Purdue Pharm. L.P.*,
  619 B.R. 38 (S.D.N.Y. 2020) ....................................................................... 11, 17, 18

*In re SunEdison, Inc.*,
  576 B.R. 453 (Bankr. S.D.N.Y. 2017) ..................................................................... 11

*In re Tucson Estates, Inc.*,
  912 F.2d 1162 (9th Cir. 1990) ............................................................... 22

*In re Valdez Fisheries Development Ass'n, Inc.*,
  439 F.3d 545 (9th Cir. 2006) ............................................................. 7, 8

*In re WorldCom, Inc. Securities Litig.*,
  293 B.R. 308 (Bankr. S.D.N.Y. 2003)...................................... 11, 16, 17

*Kennilworth Partners II LP v. Crisman*,
  2001 WL 30534 (N.D. Cal. Jan. 3, 2001)...................................... 19, 20

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'Ship*,
  2004 WL 1048239 (S.D.N.Y. May 7, 2004) .......................................... 25

*Livingston v. Klein*,
  256 A.D.2d 1214 (4th Dept. 1998) ...................................................... 12

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  388 F. Supp. 3d 538 (D. Md. 2019) ...................................................... 7

*MBIA Insurance Corp. v. Indymac ABS, Inc.*,
  2009 WL 10675774 (C.D. Cal. Dec. 23, 2009) .................................. 9, 11

*McMillan v. Barclays Bank PLC*,
  2014 WL 4364053 (S.D.N.Y. Sept. 3, 2014) ....................................... 16

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  399 F.3d 436 (2d Cir. 2005) ................................................................ 19

*N.A.A.C.P. v. Acusport Corp.*,
  226 F. Supp. 2d 391 (E.D.N.Y. 2002) .................................................. 12

*New York Trap Rock Corp. v. Town of Clarkstown*,
  85 N.E.2d 873 (N.Y. 1949)................................................................ 5, 6

*New York v. W. Side Corp.*,
  790 F. Supp. 2d 13 (E.D.N.Y. 2011) .................................................... 12

*Newton v. Thomason*,
  22 F.3d 1455 (9th Cir. 1994) .............................................................. 19

*Owen Equip. & Erection Co. v. Kroger*,
  437 U.S. 365 (1978)............................................................................ 5

*Pioneer Inv. Services Co. v. Brunswick Associates ltd. Partnership*,
  507 U.S. 380 (1993)....................................................................... 9, 10

*Schulman v. California (In re Lazar)*,
   237 F.3d 967 (9th Cir. 2001) ................................................................. 19

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*,
   2012 WL 4794450 (S.D.N.Y. Oct. 9, 2021) ............................... 8, 15, 25

*Siegel v. Federal Home Loan Mortg. Corp.*,
   143 F.3d 525 (9th Cir. 1998) ................................................................... 9

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) ..........................................................Passim

*United States v. Whitehill*,
   2018 WL 459300 (W.D.N.Y. Jan. 18, 2018) .......................................... 12

*Ventricelli v Nicklin*,
   2020 WL 132334 (N.D.N.Y. Jan. 13, 2020) .......................................... 21

Statutes

11 U.S.C. § 101(5)(A) .................................................................................. 9
11 U.S.C. § 502(e)(1)(B) ........................................................................ 14, 15
28 U.S.C. § 1334(b) ................................................................................... 4, 7
28 U.S.C. § 1334(c)(1) ........................................................................... 19, 21
28 U.S.C. § 1334, and (4) ............................................................................ 4
28 U.S.C. § 1404(a) .................................................................................... 19
28 U.S.C. § 1441(a) ...................................................................................... 4
28 U.S.C. § 1447(c) ............................................................................. 4, 2, 20
28 U.S.C. § 1452(a) ............................................................................. 3, 5, 6, 7
28 U.S.C. § 1452(b) ............................................................................... 19, 21
28 U.S.C. §§ 1407(a) and/or 1447(c) .......................................................... 1
N.Y. Gen. Oblig. Law § 15-108 (McKinney) ......................................... 4, 15

Rules

FED. R. BANKR. P. 3003(c) ......................................................................... 11
FED. R. BANKR. P. 3003(c)(3) ...................................................................... 9
FED. R. BANKR. P. 9006(b)(1) ...................................................................... 9
N.Y. C.P.L.R. 1401 .................................................................................... 12

Other Authorities

*Transfer and Choice of Federal Law: The Appellate Model*,
   93 Mich. L. Rev. 703 (1995) ................................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION AND PROCEDURAL HISTORY

This consolidated motion is brought by a total of 44 New York political subdivisions that are Plaintiffs in two lawsuits in which they brought suit against Defendant McKinsey & Company, Inc., ("McKinsey"), a New York corporation with its principal place of business in New York, advancing solely state-law claims and seeking redress, in their sovereign capacity, for highly questionable business conduct principally occurring within the State of New York. Given that Plaintiffs have asserted no federal law claims and there is no diversity of citizenship, Plaintiffs' lawsuits could not have been filed in federal court. Nonetheless, McKinsey improperly removed the lawsuits to federal court. Plaintiffs now move the Court to have these long-delayed lawsuits remanded to the New York state court in which they were filed.

After Plaintiff's cases were removed from state court and eventually transferred to this Court by the JPML on June 9, 2021 (Dkt. 29) and July 13, 2021 (Dkt. 16), these cases remained part of the MDL while the settlement process went forward, in accordance with the Order in Dkt. 161. During the nearly three years in which these lawsuits have been on hold as part of the MDL, this Court and counsel for a vast array of plaintiffs with diverse interests have managed to resolve nearly all the cases involving political subdivisions, through an unopposed class action settlement filed on September 26, 2023 (MDL Dkt. 598), to which this Court gave final approval on February 2, 2024 (MDL Dkt. 665). The settlement has resolved the claims of 99.76% of the more than 30,000 political subdivisions in the class. As the critical mass of cases that originally justified the creation of an MDL covering lawsuits by the political subdivisions have been resolved, as indicated at the May 31 status conference, this Court is now moving on to the resolution of the cases remaining in the MDL. By all accounts it must be noted that this was an extremely successful MDL, having resolved the claims of nearly all political subdivisions in the United States, leaving a small handful (less than one-quarter of 1%) that asked to be excluded.

The remaining subdivision Plaintiffs in this litigation are represented by only a handful of firms.[2] Various of these firms have worked together in other opioids epidemic litigation and will be able to ensure that there is no duplicative discovery as to McKinsey once the cases are remanded. Discovery concerning the New York Plaintiffs should be conducted as part of the consolidated opioids litigation that is pending in McKinsey's home jurisdiction—New York.

Further, although it is common to defer consideration of remand motions early in an MDL, even to the extent of putting off analysis of whether certain cases should be remanded for want of subject-matter jurisdiction, Plaintiffs suggest that the time is now ripe for this Court to exercise this gatekeeping function. Now, nearly three years after Plaintiffs' lawsuits were filed, the Court's next order of business, as Plaintiffs have previously emphasized, should be resolution of whether these two cases should be remanded to the New York State Coordinated Opioid Litigation from whence they came, given 28 U.S.C. § 1447(c), which provides that "[if] at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

**BACKGROUND**

A. <u>In Re Opioid Litigation, Index. No. 400000/2017, New York Litigation Coordinating Panel</u>

In July 2017, the New York Litigation Coordinating Panel ("LCP") ordered that certain opioid-related cases pending in various counties of New York, and any similar cases later filed in New York, be coordinated in the Supreme Court of Suffolk County before Hon. Jerry Garguilo ("New York Coordinated Litigation"). **Ex. 1** (NY Transfer Order) at 1-8. Purdue and several of its affiliates were among the defendants sued in the various actions therein. *Id.* One of the first orders of business

---

[2] Napoli Shkolnik is Co-Counsel in many of the Kentucky subdivision opioid public nuisance cases. And would ensure that there is Coordination and not duplication of discovery should it proceed in State and federal Court. Baron & Budd and Napoli Shkolnik have worked closely together as members of the Opiate MDL Plaintiffs' Executive Committee and have also worked to ensure there is coordination and cooperation between MDL and state court actions in the opiate litigation. These efforts resulted in trials running in tandem between the MDL and the state courts *without duplication or unnecessary burden* on the part of the defendants.

was entry of an order that coordinated efforts between the New York opioid proceedings and the national opiate litigation pending before Judge Polster. **Ex. 2** (Case Management Order #2) at 2-3.[3]

Over three years ago, Plaintiffs commenced their respective civil actions before the trial courts of the Supreme Court of New York. As the New York Courts deemed the McKinsey actions related to the pending coordinated litigation, these complaints were then transferred to the New York Coordinated Litigation *See Transfer Orders*, **Ex. 3**. On July 7, 2021, the LCP entered an Order to coordinate all *In re Opioid Litigation* cases in Suffolk County, New York before Hon. Garguilo.

B.  MDL 2804, National Prescription Opiate Litigation

In December 2017, the United States Judicial Panel on Multidistrict Litigation ("JPML") ordered the centralization of all opioid-related cases pending in federal courts around the country for coordinated pretrial proceedings in the District Court for the Northern District of Ohio before the Hon. Dan A. Polster ("Federal Opioid MDL"). Purdue and several of its affiliates were among the defendants sued in the Federal Opioid MDL. *See, e.g., id*. at 1380-82.

C.  Purdue's Chapter 11 Bankruptcy Filing

On September 15, 2019, Purdue and its affiliates filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. Dkt. #1 (NOR) at ¶ 5. *In re Purdue Pharma L.P*., No. 19-23649 ("Bkr. Dkt.").[4] Despite the July 30, 2020 deadline for filing proofs of

---

[3] Although the state-court actions were to proceed independently, there was a prohibition on duplicative discovery, and the discovery was coordinated in tandem with the opioid MDL. *Id* at 4 ("the parties may begin noticing fact witness depositions nor duplicative of witnesses or 30(b)(6) topics taken in MDL No. 2804 . . . the parties' recognition of the importance of coordination of discovery in this proceeding with discovery taken in MDL No. 2804 and elsewhere"). This coordination was facilitated by the fact that the New York litigation was led by Napoli Shkolnik and Simmons Conroy, who were also members of the MDL leadership (Hunter Shkolnik, counsel for Plaintiffs here, served as a PEC member, and Jayne Conroy served as Co-Lead Counsel).

[4] Shortly thereafter, the bankruptcy court enjoined the continuation of all pending litigation by governmental and private plaintiffs against the Purdue debtors and certain "related parties" (i.e., Purdue's former and current owners, directors, officers, employees, and other similar associated entities of the debtors). Bkr. Dkt. #89, #105.

claim ("Bar Date") having passed nearly four years ago, to date McKinsey has not filed any proofs of claim in Purdue's bankruptcy. Bkr. Dkt. #800 at 2; Bkr. Dkt. #1221 at 2. Purdue Pharma was severed from the pending trial, and issued a stay in the New York Litigation.

The bankruptcy court approved Purdue's disclosure statement (Bkr. Dkt. #2983) for its Fifth Amended Chapter 11 Plan (Bkr. Dkt. #2982) (the "Plan") and scheduled a confirmation hearing on August 9, 2021. Bkr. Dkt. #2988-2989. After confirmation of the proposed plan ("the Plan"), the decision was later vacated by the district court. (21-cv-7532 Dkt. #148.). On May 30, 2023, the Second Circuit reversed the district court's ruling and the case was brought before the Supreme Court to resolve the issue. *Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 44 (2023) (granting certiorari to resolve issues on appeal from the Second Circuit).

D. MDL 2996, IN RE: McKinsey & Company, Inc.

On June 7, 2021, the JPML, at McKinsey's request,[5] ordered the centralization of certain opioid-related cases against McKinsey then pending in various federal courts for coordinated pretrial proceedings in this Court ("McKinsey MDL"). Despite the fact that Plaintiffs assert exclusively state-law tort claims based on McKinsey's role in marketing opioids manufactured by Purdue, McKinsey removed the Actions to the Eastern District of New York on February 25 and June 10, 2021, arguing that subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1334(b) because Plaintiffs' claims are allegedly "related to" Purdue's bankruptcy case. Dkt. No. 1 (NOR). Plaintiffs now respectfully submit this Consolidated Motion for Remand or Abstention.

**LEGAL STANDARD**

In an action removed from state court, removal is permissible only if the federal court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "It is a fundamental precept that federal

---

[5] McKinsey requested centralization in the Southern District of New York.

courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). These limits, "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Id*. For that reason, removal statutes are narrowly construed, and all doubts must be resolved in favor of remand. *Harris v. Bankers Life and Cas. Co*., 425 F.3d 689, 698 (9th Cir. 2005). The removing party bears the burden of demonstrating that federal jurisdiction exists, and that removal was timely and proper. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

**ARGUMENT**

**I. REMOVAL OF PLAINTIFFS' ACTIONS IS PRECLUDED UNDER 28 U.S.C. § 1452(a)**

McKinsey removed the Actions pursuant to 28 U.S.C. § 1452(a), yet in quoting that statute in its removal papers (*Genesee* Dkt. No. 1 (NOR), ¶ 4; *Westchester* Dkt. No. 1 (NOR), ¶ 4), McKinsey notably omits the very language that precludes the Actions' removal: "A party may remove any claim or cause of action in a civil action other than . . . a civil action by a governmental unit *to enforce such governmental unit's police or regulatory power* . . . ." 28 U.S.C. § 1452(a) (emphasis added). As counties and municipalities, Plaintiffs are "governmental units." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 132 (2d Cir. 2007) ("governmental unit" includes "municipalities," and "political subdivision[s]"). Similarly, the Ninth Circuit has recognized that the terms "police or regulatory power" reference "the enforcement of state laws affecting health, welfare, morals, and safety[.]'" *City & County of San Francisco v. PG & E Corp.,* 433 F.3d 1115, 1123 (9th Cir. 20006).

Of particular relevance to this case, the Court of Appeals of New York long ago definitively held not just that political subdivisions may exercise the police power to protect public health, but that they are imbued with authority under New York law *to file suit on a public nuisance theory* to protect the public health. *New York Trap Rock Corp. v. Town of Clarkstown*, 85 N.E.2d 873 (N.Y. 1949), considered whether a town had authority to file suit to enjoin, as a public nuisance, stone

quarrying operations that involved the use of dynamite, which the town alleged had "injured the health of the citizens of the township." *Id*. at 876. The Court held that the conclusion that the town "has the capacity and is a proper party to bring an action to restrain a public nuisance which allegedly has injured the health of its citizens . . . is dictated by policy and principle and finds warrant in both the common law and statutes of this State." *Id*. at 877. Noting that "there is no case in this State which has denied such power," *id*., the Court observed the importance of allowing such lawsuits: "where the public health is involved, the right of the town to bring such an action may be tantamount to its survival." *Id*. The Legislature's "creation of such local subdivisions" implied that "obviously conferred upon them" was "the right to take such steps as are essential to protect existence." *Id*. *See also id*. at 878 ("The Legislature . . . has impliedly delegated to towns the power to bring an action to restrain a common-law public nuisance"); *id*. at 879 (Public Health Law implies "power to bring an action to restrain a nuisance affecting the public health, when in the judgment of the representatives of the town, such action is vitally necessary for the protection of the health of its inhabitants.").

In their lawsuits, Plaintiffs allege that McKinsey's conduct contributed to the opioid epidemic, which has detrimentally impacted the health, welfare, and safety of their communities. *Genesee* Amended Complaint (Dkt. No. 1-2); *Westchester* Complaint (Dkt. No 1-1). They seek to abate the public nuisance created by McKinsey's conduct and recover costs incurred by them in providing public services to deal with the epidemic (*e.g.*, services for families/children, public health, public assistance, law enforcement, emergency care, etc.). *Genesee* Amended Complaint ¶¶ 242, 245-248, *VII. Prayer for Relief*; *Westchester* Complaint ¶¶ 248, 251-249, *VII. Prayer for Relief*. Courts of this District and others have held that similar actions fall within the "police or regulatory power" exception to removal under § 1452(a). *See, e.g., Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938-39 (N.D. Cal. 2018) ("[B]ankruptcy removal d[oes] not apply because [the city and

6

counties'] suits [alleging nuisance, negligence, and products liability] are aimed at protecting the public safety and welfare and brought on behalf of the public."), *aff'd in part on other grounds, appeal dismissed in part,* 960 F.3d 586 (9th Cir. 2020); *MTBE*, 488 F.3d at 114-15, 132–34 (claims asserted by states against defendants whose discharge of gasoline containing MTBE contaminated groundwater fell "within the 'police ore regulatory power' exception to removal under section 1452");[6] *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 548, 571-72 (D. Md. 2019); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 954-55, 981 (D. Colo. 2019). Accordingly, Plaintiffs' Actions fall with the governmental unit's police or regulatory power exception under Section 1452(a).

## II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE ACTIONS

Even assuming, *arguendo*, that the Actions do not fall within the § 1452(a) exception to removal, they must be remanded for lack of subject-matter jurisdiction. The sole basis for jurisdiction asserted in McKinsey's Notices of Removal is 28 U.S.C. § 1334(b), which gives federal district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." McKinsey claims the Actions are "related to" Purdue's bankruptcy. *Genesee* Dkt. No. 1 (NOR) ¶ 5; *Westchester* Dkt. No. 1 (NOR) ¶ 5.[7] In this Circuit, a civil proceeding counts as "related to "a title 11 case if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Valdez Fisheries Development Ass'n, Inc.*, 439 F.3d 545, 547 (9th Cir. 2006) (quotation marks and citations

---

[6] The claims in *MTBE* included public nuisance, strict products liability, negligence, trespass, false advertising, unfair business practices, and conspiracy. *See In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig. (State of California, et al., v. Atlantic Richfield Co., et al.)*, No. 04-5974-CV, 2005 WL 6060836, at *3-*4 (2d Cir. Sept. 20, 2005); *In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig. (State of New Hampshire v. Amerada Hess Corp., et al.)*, No. 04-6056-cv, 2005 WL 6060834, at *10-*11 (2d Cir. Sept. 20, 2005).

[7] McKinsey does not argue that Plaintiffs' claims arise under, or arise in a case under, title 11.

omitted). The civil proceeding has a conceivable effect if the outcome could "alter the debtor's rights, liabilities, options, or freedom of action . . . [or] in any way impact[] upon the handling and administration of the bankrupt estate." *Id.* (brackets in original) (quotations and citations omitted). The Supreme Court has cautioned, however, that "'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 1995). "Thus, 'any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction." *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397 (LTS) (HBP), 2012 WL 4794450, at *2 (S.D.N.Y. Oct. 9, 2021) (quotations omitted).

   In this case, McKinsey argues that this Court has "related to" jurisdiction because: (i) "Plaintiffs' allegations against McKinsey are highly interconnected with the conduct and actions of Purdue[,]" and thus "[r]esolution of the Plaintiffs' claims against McKinsey may therefore alter Purdue's rights and liabilities as a bankruptcy debtor[;]" and (ii) "Plaintiffs' claims in this Action, if successful, could also give rise to indemnification and/or contribution claims by McKinsey against Purdue and therefore may affect property of Purdue's bankruptcy estate." Dkt. #1 (NOR), ¶ 16. McKinsey's arguments are without merit, and should be rejected.

### A. McKinsey's Indemnification Claims Do Not Support the Exercise of "Related to" Jurisdiction, Because McKinsey Has No Reasonable Legal Basis for Those Claims.

   McKinsey argues it entered into a 2004 indemnification agreement with Purdue under which "Purdue contractually agreed to indemnify McKinsey for all claims brought by third parties against Purdue and/or McKinsey (including reasonable legal fees) arising out of its services to Purdue." *Genesee* Dkt. No. 1 (NOR) ¶ 15; *Westchester* Dkt. No. 1 (NOR) ¶ 15. Notably, McKinsey failed to attach this indemnification agreement to its Notice of Removal. *Id.* Regardless, Purdue's purported indemnification obligations to McKinsey do not give rise to "related to" jurisdiction in this case.

   The potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings, particularly where there is no reasonable basis

to support the claim. *See, e.g., Contra Costa County v Fitch, Inc.*, No. C 10-05318 JSW, 2011 WL 13247847, at *3-*5 (N.D. Cal. Jan. 31, 2011) (rejecting potential claim for indemnification as too removed and attenuated to have conceivable effects on bankruptcy proceeding); *MBIA Insurance Corporation v. Indymac ABS, Inc. ("MBIA"),* No. CV 09-07737 SJO (PJWx), 2009 WL 10675774, at *2 (C.D. Cal. Dec. 23, 2009) (rejecting hypothetical contingent claims as basis for "related to" jurisdiction). Here, there is no reasonable legal basis for McKinsey's indemnification claims against Purdue because it forfeited any such claims by failing to file a timely proof of claim in Purdue's bankruptcy. A potential indemnification claim against a debtor cannot affect the estate if the creditor has not properly asserted that claim in the bankruptcy proceedings.

The Federal Rules of Bankruptcy Procedure require bankruptcy courts to set a bar date, which specifies the time period within which proofs of claims or interest may be filed. FED. R. BANKR. P. 3003(c)(3). Under the Bankruptcy Code, a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). The term is broadly construed (*see Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 532 (9th Cir. 1998)), and it is well established that a "claim" can exist under the Bankruptcy Code before a right to payment exists under non-bankruptcy law. *In re Motors Liquidation Co.* ("*Motors*"), 598 B.R. 744, 754 (Bankr. S.D.N.Y. 2019).

Once the bar date has passed, a creditor requires leave from the bankruptcy court to file a late-filed claim, which can be granted only if the creditor demonstrates that its failure to meet the bar date "was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). To determine "excusable neglect," courts take into account all relevant circumstances surrounding the party's omission. *Pioneer Inv. Services Co. v. Brunswick Associates ltd. Partnership,* 507 U.S. 380, 396 (1993). This includes consideration of "the danger of prejudice to the debtor, the length of the delay

and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

In this case, the Bar Date was July 30, 2020, and McKinsey was sent notice of the Bar Date on February 18, 2020. **Ex. 4** (Aff. of Service) at 2 & Ex. I.[8] In that notice, McKinsey was informed (i) that any claims based on prepetition conduct of the Debtors "must be filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the Petition Date," and (ii) that the term "claim" included any contingent rights to payment. *Id.*, Ex. B at 2. Despite this notice, McKinsey failed to file any proof of claim for its contingent indemnification claim prior to the Bar Date. Indeed, to date, McKinsey has not filed **any** proofs of claim in Purdue's bankruptcy.[9] Further, any suggestion that McKinsey, one of the largest consulting companies in the world, was either not aware of the Purdue Bankruptcy or didn't know it was at risk  related to its opioid marketing consulting work is absurd.

McKinsey cannot remedy this defect in its removal by filing the necessary proofs of claim now. As noted above, McKinsey would require leave from the bankruptcy court to submit a late-filed claim, but "[e]xcusable neglect does not excuse the failure to file [a] proof of claim for an indemnification liability by the bar date[.]" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 341 (2d Cir. 2018); *see also Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC)*, No. 11 Civ. 2232 (NRB), 2011 WL 4965150, at *4-*5 (S.D.N.Y. Oct. 19, 2011) (defendants cannot "overcome the passage of the bar dates" where "defendants could, and should, have asserted their indemnification claims prior to the bar dates"). This is because "[a]n indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to indemnification has not yet occurred." *Id.* (quotations omitted). According to McKinsey, the

---

[8] Purdue also undertook broad publication notice. Bkr. Dkt. No. 2488 at 45-46.
[9] *See* https://restructuring.primeclerk.com/purduepharma/Home-ClaimInfo.

1    indemnification agreement was executed in 2004, well before Purdue filed for bankruptcy in

2    September 2019. Dkt. #1 at ¶¶ 5, 15. Similarly, all the conduct forming the basis of any potential

3    indemnification claim occurred prepetition. *Genesee* Amended Complaint ¶¶ 45, 73, 89;

4    *Westchester* Complaint ¶¶ 51, 79, 95. Thus, any indemnification rights arising from such agreement

5    constituted a contingent prepetition claim for which McKinsey was obligated to file a proof of

6    claim. *See Allstate*, 2011 WL 4965150, at *5. Because McKinsey failed to file a proof of claim,

7    and such failure cannot be excused as "excusable neglect," any indemnification claim McKinsey

8    may have had has been forfeited and cannot "have any 'conceivable effect' on [Purdue's

9    bankruptcy] estate." *SPV*, 882 F.3d at 341. The cases cited by McKinsey are distinguishable

10   because they did not involve indemnification claims that had been forfeited by the creditor.[10]

11

12       **B.   McKinsey's Contribution Claims Do Not Support the Exercise of "Related to"
            Jurisdiction, Because McKinsey Has No Reasonable Legal Basis for Those Claims.**

13

14       As with indemnification claims, a potential contribution claim by a third-party defendant

15   against the debtor will not give rise to "related to" jurisdiction over an action to which the debtor

16   is not a party when the alleged contribution claim is hypothetical, nearly bereft of any factual

17   support. *See MBIA Insurance Corp. v. Indymac ABS, Inc.*, 2009 WL 10675774 at *1. Just like with

18   its purported indemnification claims, as discussed in greater detail below, McKinsey has forfeited

19   any contingent contribution claims it may have had by failing to file any proofs of claim prior to

20

21

22   _____

23       [10]  *See In re Purdue Pharm. L.P.*, 619 B.R. 38, 52-55 (S.D.N.Y. 2020) (potential
     indemnification and contribution claim of non-debtor defendant supported "related to" jurisdiction
24   where non-debtor timely filed proofs of claim in bankruptcy court) (**Ex. 5** (Sackler POC) at
     Addendum, ¶ 3); *In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 320-21 (Bankr. S.D.N.Y.
25   2003) (defendants filed proofs of claim for indemnity, contribution, and reimbursement for defense
     costs and no indication that filings were untimely); *In re SunEdison, Inc.*, 576 B.R. 453, 455, 461-
26   63 (Bankr. S.D.N.Y. 2017) (potential indemnification claims of various non-debtor third parties
     were sufficient to give the court subject matter jurisdiction; importantly, third parties in that case
27   were entitled to vote on the Plan, meaning they had either filed proofs of claim or their claims were
     identified in the debtors' schedules and not listed as "disputed, contingent, or unliquidated[.]")
28   (quoting FED. R. BANKR. P. 3003(c)).

the Bar Date. But McKinsey's contribution claims also fail for a more fundamental reason: the claims asserted by Plaintiffs against McKinsey in the Actions are *not* claims for which McKinsey is entitled to contribution.

Pursuant to New York statute, with some exceptions not relevant here, two or more persons who are subject to liability for *damages for the same personal injury, injury to property or wrongful death*, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought. N.Y. C.P.L.R. 1401 (emphasis added). In their Action, Plaintiffs do not seek any damages for "personal injury, injury to property or wrongful death"; rather, they seek to recover damages for the *economic loss* suffered by Plaintiffs in dealing with the opioid epidemic, as well as punitive damages. *Genesee* Amended Complaint ¶¶ 245-255; *Westchester* Complaint ¶¶ 251-261.[11]

In New York, "'the touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein.'" *Dillon v. Peak Envtl., LLC*, 173 A.D.3d 1637, 1638 (4th Dept. 2019) (quoting *Children's Corner Learning Ctr. v. A. Miranda Contr. Corp.*, 64 A.D.3d 318, 324 (1st Dept. 2009)). Contribution is not available "'where the underlying action is for breach of contract *or where the damages sought are purely for economic loss*.'" *Dillon*, 173 A.D.3d at 1638 (emphasis added) (quoting *Livingston v. Klein*, 256 A.D.2d 1214, 1214 (4th Dept. 1998) ("[E]ven if it was a tort action, contribution would not be available because the damages sought are limited to economic loss.")).[12] Nor may contribution be

---

[11] Plaintiffs also seek the equitable remedy of abatement, which is not considered "damages." *See, e.g, New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 29-30 (E.D.N.Y. 2011); *N.A.A.C.P. v. Acusport Corp.*, 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002); *cf. United States v. Whitehill*, No. 14-CV-188-RJA-MJR, 2018 WL 459300, at *3 (W.D.N.Y. Jan. 18, 2018).

[12] The New York Court of Appeals has not specifically addressed whether purely economic loss resulting from tortious conduct falls outside of CPLR 1401. But it has held that "purely economic loss resulting from a breach of contract does not constitute 'injury to property' within the meaning of New York's contribution statute[.]" *Bd. of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*, 517 N.E.2d 1360, 1363 (N.Y. 1987).

sought for punitive damages. *See Haas v. Tishman Const. Corp. of New York*, No. 83 CIV. 7601 (CBM), 1987 WL 5792, at *5 (S.D.N.Y. Jan. 13, 1987).

Moreover, even if McKinsey were entitled to contribution from Purdue for Plaintiffs' causes of action, any such contribution claims have been forfeited by McKinsey's failure to file a proof of claim before the Bar Date. Admittedly, "contribution claims do not accrue until after liability is established," and "[a] party may not know of a potential contribution claim until sued, which may be years after the bankruptcy proceedings have commenced." *SPV Osus Ltdf. V. UBS AG,* 882 F.3d 333, 340 (2d Cir. 2018). Under those circumstances, a claimant may have "a credible basis for defendants to petition the bankruptcy court for leave to file a late proof of claim based on excusable neglect." *Id.* at 340–41 (UBS's failure to file contribution claims prior to bar date did not preclude finding of "related to" jurisdiction, where suit against UBS was filed nearly five-and-a-half years after the bar date and UBS's lack of notice of its contribution claim provided reasonable basis for demonstrating excusable neglect).

But here, unlike in *SPV*, McKinsey was on notice well before the July 30, 2020, Bar Date that it might be sued based on the prepetition opioid-related work it performed for Purdue. Indeed, McKinsey admitted in legal filings that it knew as early as 2019 that it might be sued regarding the work it performed for various opioid manufacturers, including Purdue.[13] Given that McKinsey was on notice of its potential contribution claims, and it also received sufficient notice of the Bar Date,

---

[13] **Ex. 6** (Mot. to Enter Consent Order) at 2-3. Moreover, in January 2019, detailed information regarding McKinsey's involvement in Purdue's opioid business made national news due to the unsealing of certain documents in a lawsuit against Purdue. See Julia Lurie, "A Damning New Report Says McKinsey Allegedly Helped Purdue Sell Even More Opioids," *Mother Jones* (Jan. 31, 2019) (available at https://www.motherjones.com/politics/2019/01/report-mckinsey-consultingpurdue-pharma-opioid-crisis); David Armstrong, "OxyContin Maker Explored Expansion Into 'Attractive' Anti-Addiction Market," *ProPublica* (Jan. 30, 2019) (available at https://www.propublica.org/article/oxycontin-purdue-pharma-massachusetts-lawsuit-antiaddiction-market).

it has no "credible basis . . . to petition the bankruptcy court for leave to file a late proof of claim based on excusable neglect." *SPV*, 882 F.3d at 340-41; *see also Motors,* 598 B.R. at 753 (noting that creditors, like McKinsey, have the "'responsibility to diligently investigate what claims they may have against the debtor") (citations omitted).[14] It was therefore within McKinsey's control to file its claim before the Bar Date and there is no legitimate reason for its delay.[15] Further, allowing McKinsey to file its proofs of claim past the Bar Date would prejudice the debtors because it could "open the floodgates to other similarly situated creditors." *In re AMR Corp.*, 492 B.R. 660, 667-68 (Bankr. S.D.N.Y. 2013) (citing *In re Enron Corp.*, 419 F.3d 115, 132 n.2 (2d Cir. 2005).

Accordingly, McKinsey has no reasonable legal basis to believe that the bankruptcy court would let it file a late contribution claim. And even in the unlikely event that it did, McKinsey would face several additional hurdles before the claim could ever have an effect on the bankruptcy estate. Under the Bankruptcy Code, contribution claims that are "contingent as of the time of [their] allowance or disallowance" are disallowed. 11 U.S.C. § 502(e)(1)(B); *see also Motors*, 598 B.R. at 759-61. Here, any potential contribution claim arising from the Actions would remain contingent until judgment is entered against, and paid by, McKinsey. Since litigation of the Actions has scarcely even commenced, that is unlikely to happen anytime soon. Moreover, the Purdue debtors' proposed Plan designates "Co-Defendant Claims," including contribution and indemnification claims, as Class 14 claims that are to be released or distinguished, and for which *no distributions* will be made from the bankruptcy estate. Bkr. Dkt. #2982 at 5, 42, 51.

---

[14] McKinsey's position as a sophisticated company represented by sophisticated counsel further negates any claim of excusable neglect. *See* https://www.mckinsey.com/about-us/overview (asserting that McKinsey is an international consulting firm with 90+ years experience with approximately 30,000 employees working in 130 cities); https://www.stroock.com/news-andinsights/tales-of-a-top-tier-fr-practice-full-speed-in-the-pandemic-economy (heralding a law firm representing McKinsey, Stroock & Stroock & Lavan LLP, as a "top-ranked Financial Restructuring team" with extensive work in bankruptcy-related matters); *Motors*, 598 B.R. at 758.

[15] Indeed, McKinsey has yet to request leave to file any potential claims against Purdue, despite it being almost four years since the Bar Date passed.

Thus, it is reasonable to conclude that even if McKinsey were entitled to contribution under New York law, and even if it were permitted to submit a late-filed claim in the bankruptcy proceedings, such claim would be disallowed under § 502(e)(1)(B) and/or pursuant to the terms of Purdue's Plan (if approved) or other subordination provisions under the Bankruptcy Code. Given the number of "links in the chain" that must be satisfied before the bankruptcy estate could ever be affected, McKinsey's contribution claims are too remote and speculative to create "related to" jurisdiction. *See Sealink*, 2012 WL 4794450, at *2.

Furthermore, under New York's General Obligations Law § 15-108, McKinsey would not be eligible to seek contribution, but merely a *setoff*, if it were able to prove at trial that Purdue (or any other settling defendant) contributed to Plaintiffs' losses.[16] Section 15-108 is purposed to promote settlement and pre-trial resolution by assuring defendants who choose to settle that in so doing, they will be definitively released for a certain sum and not subject to further contribution claims from other tortfeasors. As a balance against the settling defendant's relief from liability in subdivision (b), § 15-108(a) assures non-settling defendants that they will not pay more than their equitable share of the final judgment despite their "loss of the right of contribution." See *In re Platinum Beechwood Litig*., No. 18-cv-6658, 2023 WL 6210626, at *1, 2023 U.S. Dist. LEXIS 167343 (S.D.N.Y. Sept. 25, 2023) (noting that under Section 15-108, "a court must reduce the damages award against the non-settling defendant by the amounts the plaintiff already obtained from other defendants through settlement," and observing that such an offset " 'protect[s] non-

---

[16] A copy of the actual New York State Opioid trial verdict sheet is attached to the Shkolnik Declaration as **Ex. 7**. A review of the verdict form clearly shows that Purdue Pharma and other settling and bankrupt defendants, Mallinckrodt and Rochester Drug Cooperative, were included on the verdict form and for consideration by the jury for apportionment of liability purposes under N.Y. Gen. Oblig. Law § 15-108 (McKinney). Had the jury found any liability percentage on the part of these bankrupt defendants the remaining defendants would have had a reduction of the jury award by either the greater of the percent of liability or the dollar amount paid through settlement or the bankruptcy estate.

settling defendants' by ensuring that a defendant who chooses not to settle but is nevertheless found liable 'pay[s] only [that defendant's] commensurate share of the damages.'"(quoting *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 108 (S.D.N.Y. Dec. 21, 2022)). The setoff would involve the greater of the extent of the dollar amount of settlement or percentage of liability (as found by the jury) as to the settling or bankrupt party. Here, Plaintiffs would include Purdue or other potential liable parties on the verdict sheet and the jury would decide their share of liability. McKinsey would be entitled to a setoff, and would not be subject to contribution claims in connection with Purdue or any other settling tortfeasor.

### C. McKinsey's Mere Status as a Joint Tortfeasor With Purdue Does Not Give Rise to "Related to" Jurisdiction.

McKinsey argues that there is "related to" jurisdiction simply because McKinsey and Purdue are alleged to be joint tortfeasors and there is a "strong interconnection" between the Actions and Purdue's bankruptcy. *Genesee* Dkt. No. 1 (NOR) at 3-7; *Westchester* Dkt. No. 1 (NOR) at 3-7. But standing alone, any connections and factual overlap do not establish the conceivable effect on the bankruptcy estate necessary to create "related to" jurisdiction. *See McMillan v. Barclays Bank PLC*, No. 1:13-CV-01095 ALC DF, 2014 WL 4364053, at *3 (S.D.N.Y. Sept. 3, 2014) ("Standing alone, '[o]verlap between the bankrupt's affairs and another dispute is insufficient[.]'") (quoting *Homes Ins. Co. v. Cooper & Cooper Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989)).

It is not surprising that "'the existence of strong interconnections between the third-party action and the bankruptcy has been cited frequently by courts in concluding that the third party litigation is related to the bankruptcy proceeding.'" *SPV*, 882 F.3d at 342 (quoting *WorldCom*, 293 B.R. at 321). Such cases typically give rise to contribution or indemnification claims by the co-tortfeasor against the debtor, which in turn could alter the debtor's liabilities in the bankruptcy proceeding.

Indeed, this is true in each of the cases McKinsey cites.[17] But as noted above, there is no merit to McKinsey's purported indemnification and contribution claims.

Insofar as McKinsey seeks to rely on *Purdue*, that case is factually distinguishable. In *Purdue*, plaintiffs sued the debtor (Purdue) and the debtor's former officer (Dr. Sackler) in state court (the "*Dunaway* Action") for damages under a Tennessee statute. 619 B.R. 38. In the bankruptcy proceedings, at the debtors' request, the bankruptcy court issued a preliminary injunction enjoining all governmental and private plaintiffs from continuing or commencing any actions against the debtors or against any "non-debtor Related Parties," which included Purdue's former officers. *Id*. at 41-42. The *Dunaway* plaintiffs appealed, asking the district court to vacate the injunction as to their claims against Dr. Sackler because the bankruptcy court lacked "subject matter jurisdiction over a government enforcement action between state officials and a third party non-debtor[.]" *Id*. at 42. The court found plaintiffs' claims against Dr. Sackler to be "related to" the bankruptcy proceeding for two reasons.

One was the existence of possible contribution and indemnification claims against the debtor. *Id*. at 51-55. The other was the strong interconnection between the *Dunaway* Action and the bankruptcy, due to the fact that, at its core, the *Dunaway* Action "rest[ed] on the theory that Purdue and its employees committed misconduct *at the direction of Dr. Sackler* and others *who controlled the corporation and its actions*." *Id*. at 49-51 (emphasis added). The court observed that because "Purdue's liability as a corporate entity, to the extent it can be proven, must be proven through the acts of its officers and directors[,]" any "finding of liability against Dr. Sackler arising from his work on behalf of Purdue is equivalent to finding that Purdue itself is liable under the [statute]." *Id*.

---

[17] *See SPV*, 882 F.3d at 340-41 (co-tortfeasor had credible contingent contribution claim against debtor); *Purdue*, 619 B.R. at 51-55 (conceivable that co-tortfeasor had contribution or indemnification claims against the debtor); *WorldCom*, 293 B.R. at 321 (intertwined conduct of defendants and debtor were "necessarily interconnected with these [d]efendants' rights to contribution" which could conceivably affect bankruptcy estate).

at 50. Moreover, Purdue's "bankruptcy was [specifically] designed to consolidate all of the[ ] proceedings against the Debtors, as well as the claims against [the non-debtor Related Parties], so that the parties could work towards a global settlement in a single forum." *Id*. at 41.

Here, by contrast, McKinsey has no indemnification or contribution claims against Purdue, nor is it a "non-debtor Related Party" like Dr. Sackler. Moreover, while Plaintiffs have filed proofs of claim in Purdue's bankruptcy, the amount of money they receive from the estate will not be affected by any recovery in the Action. If the Supreme Court confirms the Second Circuit's ruling and a Plan is ever accepted, the claims of governmental entities would potentially be paid from an opioid abatement trust created by the debtors. Bkr. Dkt. #2982 at 22 & § 5.7; Bkr. Dkt. #2977. Each state would receive a set percentage allocation of the funds.[18] Then, either a default sharing mechanism (one not tied to claim amounts) would apply, or the state would work out a separate agreement with its local governments on how to allocate the funds internally within the state. Bkr. Dkt. #2977 at 4-10. In other words, neither the amount of Plaintiffs' claims nor any recovery they eventually receive from McKinsey will have any impact on the amount of funds disbursed from the estate to the state of New York, nor its political subdivisions.[19] Accordingly, there is no reasonable legal basis for believing that the outcome here could have any conceivable effect on Purdue's bankruptcy estate.

---

[18] The percentage allocation is calculated by: (i) the amount of prescription opioids sold in the state as measured by MME; (ii) the number of people in the state with pain reliever use disorder; (iii) the number of overdose deaths in the state; (iv) the population of the state; and (v) the Opioid MDL Plaintiffs' proposed "negotiation class" metrics. Bkr. Dkt. #2977 at 29-31.

[19] Even if a proposed Plan (or one similar to it) is not confirmed, there is no reasonable basis for believing that Plaintiffs' recovery against McKinsey will affect their bankruptcy claims against Purdue. First, Plaintiffs would have to actually receive a recovery from McKinsey before their bankruptcy claims are adjudicated, which is highly unlikely. Plaintiffs' case against McKinsey is in its infancy, and even if they were to win at trial, McKinsey would almost certainly pursue all available appellate remedies. And even if Plaintiffs did receive money from McKinsey first, the only reason to reduce Plaintiffs' claims in the bankruptcy would be to prevent a double recovery. Over 614,000 proofs of claim were timely filed against Purdue alleging opioid-related liability, ~90% of which did not state a claim amount. Bkr. Dkt. #2983 at 25. The remaining 10% that did state a claim amount asserted claims of over $140 *trillion*. *Id*. In their disclosure statement, the Purdue debtors estimate that ~$5 billion in value will be provided to the abatement trusts under

18

### III. ALTERNATIVELY, THIS COURT SHOULD ABSTAIN AND REMAND THE CLAIMS AGAINST MCKINSEY.

Even assuming, *arguendo*, that there is "related to" jurisdiction here, abstention is required under 28 U.S.C. § 1334(c)(2), and/or warranted in the exercise of discretion under 28 U.S.C. § 1334(c)(1). Moreover, the case should be remanded on equitable grounds. 28 U.S.C. § 1452(b).

#### A. Section 1334(c)(2) Requires Mandatory Abstention in This Case.

Pursuant to § 1334(c)(2), Plaintiffs submit that this Court must abstain from hearing the removed Actions if the following six elements are satisfied: (1) Plaintiffs "file[d] a timely motion to abstain"; (2) the Actions are "based upon a state law claim or state law cause of action"; (3) the Actions are "merely 'related to' a bankruptcy case (i e, it is not a 'core' proceeding 'arising under' the bankruptcy laws or 'arising in' a bankruptcy case)"; (4) "the matter otherwise could not have been brought in federal court absent jurisdiction under section 1334 as a bankruptcy related matter"; (5) the Actions were commenced in state court; and (6) the Actions "can be timely adjudicated [in state court]." *Kennilworth Partners II LP v. Crisman*, No. C-00-3218 VRW, 2001 WL 30534, at *1 (N.D. Cal. Jan. 3, 2001).[20]

---

their Plan; substantially less value would be available if the estate was liquidated. *Id*. at 2-3 & Appx. B, Exhibit 1. Thus, Plaintiffs, whose proofs of claim collectively total more than $48 billion, can at best expect to receive pennies on the dollar for those claims, whether or not a Plan is confirmed. There is no appreciable risk of a double recovery.

[20] Plaintiffs recognize that in a decision issued after *Kennilworth Partners*, the Ninth Circuit made clear that it rejects the mandatory-abstention doctrine. *Schulman v. California (In re Lazar)*, 237 F.3d 967, 981-82 (9th Cir. 2001). However, the rule set out in *Kennilworth Partners* is followed by the Second Circuit, the circuit from which these lawsuits were transferred, *see, e.g., Hendricks v. Detroit Diesel Corp.*, 2009 WL 4282812, *7 (N.D. Cal. 2009) (citing *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005)), and Plaintiffs submit that although the federal law of the transferee circuit might properly apply to pretrial matters (for example, involving discovery) in the course of an MDL proceeding, under the logic of *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1174-76 (D.C. Cir. 1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989), in connection with *temporary* transfers in the MDL context, the law of the transferor circuit must apply to fundamental matters going to the ultimate fate of the case, such as whether the originating federal district even had subject-matter or personal jurisdiction. *See In re Methyl Tertiary Butyl Ether ("MBTE") Products Liability Litigation*, 241

These elements resolve in Plaintiffs favor: Plaintiffs' motion is timely, as (1) both the Genesee Plaintiffs and the Westchester Plaintiffs filed their initial motions to remand or abstain less than 30 days after McKinsey filed its Notices of Removal (*see* 28 U.S.C. § 1447(c)); (2) Plaintiffs commenced the Actions in state court and assert only state-law claims; (3) the Actions are not core proceedings, as they do not invoke a substantive right created by the federal bankruptcy law and are ones that can exist outside of bankruptcy (*see In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995));[21] (4) there is no other basis for federal jurisdiction (i.e., neither federal question nor diversity jurisdiction, as all claims are predicated on state law and all parties are New York residents);[22] and (5) "[b]ecause each of plaintiff's claims is based on state law, . . . the state court will likely be a more efficient forum for adjudication of the claims" (*Kennilworth,* 2001 WL 30534 at *4).  As to the final element, (6) Plaintiffs note that Judge Garguilo has been overseeing the New York Coordinated Litigation for approximately seven years, including management of extensive discovery related to the marketing of opioids in New York, and has issued a number of rulings on pretrial motions addressing many of the same complex legal issues *under New York law* that will

---

F.R.D. 435, 439-41 (S.D.N.Y. 2007) (applying law of transferor circuit to class-certification issues). *See generally* Robert A. Ragazzo, *Transfer and Choice of Federal Law: The Appellate Model*, 93 Mich. L. Rev. 703, 726-32, 747-71 (1995); *see also* Patrick Wooley, *Rethinking Choice of Circuit Law in Multidistrict Litigation* (Univ. of Texas at Austin School of Law, 2017) (available at https://perma.cc/AXD7-SLT3); Comment, Andrew Eller, *Multidistrict Litigation & Choice of Federal Law*, 2023 U. Chi. Legal Forum 341, 351-57 (2023) (available at https://perma.cc/KA78-W7S8). Controlling precedent is not to the contrary, as to date the Ninth Circuit has had occasion to apply the *Korean Air Lines* rule only to a *permanent* inter-circuit transfer, under 28 U.S.C. § 1404(a). *Id.* at 352 & nn. 85-86 (citing *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994)). Thus, if it became necessary for this Court to reach the abstention issue, it would be appropriate for this Court to apply the Second Circuit's mandatory-abstention doctrine.

[21] In its Notices of Removal McKinsey does not claim the Action is a core proceeding.

[22] In its Notices of Removal McKinsey has not argued that there is any other basis for federal jurisdiction.

arise in the Action.[23] Judge Garguilo is also familiar with the factual allegations against Purdue, as it was an active defendant in the cases before him until it filed for bankruptcy in September 2019.[24] Thus, Judge Garguilo can be expected to adjudicate the matter effectively and efficiently because he has great familiarity with both the relevant areas of New York law and the record. *See Ventricelli v Nicklin*, No. 1:19-cv-0230 (GTS/DJS), 2020 WL 132334, at *4 (N.D.N.Y. Jan. 13, 2020) ("Absent contrary evidence, a federal court must presume that a state court will operate efficiently and effectively in adjudicating the matters before it") (quotations omitted).

### B. This Court Should Exercise its Discretion to Permissively Abstain From Hearing the Actions and/or Equitably Remand the Actions.

This Court also has the discretion to: (a) abstain from hearing the Actions "in the interest of justice, or in the interest of comity with State courts or respect for State law"; and/or (2) remand the Actions "on any equitable ground." 28 U.S.C. § 1334(c)(1); 28 U.S.C. § 1452(b). In considering whether to exercise discretionary abstention and to remand, courts should generally consider:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy Court; (9) the burden [of the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

---

[23] *See, e.g., In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) (ruling on motions to dismiss filed by opioid manufacturers, including Purdue); *In re Opioid Litigation*, No. 400000/2017, 2019 WL 2996570 (N.Y. Sup. Ct. June 21, 2019); *In re Opioid Litigation*, No. 400000/2017, 2020 WL 8011988 (N.Y. Sup. Ct. Feb. 03, 2020).

[24] *Id.*; *In re Opioid Litigation*, No. 400000/2017, 2019 WL 2996569 (N.Y. Sup. Ct. June 21, 2019).

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990) (brackets in original) (internal citations omitted). A discretionary evaluation of these factors should begin with recognition that counsel for Plaintiffs in these lawsuits, the undersigned Napoli Shkolnik firm, has been a leading force in the civil litigation against the opioid epidemic. The firm has played a pivotal role in extensive legal battles across New York state, demonstrating its commitment to seeking justice for affected communities. The firm's comprehensive approach and unwavering dedication has positioned it at the forefront of this critical fight.

On June 18, 2018, Purdue and other opioid makers were dealt a major blow when the Suffolk County, New York, court declined their first motion to dismiss. In a thirty-six-page ruling repeatedly discussed and cited approvingly by courts throughout the country, Judge Garguilo declared that the plaintiffs had presented more than enough evidence for their lawsuit to go forward, stating that it there was a solid basis for claiming that the defendants were in a position to anticipate or prevent the claimed injuries. *See In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *10 (N.Y. Sup. Ct. June 18, 2018). The court also found that these types of actions (or inaction) are the exact sort of "consequential harm" resulting from commercial activity that should be punished as a public nuisance where defendants—as here—are "in a position to anticipate or prevent the claimed injuries," so that it would not be "unfair, therefore, to hold them potentially accountable" for public nuisance." *Id.* at *28.

In December 2021, after seven months of trial before Judge Garguilo, a jury found defendant Teva Pharmaceuticals USA, Inc. and five other companies responsible for causing a public nuisance in Nassau County, New York. The trial team that achieved this historic verdict, in the first and only trial with all defendants, was led by Jayne Conroy and the undersigned, Hunter

Shkolnik. The trial involved more than 125 attorneys and was held during the COVID pandemic.[25]

On the eve of trial, a nationwide settlement agreement was reached with Teva Pharmaceuticals, Ltd., its American subsidiary Teva Pharmaceuticals USA, and its affiliates, under which Teva will pay up to $4.247 billion nationwide to settle opioid claims as part of the Teva Global Settlement, with $523 million paid to New York state plaintiffs. Other settlement agreements were also reached during the trial stage with Johnson & Johnson ($230 million); three of the nation's largest drug distributors, McKesson Corporation, Cardinal Health Inc., and Amerisource Bergen Drug Corporation ($1.1 billion); and Allergan Finance ($200 million).

Furthermore, in MDL 2804, the undersigned and his firm, Napoli Shkolnik, are members of the Plaintiffs Executive Committee and have handled multiple Bellwether trials. The first Bellwether trials (Cuyahoga County and Summit County, Ohio) were held in 2019 against distributors and manufacturers, including the "Big Three" manufacturers, Purdue, AmerisourceBergen, and Cardinal Health. The case settled in 2019. A second Bellwether trial (Lake County and Trumbull County, Ohio) was held from September to November of 2021 against pharmacy distributors CVS, Walgreens and Walmart, with a jury verdict entered in favor of Plaintiffs. The abatement phase of this trial occurred in May of 2022, with the trial court agreeing

---

[25] The New York Attorney General's Office worked closely with Napoli Shkolnik during the seven-month trial and has maintained that it had no intention of settling the Plaintiffs' cases. This is evident from the statements on record that demonstrate that subdivision plaintiffs' cases were not a part of the settlement. Ex. C (ECF 345-4) at 20 (brief of Attorney General of New York)), **Ex. 8** The Attorney General concluded that it "is clear" that based on current New York precedent on the scope of *parens patriae* interests that may be pursued "by the NYAG on behalf of the people of the State of New York," the State's settlement with McKinsey does "not bar the Subdivisions' claims" because "[t]he Subdivisions raise numerous different causes of action seeking compensation for the specific harms committed by McKinsey to their specific cities and counties," and that "New York counties and cities have standing to bring suit against defendants whose opioid-related misconduct injured them, because their injuries are specific, concrete, and of particular relevance, separate from the type of broader harm to the public that is the basis of a *parens patriae* action . . . ." *Id.* at 17-18 (citations omitted).

to a $650.9 million abatement plan to extend over ten years. Said verdict is currently on appeal before the Sixth Circuit. The most recent Bellwether cases involve Plaintiffs City of Rochester (represented by Napoli Shkolnik and the undersigned), Lincoln County, Webb County, and the City of Independence, against the pharmacy benefit managers Express Scripts and OptumRx. This case is currently in the discovery phase.

These factors weigh heavily in favor of abstention and/or equitable remand. As previously discussed, (pp. 14-25, *supra*), abstention would have no effect on Purdue's estate. Additionally, there are no bankruptcy issues raised in the Action; the claims are all state law claims against a non-debtor, and some of the legal issues are complex. Likewise, the remaining factors weigh in favor of abstention/equitable remand: there are related opioid cases before Justice Garguilo that raise many of the same legal and factual issues; the consolidated handling of the cases within the New York LCP in Track I (Suffolk County) and Track II (Westchester County) is warranted and will not unreasonably delay the progress, increase the expense, or complicate the processing of these cases or otherwise prejudice any party; there will be no risk of duplicative or inconsistent rulings; there is clear convenience to the parties and witnesses who are New-York based; coordinated discovery with MDL 2804, would be advantageous; and judicial resources and the facilities and personnel of the court would be efficiently utilized. *See* Part 53, Section 53.1(b), of the Rules of the Chief Judge of the State of New York.

The present lawsuits are a critically important part of the litigation concerning the opioids litigation that is pending in New York State. Notably, in 2021, McKinsey asked the JMPL to coordinate this litigation in the U.S. District Court for the Southern District of New York, stating that "the main McKinsey defendants are based in the Southern District of New York, [and] many of the witnesses required to defend the McKinsey Actions are current or former McKinsey employees, most of whom are based in the New York City area." Case MDL No. 2996, ECF 1-1,

at 8, **Ex. 9**, McKinsey's Motion For Transfer Of Actions. Accordingly, Plaintiffs, political subdivisions of New York sued McKinsey, a New York corporation, in its home jurisdiction, and that is where the litigation should continue.[26]

There is no basis for jurisdiction in federal court aside from § 1334 (see p. 13, *supra*); the Actions are not "core" proceedings, nor do they involve any "core bankruptcy matters" that must be enforced by the bankruptcy court ) (see p. 13 & note 10, *supra*);[27] the only parties to the Actions are non-debtors; "[c]omity as a general matter counsels leaving matters of state law to state courts";[28]  and the Actions concern "uniquely local matters" that a New York state court has a greater interest in resolving than does a federal court across the country;[29] there will be an increased risk of inconsistent results if the Actions are not remanded;[30] and in addition to denying Plaintiffs their choice of forum, the delay and unnecessary expense associated with participating in a new MDL across the country would prejudice Plaintiffs.

## CONCLUSION

For these reasons, Plaintiffs request that the Court remand the Actions to state court.

---

[26] *See,* e.g., McKinsey's Terms of Use, located at https://www.mckinsey.com/terms-of-use, identifying its address as 711 Third Avenue, New York, New York 10017; New York Post Article dated November 20, 2017, identifying headquarters in New York, as published in https://nypost.com/2017/11/20/mckinsey-co-is-moving-its-headquarters-to-world-trade-center/.

[27] Purdue's main bankruptcy case is focused on its reorganization, not resolving whether Purdue's opioid manufacturing, marketing, and distribution conduct violated New York law. Thus, this factor weighs in favor of abstention.

[28] *See, e.g. Sealink*, 2012 WL 4794450, at *4.

[29] *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'Ship*, No. 4 Civ. 708(GEL), 04 Civ. 709(GEL), 04 Civ. 710(GEL), 2004 WL 1048239, at *6 (S.D.N.Y. May 7, 2004) ("The notion that a federal court in another region of the country, rather than a state court in New York County, should resolve disputes about a residential apartment building in New York City verges on the bizarre. The local significance of these cases argues strongly for returning the matter to the state courts.").

[30] As previously noted, Justice Garguilo has been overseeing New York opioid cases for several years and has already issued a number of substantive rulings, applying New York law, that will be directly applicable to Plaintiffs' claims in the Action.

Dated: June 14, 2024          Respectfully submitted,

**NAPOLI SHKOLNIK**
*Hunter J. Shkolnik*
HUNTER J. SHKOLNIK
PAUL J. NAPOLI
NESTOR D. GALARZA
REBECA MARTINEZ
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
Hunter@nsprlaw.com
PNapoli@nsprlaw.com
NGalarza@NSPRLaw.com
RMartinez@NSPRLaw.com

SALVATORE C. BADALA
NAPOLI SHKOLNIK
400 Broadhollow Rd, Suite 305
Melville, NY 11747
Tel: (212) 397-1000
SBadala@napolilaw.com

SHAYNA E. SACKS
NAPOLI SHKOLNIK
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

1

2   The undersigned hereby certifies that on June 14, 2024, I electronically transmitted

3   the attached document to the Clerk of the Court using the ECF System for filing. Based on the

4   records currently on file, the Clerk of Court will also transmit a Notice of Electronic Filing to all

5   counsel of record.

6               */s/ Hunter J. Shkolnik*

7               HUNTER J. SHKOLNIK

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28