HOLLAND LAW FIRM
ANN CALLIS
ERIC D. HOLLAND
ROBERT J.. EVOLA
211 N. Broadway, Suite 2625
St. Louis, MO
Telephone:  314-241-8111
Facsimile: 314-241-5554
acallis@hollandtriallawyers.com
eholland@hollandtriallawyers.com
revola@hollandtriallawyers.com

CATES LAW FIRM
DAVID CATES
216 West Point Dr., Suite A
Swansea, IL 62226
Telephone: 618-277-3644
Facsimile: 618-277-7882
Email: dcates@cateslaw.com

Counsel for St. Clair County and Madison County, Illinois

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION | Case No. 3:21-md-02996-CRB |
| This Document Relates To: | PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR REMAND OR ABSTENTION AND MEMORANDUM IN SUPPORT |
| Case No. 3:21-cv-4642-CRB | |
| Case No. 3:21-cv-4387-CRB | |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................- 2 -

I.      ARGUMENT ......................................................................................- 3 -

     A.    BOTH PLAINTIFFS AND DEFENDANT NAHEED T. BASHIR, M.D.
         ARE CITIZENS OF ILLINOIS ...............................................- 3 -

     B.    THE DEFENDANTS ARE PROPERLY JOINED. ..........................- 4 -

         1.    The Court should not sever a properly joined non-diverse
               defendant to create subject matter jurisdiction where there was
               none upon removal.....................................................- 5 -

         2.    Dr. Bashir is not fraudulently joined as the claims alleged are
               viable..........................................................................- 6 -

         3.    Fraudulent misjoinder has not been recognized by the Ninth
               Circuit and the Northern District has uniformly refused to apply
               the theory. ..................................................................- 8 -

     C.    "RELATED-TO" JURISDICTION IS NOT A BASIS FOR REMOVAL. ......- 10 -

         1.    Madison and St. Clair Counties are "governmental units"
               exercising police or regulatory power....................................- 10 -

         2.    The instant action is not "related to" the Purdue bankruptcy. ...............- 12 -

         3.    Mandatory abstention requires the Court to remand these cases.........- 20 -

         4.    This Court should permissively abstain from these cases or
               equitably remand........................................................- 23 -

II.     CONCLUSION..................................................................................- 25 -

# CASES

*4 Front Petroleum, Inc.*, 345 B.R. 744, 754-55 (Bankr. N.D. OK 2006) .................................- 22 -

*Aaron v. Merck & Co. Inc.,* 2005 WL 5792361, at *3 (C.D. Cal. 2005)....................................- 9 -

*Alaniz v. Merck & Co. Inc.*, 2005 WL 6124308, at *3 (C.D. Cal. 2005)l ................................- 9 -

*Brazina v. The Paul Revere Life Ins. Co.*, 271 F.Supp.2d 1163, 1172 (N.D. Cal.
2003) ...............................................................................................................................- 9 -

*City and County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123-24 (9th Cir.
2006) .............................................................................................................................- 12 -

*Combustion Eng'g, Inc.,* 391 F.3d 190, 227 (3rd Cir. 2004) .......................................- 15 -, - 16 -

*Contra Costa Cty. v. Fitch, Inc.,* 2011 WL 13247874, at *3-5 (N.D. Cal. 2011)...................- 15 -

*Cook. v. AAA Life Ins. Co.,* 2014 IL App (1st) 123700, ¶ 35, 13 N.E.3d 20, 34 (*citing,*
735 ILCS 5/2–405(a) ...................................................................................................- 4 -

*Cook. v. AAA Life Ins. Co.,* 2014 IL App (1st) 123700, ¶ 35, 13 N.E.3d 20, 34 (*citing,*
735 ILCS 5/2–405(a)) ..................................................................................................- 4 -

*County of Multnomah v. Purdue Pharma, L.P.,* 2018 WL 10604348, at *5 (D. Ore.
2018) ..............................................................................................................................- 9 -

*County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 760-61 (9th Cir. 2022) .....................- 14 -

*Cty. of San Mateo v. Chevron Corp.*, 294 F.Supp.3d. 934, 938-39 (N.D. Cal. 2018) ..............- 12 -

*Delgado v. Primerica Life Ins. Co.*, 2018 WL 839389, at *3 (N.D. Cal. 2018)........................- 9 -

*Dickinson Lines, Inc.* 47 B.R. 653, 656 (Bankr. D. Minn. 1985) ............................................- 22 -

*Diversified Contract Services, Inc.*, 167 B.R. 591, 598 (Bankr. N.D. Cal. 1994) ....................- 26 -

*Federal Shopping Way,* 717 F.2d 1264, 1272 (9th Cir. 1983)...............................................- 21 -

*Federal-Mogul Global, Inc.,* 300 F.3d 368, 382 (3rd Cir. 2002) ................................- 15 -, - 16 -

*Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990)..................................................................- 21 -

*Gaus v. Miles Inc.*, 980 F.3d 564, 566 (9th Cir. 1992) ............................................................- 2 -

*Gaus*, 980 F.3d at 566 ............................................................................................................- 6 -

*General Elec. Cap. Corp. v. Pro-Fac Coop. Inc., et al.,* 2002 WL 1300054, at *2
(S.D.N.Y. June 12, 2002).............................................................................................- 15 -

*Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) .........................- 7 -

*Grancare LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018); ..............................................- 3 -

*Grancare*, 889 F.3d at 548-49 ................................................................................................- 6 -

1  *Halo Wireless, Inc.*, 684 F.3d at 588.................................................................- 13 -

2  *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) .........................- 2 -

3  *Hendricks v. Detroit Diesel Corp.*, 2009 WL 4282812, at *7 (N.D. Cal. 2009) .....................- 23 -

4  *Hendricks v. Detroit Diesel Corp.*, 2009 WL 428812, at *8 (N.D. Cal 2009); *Hopkins
       v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal 2006)...........................................- 26 -

5
6  *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal 2006)...................................- 26 -

7  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009) .........................................- 3 -

8  *HVAC Sales, Inc. v. Zurich American Ins. Grp. et. al.*, 2005 WL 2216950, at *5-6
       (N.D. Cal. 2005)..................................................................................................................- 9 -

9  *Imerys Talc America, Inc.*, 2019 WL at *4 .....................................................................- 16 -

10  *Imerys Talc American, Inc.*, 2019 WL 2575048 (Bankr. W.D. Okla. June 21, 2019) .............- 20 -

11  *In re: Roundup Products Liability Litigation*, 2019 WL 6122004, at *2 (N.D. Cal.
       2019)(...................................................................................................................................- 9 -

12
13  *Johndrow v. General Motors Corp.*, 286 B.R. 133, 135 (E.D. Mo. 2002) ..............................- 15 -

14  *Kaighn v. Nat'l Life of Vt.*, 2003 WL 173863, at *1 (N.D. Cal. 2003)(Breyer, J.)............ - 2 -, - 3 -

15  *Kaighn v. National Life of Vt.*, 2003 WL 173863, at *1 (N.D. Cal. 2003)(Breyer, J.)...............- 6 -

16  *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006,
       1021, 876 N.E.2d 218, 231 (2007)......................................................................................- 8 -

17  *Kruso v. Int'l Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989) ................- 7 -

18  *Levine v. Allmerica Fin. Life Ins. & Annuity Co.*, 41 F. Supp. 2d 1077, 1078-79 (C.D.
       Cal. 1999)............................................................................................................................- 6 -

19
20  *Lief's Auto Collision Centers v. Progressive Halcyon Ins. Co.*, 2006 WL 2054552, at
       *3 (D. Ore. 2006) ................................................................................................................- 9 -

21  *Lockett v. Owens-Corning Fiberglas*, 808 S.W.2d 902, 905 (Mo. App. E.D. 1991) ..............- 18 -

22  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) ..............................................- 12 -

23  *Lockyer*, 398 F.3d at 1108.........................................................................................................- 13 -

24  *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996).................................................- 14 -

25  *MBIA Insurance Corp. v. Indymac ABS, Inc.*, 2009 WL 10675774, at *2 (C.D. Cal.
       2009) ..................................................................................................................................- 15 -

26
27  *Migard Corp.*, 204 B.R. 764, 774 (10TH Cir. 1997).................................................................- 22 -

28  *Mt McKinley,* 399 F.3rd at 448-49.............................................................................................- 23 -

1    *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) ............................ - 22 -

2    *Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d. 1123, 1127 (E.D. Cal. 2004) ............... - 10 -

3    *Pacor v. Higgins*, 743 F.2d at 994 ........................................................................................ - 14 -

4    *Pacor, Inc. v. Higgins* ........................................................................................................... - 17 -

5    *Parry v. Mohawk Motors of Mich, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000), *cert. denied* 533 U.S. 951 ......................................................................................................... - 18 -

6    *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1006 (N.D. Cal. 2001) ............... - 3 -

7    *Powell v. City of Danville*, 253 Ill. App. 3d 667, 669, 625 N.E.2d 830, 831 (1993) ................. - 8 -

8    *Purdue Pharma L.P.*, Case No. 19-23469 (Bankr. S.D.N.Y March 15, 2021) ........................ - 19 -

9    *re Purdue Pharma L.P.*, No. 19-23649, Doc. #800, Pg. 2; Doc. #1221, Pg. 2 ........................ - 15 -

10    *re WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 320-21 (Bankr. S.D.N.Y. 2003) .............. - 19 -

11    *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 526 (Bankr. M.D. Al. 2002) ................................................................................................. - 16 -

12    *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 527 (Bankr. M.D. Al. 2002) ................................................................................................. - 19 -

13    *Roundup Products Liability Litigation*, 2019 WL 6122004, at *2 (N.D. Cal. 2019) ................ - 9 -

14    *S&M Constructors, Inc.*, 144 B.R. 855, 860 (Bankr. W.D. Mo. 1992) .................................... - 22 -

15    *Salem Mills, Inc. v. Wisconsin Tool and Stamping Co.*, 148 B.R. 505, 509 (Bankr. N.D. Ill. 1992) .................................................................................................... - 21 -

16    *Sav-A-Trip, Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999) .......................................... - 18 -

17    *Shiboleth*, 412 B.R. at 116 ..................................................................................................... - 23 -

18    *Spaulding & Co.*, 131 B.R. 84, 89 (N.D. Ill. 1990) ................................................................ - 16 -

19    *Steel Workers Pension Tr. v. Citigroup, Inc.*, 295 B.R. 747, 753 (Bankr. E.D. Pa. 2003) ................................................................................................................................. - 18 -

20    *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003) ............... - 16 -

21    *Sun Edison,* 576 B.R. at 455 .................................................................................................. - 18 -

22    *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996) ...................................... - 8 -

23    *Thakor v. Burlington Ins. Co.*, 2009 WL 1974511, at *4 (N.D. Cal. 2009) ............................. - 9 -

24    *Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991), *amended* (Oct. 18, 1991) .............................................................................. - 6 -

1   *Tuscon Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1980); *In re Diversified Contract Services, Inc.*, 167 B.R. 591, 596-97 (Bankr. N.D. Cal. 1994) .................................. - 25 -
2
3   *U.S Brass Corp.*, 173 B.R. 1000, 1004 (Bankr. E.D. Tex. 1994) ........................... - 16 -
4   *Watson v. Gish*, 2011 WL 2160924, at *3 (N.D. Cal. 2011) ................................... - 9 -

5   **STATUTES**

6   § 1334(c)(1) ........................................................................................................ - 25 -

7   11 USCA § 101(27). ........................................................................................... - 12 -

8   28 U.S.C. § 1334(c)(1) ....................................................................................... - 25 -

9   28 U.S.C. § 1334(c)(2) ....................................................................................... - 22 -

10  28 U.S.C. § 157(b)(1) ......................................................................................... - 22 -

11  28 U.S.C.A. § 1332 ............................................................................................... - 4 -

12  28 U.S.C.A. § 1447(c)(West) ............................................................................... - 3 -

13  300 F.3d 368 (3d Cir. 2002) ............................................................................... - 17 -

14  743 F.2d 984, 994 (3rd Cir. 1984) ..................................................................... - 17 -

15  942 F.2d at 1178 ................................................................................................... - 6 -

16  960 F.3d 586 (9th Cir. 2020) ............................................................................. - 12 -

17  Fed. R. Civ. P. 20 ................................................................................................. - 4 -

18  Section 1334(c)(2) .............................................................................................. - 23 -

19  Section 1452 ....................................................................................................... - 11 -

20  Section 1452(a). ................................................................................................. - 13 -

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on August 9, 2024, at 10 a.m. Pacific Time, or as soon thereafter as counsel may be heard, in the courtroom of the Hon. Charles R. Breyer of the United States District Court of the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff St. Clair County, Illinois in Case No. 3:21-cv-4642-CRB and Plaintiff Madison County, Illinois in Case No. 3:21-cv-4387-CRB collectively, "Plaintiffs" — by their counsel will move for entry of an order pursuant to 28 U.S.C. § 1447(c), granting Plaintiffs' Consolidated Motion for Remand or Abstention.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the attached declaration and exhibits thereto, and the Proposed Order lodged herewith.

Dated:  June 14, 2024                           Respectfully submitted,

HOLLAND LAW FIRM
ANN CALLIS
ERIC D. HOLLAND
R. SETH CROMPTON
ROBERT J.. EVOLA
211 N. Broadway, Suite 2625
St. Louis, MO
Telephone:  314-241-8111
Facsimile: 314-241-5554
acallis@hollandtriallawyers.com
eholland@hollandtriallawyers.com
scrompton@hollandtriallawyers.com
revola@hollandtriallawyers.com

CATES LAW FIRM
DAVID CATES
216 West Point Dr., Suite A
Swansea, IL 62226
Telephone: 618-277-3644
Facsimile: 618-277-7882
Email: dcates@cateslaw.com

*Counsel for Plaintiffs St. Clair County and Madison*
*County, Illinois*

**INTRODUCTION**

1

2          Pursuant to this Court's Order Setting Briefing Schedules (Doc. 716), Plaintiffs St. Clair

3    County and Madison County, Illinois, submit this consolidated motion to remand their respective

4    cases to state court in Illinois. Plaintiffs initiated these lawsuits in state court in the circuit courts

5    of Madison and St. Clair County, respectively, and named McKinsey alongside a healthcare

6    provider involved in the mis-prescribing of opioids. McKinsey removed the cases to the Southern

7    District of Illinois, arguing that the healthcare provider was fraudulently joined or fraudulently

8    misjoined and, further, that this lawsuit was "related to" the bankruptcy of Purdue Pharma. *See*

9    Notice of Removal, Doc. 1, Case No. 3:21-cv-251. This court retained jurisdiction pursuant to the

10   JPML's transfer order prior to the transferor court's ruling on Plaintiffs' motion to remand.

11         The Counties now renew their motion to remand their cases to state court, where they may

12   be consolidated with other opioid consultant litigation currently pending in the same state court

13   that involves the same conduct and same legal claims asserted against McKinsey's co-conspirators

14   that worked directly with McKinsey regarding the same conduct alleged in Plaintiffs' lawsuits

15   against McKinsey.[1]

16         Federal courts have limited jurisdiction, generally encompassing actions based on

17   complete diversity between the parties or those presenting a federal question. The removal statute

18

19   is strictly construed, and McKinsey has the burden of overcoming the strong presumption that a

     case is not removable. *Gaus v. Miles Inc.*, 980 F.3d 564, 566 (9th Cir. 1992); *Hansen v. Grp.*

20
     *Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018); *Kaighn v. Nat'l Life of Vt.*, 2003 WL 173863,

21
     at *1 (N.D. Cal. 2003)(Breyer, J.) McKinsey cannot meet the high burden required of its removal

22
     efforts. The Court should order plaintiffs' cases remanded to state court in Illinois.

23

24

25

26   _____
     [1] Plaintiff St. Clair County is currently litigating a parallel lawsuit in state court against defendants
27   Publicis Health, LLC, ZS Associates, Inc., and Practice Fusion, Inc. *St. Clair County, Illinois v.*
     *Publicis Health, LLC et. al.*, No. 23-LA-1069, Twentieth Judicial Circuit, St. Clair County. *See*
28   *infra.*, Section III.c, discussing mandatory abstention.

1

## I.       ARGUMENT

2

### A.       BOTH PLAINTIFFS AND DEFENDANT NAHEED T. BASHIR, M.D. ARE CITIZENS OF ILLINOIS

3

4       Federal law requires that a case be remanded from federal to state court if at any time prior

5   to final judgment it appears that the federal court lacks subject matter jurisdiction: "[i]f at any time

6   before final judgment it appears that the district court lacks subject matter jurisdiction, the case

7   shall be remanded."  28 U.S.C.A. § 1447(c)(West).   An out-of-state defendant seeking

8   removal must bear a "heavy burden" to establish fraudulent joinder because "there is a general

9   presumption against finding fraudulent joinder." *Grancare LLC v. Thrower*, 889 F.3d 543, 548

10  (9th Cir. 2018); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).  "[I]f

11  there is a *possibility* that a state court would find that the complaint states a cause of action against

12  any of the resident defendants, the federal court must find that joinder was proper and remand the

13  case to state court." *Grancare*, 889 F.3d at 548 (emphasis in original).

14

15       In this matter, Plaintiffs exclusively alleged state law claims against McKinsey and Dr.

16  Bashir.   Plaintiffs and McKinsey agree that Plaintiffs are considered citizens of Illinois for

17  purposes of diversity.   However, McKinsey asserts that Dr. Bashir is domiciled in Missouri.

18  McKinsey cites to no law for its novel, unsupported theory that an Illinois resident can be

19  domiciled in Missouri based on her employment.  Plaintiffs' legal research likewise discloses no

20  viable theory by which a longtime Illinois resident may be considered to be domiciled in Missouri

21  based on employment or professional licensure alone. "The party asserting fraudulent joinder bears

22  the burden of proof." *Kaighn v. Nat'l Life of Vt.*, 2003 WL 173863, at *1 (N.D. Cal. 2003)(Breyer,

23  J.). And McKinsey must meet that burden of proof by clear and convincing evidence. *Plute v.*

24  *Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1006 (N.D. Cal. 2001).

25

26       Dr. Bashir is licensed and has an office in Illinois.  It was the discipline, probation, applied

27  to her Illinois license in 2020 that alerted the Plaintiff to her practices.  Many individuals domiciled

28

in one state, particularly near a border, choose to work in a neighboring state but that does not convert them to a citizen of that neighboring state.  Defendant Dr. Bashir lives at 211 Clairmont Dr. in Belleville, Illinois and was served at her residence.  *See* Exhibit A, Affidavit of Process Server. As such, the Plaintiff and Defendant Dr. Bashir are both citizens of Illinois for purposes of jurisdictional analysis such that complete diversity does not exist.

## B.    THE DEFENDANTS ARE PROPERLY JOINED.

The Illinois Code of Civil Procedure provides that any person may be made a defendant who is alleged to have a claim or interest in the controversy or transaction out of which the controversy arose, or whom it is necessary to join for the complete determination of any question involved in the case, or against whom liability is asserted arising out of the same transaction. *Cook ex rel. Cook. v. AAA Life Ins. Co.*, 2014 IL App (1st) 123700, ¶ 35, 13 N.E.3d 20, 34 (*citing*, 735 ILCS 5/2–405(a)).  Joinder rules in federal court are even broader: defendants may be joined where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.  A defendant is properly joined even if it is not part of the same transaction or occurrence so long as it is part of the same "series of transactions or occurrences."

In this case, the claims against McKinsey and Bashir arise out of the very same transaction, or series of transactions.  They are joint tortfeasors for the relief sought, and there are common questions of law and fact among the claims.  McKinsey is generally alleged to have been responsible for the design and implement a sales strategy for OxyContin that would triple the sales of the prescription medication OxyContin while Dr. Bashir is alleged to have been one of the physicians influenced by the sales strategy who was a necessary link in the chain, prescribing medications that would eventually be responsible for the opioid crisis in the county.  Dr. Bashir

was fined and placed on probation for inappropriately prescribing controlled substances. Each defendant was a necessary component of – and participant in – the opioid sales that have harmed the Plaintiff.

McKinsey claims that the conduct alleged against the two defendants is different, but that is not the test. The relationship of defendants in this case is like an intersectional car accident where defendant one is alleged to have motioned to defendant two that it was safe to enter a dangerous intersection, and defendant two is alleged to have followed that advice and proceeded into the dangerous intersection. The defendants in this case are different links in the same chain of events that resulted in opioid medication pouring into the county. The claims share factual issues as to the propriety of prescriptions, the claims share issues as to the propriety of damages, and multiple causes of action asserted in the suit are lodged against both parties so that legal issues are shared as well. Both parties are alleged to have contributed to the same public nuisance as necessary parts of the same scheme to facilitate illicit secondary markets in prescription opioids. Under either Illinois or federal law, there is no legitimate issue as to whether these joint tortfeasors are properly joined as defendants in this case.

### 1.   The Court should not sever a properly joined non-diverse defendant to create subject matter jurisdiction where there was none upon removal.

McKinsey presents another novel theory that if any party to a state court case is not diverse, they can simply be severed by the Court to create diversity jurisdiction. The law does not recognize such gamesmanship and it would be an upheaval of longstanding procedure to do so. McKinsey relies on *Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991), *amended* (Oct. 18, 1991) for the proposition that a physician is not an indispensable party to an action against a products liability defendant such that a physician may be severed. However, *Todd* did not involve *severing* a party. To the contrary, the question in *Todd* was whether plaintiff

should be allowed to join the physician defendant, avoid the pending adverse judgment in federal court and retreat to state court. *Id. Todd*, itself, indicates that in a case like the one at bar where a non-diverse physician defendant is properly joined in state court, remand is the proper course: "the district court **presumably should have remanded this suit to state court** for lack of diversity jurisdiction if Todd has exercised her state law option to join Dr. Boothe, a non-diverse party." 942 F.2d at 1178 (emphasis added). *Todd* stands for the proposition that if a physician defendant is joined in state court, a district court should remand for lack of diversity jurisdiction—precisely the relief that Plaintiff requests in this motion.

### 2.        Dr. Bashir is not fraudulently joined as the claims alleged are viable.

To establish fraudulent joinder, a removing defendant must show that, after resolving all issues of fact and law in favor of the plaintiff… the plaintiff "could not possibly recover against the party whose joinder is questioned." *Kaighn v. National Life of Vt.*, 2003 WL 173863, at *1 (N.D. Cal. 2003)(Breyer, J.). The failure to state a claim must be "obvious according to well-settled rules of the state." *Id.* "We have declined to uphold fraudulent joinder rulings where a defendant *raises a defense that requires a searching inquiry into the merits of the plaintiff's case*, even if that defense, if successful, would prove fatal." *Grancare*, 889 F.3d at 548-49.

McKinsey bears the burden of proof. *Kaighn,* 2003 WL at *1; *see also Levine v. Allmerica Fin. Life Ins. & Annuity Co.*, 41 F. Supp. 2d 1077, 1078-79 (C.D. Cal. 1999). In this case, McKinsey's fraudulent joinder argument fails to accurately state the facts alleged against defendants in the Complaint and because it fails to account for Illinois law providing a discovery rule for claims that cannot be ascertained.

As to the facts asserted in the Complaint, McKinsey posits a five-year statute of limitations for each of the claims asserted against Dr. Bashir.  (Doc. 1, ¶ 47(a)-(d)).  Then, McKinsey cherry picks a date from the Complaint more than five years prior to filing to claim that the filing is out

of time. In order to concoct a fraudulent joinder argument, McKinsey pretends that the Complaint alleges nothing later than 2014 about McKinsey and Dr. Bashir. (Doc. 1, ¶ 48)(citing the Complaint at ¶¶ 170, 208 and 209. This is an incomplete and inaccurate characterization of the Complaint. In the same paragraphs incompletely referenced by McKinsey, the Complaint alleges conduct by McKinsey and Bashir in 2018 and 2019:

- "Madison County prescription rates with regard to opioid medication are categorized as extremely high and far above the national average for the period beginning in 2010 *and running through 2019;*" (Complaint, ¶ 208 (a))

- "Madison County set a record-breaking 109 drug-related deaths *in 2018*, according to the annual coroner's report." (Complaint, ¶ 208 (c)).

- Elsewhere, the Complaint expressly alleges that McKinsey's efforts to increase sales persisted after 2017. (Complaint, ¶ 175).

The Complaint is clear that the administrative finding related to Dr. Bashir was handed down in 2020, where her physician and surgeon license was placed on indefinite probation for a minimum of two years, and she was fined $5,000 due to inappropriately prescribing controlled substances. (Complaint, ¶¶ 194-196). This information was published in the Illinois Department of Financial and Professional Regulation published Disciplinary Reports for 2020. (Complaint, fn. 62).

In determining the issue of fraudulent joinder, the Court must give the benefit of factual and legal inferences to the plaintiff. *Kruso v. Int'l Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this case, the Complaint expressly references conduct and injury in 2017, 2018 and 2019 leading up to sanctions handed down in 2020. There are situations where the tortious conduct is continuing, and the limitations period begins on the date of the last injury (the date the tortious acts cease). *Powell v. City of Danville*, 253 Ill. App. 3d 667, 669, 625 N.E.2d 830, 831 (1993). The clear inference is that Dr. Bashir's conduct and that of McKinsey continued after 2016 so that, on the facts of the Complaint, there is no issue as to the running of a five-year statute of limitations.

1   Further, Illinois employs a discovery rule to determine when actions accrue.  It is settled,

2   for example, that the discovery rule applies in determining when plaintiff's nuisance causes of

3   action accrued. *Id*. at 830. It is settled that the "discovery rule applies to actions brought under

4   the Consumer Fraud Act." *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill.

5   App. 3d 1006, 1021, 876 N.E.2d 218, 231 (2007). "The statute starts to run when the person knows

6   or reasonably should know of his injury and also knows or reasonably should know that it was

7   wrongfully caused." *Id*.  With Dr. Bashir's sanction not published until 2020, the Plaintiff had no

8   way to know that the defendant was inappropriately prescribing controlled substances.  Under the

9

10  discovery rule, the time to allotted to sue Dr. Bashir has only just begun.

11      Taking all inferences of fact and law in favor of the Plaintiff, as the Court must, it cannot

12  be said that the Plaintiff cannot *possibly* establish a cause of action against the in-state defendant,

13  Dr. Bashir, and thus, McKinsey's fraudulent joinder claim fails.  As a result, these cases must be

14  remanded to Illinois state court.

15

16          **3.    Fraudulent misjoinder has not been recognized by the Ninth
                    Circuit and the Northern District has uniformly refused to
17                  apply the theory.**

18      McKinsey's theory of fraudulent misjoinder is premised on the Eleventh Circuit's decision

19  in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996).  In the *Tapscott* decision,

20  the Court invented a new basis for federal subject matter jurisdiction.  Neither the United States

21  Supreme Court nor the Ninth or Seventh Circuits have yet passed on whether such an expansion

22  of jurisdiction is appropriate. But in the quarter century since *Tapscott* was decided, it has not fared

23  well. Indeed, courts in this circuit and others have overwhelmingly declined to adopt *Tapscott*.

24

25      The Northern District of California, like many other district courts within the Ninth Circuit,

26  has repeatedly declined to adopt *Tapscott and its theory of* fraudulent misjoinder. *In re: Roundup*

27  *Products Liability Litigation,* 2019 WL 6122004, at *2 (N.D. Cal. 2019) (Chhabria, J.); *Delgado*

28

*v. Primerica Life Ins. Co.*, 2018 WL 839389, at *3 (N.D. Cal. 2018); *Watson v. Gish*, 2011 WL 2160924, at *3 (N.D. Cal. 2011) .

In the specific context of opioids litigation, the District of Oregon recently declined jurisdiction over claims brought against numerous opioid defendants where, as here, the County of Multnomah named opioid manufacturers alongside local healthcare providers. *County of Multnomah v. Purdue Pharma, L.P.*, 2018 WL 10604348, at *5 (D. Ore. 2018). There, Mallinckrodt (an alleged co-conspirator of McKinsey) argued – just as McKinsey now argues - that the local healthcare provider defendants should be severed pursuant to FRCP Rule 21. The court granted remand of the case and declined to sever the healthcare provider defendants. explaining, "[t]he parties do not cite, nor have I found, any case law that requires or persuades me to drop the non-diverse defendants in order to manufacture federal jurisdiction that is otherwise absent." *Id*. The same result should obtain here.

Further, the joinder of the claims against the defendants in this case are clearly proper and not egregiously misjoined. Indeed, in this Court's prior opinion denying dismissal of NAS plaintiffs' claims, this Court noted that McKinsey is alleged to have contributed to a public nuisance by the "creation, fostering, growth and sustaining of an illegal secondary market for opioid abuse and diversion." Doc. 710 at Pg. 15. Dr. Bashir is alleged to also have been a participant in that same illegal secondary market. Moreover, McKinsey is alleged to have targeted prescribers like Dr. Bashir.

Finally, nothing prevents McKinsey from arguing in state court that was misjoined and Dr. Bashir should be severed as a defendant. If successful, McKinsey would then be able to remove the case again. Professors Wright, Miller and Cooper have suggested this is the appropriate path, and courts in this circuit have agreed. *See Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (E.D. Cal. 2004).

## C.   "RELATED-TO" JURISDICTION IS NOT A BASIS FOR REMOVAL.

McKinsey's third ground for removal is that the County's claims are "related to" Purdue Pharma's bankruptcy proceeding. Notably, however, McKinsey did not seek to transfer of St. Clair and Madison Counties' lawsuits to the bankruptcy court overseeing that bankruptcy. Instead, it sought to consolidate the actions against it in a *separate* multi-district litigation, and the cases were transferred here, about as far away from the Purdue bankruptcy as one can get in the lower 48 states. For the last few years, these claims have peaceably resided here in the Bay Area without any involvement or interaction with Purdue Pharma's bankruptcy proceedings in White Plains, New York.

McKinsey cites federal bankruptcy jurisdiction in an effort to avoid state court proceedings, not because this case is appropriately consolidated with Purdue's ongoing administration and reorganization. It is not. For the following reasons, the exercise of federal jurisdiction over this case because Purdue is already in bankruptcy is improper.

### 1.   Madison and St. Clair Counties are "governmental units" exercising police or regulatory power.

Section 1452 governs the removal of certain state actions related to ongoing bankruptcy proceedings. McKinsey's argues the County's claims are removable under Section 1452(a) because they are "related to" Purdue's bankruptcy proceeding. That statute provides:

> A party may remove any claim or cause of action in a civil action **other than** a proceeding before the United States Tax Court or **a civil action by a governmental unit to enforce such governmental unit's police or regulatory power**, to the district court for the district where such civil action is pending, is such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(emphasis added.) Because these cases are an exercise of the police or regulatory power, they are not removable.

The United States Bankruptcy Code defines a "governmental unit" to mean "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or

instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government. 11 USCA § 101(27).

By its terms, then, the very statute McKinsey cites in favor of federal jurisdiction *carves out and excludes* from federal jurisdiction the instant action. Plaintiffs St. Clair and Madison Counties are local governments (or, in the terms of the statute, an "other foreign or domestic government") and the instant lawsuit seeks to enforce the County's police or regulatory power.

In order to determine whether an action constitutes an exercise of a governmental unit's police or regulatory power, courts employ two "tests," the pecuniary interest test and the public policy test. *City and County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123-24 (9th Cir. 2006).Satisfaction of either test will suffice to exempt the action from the reach of the automatic stay." *City and County of San Francisco, 433 F.3d at 1124*. The theory behind the police and regulatory power exception is that "bankruptcy should not be a haven for wrongdoers." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005).

Here, where the County's actions seek to protect public safety and health and/or effectuate public policy, remand is required because federal jurisdiction is lacking. *Id*. In similar circumstances, courts in this District have found the same. *See Cty. of San Mateo v. Chevron Corp.*, 294 F.Supp.3d. 934, 938-39 (N.D. Cal. 2018), *aff'd in part on other grounds, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020).

"Where a governmental unit acts primarily to further its financial interests, and not primarily to protect public health and safety, that action satisfies the pecuniary interest test, and the automatic stay applies." *Id*. at 4. Typical examples of acting in the governmental unit's pecuniary interest are action to collect taxes, or actions stemming from "a debt arising from normal commercial transactions to purchase goods or services." *Id*.

The primary driver of the instant action is the County's focus on public safety and health concerning the opioid crisis. *See id*. at *5. The County is neither seeking to collect a tax, nor acting on its own behalf with respect to commercial transactions to which the County was a party. Rather, the County's complaint makes abundantly clear that it brings this action for public health and safety reasons related to the devastating effect that the opioid crisis has had on its population.

Similar to the Pecuniary Interest test, the Public Policy test requires the court to determine "whether the government is seeks to effectuate public policy or to adjudicate private rights." *Lockyer*, 398 F.3d at 1108. Like the Pecuniary Interest test, the Public Purpose test is evaluated on the basis of the totality of circumstances. *In re Halo Wireless, Inc.*, 684 F.3d at 588.

Here, the County is pursuing public nuisance claims related to the health and welfare of its citizenry, where the opioid crisis has run rampant. It is not, for example, seeking to adjudicate private rights derived from a contract or commercial transaction involving the County. Accordingly, the instant action is typical exercise of a governmental unit's police or regulatory power and is therefore exempt from removal under the plain language of Section 1452(a).

**2.      The instant action is not "related to" the Purdue bankruptcy.**

As stated throughout the complaint, the County is seeking redress from McKinsey relating to their culpability for the ongoing nationwide opioid crisis. As much as McKinsey may wish to emphasize the complaint's discussions of its conduct with Purdue, the fact is that the complaint alleges a far wider role for McKinsey than merely advising one company. And indeed, the complaint alleges that the work McKinsey performed for Purdue *benefitted its other opioid clients*. *See* 1st Am. Comp. ¶ 116, fn. 36 ("Purdue's marketing force was indirectly supporting sales of millions of pills marketed by rival companies;" "Especially worth noting is that this strategy also benefitted McKinsey's other opioid clients, such as Johnson & Johnson."); *Id.* at 154 ("[O]n March 14, 2002, McKinsey prepared a confidential report for Johnson & Johnson regarding how to

market their opioid Duragesic."). What is more, an entire section of the County's complaint is entitled "Increasing the *Overall Size of the Opioid Market*: the Larger the Pie, the Larger the Slice." *See* 1st Am. Com. Section IV.e.ii.5 (emphasis added).

McKinsey's theory of "related-to" jurisdiction in this context would have a curious effect on bankruptcy jurisdiction jurisprudence: any time *any* industry participant, co-conspirator, or link in the chain involved in mass tort litigation chooses to become a bankruptcy debtor, that would effectuate jurisdiction over *all* mass tort claims against *any* industry participant alleged to have engaged in conduct roughly similar to that of the debtor. Federal bankruptcy jurisdiction is not limitless *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995).  Rather, "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ((quotation omitted)).

McKinsey correctly identifies the test for "related-to" jurisdiction. The question is *"whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 760-61 (9th Cir. 2022) . This "conceivable effect" test requires *certainty* that is lacking in the instant case. Whether an action could "conceivably" have an effect on the bankruptcy proceeding is predicated on whether the allegedly related lawsuit would affect the bankruptcy without the intervention of another lawsuit. *See In re Combustion Eng'g, Inc.,* 391 F.3d 190, 227 (3rd Cir. 2004) *as amended*; *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002)..

### a. Contingent indemnity and contribution obligations do not support jurisdiction.

McKinsey argues that "where a third-party claim may give rise to a potential indemnification or contribution claim against the estate, the third-party claim will have a conceivable effect on the estate." Notice of Removal ¶ 30. But theoretically applicable

1    indemnification agreements do not, without more, effect the indemnifier's bankruptcy, particularly

2    where there is no basis to support the claim. *See Contra Costa Cty. v. Fitch, Inc.*, 2011 WL

3    13247874, at *3-5 (N.D. Cal. 2011) .

4            Crucially, none of the conditions precedent that *might* entitle McKinsey to a claim for

5    indemnification have been met. McKinsey has not asserted any indemnity or contribution claims

6    against Purdue in the bankruptcy proceedings. Nor has McKinsey has not filed any proof of claim

7    in the Purdue proceedings.[2] The bankruptcy court in Purdue set a bar date for filing proof of claims

8    on July 30, 2020.   *In re Purdue Pharma L.P.*, No. 19-23649, Doc. #800, Pg. 2; Doc. #1221, Pg. 2

9    (Bankr. S.D.N.Y.). The deadline has passed and McKinsey's failure to file a proof of claim is fatal,

10   here. *General Elec. Cap. Corp. v. Pro-Fac Coop. Inc., et al.,* 2002 WL 1300054, at *2 (S.D.N.Y.

11   June 12, 2002); *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 526

12   (Bankr. M.D. Al. 2002) *see also In re U.S Brass Corp.*, 173 B.R. 1000, 1004 (Bankr. E.D. Tex.

13   1994).*See also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002).The prospect

14   that McKinsey *might* choose to initiate a separate lawsuit against Purdue in the future is precisely

15   the sort of "prospective additional lawsuits" that a proper analysis of "related-to" jurisdiction

16   disregards. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227 (3rd Cir. 2004).

17           While plaintiff does not argue or concede that a filing of a proof of claim – *without more*

18   – is sufficient to confer "related to" jurisdiction, McKinsey has not fulfilled even this most basic

19   of pre-requisites. *See In re Spaulding & Co.*, 131 B.R. 84, 89 (N.D. Ill. 1990)(explaining that *if* the

20   defendant filed a proof of claim against the debtor, then "it may be necessary to revisit the

21   [jurisdictional] issue.").

---

[2] *See* https://restructuring.ra.kroll.com/purduepharma/Home-ClaimInfo

Indeed, "even if [the party seeking removal] were a creditor in the case, 'related to' jurisdiction ordinarily cannot be premised on indemnification rights against the debtor, the impact of which is potential rather than actual." *In re Imerys Talc America, Inc.*, 2019 WL at *4 (quoting *In re ALT Hotel, Inc.*, 479 B.R. 781, 807 (Bankr. N.D. Ill. 2012). "An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related-to' jurisdiction. *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003).

The seminal case on "related-to" jurisdiction based on a debtor's potential indemnity liability is *Pacor, Inc. v. Higgins*, in which the Third Circuit considered whether a state tort case against an asbestos supplier could be removed and consolidated with a bankruptcy proceeding initiated by the product's manufacturer based on potential indemnity obligations owed by the manufacturer. 743 F.2d 984, 994 (3rd Cir. 1984); Holding that removal was improper in *Pacor*, the Third Circuit framed the issue as whether the suit between the non-debtors "could give rise to any **automatic liability**" for the debtor." *Pacor*, 743 F.2d at 995 (emphasis added). The Court observed that even if the plaintiffs successfully recovered damages from the supplier, it "would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* And *res judicata* would not bind the debtor, permitting it to relitigate any issue relating to its duty to indemnify the supplier. *Id.* The Ninth Circuit adopted *Pacor* in *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

Similarly, a non-debtor in *In re Federal-Mogul Global, Inc.* attempted to funnel thousands of tort cases into a bankruptcy court based on contractual indemnity potentially owed by the debtor. *See generally*, 300 F.3d 368 (3d Cir. 2002). After observing that no court has "endorse[d] the proposition that *any* contract of indemnification will support an extension of related-to jurisdiction," the district court held the indemnity provisions incorporated by "boilerplate"

purchase orders could not support jurisdiction. *Id.* (original emphasis). The court of appeals refused to disturb the district court's ruling. *Id.* at 382, 384.

*Pacor* and *Federal–Mogul* require the following inquiry: (1) Is the debtor's liability ***automatically triggered*** when the purported related action against the party seeking indemnification begins? And (2) is a ***subsequent lawsuit against the debtor a prerequisite*** to finding indemnification? *Steel Workers Pension Tr. v. Citigroup, Inc.*, 295 B.R. 747, 753 (Bankr. E.D. Pa. 2003). If the answer to the first question is no, or if the answer to the second is yes, then 'related to' jurisdiction does not exist. *Id.*

McKinsey generically avers that "Purdue has contractually agreed to indemnify McKinsey for all claims brought by third parties against Purdue or McKinsey (including reasonable legal fees) arising out of services to Purdue," and further that "this Action, if successful, could give rise to indemnification and/or contribution claims by McKinsey against Purdue and therefore may affect property of Purdue's bankruptcy estate. Notice of Removal ¶¶ 37-38. No further detail regarding the scope, contours, or limits of these contractual provisions was provided.

McKinsey fails to explain how Debtor will incur liability subject to the indemnity provisions given the bankruptcy stay and that plaintiffs across the country are proceeding only against the non-debtor defendants in state court. *See* 11 USC § 362(a)(1)(6). *Parry v. Mohawk Motors of Mich, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000), *cert. denied* 533 U.S. 951 ("[A]bsent unusual circumstances the stay does not extend to separate legal entities such as corporate affiliates, partners in debtor partnerships, or to codefendants in pending litigation." (internal quotes omitted)); *Sav-A-Trip, Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999) . Further, as set forth above, the Debtor's right to indemnity is remote and conditional.

1

2

         **b.**      **McKinsey's authorities in support of jurisdiction are inapposite.**

The *Sun Edison* matter cited by McKinsey concerned a release of non-debtors contained within a Joint Plan of Reorganization previously confirmed by the bankruptcy court. *In re Sun Edison,* 576 B.R. at 455. There, the court held that "the Debtors have *failed to demonstrate… that the Court has jurisdiction* to release the Non-Voting Releasors' third-party claims to the extent set forth in the release." *Id*. Additionally, proofs of claim had been timely filed in the *Sun Edison* matter, unlike here. *In re SunEdison, Inc.*, 576 B.R. 453, 455, 461-63 (Bankr. S.D.N.Y. 2017)

Given that McKinsey has provided no details whatsoever regarding the contours of its indemnity rights vis-à-vis Purdue, the same result should obtain here. *See also Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 527 (Bankr. M.D. Al. 2002)(denying to exercise "related to" jurisdiction based on an indemnification provision were "the language of the indemnity agreement is far from certain in establishing when and if indemnification accrues to an indemnified party."). The current Chapter 11 Joint Plan submitted by Purdue on March 15, 2021 provides, "any… contract or other obligation applicable to any Debtor shall be void and of no further force or effect to the extent such contract or other obligation creates an obligation of any Debtor… for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses, or any other amounts whatsoever relating to or arising from any actual or potential litigation or dispute... based on or relating to… Opioid Related Activities or otherwise relating to opioids." *See* Section 8.4 of Purdue's Joint Chapter 11 Plan of Reorganization, Doc. 2487, *In re Purdue Pharma L.P.,* Case No. 19-23469 (Bankr. S.D.N.Y March 15, 2021). Given this language nullifying any of Purdue's indemnification obligations to third parties, McKinsey's purported rights of indemnification vis-à-vis the Purdue estate are quite *uncertain* at the present moment. It is an insufficient basis for federal jurisdiction over the County's claims.

*In re WorldCom, Inc. Securities Litigation* is likewise inapposite because it did not involve indemnification claims that had been forfeited by the creditor. *In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 320-21 (Bankr. S.D.N.Y. 2003) (defendants filed proofs of claim for indemnity, contribution, and reimbursement for defense costs and no indication that filings were untimely).

Finally, the contribution and indemnification concerns present in *In re Purdue Pharma* – a case heavily relied upon by McKinsey – are absent here. Richard Sackler was defined as a "Related Party" in the Purdue bankruptcy. The *Purdue Pharma* decision is readily distinguishable from the instant claims against McKinsey. Unlike Richard Sackler, McKinsey is neither a debtor nor a "Related Party" in the Purdue bankruptcy.[3] Furthermore, the reason the broad injunction was necessary was because "the [then-proposed] Settlement Structure *depended on the sale of Purdue's overseas affiliates (the IACs), which were not owned by the Debtors, but the Sackler family*." *Id.* at 46. These concerns are simply absent with respect to the instant litigation against McKinsey. McKinsey is neither a "Related Party," nor, crucially, *an owner of assets intended to be contributed to the Purdue bankruptcy estate as a condition of the reorganization*. McKinsey is not alleged to have an ownership interest in any IAC, and any judgment obtained against McKinsey would not have any effect on the ownership of the IACs or the funding of the Purdue reorganization plan.

### c. McKinsey's claim that the County's claims are "highly interconnected with the conduct and actions of Purdue" does not support jurisdiction.

McKinsey's arguments in favor of "related-to" removal have recently been addressed – and dismissed – by a bankruptcy court assessing issues of "related-to" jurisdiction in the context

---

[3] The defined list of "Related Parties" in the Purdue bankruptcy is extensive. McKinsey is not among them. *See* Doc. 224, fn. 2, *In re Purdue Pharm L.P.,* Case No. 10-08280-rdd (Bankr. S.D.N.Y. March 3, 2021).

of mass torts. In *In re: Imerys Talc American, Inc.*, 2019 WL 2575048 (Bankr. W.D. Okla. June 21, 2019), plaintiffs brought personal injury claims against Johnson & Johnson, alleging injury stemming from talc products, as well as Imerys, a supplier of talc to Johnson & Johnson. Upon Imerys declaring bankruptcy, Johnson & Johnson sought removal of state court actions on the basis that the talc claims were "related to" Imerys' bankruptcy.

There, *despite the Debtor being a named Defendant* in the state court litigation (which is not the case here – Plaintiffs filed their actions solely against McKinsey and another nondebtor), the *Imerys* court nonetheless declined to exercise federal "related-to" jurisdiction and remanded the proceedings to state court. The Court emphasized that the defendant seeking removal based on "related-to" jurisdiction had not filed its own proof of claim in the relevant bankruptcy proceeding. "For jurisdiction, 'there must be something to evidence the impact, like a proof of claim.'" 2019 WL at *4 (quotation omitted)).

McKinsey cites *In re Gardner* in support of the proposition that a civil proceeding is "related to" a bankruptcy proceeding where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Notice of Removal ¶ 28. *Gardner*, however, counsels in favor of declining jurisdiction over this litigation. The *Gardner* case "involve[d] the conflict between two creditors over property [not] property of the bankruptcy estate." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990). Because the dispute concerned property *outside* of the bankruptcy estate, the *Gardner* court remanded the proceedings to state court. *Id.* The same result should obtain here, where Purdue is not a defendant and the assets that would be used to satisfy any judgment in favor of the County are held by *McKinsey*, not the debtor.

Similarly, just as the trustee in the *Gardner* matter had not claimed an interest in defendant's property, the trustee in the Purdue bankruptcy has not claimed any interest in property held by McKinsey. *See Id.* at 1519 ((citation omitted). For those reasons, the *Gardner* court

declined to exercise jurisdiction over the state law claims, because "to hold otherwise would lead to almost unlimited jurisdiction by the bankruptcy court." *Gardner*, 913 F.3d at 1519 (citing *In re Dickinson Lines, Inc.* 47 B.R. 653, 656 (Bankr. D. Minn. 1985)).

### 3. Mandatory abstention requires the Court to remand these cases.

Even if this Court determines that "related to" subject matter jurisdiction obtains in this case, this Court must abstain from exercising "related-to" jurisdiction under Section 1334(c). The plain terms of the statute require mandatory abstention where, as here, the action was "commenced" in a state forum. *In re Migard Corp.*, 204 B.R. 764, 774 (10TH Cir. 1997).

Mandatory abstention derives from 28 U.S.C. § 1334(c)(2). A court must abstain and remand a case premised on "related-to" jurisdiction if: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the bankruptcy code; (4) federal courts would not have jurisdiction absent its relation to the bankruptcy case; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in the state forum. *Id*. Mandatory abstention does not apply to "core" bankruptcy proceedings. 28 U.S.C. § 157(b)(1); *see also In re 4 Front Petroleum, Inc.*, 345 B.R. 744, 754-55 (Bankr. N.D. OK 2006).

Initially, this action is not a "core" proceeding, as it not directly related to a bankruptcy court's central function. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005); *see In re S&M Constructors, Inc.*, 144 B.R. 855, 860 (Bankr. W.D. Mo. 1992) (explaining core proceedings). Core proceedings encompass claims predicated on a right created by Title 11 as well as claims that have no existence outside of bankruptcy. *Id*. at 116-17. Non-core proceedings, by contrast, involve the adjudication of state-created private rights where the outcome of such proceedings could affect the bankruptcy estate. *Shiboleth*, 412 B.R. at 116. Here, the state court action consists of state law claims against a non-debtor that do not arise in or under the bankruptcy

1   code. Further, Debtor will not be a liable defendant in this action, which precludes it from having

2   a direct impact on the bankruptcy proceeding. *Mt McKinley,* 399 F.3rd at 448-49.

3          This proceeding satisfies the remaining requirements of Section 1334(c)(2). First, the

4   County's motion to remand was timely. McKinsey removed this case on March 4, 2021, and the

5   County promptly filed this Motion for Remand and Abstention. Second, the County asserts solely

6   state law claims in its complaint. No federal causes of action are alleged. Third, the action does

7   not "arise in" a bankruptcy case or "arise under" the bankruptcy code. Instead, this is an action by

8   a governmental unit enforcing its police or regulatory powers filed in state court against a

9   defendant who is neither a debtor nor a "Related Party" in the Purdue bankruptcy. Fourth, Section

10  1334 provides the sole basis for federal jurisdiction. McKinsey's alternative theories of federal

11  jurisdiction have already been addressed *supra*. Fifth, this action was commenced in state court on

12  January 29, 2021 in Madison County, Illinois.

13         Finally, the Ninth Circuit is relatively unique in requiring an ongoing parallel state

14  proceeding, which typically does not exist in the removal context. *In re Lazar*, 237 F.3d 967, 981-

15  2 (9th Cir. 2001)("Abstention can exist only where this is a parallel proceeding in state court…

16  because there is no pending state proceeding, 1334(c)(1) and 1334(c)(2) are simply inapplicable.");

17  *see also Hendricks v. Detroit Diesel Corp.*, 2009 WL 4282812, at *7 (N.D. Cal. 2009)("[T]he

18  Ninth Circuit has held that mandatory abstention does not apply to removed cases because there is

19  no parallel court proceeding… The Court acknowledges that most courts that have addressed the

20  issue have held to the contrary.").

21         Here, mandatory abstention is available and required because there *is* a parallel state court

22  proceeding currently being litigated in the same court that one of these cases originated in – the

23  Twentieth Judicial Circuit Court of St. Clair County, Illinois – against McKinsey's co-

24  conspirators. *See* Exhibit B to Declaration of David Cates, Original Complaint. That lawsuit

alleges the same causes of action that plaintiffs assert here against McKinsey. St. Clair County is represented by the same counsel in the parallel state court proceedings as it is here. Furthermore, the state court proceedings allege that Publicis Health and ZS Associates inhabited roles similar to McKinsey – acting as consultants to opioid manufacturers looking for ways to maximize sales of their drugs. The state court proceedings further allege that the Publicis and ZS Associates were co-conspirators with McKinsey who all worked together on the same projects, including *Project Turbocharge* at Purdue. *See* Exhibit B, Original Complaint at Para. 6, ("Defendants worked intimately with McKinsey and McKinsey's clients on these same efforts to maximize the volume of opioids sold in the United States); Para. 10 ("Defendants – alongside and with McKinsey – played a central role in the unfolding, propagation, and exploitation of the opioid crisis by advising multiple opioid manufacturers… how to sell as many opioids as conceivably possible."); Para. 13 ("Defendants Publicis, ZS, and Practice Fusion endeavored alongside McKinsey, shoulder-to-shoulder and in common cause with McKinsey and their manufacturer clients."); *see also* Paras. 23, 97, 109, 117, 381, 388, and 393 (describing defendants' work with McKinsey in numerous settings for multiple opioid clients)

Moreover, defendant Publicis Health recently filed a motion to dismiss based on a consent judgment it recently obtained with states Attorneys General that is substantially identical to the Consent Judgment McKinsey obtained and argues is a basis to dismiss bars this case. *See* Exhibit C, Defendant Publicis Health LLC's Motion to Dismiss Based on Multistate Settlement (arguing claims are barred by a Consent Judgment that defendant entered in to with the Attorney General without notice to subdivisions bars a previously filed lawsuit by plaintiff St. Clair County.). St. Clair County's response is due June 25, 2024. *See* Exhibit D, Order Setting Briefing Schedule and Hearing on Publicis Health, LLC's Motion to Dismiss Based on Multistate Settlement dated May 22, 2024. The state court proceedings are already upon decisions that this Court is also faced with

in McKinsey's *res judicata* motions. Comity thus requires remand of the McKinsey proceedings to allow for coordination within state court and the avoidance of the possibility of inconsistent rulings. These circumstances counsel in favor of mandatory abstention.

#### 4. This Court should permissively abstain from these cases or equitably remand.

The permissive abstention doctrine is derived from 28 U.S.C. § 1334(c)(1), which permits abstention "in the interest of justice, or in the interest of comity with State courts or respect for state law." In determining whether to abstain under § 1334(c)(1), courts typically consider the following non-exclusive factors:

> (1)the effect of lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) The presence of a related proceeding commenced in state court of other non-bankruptcy court;. (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding from the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1980) . Here, the totality of factors *overwhelmingly* weighs in favor of abstention. As stated above, McKinsey is seeking to maintain this case in a multidistrict litigation, *not* an ongoing bankruptcy proceeding. Factor 9 (the burden on the bankruptcy court's docket) is thus a non-sequitur. Factors five and seven are neutral. And factors one, two, three, four, eight, ten, eleven and twelve favor abstention.

Alternatively, the court should exercise its equitable authority under Section 1452(b) to remand the Counties' cases. That statute provides that "the Court to which such a claim or cause of action is removed may remand such claim or cause of action on any equitable ground." Relevant factors in determining whether a court should exercise its equitable discretion to remand include:

(1) The effect on the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness of the action to the bankruptcy case; (6) any jury trial right; and (7) prejudice to the plaintiffs from removal. *Hendricks v. Detroit Diesel Corp.*, 2009 WL 428812, at *8 (N.D. Cal 2009); *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal 2006).

Here too the factors favor remand. First, the effect of the McKinsey litigation on the administration of Purdue's bankruptcy is non-existent: McKinsey never filed a proof of claim in the Purdue bankruptcy, nor has it ever sought indemnification from Purdue despite the fact that McKinsey has now settled hundreds of millions of dollars of liability relating to the same claims being asserted by Plaintiffs here. This has been borne out during the pendency of this MDL: plaintiffs are unaware of any coordination with, let alone *communications with* the bankruptcy court administering Purdue's estate. The  lived experience of the McKinsey litigation to date demonstrates its remoteness from Purdue's bankruptcy.

Moreover, Plaintiffs' claims arise exclusively under state law; state law issues clearly predominate. And the Plaintiffs have requested a jury trial for their claims. *See In re Diversified Contract Services, Inc.*, 167 B.R. 591, 598 (Bankr. N.D. Cal. 1994).

The *Hendricks* court named other factors in assessing equitable remand, including judicial economy, the burden on the bankruptcy court's docket, the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the defendants, the presence in the proceeding of nondebtor parties, and the possibility to parties other than the plaintiffs. *Henricks*, 2009 WL at *8. The emphasis on the judicial economy *of the bankruptcy court* gives the lie to McKinsey's arguments that Purdue's bankruptcy requires this court to retain jurisdiction over Plaintiff's claims: McKinsey is not even attempting to have these cases transferred to the bankruptcy court in the Southern District of New York, nor can it given this Court's recent ruling

denying New York subdivision plaintiffs' request to transfer their cases away from this MDL to another federal court. *See* Doc. 717, Order Denying Motions for Suggestion of Remand.

**II.    CONCLUSION**

WHEREFORE, for all of the foregoing reasons and, Plaintiff respectfully prays that this Court grant its Motion to Remand and enter an Order remanding these cases to the Circuit Courts for Madison and St. Clair Counties, Illinois for further proceedings.

DATED:  June 14, 2024                              Respectfully submitted,


                                                    /s/ Ann Callis


                                                   HOLLAND LAW FIRM
                                                   ANN CALLIS
                                                   ERIC D. HOLLAND
                                                   ROBERT J.. EVOLA
                                                   211 N. Broadway, Suite 2625
                                                   St. Louis, MO
                                                   Telephone:  314-241-8111
                                                   Facsimile: 314-241-5554
                                                   acallis@hollandtriallawyers.com
                                                   eholland@hollandtriallawyers.com
                                                   revola@hollandtriallawyers.com

                                                   CATES LAW FIRM
                                                   DAVID CATES
                                                   216 West Point Dr., Suite A
                                                   Swansea, IL 62226
                                                   Telephone: 618-277-3644
                                                   Facsimile: 618-277-7882
                                                   Email: dcates@cateslaw.com

1

2    *Counsel for Plaintiffs St. Clair County and
     Madison County, Illinois*

3    **Filing Authorized by Plaintiffs' Lead Counsel
     Pursuant to PTO 2:**

4    By: /s/ Elizabeth J. Cabraser
     Elizabeth J. Cabraser

5    ecabraser@lchb.com

6    LIEFF CABRASER HEIMANN &
     BERNSTEIN, LLP

7    275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339

8    Telephone: (415) 956-1000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR REMAND  OR ABSTENTION AND MEMORANDUM IN SUPPORT          - - 26 -