**NAPOLI SHKOLNIK**
HUNTER J. SHKOLNIK
PAUL J. NAPOLI
NESTOR D. GALARZA
REBECA MARTINEZ
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
Hunter@nsprlaw.com
PNapoli@nsprlaw.com
NGalarza@nsprlaw.com
RMartinez@nsprlaw.com

SALVATORE C. BADALA
NAPOLI SHKOLNIK
400 Broadhollow Rd, Suite 305
Melville, NY 11747
Tel: (212) 397-1000
SBadala@napolilaw.com

SHAYNA E. SACKS
NAPOLI SHKOLNIK
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:21-cv-04386-CRB<br><br>Case No. 3:21-cv-05467-CRB | Case No.: 21-md-02996-CRB<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CONSOLIDATED MOTION FOR REMAND OR ABSTENTION** |

# TABLE OF CONTENTS

INTRODUCTION ........ 1

I. THIS COURT MUST FIRST DECIDE PLAINTIFFS' MOTION TO REMAND, AS ABSENT A FINDING OF SUBJECT-MATTER JURISDICTION THIS COURT CANNOT DISMISS THESE LAWSUITS WITH PREJUDICE ........ 2

II. REMOVAL OF PLAINTIFFS' ACTIONS IS BARRED BY 28 U.S.C. § 1452(A) ........ 7

III. EVEN IF THIS COURT WERE TO CONCLUDE THAT IT POSSESSES SUBJECT-MATTER JURISDICTION, THE PROPER COURSE WOULD BE TO REMAND THE LAWSUITS BASED ON EQUITABLE GROUNDS ........ 11

A. Abstention........ 11

B. Equitable Remand........ 12

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

Page(s)

Cases

*Ass'n of Home Appliance Mf. v. City of New York*,
36 F. Supp. 3d 366 (S.D.N.Y. 2014) .......... 9

*Bon-Air Ests., Inc. v. Bldg. Inspector of Town of Ramapo*,
31 A.D.2d 502 (N.Y. App. Div. 1969) .......... 9, 10

*Capron v. Van Noorden*,
(1804) .......... 3

*City & County of San Francisco v. PG & E Corp.*,
433 F.3d (9th Cir. 2006) .......... 8

*City of New York v. Smokes-Spirits.Com, Inc.*,
12 N.Y.3d 616 (2009) .......... 10

*E. Coast Repair & Fabrication, LLC v. U.S. through Dep't of Navy*,
16 F.4th 87 (4th Cir. 2021) .......... 6

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .......... 8

*Hansen v. Grp. Health*,
902 F.3d 1051 (9th Cir. 2018) .......... 7

*Harrington v. Purdue Pharma L.P.*,
144 S. Ct. 2071 (2024) .......... 11

*Harris v. Bankers Life and Cas. Co.*,
425 F.3d 689 (9th Cir. 2005) .......... 7

*Havens v. Mabus*,
759 F.3d 91 (D.C. Cir. 2014) .......... 4

*Hoffman v. Nordic Nats., Inc.*,
837 F.3d 272 (3d Cir. 2016) .......... 6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013) .......... 6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
488 F.3d 112 (2d Cir. 2007) .......... 8

*In re Nat'l Football League Players' Concussion Injury Litig.*, 2019 WL 634640 (E.D. Pa. Feb. 14, 2019) .......... 6

*Loomis as Tr. of Lost Creek Tr. v. United States*, 642 F. Supp. 3d 1199 (D. Idaho 2022) .......... 6

*New York Trap Rock Corp. v. Town of Clarkstown*, 85 N.E.2d 873 (N.Y. 1949) .......... 9, 10

*Newtown v. Thomason*, 22 F.3d 1455 (9th Cir. 1994) .......... 12

*Noone v. Town of Palmer*, 2 F. Supp. 3d 1 (D. Mass. 2014) .......... 6

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) .......... 8

*Robertson v. GMAC Mortg., LLC*, 640 Fed. Appx. 609 (9th Cir. 2016) .......... 2

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) .......... 5

*Scott Aviation v. United States*, 953 F.2d 1377 (Fed. Cir. 1992) .......... 4

*Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) .......... 4

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) .......... 5

*Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853 (9th Cir. 2021) .......... 5, 6

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) .......... 3

*United States Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960 (9th Cir. 2004) .......... 2

Statutes

28 U.S.C. § 362(b)(4) .......... 8
28 U.S.C. § 1334(b) .......... 7, 8, 11
28 U.S.C. § 1334(c) .......... 11, 12
28 U.S.C. § 1452(A) .......... *passim*

28 U.S.C. § 1452(b) ..... 12, 13
28 U.S.C. § 1738 ..... 10

Rules

Fed. R. Civ. P. 12(h)(3) ..... 3
Rule 12(b)(6) ..... 4

**INTRODUCTION**

Plaintiffs County of Genesee, et al., in Case No. 3:21-cv-04386-CRB, and Plaintiffs County of Westchester, et al., in Case No. 3:21-cv-05467-CRB (collectively, "Plaintiffs"), hereby file this brief in reply to the opposition of McKinsey & Co., Inc. ("McKinsey") to Plaintiffs' motion for remand or abstention (ECF No. 719).

**Preliminary Statement**

As is more fully explained below, this Court is faced with a multi-part analysis.

First, and most importantly, the Court must rule on Plaintiffs' motion to remand, which demonstrates that this Court lacks subject-matter jurisdiction over Plaintiffs' lawsuits. At least five U.S. Supreme Court and Ninth Circuit rulings stand as obstacles to McKinsey's argument that this Court may simply skip over the issue of subject-matter jurisdiction and dismiss the lawsuits, with prejudice, based on its affirmative defense of *res judicata*. The lone Ninth Circuit decision on which McKinsey centers its argument is readily distinguishable on its peculiar facts.

Second, this Court can resolve this motion to remand, with no need to delve into complex matters of "related to" bankruptcy jurisdiction and abstention doctrine, on the basis that removal of these lawsuits is barred under 28 U.S.C. § 1452(a). As McKinsey does not seriously contest, Plaintiffs' lawsuits are "civil action[s] by a governmental unit to enforce such governmental unit's police or regulatory power" within the meaning of Section 1452(a). McKinsey's main response, that this point supposedly dooms Plaintiffs' ability to defeat its *res judicata* defense, is irrelevant to the jurisdictional obstacle to this Court proceeding with the lawsuits.

Lastly, in light of current Ninth Circuit precedent bearing on the abstention issue argued by Plaintiffs, this brief concludes with a suggestion that if this Court were to find that federal jurisdiction over these lawsuits *does* exist, the proper course would be for it to exercise its discretion to order the lawsuits remanded to state court, based on equitable grounds.

## I. THIS COURT MUST FIRST DECIDE PLAINTIFFS' MOTION TO REMAND, AS ABSENT A FINDING OF SUBJECT-MATTER JURISDICTION THIS COURT CANNOT DISMISS THESE LAWSUITS WITH PREJUDICE

McKinsey persists in urging that this Court somehow enjoys the power to skip over the issue of whether it possesses subject-matter jurisdiction, and proceed directly to what McKinsey contends is the easier issue: whether Plaintiffs' lawsuits should be dismissed, with prejudice, based on its affirmative defense of *res judicata*. McKinsey Opposition ("Opp."), ECF No. 728, at 7-13. To do that would be legal error, for reasons already sketched by Plaintiffs (ECF No. 691 at 4-5; ECF No. 713-1 at 1-6), which McKinsey has failed to adequately address.

The governing rule can be stated quite simply, as follows: ***If a plaintiff that prefers not to be in federal court contests subject-matter jurisdiction, the court cannot dismiss the case with prejudice without first finding that it has subject-matter jurisdiction***. This rule flows so obviously from basic principles of federal jurisdiction that one would expect trial judges to only rarely overlook the rule. Indeed, we have found only two controlling appellate decisions finding occasion to reverse trial courts that ruled otherwise.

As previously summarized (ECF No. 691 at 5), *Robertson v. GMAC Mortg., LLC*, 640 Fed. Appx. 609 (9th Cir. 2016), was a case filed by the plaintiff in state court, and removed by defendants based on alleged diversity of citizenship. The plaintiff moved to remand, raising doubts concerning the citizenship of one defendant. Rather than decide plaintiff's motion, the district court simply granted defendants' motion to dismiss, which the Ninth Circuit held was error. *Id.* at 612. This holding was consistent with the holding in *United States Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 965 (9th Cir. 2004) (Wallace, J.) (cited in ECF No. 691 at 4), that before considering a "motion to dismiss on the merits, . . . [a] district court [has] a duty to ascertain whether it possesse[s] subject matter jurisdiction."

The rule that a plaintiff that prefers not to be in federal court is entitled to a ruling on its argument contesting subject-matter jurisdiction is so fundamental and absolute that a trial court must decide the issue even if the plaintiff raises it only *after* losing on the merits. That was the Supreme Court's holding in *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126 (1804), reaffirmed in *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 95 (1998). In *Capron*, as Justice Scalia summarized in his *Steel Co*. majority opinion, the Court "set aside a judgment for the defendant at the instance of the losing plaintiff *who had himself* failed to allege the basis for federal jurisdiction." *Id*. (emphasis in original). Even though Capron had waited until *after losing the case* to move for dismissal based on a lack of diversity of citizenship, it did not matter, because the error involved was "an *error of the Court*, and the plaintiff has a right to take advantage of it." *Capron*, 6 U.S. at 127 (emphasis in original).

In light of *Capron*, there is nothing to McKinsey's suggestion that this Court can somehow skirt the need to rule on subject-matter jurisdiction, and thereby save time and trouble, by dismissing these lawsuits based on its affirmative defense of *res judicata*. A simple hypothetical illustrates the point. Suppose Plaintiffs had never moved to remand their lawsuits, content to litigate them in federal court, feeling confident that the Court would not dismiss based on *res judicata*. Suppose that the Court then dismissed on that basis. *Capron* makes clear that Plaintiffs could, in that event, belatedly move to have the lawsuits remanded to state court for lack of subject-matter jurisdiction (with the adverse ruling vacated). This would be required not just by *Capron* but, as McKinsey points out (Opp. at 8), also by Fed. R. Civ. P. 12(h)(3), which mandates: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Citing a handful of decisions, mostly from other Circuits, arising out of a Supreme Court doctrine dealing with alternative threshold motions to dismiss *without* prejudice, see pp. 4-5,

*infra*, McKinsey argues that this Court can skip over the issue of subject-matter jurisdiction and grant its Rule 12(b)(6) motion to dismiss, *with* prejudice, on the theory that "[a] *res judicata* dismissal is a non-merits dismissal." Opp. at 7. To rely on this theory to dismiss Plaintiffs' lawsuits *with* prejudice would flout controlling Supreme Court precedent, summarized earlier by Plaintiffs (ECF No. 713-1 at 5-6 & n.2), to which McKinsey has no answer. In *Semtek International Inc. v. Lockheed Martin Corp*., 531 U.S. 497 (2001), the Court made clear that "a dismissal 'with prejudice'" is, by definition, a ruling "on the merits." *See also Havens v. Mabus*, 759 F.3d 91, 98-99 (D.C. Cir. 2014); *Scott Aviation v. United States*, 953 F.2d 1377, 1378 (Fed. Cir. 1992). As Plaintiffs have noted, no matter how obvious it is to a court that *res judicata* bars the lawsuit before it, no dismissal with prejudice can be entered if there is an absence of subject-matter jurisdiction. ECF No. 713-1 at 5-6 (citing *Global Gold Mining, LLC v. Ayvazian*, Fed. App'x 11, at *16 (2d Cir. Apr. 27, 2015)).

In an effort to justify a holding at odds with the holdings of the Supreme Court in *Capron*, *Steel Co.*, and *Semtek*, and of the Ninth Circuit in *Robertson* and *United States Life*—which collectively make clear that a federal court may not dismiss, with prejudice, the lawsuit of a plaintiff that prefers not to be in federal court, without first resolving the issue of subject-matter jurisdiction—McKinsey invokes a line of Supreme Court precedent which evolved in a totally different context. This doctrine identifies the options available to a court faced with dueling motions to dismiss a lawsuit *without* prejudice.

As Plaintiffs have already summarized (ECF No. 713-1 at 2-3), this doctrine was articulated in two unanimous decisions for the Court authored by Justice Ginsburg, making clear that a federal court may choose between alternative threshold grounds for dismissing, *without* prejudice, the case of a plaintiff who seeks an audience in federal court. The holding of *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-88 (1999), was that the district court had properly

dismissed the case based on the simpler issue of personal jurisdiction, properly declining to analyze the more complicated issue of subject-matter jurisdiction. The holding of *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), was that the district court had properly dismissed the case based on the simpler issue of *forum non conveniens*, thereby sidestepping the need for discovery to determine whether personal jurisdiction existed.

The compelling logic underlying this line of doctrine, as we have pointed out (ECF No. 713-1 at 3-4), is that where the choice *between* threshold options for dismissing a case makes no practical difference to the end result for the parties, district judges should be accorded discretion to select among alternative bases for dismissal.

The reason this line of doctrine is not applicable here is that McKinsey is not asking this Court to select between various options for dismissal *without* prejudice (e.g., subject-matter jurisdiction, personal jurisdiction, or *forum non conveniens*). Rather, as pointed out earlier (ECF No. 713-1 at 5), but McKinsey ignores, here we have dueling motions seeking totally different results. McKinsey seeks dismissal with prejudice, based on its affirmative defense of *res judicata*, which would *end* the litigation. Plaintiffs seek a remand to New York state court, which would *continue* the litigation. Therefore, the *Ruhrgas*-*Sinochem* doctrine, permitting choice among alternative threshold grounds for achieving *the same* result, simply does not apply in this circumstance. Instead, this Court must first decide whether it has subject-matter jurisdiction, as required by *Capron*, *Steel Co.*, *Semtek*, *Robertson* and *United States Life*.

The Ninth Circuit's holding in *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 863 (9th Cir. 2021), provides no warrant for a contrary result. As we have pointed out (ECF No. 713-1 at 2-5), *Snoqualmie* involved an application of the *Ruhrgas*-*Sinochem* doctrine. The district court in *Snoqualmie* was faced with two different motions, each of which, if granted, would end the case

brought by the Tribe, with prejudice: a motion to dismiss for lack of subject-matter jurisdiction, and a motion to dismiss based on issue preclusion. *Id*. at 861. Because the Tribe had intervened in a preexisting federal lawsuit (which had spanned decades), seeking to invoke the benefit of earlier rulings of the district court enforcing certain treaty rights, *id*. at 857-60, the only forum available to the Tribe was the federal district court in which the treaty litigation was pending.[1] Therefore, it made no practical difference to the result for the parties whether the district court dismissed based on a lack of subject-matter jurisdiction or dismissed based on issue preclusion: the Tribe would lose either way. On this record, citing the *Ruhrgas-Sinochem* doctrine, *id*. at 862-63, the Ninth Circuit held that the district court had properly dismissed based on the simpler ground of issue preclusion. The Court's discussion of "[w]hether dismissal on the ground of issue preclusion is a merits or non-merits dismissal," *id*. at 861 (a discussion which made no reference to the definition of "on the merits" set out in *Semtek*), was therefore unnecessary to its holding.[2] Regardless of

---

[1] McKinsey mistakenly suggests that if the district court "had dismissed for lack of subject matter jurisdiction, the plaintiff could have continued to litigate the case in state court." Opp. at 9.

[2] *Snoqualmie* is the only Ninth Circuit case cited by McKinsey in support of its argument that a dismissal based on *res judicata* is somehow not "on the merits," even though entered *with* prejudice. None of the other nine decisions it cites involving the defense of issue preclusion, Opp. at 7-9, addressed the Supreme Court's explanation in *Semtek* of the meaning of "on the merits." Setting aside the several decisions in which the jurisdictional challenge involved merely fact-specific issues of individual plaintiff standing, only six of the decisions authorized skipping over the fundamental matter of subject-matter jurisdiction based on the relative simplicity of the issue preclusion defense. In two of these cases, as in *Snoqualmie*, the choice between grounds for dismissal made no difference to the result for the losing plaintiff. *See Loomis as Tr. of Lost Creek Tr. v. United States*, 642 F. Supp. 3d 1199, 1208-09 (D. Idaho 2022); *Noone v. Town of Palmer*, 2 F. Supp. 3d 1, 7-11 (D. Mass. 2014). In the other four cases, the issue preclusion ruling did at least arguably eliminate plaintiffs' chance to litigate elsewhere, but in none of these cases did the judges take account of the Supreme Court's holding in *Capron*, which the plaintiffs had failed to brief. *See E. Coast Repair & Fabrication, LLC v. U.S. through Dep't of Navy*, 16 F.4th 87, 89-90 (4th Cir. 2021); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 277 (3d Cir. 2016); *In re Nat'l Football League Players' Concussion Injury Litig.*, 2019 WL 634640, at *5-*10 (E.D. Pa. Feb. 14, 2019); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 453-56 (S.D.N.Y. 2013), *aff'd*, 797 F.3d 148, 155-59 (2d Cir. 2015).

which option the district court selected, the Tribe would be out of court, with no other forum available in which to liltigate its treaty claims.

## II. REMOVAL OF PLAINTIFFS' ACTIONS IS BARRED BY 28 U.S.C. § 1452(A)

Plaintiffs are political subdivisions of the State of New York that filed suit in state court against a company headquartered in the state, asserting only state-law causes of action. Therefore, none of the conventional grounds for removal exist. McKinsey's sole argument for removal is that Plaintiffs' lawsuits might have a *conceivable* effect on Purdue's bankruptcy, so that removal is supposedly authorized by 28 U.S.C. § 1334(b), which confers federal jurisdiction over "all civil proceedings . . . related to cases under title 11." Opp. at 13-21.

It would constitute a significant intrusion by Congress on the core function of States and their political subdivisions to protect the lives and health of their citizens if Section 1334(b) were applied to authorize a federal court to interfere with state-court litigation aimed at restraining a public nuisance allegedly causing a public health crisis. Therefore, in addition to the general requirement that removal statutes must be narrowly construed, with the removing defendant required to overcome the strong presumption against removal (principles not contested by McKinsey),[3] this Court cannot find removal jurisdiction based on Section 1334(b) without a clear statement by Congress authorizing removal of such litigation.

When Congress legislates "in a field which the States have traditionally occupied," the Supreme Court long ago observed, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest

---

[3] *See* ECF No. 719 at 5 (citing *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005); ECF No. 720 at 2 (citing *Hansen v. Grp. Health Corp.*, 902 F.3d 1051, 1057 (9th Cir. 2018)).

purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Thus, only a plain statement by Congress authorizing the use of Section 1334(b) to remove state-court nuisance litigation brought by governmental plaintiffs can validate McKinsey's argument. *See generally Gregory v. Ashcroft*, 501 U.S. 452, 457-64 (1991). As the Court explained in *Gregory*: "Congress may legislate in areas traditionally regulated by the States. This is an extraordinary power in a federalist system. It is a power that we must assume Congress does not exercise lightly." *Id*. at 460. "This plain statement rule," it continued, "is nothing more than an acknowledgement that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Id*. at 461. *See also id*. at 464 ("we must be absolutely certain that Congress intended" intrusion into core state functions).

Of course, there exists no clear statement by Congress authorizing federal courts to invoke the Bankruptcy Code as a basis for interfering with state-court litigation filed by governmental units targeting a public-health nuisance. Quite the contrary: Congress has explicitly *prohibited* such interference. Where state-court litigation is brought by a governmental unit to enforce its police or regulatory power, it is neither subject to the automatic stay provisions of the Bankruptcy Code (28 U.S.C. § 362(b)(4)), nor is it subject to removal (28 U.S.C. § 1452(a)). *See generally City & County of San Francisco v. PG & E Corp.*, 433 F.3d 115, 1123-24 (9th Cir. 2006); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 132 (2d Cir. 2007) (both cited in ECF No. 719 at 5).

Plaintiffs need establish only two things for Section 1452(a)'s ban on removal to apply: (1) that Plaintiffs are "governmental units" within the meaning of Section 1452(a); and (2) that under applicable state law, Plaintiffs in fact possess the "police or regulatory power" they seek to enforce through their lawsuits, which Section 1452(a) shields from interference.

Plaintiff's opening brief established the first point, ECF No. 719 at 5, which McKinsey does not contest. Opp. at 21-23.

As to the second point, McKinsey asserts that "Plaintiffs do not in fact possess the police or regulatory powers they purport to be enforcing to protect those interests." Opp. at 23. But here, McKinsey cites only three decisions interpreting New York law. Two set forth general principles that no one contests. The third strongly supports Plaintiffs' argument.

McKinsey cites *Ass'n of Home Appliance Mf. v. City of New York*, 36 F. Supp. 3d 366, 372 (S.D.N.Y. 2014), and *Bon-Air Ests., Inc. v. Bldg. Inspector of Town of Ramapo*, 31 A.D.2d 502, 504 (N.Y. App. Div. 1969), for the well-accepted point that police powers repose with the State, so that "a municipality can only exercise police power when it has specifically or impliedly received a delegation of such power from the State." *Id.* at 504. It then asserts that "Plaintiffs do not identify any delegation of power from New York State that authorizes them to bring these claims, and McKinsey is not aware of any." Opp. at 23.

But Plaintiffs *have* identified that delegation of power. McKinsey has overlooked the analysis of this very point in the third decision it cites, the landmark decision of the New York Court of Appeals in *New York Trap Rock Corp. v. Town of Clarkstown*, 85 N.E.2d 873 (N.Y. 1949), which Plaintiffs in their opening brief took care to summarize in some detail. ECF No. 719 at 5-6. The conclusion that a municipality "has the capacity and is the proper party to bring an action to restrain a public nuisance which has allegedly injured the health of its citizens," the court held in that case, "is dictated by policy and principle and finds warrant in both the common law and statutes of this State." *Id*. at 877. Indeed, the court noted that "there is *no case* in this State which has denied such power to a municipal corporation," *id.* (emphasis added), and that various statutes "evidence an intention on the part of the Legislature to place the subject of public

nuisances affecting public health primarily under the supervision of local boards or departments of health." *Id*. at 878.

To be sure, the court did not hold that the Legislature had *expressly* delegated this power to municipalities. But, as one case cited by McKinsey makes clear (*Bon-Air Ests.*, 31 A.D.2d at 504), an implied delegation will do. The court in *New York Trap Rock* therefore rejected, as irrelevant, the lower court's observation that "no express statutory authority had been conferred upon the plaintiff to maintain the action," 85 N.E.2d at 876, and made clear that it was enough that the Legislature had "impliedly delegated to towns the power to bring an action to restrain a common-law public nuisance . . . ." *Id.* at 878. *See also id*. at 879 (public health statutes "fairly imply the existence of the further power to bring an action to restrain a nuisance affecting the public health").

Ignoring this unanimous holding of New York's highest court that New York municipalities have, in fact, been delegated the power to file lawsuits to restrain nuisances affecting the public health, McKinsey's only criticism is that *New York Trap Rock* did not include the term "police power" in its analysis, Opp. at 23, a critique of wordsmithing without substantive significance.

*New York Trap Rock* was reaffirmed in *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 626-27 (2009) ("It is well settled that a governmental entity, such as the City, may bring an action to abate a public nuisance") (citing *New York Trap Rock*, 299 N.Y. 77, 83 (1949)). Obviously, these holdings of the highest court of New York are binding on this Court under 28 U.S.C. § 1738, which defeats the only objection advanced by McKinsey to a finding that "related to" removal of these lawsuits is barred by 28 U.S.C. § 1452(a).

## III. EVEN IF THIS COURT WERE TO CONCLUDE THAT IT POSSESSES SUBJECT-MATTER JURISDICTION, THE PROPER COURSE WOULD BE TO REMAND THE LAWSUITS BASED ON EQUITABLE GROUNDS

Even if this Court were to reject Plaintiff's argument that 28 U.S.C. § 1452(a) bars removal of these lawsuits, and then proceeded to credit McKinsey's argument that "related to" jurisdiction exists under 28 U.S.C. § 1334(b), thereby authorizing removal (again, only if this Court *also* concludes that Section 1452(a) does not stand as an obstacle to removal), Plaintiffs submit that remand would remain the proper course.[4]

### A. Abstention

Plaintiffs concede that a remand based on either mandatory or discretionary abstention pursuant to 28 U.S.C. § 1334(c) is not a tenable option at this juncture (subject, however, to a possible change in the law via any appeal that might occur if remand were denied). Remand based on either mandatory or discretionary abstention *would* be the proper course if, as we have argued, a federal court in an MDL context is required to apply the law of the transferor circuit on fundamental matters of federal law going to the ultimate fate of the case (here, whether the federal courts should even exercise jurisdiction over the case), for the reasons sketched in the federal district court opinion and academic commentary cited in ECF No. 719 at 19-20 n.20.

---

[4] As to the Section 1334(b) "related to" issue, Plaintiffs acknowledge that the argument in their opening brief, submitted on June 14, 2024, was predicated in part on the Purdue bankruptcy Plan being upheld by the Supreme Court (because certain provisions in that Plan ensured that the outcome of Plaintiffs' lawsuits could not have a conceivable effect on Purdue's bankruptcy state, *see* ECF No. 719 at 18). Two weeks later, the Plan was struck down by the Supreme Court. *See Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024). Given certain developments in the wake of that decision described by McKinsey (Opp. at 20-21), Plaintiffs recognize that until the impact of the Supreme Court's decision becomes clearer, it now appears premature to conclude that Plaintiffs' lawsuits could not have a conceivable effect on Purdue's estate. However, Plaintiffs reserve the option, if their lawsuits were to remain in federal court, to oppose Section 1334(b) jurisdiction at a later date, if subsequent events warrant (there being no time limit on challenges to subject-matter jurisdiction).

Although we submit that the holding of *Newtown v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994), on the facts of that case, *can* be read to leave room for applying the law of the transferor circuit in circumstances such as those involving Plaintiffs' lawsuits (*compare* Opp. at 24-25), given the *Newtown* court's conclusion that "when reviewing federal claims, a transferee court in this circuit is bound *only* by our circuit's precedent," *id*. at 1460 (emphasis added), that analysis is at minimum considered dicta which this Court presumably will not lightly disregard. Plaintiffs have, however, taken care to brief the abstention issue to preserve their options for arguing on appeal (if an appeal were to become necessary), that abstention should be ordered because: (1) the law of the Second Circuit (which reads Section 1334(c) as applying to removed lawsuits) is controlling with regard to temporary transfers, on fundamental matters of federal law going to the ultimate fate of the case); and/or (2) the Ninth Circuit's reading of Section 1334(c) is incorrect, and the consensus view of other circuits that it applies to removed cases is the correct reading.

Unless and until either result transpired, however, this Court need not analyze the abstention doctrine, given the existing Ninth Circuit decisions bearing on the matter.

**B.  Equitable Remand**

In contrast to the legal uncertainty that exists concerning a federal court's authority to remand removed actions pursuant to Section 1334(c), is it is clear that this Court has discretion to remand them pursuant to 28 U.S.C. § 1452(b), "on any equitable ground." Although there is of course no legal requirement that this Court do so, Plaintiffs respectfully submit that even if this Court were to conclude that these lawsuits were properly removed to federal court, it would be prudent to remand them and allow them to continue in New York state court, as part of the longstanding coordinated opioid-related litigation pending in New York, as previously explained in ECF No. 719 at 2-4, 21-25.

## CONCLUSION

For all the reasons stated, this Court's first order of business should be to decide Plaintiffs' motions to remand, and the Court should hold that removal of these lawsuits is barred by 28 U.S.C. § 1452(a), and remand them back to New York state court. In the alternative, it should exercise its discretion to order an equitable remand pursuant to 28 U.S.C. § 1452(b).

Dated: July 29, 2024

Respectfully submitted,

**NAPOLI SHKOLNIK**

*Hunter J. Shkolnik*

HUNTER J. SHKOLNIK
PAUL J. NAPOLI
NESTOR D. GALARZA
REBECA MARTINEZ
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
Hunter@nsprlaw.com
PNapoli@nsprlaw.com
NGalarza@NSPRLaw.com
RMartinez@NSPRLaw.com

SALVATORE C. BADALA
NAPOLI SHKOLNIK
400 Broadhollow Rd, Suite 305
Melville, NY 11747
Tel: (212) 397-1000
SBadala@napolilaw.com

SHAYNA E. SACKS
NAPOLI SHKOLNIK
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 29, 2024, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will also transmit a Notice of Electronic Filing to all counsel of record.

*/s/ Hunter J. Shkolnik*
HUNTER J. SHKOLNIK