HOLLAND LAW FIRM
ANN CALLIS
ERIC D. HOLLAND
ROBERT J.. EVOLA
211 N. Broadway, Suite 2625
St. Louis, MO
Telephone:  314-241-8111
Facsimile: 314-241-5554
acallis@hollandtriallawyers.com
eholland@hollandtriallawyers.com
revola@hollandtriallawyers.com

CATES LAW FIRM
DAVID CATES
216 West Point Dr., Suite A
Swansea, IL 62226
Telephone: 618-277-3644
Facsimile: 618-277-7882
Email: dcates@cateslaw.com

Counsel for St. Clair County and Madison County, Illinois

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION<br><br>This Document Relates To:<br><br>    Case No. 3:21-cv-4642-CRB<br><br>    Case No. 3:21-cv-4387-CRB | Case No. 3:21-md-02996-CRB<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR REMAND OR ABSTENTION AND  MEMORANDUM IN SUPPORT |

# TABLE OF CONTENTS

Page

**INTRODUCTION**……………………………………………………………… 1

**I.**   ***Res Judicata* Revisited**……..………………………………………2

**II.**   **Bankruptcy and Abstention**………………………………………….. 2

        **A.  Related-to Jurisdiction**……………………………………... 2

        **B.  Abstention**………………………………………………… 4

**III.**   **Joinder and Diversity Issues**………………………………………... 7

        **A.  Fraudulent Joinder**………………………………………... 7

        **B.  Rule 21 Severance is Inappropriate in Removal Context**…………… 9

        **C.  Fraudulent Misjoinder is Not the Law**……………………….. 10

        **D.  No Hearing is Necessary**…………………………………… 10

**CONCLUSION**……………………………………………………… 12

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

4

**CASES**

5

*Allstate Ins. Co. v. Tucknott Electric Co., Inc.*, 2014 WL 5408324, *3 (N.D. Ca. 2014)
...................................................................................................................................- 6 -

*Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995)
...................................................................................................................................- 6 -

*Blasco v. Atrium Medical Corp.*, 2014 WL 12691051, *4 (N.D. Cal. 2014)
.................................................................................................................................- 11 -

*Carrera v. Johnson & Johnson*, 2019 WL 2499187, at *3 (E.D. Cal. June 17, 2019)
...................................................................................................................................- 4 -

*City of Hollywood Firefighters Pen. Sys. v. Wells Fargo & Co. et. al.*, 2024 WL 2868149, *3
(N.D. Ca. 2024)
...................................................................................................................................- 5 -

*County of Multnomah v. Purdue Pharma L.P. et. al.,* 2018 WL 10604348, *5 (D. Ore. 2018)
.................................................................................................................................- 10 -

*Cuviello v. Feld Ent. Inc.*, 304 F.R.D. 585, 588 (N.D. Cal 2015)
.................................................................................................................................- 10 -

*Eads v. Heritage Enterprises, Inc.*, 787 N.E.2d 771, 775 (Ill. 2003)
...................................................................................................................................- 8 -

*Electronic Frontier Found. v. CIA*, 2012 WL 1123529, *1 (N.D. Cal. 2012)
...................................................................................................................................- 1 -

*Fresh and Best Produce, Inc. v. Oaktown Ventures, Inc.*, 2017 WL 2533663, *2 (N.D. Ca. 2017)
.................................................................................................................................- 12 -

*Goodin v. Vendley*, 356 F.Supp.3d 935, 944 (N.D. Ca. 2018)
................................................................................................................................ - 5-6 -

*Hampton v. Insys Therapeutics, Inc.*, 319 F.Supp.3d 1204, 1215 (D. Ariz. 2018)
.................................................................................................................................- 10 -

*In re Barker*, 839 F.3d 1189, 1191 (9th Cir. 2016)
...................................................................................................................................- 3 -

*In re Osborne*, 76 F.3d 306, 311 (9th Cir. 1996)
...................................................................................................................................- 3 -

*In re World Solar Corp.,* 81 B.R. 603, 612 (Bankr. S.D. Cal. 1988)
...................................................................................................................................- 7 -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3
4
*JW Pharma Corp. v. Michael Kahn & Prsim Pharma Co., Ltd.*, 2013 WL 12125751, *1 (C.D. Cal. 2013)

5
............................................................................................................................- 10 -

6
*JT Assocs. LLC v. Fairfield Dev. LP*, 2016 WL 1252612, *2-3 (N.D. Cal. 2016)

7
............................................................................................................................- 11 -

*Kaighn v. Nat'l Life of Vt.*, 2003 WL 173863, *1 (N.D. Cal. 2003)(Breyer, J.)

8
............................................................................................................- 8,9 -

9
*Lopez v. Pfeffer*, 2013 WL 5367723, *5 (N.D. Cal. 2013)

............................................................................................................................- 10 -
10

*Nam Soon Jeon v. Island Colony Partners*, 892 F.Supp.2d 1234, 1237 (D. Hawaii 2012)
11
............................................................................................................................- 10 -

12
*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016)

............................................................................................................................- 11 -
13

*Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 274 (9th Cir. 1980)
14
............................................................................................................................- 10 -

15
*Springer v. Ernst & Young LLP*, 2005 WL 1566554, *7 (N.D. Ca. 2005)

............................................................................................................................- 2,3 -
16
*St. Clair County v. McKinsey et al.*, Case. No. 3:21-cv-00251 (S.D. Il. 2021)

17
............................................................................................................................- 13 -

**STATUTES**
18

Ill Sup. Ct. R. 384 ...................................................................................................- 7 -
19

55 ILCS 5/3-9005(a)(1) .............................................................................................- 2 -
20

735 ILCS 5/13-226 ...................................................................................................- 2 -
21

735 ILCS 5/22-622 ...................................................................................................- 7,8 -
22

28 U.S.C. § 1452(a) ...................................................................................................- 2 -
23

28 U.S.C.A. § 1332...................................................................................................- 10 -
24

Fed. R. Civ. P. 21 ...................................................................................................- 9,10
25

26

27

28

1

**INTRODUCTION**

2       Plaintiffs St. Clair County and Madison County, Illinois, submit this reply in support of

3   their motion for remand or abstention, and to address McKinsey's additional argumentation that

4   its *res judicata* motion to dismiss should be decided before this current motion to remand.

5       **I.      Res Judicata Revisited**

6       This Court may only act if it has subject matter jurisdiction, and this Court has previously

7   indicated its intent to decide pending remand motions now. The Court's briefing schedule

8   nevertheless afforded McKinsey the opportunity to argue that "the Court would be permitted to

9   forego decision on the remand motions proceed immediately to decide McKinsey's motion to

10  dismiss."  Dkt. 716. The response briefing does not contain a compelling reason for this Court to

11  do so, and this Court should stay the course and decide the remand motions now.

12      The *only* benefit McKinsey cites in favor of first deciding the *res judicata* motion is

13  efficiency. McKinsey titled Section III.A.2 of its brief "Dismissal on *Res Judicata* Grounds Is the

14  Most Efficient Procedure." Resp. at 9. McKinsey presumes an outcome that is by no means

15  obvious: the relevant argument is not whether *dismissing* a case is more efficient than transferring

16  it to another court (it always is), it is instead whether *deciding* a motion to dismiss is more efficient

17  than remanding the case. McKinsey ignores the fact that this Court may decide the *res judicata*

18  motion in the Illinois plaintiff's favor. In that case, the Court would still have this pending motion

19  to remand to decide. And even if McKinsey wins its *res judicata* motion to dismiss before this

20  Court, there is still the risk of an inconsistent (and imminent) ruling on this same issue of law from

21  the Illinois state court overseeing parallel litigation. Instead, this Court should remand these cases

22  now based on its lack of subject matter jurisdiction, and be rid of them, while at the same time

23  transferring this case to a court where the same questions of state law raised by McKinsey's *res*

24  *judicata* motion are *already pending*.

25      That is the most efficient outcome in this case – because of the parallel state court

26  proceedings against McKinsey's co-conspirators. Regardless, efficiency alone is not a reason to

27  defer deciding the motions to remand. The issue of subject matter jurisdiction must first be

28  addressed. *Springer v. Ernst & Young LLP*, 2005 WL 1566554, at *7 (N.D. Ca. 2005)("In light of

1  the Court's familiarity with the NextCard securities fraud action and a number of related actions,

2  judicial efficiency and economy would have argued strongly for keeping the case here. However,

3  such considerations cannot confer subject matter jurisdiction where none otherwise exists.").

4    Lastly, McKinsey argues that the Illinois Plaintiffs have made "a key concession on

5  McKinsey's *Res Judicata* Motion" by "invoking the police power." Not so: the Illinois plaintiffs

6  maintain that *consistent with Illinois state law*, their ability to bring public nuisance claims was

7  not affected by McKinsey's settlement with the attorneys general. *See* 55 ILCS 5/3-9005(a)(1)

8  (conferring on States Attorneys the authority to bring suit on behalf of counties); 735 ILCS 5/13-

9  226 (concerning the rights of Illinois counties to bring public nuisance claims relating to opioid

10 crisis). Illinois state law is the subject of the *res judicata* motion. In their motion to remand, the

11 Illinois Plaintiffs invoked a *federal* statute that deprives this court of subject-matter jurisdiction.

12 That plain text of the federal statute – 28 USC 1452(a) – makes clear its application to local

13 governments, and presumes that those entities may exercise a "police power" within the meaning

14 of the federal statute, and without reference to state law. There is no contradiction, no "key

15 concession." In any event, this issue is more appropriate for determination by the state court

16 already faced with these issues in the parallel proceeding in state court.

17    **II.    Bankruptcy and Abstention**

18    McKinsey seeks to invoke *this* Court's bankruptcy jurisdiction based on a bankruptcy

19 proceeding in the Southern District of New York. That it is not seeking transfer of these cases to

20 the bankruptcy court itself give the lie to its arguments regarding "related-to" jurisdiction. *See*

21 *Springer v. Ernst & Young LLP*, 2005 WL at *3. ("Because E&Y removed the actions on the basis

22 of 'related to' jurisdiction, it appears the matter should have been referred to the bankruptcy court

23 at the time of removal."). Plaintiffs' claims do not satisfy the test for related-to jurisdiction in the

24 Ninth Circuit.

25    **A.  Related to Jurisdiction**

26    A proof of claim is a requirement in bankruptcy proceedings. Without one, a potential

27 creditor cannot assert any claims against any debtor. *In re Barker*, 839 F.3d 1189, 1191 (9th Cir.

28 2016)("If a creditor wishes to participate in the distribution of a debtor's assets under a Chapter 13

1  plan, it must timely file a proof of claim."). McKinsey acknowledges its failure to file any proof

2  of claims of any nature in Purdue's bankruptcy proceedings. And it does not argue it should be

3  afforded relief from the bar date in the Purdue bankruptcy that expired years ago. Accordingly,

4  McKinsey has no claim against Purdue for indemnification based on the contractual provisions of

5  its agreement with Purdue in 2004. This is especially true given that Purdue's bankruptcy is one

6  seeking reorganization, not liquidation. *In re Osborne*, 76 F.3d 306, 311 (9th Cir. 1996)("[A]ll

7  unsecured creditors seeking payment under a Chapter 13 plan must file their claims on a timely

8  basis so that the efficacy of the plan can be determined in light of the debtor's assets, debts, and

9  foreseeable earnings.")

10       Moreover, McKinsey's settlements with the attorney generals specifically *relinquishes* any

11  indemnification rights it might have had against Purdue *or any other opioid client*. *See* Final

12  Consent Order and Judgment, Para. V.3, Pg. 14 ("McKinsey will not seek indemnification from

13  any entity with respect to this Judgment.").[1]

14       In any event, any indemnification claim that might survive McKinsey's failure to file a

15  proof of claim is still insufficient to confer "related to" jurisdiction. *Springer*, 2005 WL at *5

16  ("While E&Y and NextCard are alleged to be joint tortfeasors with respect to the alleged fraud

17  against Plaintiffs, the instant actions cannot have any direct effect on the bankruptcy. In the words

18  of the *Pacor* court, the instant actions are at most "precursors" to eventual third-party claims that

19  E&Y might assert against NextCard in the event E&Y is found liable here."); *accord Carrera v.

20  Johnson & Johnson*, 2019 WL 2499187, at *3 (E.D. Cal. June 17, 2019). Here, separate litigation

21  would be necessary to establish the certainty of McKinsey's purported indemnification claims, if

22  for no other reason than the debtor would very likely raise the failure to file a proof of claim as a

23  defense to any indemnification claim brought by McKinsey. McKinsey also points to Connecticut

24  law to argue that their indemnification claim has not even *accrued* yet, because "the first moment

25  in time when an indemnitee can successfully maintain an action… is when liability is incurred,"

26  which of course has not happened: no court has yet found McKinsey liable for the claims asserted

27  
28  [1] *See h*https://ag.ny.gov/sites/default/files/final_new_york_mckinsey_consent_judgment.pdf.

1    by plaintiffs. Resp. at 20, n. 5 (emphasis in original). Under this districts' interpretation of Ninth

2    Circuit law adopting the *Pacor* decision, McKinsey's indemnification arguments cannot survive.

3         McKinsey ignores all of this, and instead directs the Court's attention to proofs of claim

4    that the *plaintiffs* filed against Purdue, noting that the Illinois and New York plaintiffs filed proofs

5    for "nearly $5 billion in the Purdue." Resp. at 14. It argues that any recoveries from McKinsey

6    would risk double-recovery, and "any recovery that Plaintiffs obtain from McKinsey would reduce

7    the amount owed by the Purdue bankruptcy estate." Resp. at 15. This assumes, however, that the

8    Illinois and New York plaintiffs would themselves receive the full value of their claims – 100 cents

9    on the dollar – as unsecured creditors against Purdue. Under the previous plan of reorganization,

10   the plaintiffs were to receive nowhere near that amount. McKinsey's setoff arguments therefore

11   could only *potentially* affect the debtor's estate *if* the debtor pays plaintiffs' claims in full. Given

12   the size of the total claims asserted against Purdue (over $140 *trillion*), the prospect of double-

13   recovery is an economic impossibility. Bkr. Dkt. #2983, Pg. 25. Or, more to the point, it is

14   inconceivable.

15        Finally, McKinsey argues that *Purdue* "could" bring "future" claims against McKinsey

16   which "may" also affect the bankruptcy estate. Resp. at 20. McKinsey cites a proposed complaint

17   filed by the UCC in the Purdue case against the Sackler defendants that discusses McKinsey but

18   does not name McKinsey as a Defendant. Resp. at 21. But *Purdue v. McKinsey* is merely

19   theoretical. And such a case brought by a *debtor* (or the UCC acting on behalf of the estate) has a

20   much clearer nexus to bankruptcy jurisdiction than does *this* lawsuit between two non-debtors.

21                           **B.  Abstention**

22        Mandatory abstention is required where there is a parallel proceeding occurring in state

23   court. McKinsey does not disagree; it merely states that the St. Clair County lawsuit against

24   Publicis and other of McKinsey's co-conspirators is not a parallel proceeding because it is not

25   named as a defendant in those state court proceedings. Resp. at 25. But Plaintiffs' state court

26   lawsuit against McKinsey's co-conspirators specifically concerns their work with McKinsey and

27   McKinsey's clients on the same project to achieve the same opioids sales maximization ends that

28   this Court has already held may constitute a basis of a concerted action claim. *See Order,* Doc. 710

1   Pg. 28 ("McKinsey and clients clearly had an agreement, and it can easily be inferred that the

2   object of this agreement was to increase the manufacturer's sales of opioids."). The parallel state

3   court proceedings allege that Defendants Publicis, ZS Associates, and Practice Fusion worked *with*

4   *McKinsey* in furtherance of the same agreement, with the same clients, and using the same

5   unlawful means. The parallel state court even makes reference to *this* proceeding, and states that

6   the only reason McKinsey was not named in the state court proceeding is because McKinsey was

7   previously named here. *See* Ex. B. to Declaration of David Cates, Para. 9 ("McKinsey… is another

8   third party provider, and is the subject of ongoing litigation regarding its own involvement in the

9   opioid crisis. As will be seen, Defendants worked intimately with McKinsey and McKinsey's

10  clients on the same efforts and projects to maximize the volume of opioids sold in the United

11  States, and did so for decades.") and accompanying Note 5.

12      McKinsey points out that it is not a party to the state court proceedings (Resp. at 24),

13  McKinsey's status as a named defendant in the state court action is irrelevant. "Exact parallelism

14  is not required; it is enough if the two proceedings are substantially similar." *City of Hollywood*

15  *Firefighters Pen. Sys. v. Wells Fargo & Co. et. al.*, 2024 WL 2868149, *3 (N.D. Cal. 2024)(cleaned

16  up). "Proceedings are substantially similar when "substantially the same parties are

17  contemporaneously litigating substantially the same issues in another forum." *Goodin v. Vendley*,

18  356 F.Supp.3d 935, 944 (N.D. Ca. 2018). But exact identity of the parties of both the state and

19  federal actions is *not* required. *Allstate Ins. Co. v. Tucknott Electric Co., Inc.*, 2014 WL 5408324,

20  *3 (N.D. Ca. 2014). Instead, the "Ninth Circuit construes parallel actions liberally." *Keown v.*

21  *Tudor Ins. Co.*, 621 F.Supp.2d 1025, 1037 (D. Haw. 2008). "Underlying state actions need not

22  involve the same parties nor the same issues to be considered parallel. It is enough that the state

23  proceedings arise out of the same factual circumstances." *Id.* (citing *Am. Nat'l Fire Ins. Co. v.*

24  *Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995), *overruled on other grounds*, *Gov't Employees*

25  *Inc. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

26      McKinsey argues that the state court lawsuit would not "resolve all issues… against

27  McKinsey before this Court." But the *only* issue currently before this Court relating to McKinsey's

28  liability to the Illinois plaintiffs is the motion to dismiss based on *res judicata*, which is *precisely*

1    the same issue that is to be resolved by the state court in the parallel litigation, where the same

2    argument – that Illinois subdivision claims are released as part of a settlement with the attorney

3    general – is currently being litigated. Indeed, on July 23, 2024, the Illinois Attorney General's

4    Office filed a position paper in the parallel state court proceeding opining on the *same issue*

5    currently to be decided by this Court in McKinsey's *res judicata* motion to dismiss. Argument is

6    set for August 27 at 8:45a.m. By contrast, the Illinois Attorney General has not intervened in this

7    litigation on the same issue. Given the presence of all relevant parties to *McKinsey's* Consent

8    Judgement in the parallel proceedings in state court, comity demands this Court's abstention from

9    deciding state law issues relevant to McKinsey's pending *res judicata* motion to dismiss.

10       McKinsey's authority on mandatory abstention is clearly distinguishable. Neither case was

11   decided in the context of removal. Nor did either involve bankruptcy jurisdiction; the cases instead

12   involved abstention under the Declaratory Judgment Act and in the ERISA context. *Evanston Ins.*

13   *Co.* was a federal diversity action brought by an insurer seeking a declaration that the relevant

14   insurance policy did not require it defend the underlying state court lawsuits brought against the

15   insureds alleging legal malpractice. *Evanston Ins. Co.*, 2014 WL 4715879, *1 (W.D. Wa. 2014).

16   Here, by contrast, both the McKinsey and Publicis lawsuits seek a determination for liability under

17   Illinois state law that both are members of the same conspiracy and engaged in concerted action

18   together that resulted in the same harms to the same plaintiff. Indeed, if this case is remanded, the

19   Publicis action would constitute a related case under Ill. Sup. Ct. R. 384.

20       Finally, McKinsey argues that Illinois plaintiffs cannot show timely adjudication in state

21   court. Initially, plaintiffs observe that the release and res judicata issues have to-date been swiftly

22   addressed in the state court proceedings, with a hearing on the matter originally set for July 30,

23   and reset for August 27, 2024 in light of the filing of the AG's position paper. The state court has

24   shown every ability to strap on its running shoes and timely adjudicate this dispute. Moreover, the

25   issue of timely adjudication is to be analyzed in reference to *the debtor's efforts to exit bankruptcy*.

26   *In re World Solar Corp.,* 81 B.R. 603, 612 (Bankr. S.D. Cal. 1988) ("In deciding whether a matter

27   may be timely adjudicated, perhaps the single most important factor is the nature of the underlying

28   chapter proceeding."). McKinsey makes no analysis of timely adjudication of Plaintiffs' lawsuits

1   against non-debtors in the context of the Purdue bankruptcy, which has now itself been pending

2   for nearly half a decade.

3         **III.**    **Diversity and Joinder Issues**

4             **A.  Fraudulent Joinder**

5         St. Clair County did not file an affidavit from a medical professional attesting to the case's

6   merit, which is a statutory pre-requisite to filing a medical malpractice claim in Illinois, as

7   McKinsey has observed. Resp. at 30. That is because the statutory pre-requisites to filing a medical

8   malpractice claim in Illinois are inapposite to this case. Here, Dr. Bashir is alleged to have

9   contributed to a public nuisance: the same public nuisance that McKinsey and McKinsey's clients

10   contributed to specifically by targeting doctors like Dr. Bashir.

11         The pre-suit requirements set forth in 735 ILCS 5/22-622 do not apply to public nuisance

12   claims brought by a governmental entity. Instead, they apply to personal injury claims brought by

13   individual plaintiffs who received improper individual medical care from their healthcare provider.

14   Consistent with this, *all* of McKinsey's authorities on this topic involve suits by individual

15   plaintiffs claiming injury from care provided by their doctor. Resp. at 30-31. But by its own terms,

16   the statute applies to actions "in which plaintiff seeks damages for injuries or death." 735 ILCS

17   5/22-622(a). But the plaintiff counties are seeking an abatement remedy for their public nuisance

18   claims – not damages. Though the plaintiff counties are juridical entities capable of bringing suit,

19   they are incorporeal, and incapable of suffering personal injury or being killed.

20         McKinsey's reliance on the pre-filing requirements of 735 ILCS 5/22-622 may be creative,

21   but the statute is simply inapposite to the subdivision Plaintiffs' claims. *See Eads v. Heritage*

22   *Enterprises, Inc.*, 787 N.E.2d 771, 775 (Ill. 2003)("The Healing Arts Malpractice Act… however,

23   does not apply to all civil actions."). Very simply, St. Clair and Madison Counties have not

24   received medical treatment from Dr. Bashir, and the claims asserted by Plaintiffs do not arise out

25   of medical treatment that Dr. Bashir has provided *to the plaintiffs*. Indeed, the Illinois plaintiffs do

26   not allege that they were in privity with Dr. Bashir in any way, making an attempt by the county

27   plaintiffs to assert any kind of medical malpractice claims against Dr. Bashir an impossibility.

28   Lastly, because the General Assembly enacted Section 2-622 "in response to what was

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR REMAND  OR ABSTENTION    - 7 -

1    perceived… to be a crisis in the area of medical malpractice litigation," which the counties' claims

2    related to the opioid crisis do not implicate, the statute does not apply to the instant case. *Eads*,

3    787 N.E. 2d at 777.

4           Finally, McKinsey argues a failure to file the Section 2-622 affidavit means that the claims

5    cannot survive dismissal. Resp. at 31 (citing *Chapman*, 2007 WL 1655799, at *5 ("Under Illinois

6    law,   if   Section   2-622's   filing   requirement   has   not   been   satisfied,   *dismissal   is*

7    *mandatory*.)(emphasis added)). But that is insufficient for purposes of fraudulent joinder analysis,

8    which requires a showing that Plaintiffs "could not possibly recover against the party whose

9    joinder is questioned." *Kaighn v. Nat'l Life of Vt.*, 2003 WL 173863, *1 (N.D. Cal. 2003)(Breyer,

10   J.).  Indeed, t*he same sentence McKinsey quotes* continues on to say "…*but courts have discretion*

11   *to dismiss with or without leave to amend*." *Id*. (emphasis added). And the *Chapman* court granted

12   such leave, stating that "Illinois courts have held that when a plaintiff fails to attach a certificate

13   and report, then a sound exercise of discretion mandates that the plaintiff be at least afforded an

14   opportunity to amend her complaint to comply with Section 2-622 before her action is dismissed

15   with prejudice." *Id*. Accordingly, any purported violation of Section 2-622 is insufficient to

16   establish  that  plaintiffs  obviously  cannot  maintain  a  cause  of  action  against  a  non-diverse

17   defendant for purposes of fraudulent joinder.

18          Nor are the claims against Dr. Bashir time-barred. The time-bar arguments are again based

19   on the misplaced assumption that the counties are asserting medical malpractice claims against Dr.

20   Bashir, which it is not. Resp. at 32-33. For the claims that the counties *have* asserted, McKinsey

21   does not argue that limitations have run.

22          McKinsey posits that limitations against Dr. Bashir began to run in 2015 because of a news

23   article describing the creation of a statewide opioid database to monitor physician prescription

24   rates. Resp. at 32. But McKinsey does not argue that *Dr. Bashir's* conduct occurred on or before

25   that date, or that plaintiffs were on notice of claims against *Dr. Bashir* in 2015*.* Instead, McKinsey

26   posits that the local newspaper article should have instead led the county plaintiffs to undertake

27   the same investigative responsibilities regarding prescriber conduct that is already regulated by a

28   separate state agency, the Illinois Department of Financial & Professional Regulation, an action

1   without any precedent cited by McKinsey, nor identified by plaintiffs. *See* Resp. at 32-33 ("The

2   Illinois Plaintiffs should have inquired further into the prescription practices of their county doctors

3   in 2015 at the latest.").

4       Under these circumstances, it cannot be said that an Illinois court "could not possibly"

5   allow plaintiffs to recover from Dr. Bashir. *Kaighn*, 2003 WL at *1.

6                    **B.  Rule 21 Severance in Inappropriate in the Removal Context**

7

8       McKinsey argues Dr. Bashir should be severed by this court in order to create federal

9   diversity jurisdiction for a case that was originally filed in state court. This precise effort – to

10  dismiss a healthcare provider defendant in opioids litigation as a dispensable party under Rule 21

11  in order to create federal jurisdiction in the removal context – has already failed in the Ninth

12  Circuit. "There is, of course, a fundamental difference between <u>retaining</u> jurisdiction and <u>creating</u>

13  or <u>achieving</u> it." *County of Multnomah v. Purdue Pharma L.P. et. al.,* 2018 WL 10604348, *5 (D.

14  Ore. 2018)(emphasis in original). Accordingly, "this Court lacks the jurisdiction to consider

15  dropping the [healthcare provider] Defendants pursuant to Rule 21… in order to manufacture

16  federal jurisdiction that is otherwise absent." *Id*; *See also Lopez v. Pfeffer*, 2013 WL 5367723, *5

17  (N.D. Cal. 2013); *Hampton v. Insys Therapeutics, Inc.*, 319 F.Supp.3d 1204, 1215 (D. Ariz.

18  2018)(noting that "Courts have flatly rejected [using Rule 21 severance in the removal context] as

19  relying on the same confounding circular logic by which a removing defendant asks the court to

20  act without jurisdiction as a means to create jurisdiction.")

21

22

23      McKinsey's authorities are consistent with the holding in the *Multnomah* decision. It

24  argues that "courts routinely exercise their discretion to drop dispensable nondiverse parties,"

25  (Resp. at 33), but that is only true for cases originally filed in federal court.  *All* cases McKinsey

26  cites were filed in federal court. Resp. at 33; *Cuviello v. Feld Ent. Inc.*, 304 F.R.D. 585, 588 (N.D.

27  Cal 2015)("Plaintiff… filed his initial Complaint in federal court."); *Sams v. Beech Aircraft Corp.*,

28

625 F.2d 273, 274 (9th Cir. 1980)("Although the complaint alleged diversity jurisdiction under 28 U.S.C. 1332…"); *see also Nam Soon Jeon v. Island Colony Partners*, 892 F.Supp.2d 1234, 1237 (D. Haw. 2012)(same); *JW Pharma Corp. v. Michael Kahn & Prsim Pharma Co., Ltd.*, 2013 WL 12125751, *1 (C.D. Cal. 2013)(same). *None* were decided in the context of removal.

All authority from this district, and overwhelming authority from courts throughout the Ninth Circuit, however, have rejected calls to apply Rule 21 in the context of removed cases. Accordingly, McKinsey's inquiry into whether Dr. Bashir is or isn't an indispensable party (Resp. at 33-36) is surplusage.

### C.  Fraudulent Misjoinder is Not the Law

The fraudulent misjoinder arguments fail for much the same reasons its Rule 21 severance argument fails. McKinsey has identified two district court cases within the Ninth Circuit that have applied the doctrine of fraudulent misjoinder: the *Sutton* case from the Central District of California, and the *Greene* case from the District of Nevada. Resp. at 36. The Northern District of California, however, has resoundingly rejected the doctrine, generally, and the decisions in *Sutton* and *Greene*, specifically. *See Blasco v. Atrium Medical Corp.*, 2014 WL 12691051, *4 (N.D. Cal. 2014)(citing *Sutton* and stating "[g]iven the lack of caselaw applying the doctrine of fraudulent misjoinder and the fact that the Ninth Circuit itself has not adopted the doctrine… this Court declines to hold that fraudulent misjoinder is the law in the Ninth Circuit); *JT Assocs. LLC v. Fairfield Dev. LP*, 2016 WL 1252612, *2-3 (N.D. Cal. 2016)(rejecting *Sutton* and *Greene* and stating that [i]t is well established that § 1441 must be narrowly construed and that any doubts must be resolved in favor of remand. Fraudulent misjoinder flips this maxim on its head by making cases removeable that by § 1441's plain terms should not be.")(internal citations omitted).

### D.  No Hearing is Necessary

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR REMAND  OR ABSTENTION                    - 10 -

McKinsey requests a hearing on Dr. Bashir's citizenship because "merely pleading an address is insufficient to show domicile, as pleadings are not evidence." Resp. at 37. McKinsey is confused, however, on whose burden of proof it is to establish jurisdiction: "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016). It is *McKinsey*, not the Illinois plaintiffs, who seeks to invoke this court's jurisdiction.

Moreover, the Illinois plaintiffs attached as Exhibit A to its declaration in support of its motion to remand an Affidavit of Process Server that was filed with in state court stating that Dr. Bashir was found and served at the Illinois address, which is indicated as her residence. That affidavit is not a pleading. Instead, it is a sworn statement of the process server, signed in front of a notary, indicating Dr. Bashir was served at her residence. McKinsey argues that the affidavit of service "proves only that the courier effectuated service at a location in Illinois." Resp. at 38. McKinsey ignores the plain fact, however, that the process server identified that location as a place to locate the Defendant *because it was her domicile*. The process server went to the address in St. Clair County to serve Dr. Bashir because public records indicated she then owned that house. She still does.[2]

In addition, Dr. Bashir was undisputedly practicing in Illinois. McKinsey's observation that Dr. Bashir also practiced in the neighboring state of Missouri is not inconsistent with her domicile in Illinois. Dr. Bashir's residence where she was served in St. Clair County, Illinois is about a twenty-minute drive from downtown St. Louis, Missouri.

It is McKinsey's burden to prove Dr. Bashir is not an Illinois resident, and its observation that Dr. Bashir also works twenty minutes across the Mississippi River in Missouri is insufficient

---

[2] *See* St. Clair County Property Tax Inquiry, *available at*: https://stclairil.devnetwedge.com

to do so. *See Fresh and Best Produce, Inc. v. Oaktown Ventures, Inc.*, 2017 WL 2533663, *2 (N.D. Cal. 2017) ("Counsel's statement that a website indicates Hackett is the "Chef Owner" of Jack's Oyster Bar in Oakland, California likewise does not establish that Hackett is domiciled in California.").

Finally, McKinsey's request for a hearing on Dr. Bashir's domicile has already been denied in this litigation by the transferor court prior to transfer into this MDL. *See* Doc. 60, Order, *St. Clair County v. McKinsey et al.*, Case. No. 3:21-cv-00251 (S.D. Il. 2021)("For lack of good cause shown, Defendant McKinsey's "Motion for Leave to… Conduct Limited Jurisdictional Discovery, and for and Evidentiary Hearing to Determine Physician Defendant's Domicile" is DENIED as the requested relief is not necessary for this Court's determination of the pending Motion to Remand."). For the reasons above, this Court should not disturb that determination.

## CONCLUSION

Illinois Plaintiffs' lawsuits ought to be remanded so that they may join parallel litigation currently pending where this case was originally filed, and where that parallel lawsuit is imminently due to weigh in on the *same questions of state law* regarding the scope of AG ability and intent to release subdivision claims as McKinsey has asked this Court to decide. Remanding this case now assures consistent application of state law to all similarly-situated defendants. If this Court were to instead keep the cases and issue a subsequent ruling on the *res judicata* motion to dismiss, it risks being contrasted with an inconsistent ruling from and Illinois court shortly thereafter. Remand avoids the risk, and is the stuff of comity.

1   DATED:  July 29, 2024                    Respectfully submitted,

2

3

4                                            /s/ Ann Callis

5

6                                            HOLLAND LAW FIRM
                                             ANN CALLIS
                                             ERIC D. HOLLAND
7                                            ROBERT J.. EVOLA
                                             211 N. Broadway, Suite 2625
8                                            St. Louis, MO
                                             Telephone:  314-241-8111
9                                            Facsimile: 314-241-5554
                                             acallis@hollandtriallawyers.com
10                                           eholland@hollandtriallawyers.com
                                             revola@hollandtriallawyers.com
11
                                             CATES LAW FIRM
12                                           DAVID CATES
                                             216 West Point Dr., Suite A
13                                           Swansea, IL 62226
                                             Telephone: 618-277-3644
14                                           Facsimile: 618-277-7882
                                             Email: dcates@cateslaw.com
15
                                             *Counsel for Plaintiffs St. Clair County and*
16                                           *Madison County, Illinois*

17

18

19

20

21

22

23

24

25

26

27

28