

EXHIBIT

Rosic/lo-1

## MASTER CONSULTING AGREEMENT

**THIS AGREEMENT**, effective as of March 1, 2004 ("Effective Date"), is made and entered into between **MCKINSEY & COMPANY, INC. UNITED STATES ("McKinsey")** and **PURDUE PHARMA L.P. ("Purdue")**(the "Agreement").

The parties hereby agree as follows:

1. ASSOCIATED COMPANY(IES). With respect to either party, the term "Associated Company(ies)" means any person, firm, trust, partnership, corporation, company or other entity that directly or indirectly controls, is controlled by or is under common control with, such party. The terms "control(s)" and "controlled" mean ownership of fifty percent (50%) or more, including ownership by trusts with substantially the same beneficial interests, of the voting and equity rights of such person, firm, trust, partnership, corporation, company or other entity or combination thereof or the power to direct the management of such person, firm, trust, corporation or other entity or combination thereof.

2. SERVICES; STATEMENT OF SERVICES. The services subject to the terms of this Agreement will be as described in proposals submitted by McKinsey and countersigned by an authorized representative of Purdue or as otherwise agreed in statements of services executed by authorized representatives of both parties (each a "Statement of Services"). Each Statement of Services will reference this Agreement and be incorporated herein by reference and will set forth a description of the services and deliverables to be provided ("Services"), the McKinsey personnel who will perform the Services, a timeframe for performance, and the compensation to be paid for the Services. McKinsey will perform all Services in accordance with this Agreement, the applicable Statement of Services and prevailing professional standards applicable to the management consulting profession, and to the reasonable satisfaction of Purdue. Purdue will reasonably cooperate with McKinsey in order to facilitate McKinsey's performance of the Services, including without limitation providing McKinsey with timely access to relevant data, information and personnel.

3. COMPENSATION; LIMITATIONS.

A. Subject to the terms and conditions of this Agreement (including but not limited to Section 2 above), Purdue will compensate McKinsey for its professional fees and expenses in connection with the Services, as and to the extent set forth herein and in the relevant Statement of Services. All travel will be according to the attached guidelines established by McKinsey. Unless otherwise specified in the applicable Statement of Services, Purdue will be invoiced monthly for professional fees and expenses in connection with the Services. Each invoice will reference McKinsey's tax identification number and the applicable Statement of Services. Invoices for professional fees will include a statement of the Services performed and amount due. Invoices for expenses will include a break out of the expenses for which McKinsey seeks reimbursement into the following four categories: (i) food, travel and lodging, (ii) library, research and related support, (iii) report production and related expenses, and (iv) general administrative costs. Payment of all invoices is due within 30 days of receipt of each invoice, provided, however, (i) if Purdue disputes the nature or basis of any amounts contained in any invoice, Purdue will provide written notice to McKinsey setting forth the reason for the dispute, after which the parties will attempt in good faith to promptly resolve such dispute, and (ii) the time period set forth above for payment of the disputed amount of any invoice will be suspended until such dispute is resolved by the parties. Any amounts past due will bear simple interest at a rate of one half of one percent per month from the due date until the date of payment.

B. McKinsey is an independent contractor and not an agent, employee, joint venturer or partner of Purdue. McKinsey will pay, when due, salaries, wages and other forms of compensation or reimbursement and all applicable federal, state and local withholding taxes and unemployment taxes, as well as social security, state disability insurance, workers compensation and all other payroll charges payable to, or on

MCK-MDL2996-0281081

behalf of, McKinsey's personnel performing any Services hereunder. No life, casualty, or disability insurance, or health, retirement or any other employment benefits will be paid by Purdue to or for the benefit of McKinsey or its employees, and McKinsey waives any right to such insurance benefits.

## 4. CONFIDENTIALITY; INTELLECTUAL PROPERTY RIGHTS

A. Information disclosed pursuant to this Agreement, including, without limitation, information of third parties disclosed to McKinsey in connection with the performance of Services hereunder, and rights in and to intellectual property will be governed by the applicable terms of this Agreement and by the terms of that certain letter agreement between McKinsey and Purdue dated January 21, 2004 (the "Confidentiality & Intellectual Property Agreement"), which is hereby incorporated herein.

B. Each of the parties will keep confidential the terms of this Agreement and, except upon the express written consent of the other party, the fact that Purdue has retained McKinsey. Further, unless (but only to the extent) otherwise expressly stated in the applicable Statement of Services, McKinsey will not contact any third party on behalf of Purdue or any Associated Company of Purdue without the prior written approval of Purdue.

C. Performance under this Agreement may involve the exchange of certain information about individual persons which may include, without limitation, individually identifiable health information, employment information, insurance information, and family information (collectively, "Personal Information"). While, the parties do not expect that McKinsey will receive Personal Information in connection with the Services, all Personal Information will be transmitted, handled, stored, maintained, used, and destroyed in a manner that will preserve its confidentiality. The parties will not use or disclose Personal Information received pursuant to this Agreement for any purpose other than the performance of this Agreement.

## 5. INDEMNIFICATION.

A. Purdue hereby agrees to indemnify and hold harmless McKinsey and its Associated Companies and the directors, officers, stockholders, agents and employees of McKinsey and such Associated Companies (collectively, "McKinsey Indemnified Persons"), from and against all actions, proceedings and claims brought by third parties against Purdue and/or McKinsey or brought by Purdue against third parties, and all related liabilities, losses, damages, and expenses (including reasonable legal fees and disbursements of counsel, subject to Paragraph 5.E below ), joint or several (collectively "McKinsey Losses"), relating to or arising out of the Services. Purdue further agrees to reimburse McKinsey for reasonable legal fees and disbursements of counsel and the reasonable costs of McKinsey professional time in connection with any pending or threatened action, proceeding or claim ("Proceeding") brought by a third party against Purdue or by Purdue against a third party relating to or arising out of the Services or any other consulting services provided by McKinsey to Purdue between January 1, 2004 and February 28, 2004 in which McKinsey, in the reasonable opinion of McKinsey's counsel, is required to participate by law, regulation, rule, act or order of any governmental authority or agency, but in which McKinsey is not a party ("McKinsey Reimbursements"); provided, however, that (i) unless otherwise prohibited by law from doing so, McKinsey immediately notifies Purdue upon receiving notice of the requirement to participate in such Proceeding and in advance of any such participation, in order to provide Purdue with an opportunity to seek a protective order or other appropriate judicial or administrative relief to avoid or limit McKinsey's participation; and (ii) McKinsey reasonably cooperates with Purdue in seeking such protective order or other relief; and (iii) if, in the absence of a protective order, waiver or other judicial or administrative relief, McKinsey is nonetheless, in the reasonable opinion of McKinsey's counsel, compelled to participate in such Proceeding, McKinsey participates in such Proceeding only to the extent legally required to do so and, subject to the terms of the Confidentiality and Intellectual Property Agreement, will disclose only that portion of Confidential Information it is legally required to disclose in connection with such Proceeding and only to those individuals or entities to which it is

2

legally required to do so. Any delay or failure by McKinsey to notify Purdue of McKinsey's receipt of any notice of any requirement to participate in a Proceeding in accordance with the preceding sentence will not relieve Purdue from its reimbursement obligations thereunder unless and to the extent such delay or failure prejudices Purdue. Purdue will not, however, be liable under the foregoing indemnity or reimbursement obligations to the extent that any such McKinsey Losses or McKinsey Reimbursements are finally determined to have resulted from the gross negligence, willful misconduct, or bad faith of any McKinsey Indemnified Person.

B. McKinsey hereby agrees to indemnify and hold harmless Purdue and its Associated Companies and the directors, officers, stockholders, agents and employees of Purdue and such Associated Companies (collectively, "Purdue Indemnified Persons"), from and against all actions, proceedings, claims, liabilities, losses, damages, and expenses (including reasonable legal fees and disbursements of counsel, subject to Paragraph 5.E below), joint or several (collectively "Purdue Losses"), to the extent that any such Purdue Losses are finally determined to have resulted from any gross negligence, willful misconduct or bad faith by any McKinsey Indemnified Person, or any breach by any McKinsey Indemnified Party of McKinsey's obligations under Sections 4, 6.B or 8 of this Agreement. McKinsey will not, however, be liable under the foregoing indemnity obligation to the extent that any such Purdue Losses are finally determined to have resulted from the gross negligence, willful misconduct, or bad faith of any Purdue Indemnified Person.

C. Except to the extent provided in Paragraph 5.B. above, Purdue also agrees that no McKinsey Indemnified Person will have any liability (whether direct or indirect, in contract or in tort or otherwise) to Purdue or any person claiming through Purdue, including without limitation its owners, Associated Companies, security holders, or creditors, for any Purdue Losses suffered by Purdue or any such other person relating to or arising out of the Services or any other consulting services provided by McKinsey to Purdue between January 1, 2004 and February 28, 2004.

D. An indemnifying party will not be liable under this Section 5 for any settlement, compromise or consent to judgment (or for any related liabilities, losses, damages, and expenses) effected without its prior written consent. An indemnifying party may settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in which any McKinsey or Purdue Indemnified Person is or may be a party to such claim, action or proceeding provided that (1) the McKinsey or Purdue Indemnified Person consents in writing to such settlement, compromise or consent to entry of judgment, or (2) the indemnifying party gives such McKinsey or Purdue Indemnified Person reasonable prior written notice thereof and (a) the indemnifying party obtains an unconditional release of each McKinsey or Purdue Indemnified Person from all liability arising therefrom and (b) any such settlement, compromise or consent to judgment does not place any non-financial obligations on any McKinsey or Purdue Indemnified Person.

E. If any action is brought against any McKinsey or Purdue Indemnified Person in respect of which indemnity may be sought pursuant to the provisions of this Section 5, such McKinsey or Purdue Indemnified Person must promptly notify the indemnifying party in writing, and the indemnifying party will have the right to assume the defense of any such action with counsel of its own choosing and reasonably acceptable to the indemnified party. Any delay or failure by a McKinsey or Purdue Indemnified Person to notify an indemnifying party of any such action in accordance with this paragraph will not relieve the indemnifying party from liability hereunder unless and to the extent such delay or failure prejudices the indemnifying party. If the indemnifying party chooses to assume the defense of any such action, the McKinsey or Purdue Indemnified Person will reasonably cooperate with the indemnifying party in such defense. Any McKinsey or Purdue Indemnified Person will have the right to employ separate counsel in any such action and participate in the defense thereof, but the fees and expenses of such separate counsel will be at the expense of such McKinsey or Purdue Indemnified Person unless (a) the employment of such separate counsel has been specifically authorized by the indemnifying party in writing, (b) the indemnifying party has failed to assume such defense and to employ counsel, or (c) in such action there is, in the reasonable opinion of

3

MCK-MDL2996-0281081.000002

such separate counsel, a material conflict on any material issue between the position of the indemnifying party and the position of such McKinsey or Purdue Indemnified Person.

F. Each party acknowledges and agrees that its obligations hereunder will be in addition to any rights that any McKinsey or Purdue Indemnified Person may have at law or otherwise.

G. Any amounts payable under the foregoing indemnification provisions will be paid as such amounts are incurred, unless there is a genuine issue of fact as to whether the McKinsey or Purdue Indemnified Person is entitled to be indemnified under these provisions.

H. In no event will either party be liable to the other for any indirect, consequential, incidental or special damages (including without limitation lost profits) relating to or arising out of this Agreement even if such other party knew or should have known of the possibility of the same.

## 6. ACKNOWLEDGMENTS.

A. It is the long-standing practice of McKinsey to serve multiple clients within industries, including those with potentially opposing interests, as well as counter-parties in merger, acquisition and alliance transactions. McKinsey will maintain the confidentiality of Confidential Information (as such term is defined in the Confidentiality & Intellectual Property Agreement) in all such situations. Purdue acknowledges and agrees that McKinsey and its Associated Companies may have served, may currently be serving or may in the future serve other companies whose interests are adverse to those of Purdue, including parties with whom Purdue competes, has a commercial relationship or potential commercial relationship (e.g., suppliers, distributors), enters into competitive bidding situations and/or enters into or considers entering into merger, acquisition, divestiture, alliance or joint venture transactions. McKinsey acknowledges and agrees that nothing in this Section 6.A.will limit McKinsey's obligations under this Agreement including, without limitation, its obligations under Section 4 of this Agreement and under the Confidentiality & Intellectual Property Agreement incorporated herein pursuant to Section 4.

B. McKinsey acknowledges and agrees that this Agreement does not create any agency or employment relationship between Purdue and McKinsey, and accordingly in no event will McKinsey or its agents have any power or authority to bind Purdue or to enter into any agreement or incur any obligation on behalf of Purdue. McKinsey further acknowledges and agrees that Purdue will have final authority to make all decisions with respect to McKinsey contacting any third parties and/or entering into any agreement or obligation with any third party.

7. REQUIREMENTS ON PURDUE PREMISES.  While on Purdue's premises, McKinsey, its employees, representatives, contractors and agents will adhere to the standards of professional behavior applicable to the management consulting profession and will adhere to all Purdue security requirements furnished in writing by Purdue to McKinsey or clearly posted and applicable to all individuals (including, without limitation, Purdue employees, visitors and vendors) admitted to each Purdue location at which McKinsey performs Services hereunder, to the extent such requirements do not violate or conflict with McKinsey's professional policies and practices.

8. COMPLIANCE WITH LAWS. Each party represents that it will comply with all state, federal, and local laws, rules, regulations and orders applicable to this Agreement, the Services, or the personnel or entities performing the Services hereunder.

9. LIABILITY INSURANCE. Each party will, at its sole cost and expense, procure and maintain insurance or self insurance in the types and amounts reasonably anticipated to be sufficient to meet any obligations or liabilities arising hereunder, will provide the other party with a valid certificate of insurance upon request.

MCK-MDL2996-0281081.000003

10. NOTICES. All notices or demands contemplated by this Agreement will be in writing and will be delivered by nationally recognized courier service to the address of the respective party stated below or to such changed address as the party may have provided by notice. All notices will be effective on the date received.

To McKinsey:      McKinsey & Company, Inc. United States
                  3 Landmark Square, Suite 100
                  Stamford, Connecticut 06901-2595
                  Attention:   Robert L. Rosiello
                               Director


                  with a copy to:

                  McKinsey & Company, Inc. United States
                  55 East 52nd Street
                  New York, New York 10022
                  Attention:  General Counsel

To Purdue:        Purdue Pharma L.P.
                  One Stamford Forum
                  Stamford, CT  06901
                  Attention:   Michael Friedman
                               President, Chief Executive Officer

11. TERM; TERMINATION. This Agreement will commence on the Effective Date and continue until terminated by either party in accordance with this Section 11. Either party may terminate this Agreement or any Services hereunder with or without cause at any time effective upon written notice to the other. In the event of any termination hereunder, Purdue's sole responsibility with respect to professional fees and related expenses will be to pay, in accordance with the terms of Section 3 above, those professional fees earned and related expenses incurred through the effective date of termination. McKinsey and Purdue acknowledge and agree that McKinsey will refrain from providing support to any client (including but not limited to Purdue) in connection with a potential transaction if McKinsey determines that such client is likely to or does proceed to acquire another client on what McKinsey regards to be an unfriendly or hostile basis. Paragraph 3.B., Sections 4, 5, 6, 8, 9, 10, 12, 13 and 14, and this Section 11 will survive the completion or termination of any Services under this Agreement.

12. ASSIGNMENT. Neither party may assign, subcontract or delegate its rights or obligations under this Agreement to any person or entity without the written consent of the other party; provided, however, that consent to any assignment, subcontracting or delegation by either party to an Associated Company of such party will not be unreasonably withheld. This Agreement will inure to the benefit of and be binding on the successors and assigns of Purdue and McKinsey, provided, however, that no assignment will relieve either party of the performance of any accrued obligation that such party may have under this Agreement. Further, each party will be completely responsible for the satisfactory performance of all subcontracted or delegated Services or obligations, and each party acknowledges and agrees that the acts or omissions of its subcontractors or delegates will be deemed to be such party's acts or omissions with respect to the performance of any Service or obligation of such party hereunder.

13. SEVERABILITY; WAIVER. The provisions of this Agreement are severable. If any provision of this Agreement (or portion thereof) is held to be invalid, illegal or unenforceable, such provision (or portion thereof) will be deemed severed from this Agreement, and the balance of this Agreement will remain in full force and effect. No waiver of any term, provision or condition of this Agreement whether by

5

MCK-MDL2996-0281081.000004

conduct or otherwise in any one or more instances will be deemed to be or construed as a further or continuing waiver of any such term, provision or condition, or of any other term, provision or condition of this Agreement.

14. ENTIRE AGREEMENT. This Agreement, together with the Statements of Services and the Confidentiality & Intellectual Property Agreement, constitutes the final, complete and exclusive representation, understanding and agreement between the parties with respect to the subject matter hereof, and supercedes all prior or contemporaneous oral or written representations, understandings or agreements relating to this subject matter. This Agreement, any Statement of Services executed in accordance with this Agreement, the Confidentiality & Intellectual Property Agreement, and the rights and obligations set forth in each of the foregoing, cannot be modified, amended or waived, whether in whole or in part, except by a writing signed by both Purdue and McKinsey. In the event of a conflict between the terms of this Agreement (including the Confidentiality & Intellectual Property Agreement incorporated herein pursuant to Section 4.A hereof) and any Statement of Services, appendices, attachments, exhibits or purchase orders entered into between the parties, the terms of this Agreement will take precedence and control over any such documents, unless any such document expressly states that it or a provision therein will govern notwithstanding a contrary provision contained in this Agreement.

15. GOVERNING LAW; JURISDICTION. This agreement will be governed by and construed in accordance with the laws of the State of Connecticut without regard to conflicts of law principles. The parties agree to the jurisdiction of the Connecticut courts, both state and federal.

IN WITNESS WHEREOF, McKinsey and Purdue have duly executed this Agreement as of the Effective Date.

PURDUE PHARMA L.P.

By: _____

Name: Ronald D. Levine

Title: Vice President
       Corporate Planning


MCKINSEY & COMPANY, INC. UNITED STATES

By: _____

Name: Robert L. Rosiello

Title: Director


Attachment : McKinsey & Company, Inc. United States North American Travel and Entertainment Policy and Procedures dated June 11, 1999 and Revised Air Travel Policy dated October 25, 2001

6

MCK-MDL2996-0281081.000005

JAN 31 '02 13:03 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251          P.01/23

CONFIDENTIAL

# North American Travel and entertainment policy and procedures



June 11, 1999

MCK-MDL2996-0281081.000006

JAN 31 '02 13:04 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251        P.02/23

## FIRM TRAVEL AND ENTERTAINMENT PHILOSOPHY

Firm members spend significant time travelling. Consequently, travel policies affect personal effectiveness as well as existing and potential clients' perceptions about the Firm's professionalism. The Firm's transportation policy aspires to position its members as responsible professionals who make sensible tradeoffs between comfort and convenience on the one hand, and cost on the other.

The policies in this document cover Firm reimbursement for all ordinary, necessary, and reasonable travel expenses directly connected with the transaction of Firm business and seek to limit travel time and inconvenience while concurrently obtaining the best travel values. To ensure policies are followed, Firm members must make *all* Firm-related travel arrangements through Firm-designated agents who will ensure an understanding of specific policies and consistency across North American Firm offices.

The Firm wishes to ensure that the best interests of the client, its members, and Firm are safeguarded. It will provide and arrange necessary medical services, immunizations, or security required for international and domestic travel. It also tries to limit the number of key personnel travelling together, in order to reduce exposure to unforeseen events.

The Firm expects its members to live reasonably while travelling on Firm business. It authorizes high-quality travel services, but it limits excessive expenses and services, and **no one should gain monetarily as a result of Firm travel.** Cases of fraud or abuse of policy may result in disciplinary action, including termination. Since every situation cannot be anticipated, members are expected to exercise professionalism and good judgement when incurring travel expenses. Whenever possible, firm members should obtain management guidance or approval prior to making expenditures not specifically covered in these guidelines.

All travel expenses must be properly documented and substantiated in a timely manner. This is essential for the Firm to deduct these business expenses. It also aids the Firm in compiling important information for internal monitoring and control.

MCK-MDL2996-0281081.000007

## MCKINSEY & COMPANY'S TOP 10 TRAVEL RULES

**General**    1. Book all Firm travel with your local travel department

2. Provide a charge code for each booking

**Flights**    3. Book flights on preferred airlines

4. Do not double book, reserve back-to-back, throwaway or hidden city/joint beyond tickets as they violate ARC regulations and Firm policy (if you do not understand this terminology, call your travel department for clarification)

5. Return unused tickets in person or by certified registered mail within 60 days from issue date

**Hotels**    6. Cancel an unwanted hotel reservation through your travel department or directly – otherwise it becomes a personal expense (**Please be sure to obtain a cancellation number or a contact name when a reservation is cancelled**)

**Telephone calls**    7. Make telephone calls using a McKinsey calling cards or the 1-800 toll free phonemail number to avoid high telephone surcharges

**Cars**    8. Use the McKinsey corporate rate or the "best day rate"; decline insurance options in North America when booking Hertz with our CDP number

**TERs**    9. Submit travel expense reports with supporting documents within the time specified by your office, otherwise, accounting will deduct a fine from your paycheck

10. Use the American Express corporate card for all non direct billing charges (e.g., hotels, rental cars, restaurants). Please also verify the charges for accuracy before submitting them for reimbursement.

> **The Firm will not reimburse for expenses submitted 90 days or more after they occur**

MCK-MDL2996-0281081.000008

JAN 31 '02 13:04 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251          P.04/23

## CONTENTS

1. Introduction

2. Responsibilities

3. General Information
   A. Requests for travel arrangements
   B. Unused travel tickets
   C. Weekend travel
   D. Exceptions
   E. Personal credit cards

4. Reimbursable travel expenses
   A. Hotel
   B. Commercial air travel
   C. Charter aircraft agreements
   D. Car rentals
   E. Personal cars
   F. Rail
   G. Taxi
   H. Black cars and limousine services
   I. Meals and entertainment
   J. Telephone expenses
   K. Gifts
   L. Recruiting

5. Off-site meetings

6. Expense reports
   A. General
   B. Expense report receipts
   C. Review and audit
   D. Reviewer responsibility

MCK-MDL2996-0281081.000009

JAN 31 '02 13:04 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251    P.05/23

## 1. INTRODUCTION

This document sets out the policy and procedures for you, as a Firm member in the United States, Canada, and Mexico, to receive reimbursement for Firm-related travel and entertainment expenses. Your office may, at its discretion develop additional guidelines but may not remove any requirements contained in this Firm policy.

Address any questions or concerns regarding this travel and entertainment policy or the Firm's travel management program to the person responsible for travel in your office.

## 2. RESPONSIBILITES

When making Firm-related reservations or incurring travel and entertainment expenses, follow Firm guidelines.

If you do not comply with this policy, you risk delayed, partial, or forfeited reimbursement. In cases of significant abuse, disciplinary action will result.

## 3. GENERAL INFORMATION

### A. Requests for travel arrangements

Make all Firm-related travel arrangements (i.e., air, hotel, and car rental) exclusively through Firm-designated travel departments. The Firm loses valuable management information, travel agency commissions and negotiated discounts with certain vendors when you do not make your reservations internally. **Provide an authorized charge code (client or internal), when making a booking. Your travel arrangements cannot be processed without an authorized charge code.**

### B. Unused travel tickets

Hand deliver unused travel tickets to the travel department or a locally designated representative in your office. Do not send tickets through regular mail. **Do not attach unused transportation tickets to expense reports or label them "used".** The costs for unused travel tickets are a personal expense, unless approved by the ED. Unused e-tickets, whether whole or partially used, should be reported to your local travel department for refund.

MCK-MDL2996-0281081.000010

## 3. GENERAL INFORMATION Continued

### C. Weekend travel

1. You are encouraged to go home on weekends. However, on those rare occasions where it is more convenient to stay in the city where your client study is based, your meals and lodging costs only will be reimbursed. The Firm considers your transportation and entertainment expenses during nonworking weekends a personal expense.

2. The Firm will reimburse you for travel to and from destinations other than your home during such weekends only if the round-trip fare is the same as or less than the round-trip fare home or you have paid the difference. If the ticket you purchase for travel to a destination other than your home is non-refundable and it is not used, the cost of the ticket will revert to a personal charge. However, all incremental air costs, meals and lodging will be considered a personal expense. Downgrading class of service for personal gain is not permitted.

3. With ED or Department Head approval, a spouse/significant other may travel to client location during weekends if you do not wish to return home. The Firm will reimburse you for the round-trip transportation costs of the spouse/significant other*, but will consider all meals and entertainment of the spouse/significant other to be personal expenses. Firm-reimbursed expenses for a spouse/significant other may be considered taxable income.

   These policies do not apply to Firm training programs.
   * This does not extend to friends or other family members.

### D. Exceptions

In situations where it is necessary to deviate from this policy, have your ED send a signed memorandum to the local travel department (with a copy to that office's Manager of Accounting Services) approving any exception and signing next to the expense on you TER. Exceptions are considered one-time (i.e., nonrecurring) events. This policy explicitly prohibits using the exception procedure repeatedly. **The Firm's travel agent will provide the travel department with monthly and yearly summary exceptions reports.**

### E. American Express Corporate Card

Upon joining the Firm, you will be issued an American Express Corporate Card which is to be used for all business related travel where the use of a credit card is required (i.e., accommodations, client entertainment etc). Agents will also use these numbers to guarantee hotel reservations ( you are responsible for cancelling

MCK-MDL2996-0281081.000011

## 3. GENERAL INFORMATION Continued

### E. American Express Corporate Card Continued

hotel rooms if not needed). You are personally responsible for all charges to your credit card and will be reimbursed as outlined in the Travel Policy.

## 4. REIMBURSABLE TRAVEL EXPENSES

### A. Hotels

1. Reservations. Since the Firm has negotiated special rates with preferred hotels and often receives travel agency commissions on reservations made internally, reserve all hotel accommodations through Firm-designated travel departments.

   All changes to existing reservations should be made through the travel department. Please inform the travel department of any change that was made directly with the hotel.

2. Accommodations. The Firm will neither arrange nor reimburse you for luxury accommodations.

3. Corporate Apartments. When travelling to the same city repeatedly, inquire about a corporate apartment. This alternative is both cost effective for the client as well as convenient for the traveller. Please see the local office's travel manager to discuss this option.

4. Firm rates. Confirm the Firm hotel rate shown on your itinerary with the hotel. However, since many hotels have implemented yield management, **ask if a better rate is available when checking in.**

5. Changes or cancellations. As hotel reservations are guaranteed for late arrival when necessary, cancel hotel reservations either by contacting hotels or notifying any McKinsey travel department directly or through the 24-hour 800 number. (Always obtain a cancellation number or contact name when making a cancellation). **No-show charges are a personal expense unless approved by the ED.**

6. Form of payment. Pay hotels using your American Express Corporate Card rather than billing the Firm directly. This ensures that you have the opportunity to audit bills for improper charges and deduct any personal expenses prior to submitting the time and expense reports (TER) for reimbursement. Include hotel folios and proof of payment (i.e. credit card receipts) with your TER. In some cases, hotels in Europe will be direct billed to the Firm so that VAT taxes can be recouped.

MCK-MDL2996-0281081.000012

JAN 31 '02 13:05 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251         P.08/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

### B. Commercial air travel

1. Reservations. Since the Firm has negotiated special rates with preferred airlines, make all air travel arrangements through firm-designated travel departments. (These rates are only extended to us when travel is booked internally). You are required to book all your reservations on a preferred carrier.

   **Due to changes in the airline industry standards, do not double ticket or double book.** Cancel flights through your assistant, travel department, or the airline directly. *Failure to cancel unused flights segments will result in the loss of all remaining reservations for the trip.* Double booking and/or failure to cancel unused flights may also lead to airline "blacklisting" and monetary penalties to the agency and traveller, so your compliance with this policy is required.

2. Authorized class of air service. Observe these class-of-service restrictions for all air travel:

   a. Within North America
   1) Economy class on all flights of 4 hours or less
   2) Business class on flights longer than 4 hours (except for Firm training), if available. Otherwise, you will be booked in the next class of service, on a preferred carrier, above economy class; this guideline being at local office discretion (please confirm the guidelines, as it applies to your office, with your local office Travel Manager or Travel Task Force representative).
   3) Business class for all overnight (red-eye) flights, if available, otherwise first class

   b. Between continents
   1) Business class on all intercontinental flights except specific Firm training flights
   2) Transatlantic flights on the Concord charged to a client require Office Manager approval. Transatlantic flights on the Concorde charged to non-client require Managing Director, or his designate, approval.

**The local travel departments should make every effort to book advance purchase/nonrefundable tickets for the flights of training attendees to minimize ticket costs.**

MCK-MDL2996-0281081.000013

JAN 31 '02 13:05 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251          P.09/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

3. Airline frequent flier programs, upgrades, and downgrades.

   Tickets may be upgraded at your own expense or with personal frequent flier miles, provided that this does not increase the base cost of the tickets. Due to some airline restrictions on discounted tickets purchased through the local travel department, upgrading may not be possible.

   ¶ In addition, you may not voluntarily downgrade your airline ticket from a higher to a lower class of service for personal gain (e.g., monetary gain, airline tickets, and/or extra flight legs).

   ¶ If you break up trips for personal reasons, however, any additional expenses related to such itinerary changes are personal, and, therefore, not reimbursable.

   ¶ Return cash bonuses (including travelers checks), received for Firm-related travel to the Firm so the credit may be passed to clients. You either present such awards directly to your local office accounting department or report them as negative charges on your TER.

4. Airline clubs. You are **not** entitled to reimbursement for membership in airline clubs.

5. Key personnel. When Firm members must unavoidably fly on the same aircraft ensure that the group never consists of:

   a. More than one-half of an office's client service staff

   b. More than one-third of the office management group

   c. The senior leadership of the Firm as represented, for example, by all or virtually all of the members of any Firm committee.

6. Non-Firm personnel. Neither clients nor the Firm should be asked to pay for the transportation of anyone other than a Firm member, except in the case of Firm mobility, extended assignments, certain Firm meetings, or other special situations where you have received explicit prior approval from the appropriate ED. Without such prior approval, you are not authorized to arrange Firm-paid transportation for non-Firm members. Your office retreat will be organized by the local office, and your local travel departments will make travel arrangements for you and your guest.

MCK-MDL2996-0281081.000014

JAN 31 '02 13:06 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251    P.10/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

### C. Charter aircraft agreements

Procedure and approvals. Before you finalize any agreement for a charter, contact Grace Becchinelli, our Risk Management Coordinator, at (212) 415-5324. She is also a member of our in-house legal staff at the Firm Office in New York. **Avoid using charter aircraft whenever possible and be sure to get pre-approval for your flights.**

### D. Car rentals

Rent a car when both a business necessity and the cost relative to alternative modes of transportation is not excessive. Make reasonable attempts to share a rental car when several employees are travelling to and from the same location. In addition, if you are aware that you will need a rental car for an extended period of time, inform the travel departments to secure a cost-effective short-term lease.

1. Reservations. Since the Firm has negotiated special rates and receives travel agency commissions on reservations made internally, reserve all rental cars exclusively through local travel departments.

2. Authorized class of car rental service. Reserve a mid-size car, unless airbags are not available in mid-size cars and/or at least three travellers will simultaneously share the vehicle. In those cases, book full-size cars.

3. Firm rates. Ensure that you actually receive the Firm car rental rate shown on the rental agreement issued to you for each trip. **Always ask if a better rate/deal is available when checking in. Be aware that returning your car to a different location than where rented from can significantly increase your rate, or lump sum penalties or high mileage charges could be added to your bill. Explore costs thoroughly before returning to a different location.** Also, be aware that extra days over and above what was originally noted in your agreement can be charged at an inflated rate - many times, much higher than the negotiated rate. Please inquire when extending a reservation about rate changes.

MCK-MDL2996-0281081.000015

JAN 31 '02 13:06 FR MCKINSEY & COMPANY  212 759 1954 TO 8477251      P.11/23

## 4. REIMBURSABLE TRAVEL EXPENSES  Continued

### D. Car Rentals  Continued

4. Insurance. When traveling within the United States, decline all insurance options offered, including personal accident insurance (PAI), personal effects (PEI), and collision damage/loss damage waivers (CDW/LDW) provided that Hertz is selected and our CDP number is recorded in your reservation file. The rental car company will pay for all damages due to accidents if the car involved was rented or leased for Firm-related purposes. Insurance for personal effects (luggage, briefcases, and jewelry) is neither provided by the Firm nor covered under corporate rental contracts. If you leave such items in cars, you are personally responsible if they are stolen. You may choose to purchase personal effects insurance from rental companies at your own expense.

   When renting vehicles for travel outside the United States, if you are a U.S. employee, you should purchase CDW/LDW insurance. If you are from a McKinsey office in Canada or Mexico, your office will decide whether you should self-insure or purchase CDW/LDW for property losses, as this coverage is not included in our contracted Hertz rates for these offices. **Staff members of the Canadian offices have insurance coverage through the American Express Corporate Card.**

   Neither the Firm's insurance nor the Firm's corporate rental contracts cover cars rented or leased for solely personal travel. However, the Firm's insurance does cover cars rented or leased for Firm-related purposes but used also for personal travel (i.e., on weekends). Other McKinsey employees are allowed to drive your rental car. However, family members and friends are not permitted to drive your rental car.

5. Payment and reimbursement. Attach the rental agreement and receipt of payment (i.e., credit card receipt) to your TER. Do not have cars directly billed to the Firm, or forward car rental statements to the accounting department for payment.

6. Questionable charges. If you have questions regarding the amount of a rental invoice, raise them at the time you return the car to the rental agency. If questions remain concerning the amount charged, forward copies of rental agreements to the local travel department for clarification and settlement.

MCK-MDL2996-0281081.000016

JAN 31 '02 13:06 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251        P.12/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

7.  Car rental accidents. Report all accidents involving vehicles rented for use of Firm business to car rental agencies immediately. Rental agencies will notify drivers of the proper procedures for reporting an accident. Submit both a written report and a copy of the police report to Firm-designated, local travel department within 24 hours of the accident or as soon as possible thereafter. If any injuries are sustained, call the local travel department at the earliest possible moment. If a Firm member is injured, notify the local personnel director and manager of administration immediately. In addition, contact the manager of benefits and the insurance administrator in the Firm Office as soon as possible.

### E. Personal Cars

The Firm will reimburse you when using your own car for Firm-related travel at the maximum rate prescribed by the IRS, plus tolls and parking. This reimbursement is limited to the difference between miles actually driven and miles usually driven to your local office. The current per-mile rate does not apply to Firm-owned vehicles.

If you are involved in an accident while using your personal car on Firm business, the Firm will pay the amount of damage that is deductible under your insurance policy up to, but not more than, $1,000 for damage to your car. This provision does not apply if the cost is recoverable from a third party. You are personally responsible for purchasing insurance for your car with an adequate limit of liability insurance, which should be no less than $300,000.

### F. Rail

Make all rail transportation through firm-designated travel departments. They will book you first class to assure reserved seating or in sleepers if and overnight trip.

### G. Taxi

Although the Firm will reimburse you for the cost of taxis in connection with Firm-related activities, consider more economical services (hotel vans, shuttles, etc.) when they are available. The Firm will not reimburse you for daily travel between your home and local offices, but will reimburse you for **periodic** early-morning and late-night taxi charges if usage is in accordance with specific office guidelines on what constitutes "early morning" and "late night".

MCK-MDL2996-0281081.000017

JAN 31 '02 13:07 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251              P.13/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

### H. Black cars and limousine services

Boston Coach is the preferred vendor for limousine/sedan transportation when black cars or taxis are not available or not offered in a particular market. In general, however, use black cars or taxis for trips to and from airports and for Firm-related trips in which the use of personal cars, public transportation, or shuttle service would be inappropriate. Use black cars or taxis for early-morning travel to the office and late-night travel home. Please consult with your office administrator for a definition of "early morning" and "late night".

When paying for taxis, black cars, or limousine services, use vouchers or charge to American Express Corporate Card. To order personal vouchers, contact your local travel department. All Firm members working in Firm offices other than their home office for 3 months or longer are required to obtain personal vouchers from the travel department in the office that they are visiting. Use general office vouchers only in emergencies.

Attach personal voucher receipts to your TER. The Firm will reimburse you for reasonable expenses, such as Firm-related telephone calls, that you have initiated on the voucher. However, the Firm considers "wait time" and "no show charges" for cars either not used or cancelled within penalty times a personal expense.

Do not use limousines (as distinguished from taxi or black car services) to travel to or from airports unless a large group is making the trip or other special circumstances exist (e.g., the trip is being made by a client executive who customarily travels by limousine).

### I. Meals and entertainment

Expense your personal meals when you dine alone on an out-of-town business trip. Personal meal expenses vary by geography. **Please exercise prudence and good judgement in determining what is a reasonable meal expense.** Business meals are those meals taken with clients, prospects, or associates during which a business discussion takes place. Entertainment expenses include nonmeal events where business discussions takes place immediately before, during, or immediately after the event. When more than one firm member attends a business meal or entertainment event, the most senior member present should pay the bill. Consult your local office accounting department for reimbursement limits.

MCK-MDL2996-0281081.000018

JAN 31 '02 13:07 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251    P.14/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

### J. Telephone expenses

When possible, use your Firm-issued calling card to make all Firm-related telephone calls from home or while travelling. The Firm will pay for all Firm-related calls charged to these cards. When you cannot use your issued card, record phone charges on your TER for reimbursement, attaching hotel folios/phone bills and receipt of payment (i.e., credit card receipts).

1. Out-of-town telephone expenses. While out of the office, use the calling card for all Firm-related telephone calls in accordance with Firm instructions. This can provide considerable cost savings especially when calling long distance from hotel rooms, by allowing you to avoid the extra charges added by most hotels.

   Please exercise prudence and good judgement with respect to the number and length of personal calls you make when travelling out of town.

2. Home telephone. When making Firm-related calls from home, use your Firm-issued telephone credit card to secure the Firm's reduced rates.

### K. Gifts

In the course of business, it is occasionally appropriate to give gifts. For example, if you stay with a friend rather than in a hotel while out of town, or is you are invited to a client's home for a meal, it is appropriate to purchase the host a gift. If you are unsure whether giving a gift is appropriate, seek prior management approval. Gifts are reimbursable only if all of the following requirements are met:

1. The cost of each gift is limited to the Internal Revenue Service maximum (currently $25 per recipient per taxable year).

2. The expense report specifies the reason and nature of each gift and identifies the recipient and his/her business relationship with the Firm.

3. The receipt is attached to the TER. The cost of the gift should be reported in the "sundry" section.

   Gifts to co-workers are a personal expense.

MCK-MDL2996-0281081.000019

JAN 31 '02 13:07 FR MCKINSEY & COMPANY    212 759 1954 TO B477251    P.15/23

## 4. REIMBURSABLE TRAVEL EXPENSES Continued

### L. Recruiting

1.  Reservations. You, as well as Firm candidates, must make all travel arrangements related to Firm recruiting exclusively through the **designated recruiting travel coordinator** in the local travel department (see Appendix A). Recruiting travel and expenses are not excluded from any of the regulations in this document. For example, recruiting travel coordinators will make arrangements with preferred vendors whenever possible. For further information see the sections on hotels, commercial air, and car rental.

2.  Interviewing. When you travel to conduct interviews, recruiting administrators will make arrangements through the locally designated recruiting travel cooridnator. If you are unable to make trips for which you were scheduled, notify the recruiting administrator as soon as possible in order to avoid cancellation charges.

3.  Noninterviewing recruiting events. Arrange all necessary accommodations for events-related travel (as distinguished from interviewing trips) through the locally designated recruiting travel cooridinator. In accordance with the lodging section above, you will be personally responsible for hotel no-show charges.

4.  Hotels. You and recruitment candidates travelling for Firm recruiting are to stay at preferred recruiting hotels.

MCK-MDL2996-0281081.000020

JAN 31 '02 13:07 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251        P.16/23

## 5. GUIDELINES FOR INTERNAL EVENTS (MEETINGS, CONFERENCES, AND RETREATS)

| | |
|---|---|
| **Content** | ¶ Evaluate very carefully the true value of any meeting, conference, or retreat.<br><br>¶ Build events around a specific business agenda and objectives. |
| **Attendance** | ¶ Invite only people who advance the professional purpose of the event.<br><br>¶ Confirm non-MGM attendance with office managers or practice leaders in the case of practice dedicated staff (with offices defining their own processes). |
| **Location and logistics** | ¶ Hold all internal events in Firm Premises or, if that is not feasible, in a business hotel or conference center located within one hour from a major airport.<br><br>¶ Select location based of efficient commute for the majority of participants; consider the use of alternatives, such as tele- or videoconferencing.<br><br>¶ Involve a professional meeting planner in site-selection and contract negotiation for all meetings with more than 35 attendees. |
| **Tracking** | ¶ All events with over 20 CSS or more than 10 Associates can only be held if registered on the Firm calendar (excluding business meetings with all participants from a single office, e.g. MGM meetings, training programs).<br><br>¶ Record actual time spent in significant events to event specific charge codes to record true cost. |
| **Blackout period** | ¶ Do not schedule any event that must be tracked (with the exception of Firm governance and personnel committee meetings, performance cell leadership meetings, single office leadership meetings, and Firm-wide training programs) during "blackout" periods. |

MCK-MDL2996-0281081.000021

JAN 31 '02 13:07 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251          P.17/23

## 5. GUIDELINES FOR INTERNAL EVENTS (MEETINGS, CONFERENCES, AND RETREATS) Continued

**Blackout period Continued**

¶ **1999 Blackout dates:** January, April 1 - June 15, September 7 - 26, and November 27 - December 31

¶ **2000 Blackout dates:** January, April, May 15 - June 16, September 5 - 20, and November 27 - December 31

**Practice conferences**

¶ Global practice conferences should be held no more than once per year; attendance should generally be limited to MGMs and SEMs with a program commitment to the practice. Regional conferences, extending to practice-affiliated EMs in the region, are also appropriate on an annual basis.

**Office retreats**

¶ Limit CSS retreats to once every two years with a maximum cost of $1,500 per attendee. At CSS retreats, CSS and partners only (and senior administrative managers at office manager's discretion) should be invited.

MCK-MDL2996-0281081.000022

JAN 31 '02 13:08 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251   P.18/23

## 6. EXPENSE REPORTS

### A. General

To be reimbursed for Firm-related travel and entertainment expenses, submit (or send electronically) a TER to the accounting department in accordance with local office guidelines. Adhering to these guidelines is essential to ensure that the Firm receives tax deductions for business expenses. You or your administrative assistant must submit your TER to the accounting department on time. If you will be absent from your office on the days when your TER is due, then follow one of these procedures:

1. Turn in your TERs prior to leaving town.

2. Send in your completed TERs electronically or by mail and submit receipts by mail or courier.

3. Fax a copy of page 1 of the TER and turn in the original when you return to the office.

4. Phone in the hours you have worked (but never expenses per charge code). Submit the original TER upon returning to the office.

5. Submit your TERs to another Firm office accounting department, being sure to notify your own accounting department of your action.

For each TER not received on time, you will be fined no less than $25 a day until the TER is submitted. If you call or fax in your hours, you must submit the original hard copy of your TER (whether turning in expenses, or not) as soon as possible. These **penalty policies have no exceptions.**

Expenses that are not considered reimbursable business expenses or that you do not support with proper receipts will be deducted from the total expenses claimed on the TER.

MCK-MDL2996-0281081.000023

JAN 31 '02 13:08 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251    P.19/23

## 6. EXPENSE REPORTS Continued

### B. Expense report receipts

Report proper and reasonable expenses in the space provided on pages 3 and 4 of the TER. As a general rule, proper and reasonable expenses are those that meet the policies described herein, or those of local offices, and that you would not be uncomfortable justifying to either the client or your ED.

The more documentation you provide for expenses, the less likely you are to be questioned about them. Therefore, ask for receipts whenever you incur expenses that you intend to report. Attach these receipts to your TER. Use the "explanation" column to explain all charges in the "sundry" and "transportation" charges.

Attach all receipts substantiating business travel and entertainment expenses to your TER. (While this should be done for all expenditures, McKinsey & Company generally requires a receipt for all expenditures exceeding $25.)

The following applies when reporting expenses:

1. Report every expense separately: totalling cab fares, meals, parking, etc., is unacceptable.

2. Provide the original receipt for :

   ¶   Meals of $25 or more

   ¶   Transportation of $25 or more

   ¶   All lodging charges. You must submit an itemized hotel bill with the      credit card receipt to show form of payment, and break out food and  beverage charges in one of the two meal columns.

3. Report any meal eaten alone, whether in town or out of town, in the "out-of-town" column. Report any meal eaten with other people in the "other meals and entertainment" column and explain it on page 3. Complete all columns on page 3 as per IRS requirement, including nature and relevance of discussion (i.e., study wrapup, progress review, discussion, recruiting).

MCK-MDL2996-0281081.000024

JAN 31 '02 13:08 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251          P.20/23

## 6. **EXPENSE REPORTS** Continued

### B. Expense report receipts Continued

4. Do not break up trips for personal reasons; indicate any excess fare/costs as personal expenses and do not submit for reimbursement.

5. Travel expenses you incur daily to and from your home office are personal expenses. The only exceptions are if you arrive before or after certain hours specified in the local office guidelines and need to take a cab or car to or from the office for personal safety.

6. The Firm will not reimburse you for expenses submitted 90 days or more after they have been incurred.

### C. Review and audit

1. The accounting department in each office is responsible for reviewing expense reports to ensure compliance with Firm policy.

2. All expense reports are subject, at any time, to additional review and audit by the accounting department, internal auditors, or the Firm's outside public accounting firm, as well as by auditors of the Internal Revenue Service. In cases where noncompliance is observed, the approver(s) of the expense items, as well as the employee claiming reimbursement, will be asked to document explanations for noncompliance with Firm policy.

3. Misappropriation of Firm funds through abuse of this policy or falsification of documents submitted as proof of expense, will lead to disciplinary action, possibly including termination.

MCK-MDL2996-0281081.000025

JAN 31 '02 13:08 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251         P.21/23

*Memorandum*

TO:  Office Managers – Primary Offices
All-Practice Leaders
Managers of Administration

FROM:  Rajat Gupta
Roger Kline
Stefan Matzinger
Denis Tinsley
Jerome Vascellaro
Don Waite

DATE:  October 25, 2001

# Revised Air Travel Policy

Following the introduction of the air travel policy last month a number of offices have been able to take advantage of the softness in the air travel market to negotiate new deals for McKinsey travel. In addition, experience has shown that in some instances, application of the policy does not represent an appropriate cost/benefit tradeoff. Accordingly we have revised the policy as follows:

1. **Class of service** for client and nonclient travel by all Firm members, including MGMs:

   - No first-class or Concorde travel unless specifically pre-approved by the relevant office manager or practice leader due to: unavailability of other seats; lack of business class on a flight exceeding 4 hours; travel with a client executive who is traveling first class; or flights in excess of 12 hours lacking acceptable business class.

   - Business class on all flights of more than 4 hours

   - For flights under four hours business class is allowed where this is the local norm for business travelers and where there are not significant savings available from booking an appropriately flexible economy ticket.

   - Pre-booked economy class on flights for all training.

   We expect Firm members to make every effort to take advantage of savings where they are significant; examples of opportunities are attached.

MCK-MDL2996-0281081.000026

JAN 31 '02 13:09 FR MCKINSEY & COMPANY   212 759 1954 TO 8477251        P.22/23

2. **Selection of carriers:** Firm members are expected to use carriers with which we have preferred arrangements. Exceptions must be based on an urgent client commitment or a lack of a reasonable alternative flight.

3. **Noncompliance:** Firm members choosing to travel outside these standards may, of course, use their frequent flyer miles to upgrade. In all other cases, the difference between the fare paid and the fare that should have been incurred will be charged as a personal expense.

These revised policies strike a more effective balance between utility and personal effectiveness on the one hand and cost on the other. They are consistent with other initiatives in the current economic environment and with our obligations as good stewards of the Firm's resources. Of course, only transportation costs actually incurred may be charged to a client or the Firm, as before.

2

MCK-MDL2996-0281081.000027

JAN 31 '02 13:09 FR MCKINSEY & COMPANY    212 759 1954 TO 8477251    P.23/23

# Air travel policy – guidelines and initiatives

Substantial savings in air travel can be achieved in individual situations, by applying best practice ideas from around the Firm. Your local travel office will be able to help you think through the tradeoffs available. Initiatives that have been taken include:

- Reversing the direction of travel for weekly commutes to take advantage of economy class discounts for flights that include a weekend stop-over, i.e. booking flights Friday-Monday not Monday-Friday. In some geographies this can save as much as 70% of the business class airfare.

- Using the discounts available from other offices which on individual legs can be significantly lower than the 'home' office arrangements.

- Working with the travel office to choose cost-effective arrangements or to negotiate special fares for projects that involve a significant amount of air travel. This can be done by involving the travel office at the start of any engagement that is predicted to be travel intensive.

- Arranging with the client to use their air travel agreements where they are more favourable.

3

** TOTAL PAGE.23 **

MCK-MDL2996-0281081.000028