

EXHIBIT
11-14-25
10

Message

| | |
|---|---|
| **From**: | Rob Rosiello [CN=Rob Rosiello/OU=STA/OU=NorthAmerica/O=MCKINSEY] |
| **Sent**: | 4/26/2005 7:24:09 PM |
| **To**: | Arnab Ghatak [CN=Arnab Ghatak/OU=NJE/OU=NorthAmerica/O=MCKINSEY@MCKINSEY] |
| **Subject**: | Working Papers Compliance for Purdue Pharmaceuticals - Alliance Go Live(STA00025) - Stamford |

A new CER has been submitted. Please follow this link to view the document.
http://emp.intranet.mckinsey.com/cer/cer.nsf/(ByUNID)/9F6BCCCFA6FF3FE585256FD3006966B6?OpenDocumentThis
engagement has two primary objectives:
1. Design and structure an appropriate alliance governance and management system (4-5 weeks, to begin now)
2. Support the negotiation of that alliance structure with Jackson (intermittent)
 We have helped Purdue over the last year pursue various deals and alliances.   They are now in late stage negotiations
with a particular partner and supporting them in structuring the alliance governance.   One Stamford Forum
Stamford, CT
06901-3431

## CER On-Line

**Date:**
**To:**
**From:**
**Body:**

MCK-MDL2996-0181316

## McKinsey Contact Details

| Engagement Director: | % | DCS (Global Parent): | % | DCS (Local / Sub): | % |
|---|---|---|---|---|---|

**Other Viewers/Editors:**

| Billing Director: | | BD Time Allocation: | % |
|---|---|---|---|
| **Billing Office:** | | | |
| **CST Working Papers Contact:** | | **Working Papers Office:** | |
| **(Usually the study EM)** | | **(Usually the DCS or ED office)** | |

## Client Contact Details

**Client Company Name:**
**Preferred Client Code:**                              **Parent Company Name:**
**Study Name:**

| Authorizing Executive: | Title: | First Name: | Last Name: | Job Title: |
|---|---|---|---|---|
| | Phone: | | Email: | |
| | | | | |
| Executive Assistant: | Title: | First Name: | Last Name: | Job Title: |
| | Phone: | | Email: | |
| | | | | |
| Client Accounting Contact: | Title: | First Name: | Last Name: | Job Title: |
| | Phone: | | Email: | |

CC invoice to client accounting contact:

I do NOT want Accounting to contact the Authorizing Executive or their Executive
Assistant for collection purposes without prior approval:

**Invoice Comments:**

| Authorizing Executive Address: | | Client Accounting Contact Address: |
|---|---|---|

## Study and Billing Details

| Preliminary Charge Code: | Charge Code: |
|---|---|
| | Engagement Type: |
| Start Date: | Estimated End Date: |
| Study Duration (calculated business days): | Override calculated business days (for WIP worksheet): |

## Tax Information (Accounting will contact you if there is a tax issue)

### Study Approval
Where is the person who approached McKinsey for the study based?
Where was the LOP/C sent?
Where was the LOP presentation made to the client?
What tax rate should be applied, if known?

### Study Duration
In which city is the day to day client based?
If North America, which state, province or territory?
Which client country location is receiving the benefit of the project?
Which client location(s) are receiving the benefit of the project?

| Name | Position |
|---|---|
| | |
| | |
| | |

MCK-MDL2996-0181317

## Study Classification

| | | |
|---|---|---|
| **Engagement Industry:** | | |
| **Functional Keyword / FCG Equivalencies:** | | |
| **Functional Capability Group (FCG): %** | Was FCG Knowledge/support materials used in the study negotiation? | Did FCG personnel provide direct support to the study negotiation? |
| **Product Service Focus** | This information will be used by FIRM accounting for determination of correct SIC Code. | |

**Tools and Frameworks:**
**Other Tools and Frameworks:**
**Geographic Focus:**
**Engagment objective and scope (detailed description required)**

**Source of Engagement Generation:**

**Engagement Background**

**Performance Partnership:**

| **Competitive Negotiation:** | **Competing Firms:** |
|---|---|
| | **Other Firms:** |

**Additional Information (including reason for winning study):**

| | |
|---|---|
| **Contribution to client development from CST:** | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| **Other contributors to client development:** | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |

**Comments:**

**Office Manager Approval:**     on

**Accounting Approval:**     on

## Risk Management Questions

Please contact the Legal Department if you respond "Yes" to any of these questions.

1) Has the client proposed, or do we expect that the client will propose, that we enter into any form of written contract?   Please note that you should answer "Yes" if you are serving a public sector client.

2) Do we anticipate that the client will want to disclose our work product or involvement to outside parties such as lenders or transaction counter-parties?

3) Might our services be construed to involve investment policy or transaction support to an institutional investor?

4) Is the engagement being conducted for multiple clients?
5) Do we anticipate delivering or implementing any software or web-enabled tools

MCK-MDL2996-0181318

developed by the Firm or an outside party (excluding off-the-shelf software)?

6) Are we serving, or do we anticipate that we might serve, as an approved advisor in a bankruptcy or reorganization proceeding?

7) Are there pending or anticipated legal or regulatory proceedings or other circumstances in connection with which our work or relationship might receive legal, media or other public attention?

8) Is the engagement covered by the MA&A policy (if yes, you should contact the MA&A hotline to register the engagement by calling 212-446-8600 in the Americas; 44-20-7961-5045 in Europe; and 86-21-6122-3278 in Asia Pacific)?

9) Do we anticipate any difficulty in collecting payment fully and on-time for fees and expenses (if yes, you should discuss with local financial managers)?

MCK-MDL2996-0181319

Include working papers policy in the printout
Hide working papers policy in the printout

## WORKING PAPERS

General Subject:  Retention and Disposition of Working Papers    July 12, 2002

Administrator:      Legal Department

Distribution:       All Firm Members

In client engagements, Firm members typically generate and store a large number of documents in both physical and electronic form. Below are guidelines for the retention and disposition of such "Working Papers".

1.    Goals of This Policy . The Firm has adopted this Policy to better enable Firm members to protect clients' confidential information, to create accurate records to support work we do for clients, to retrieve important documents, and to save storage space, both physical and electronic. Please note that although most of this Policy consists of recommended guidelines, certain steps described in this Policy, such as those described in paragraphs 5 and 6, are mandatory.

2.    "Working Papers" Defined . "Working Papers" include reports, interview notes, electronic spreadsheets, information provided by the client, information from third party sources, e-mail and other correspondence, and all other documents generated or stored by Firm members relating to a particular engagement, whether in physical or electronic form and whether in final or draft form.

3.    The Working Papers Manager . Each office should designate one or more individuals with responsibility to review, organize, and file Working Papers at the close of every engagement (generally when the engagement has been inactive for two months or earlier if no further significant activity is expected) or at the end of major phases of large engagements (the "Working Papers Manager"). The EM for each engagement should provide guidance, and all team members should provide assistance, to the Working Papers Manager performing these tasks.

4.    Collection . During an engagement, Working Papers are often dispersed among members of the engagement team and professional support staff. After the engagement, the Working Papers Manager should assemble from all team members copies of all Working Papers (both paper and electronic) for that engagement, and individual team members should discard and/or delete such files from their own personal paper and electronic files. The Working Papers Manager, with guidance from the EM, should determine which documents are important to retain in the Working Papers file for that engagement and discard and/or delete the remaining documents. If a team member has a continuing relationship with the client that makes it desirable to retain some documents in that person's files, a list of such documents should be provided to the Working Papers Manager and included in the Working Papers file.

5.    Client Instructions . Clients sometimes request that the Firm follow certain specific procedures and/or take certain specific steps in handling Working Papers. In such cases, the team must consult with Firm Legal before agreeing to any such procedures and/or steps.

6.    Anticipation of Litigation . If any team member learns of or has reason to anticipate a litigation, government investigation, or other legal controversy relating to the subject matter of an engagement, such person should notify Firm Legal. In such circumstances, the person must consult with Firm Legal before discarding or deleting Working Papers pursuant to this Policy. Firm Legal may determine that it is appropriate to preserve some or all related Working Papers (and to suspend recycling of backup tapes as described in paragraph 15) for some additional period of time.

7.    Documents to Retain . Documents that generally should be retained in a Working Papers file include copies of those documents that were delivered to a client (which should be clearly identified as such) and those other documents that state or support significant findings and conclusions, describe how important substantive questions raised by the client were resolved, describe a specific change or improvement in the client's business, and/or might be helpful in orienting Firm or client personnel in the event of a follow-on study.

8.    Creation of Additional Working Papers After Engagement Has Ended . In rare circumstances, an EM may deem it necessary as part of the Working Papers Manager's review process to create explanatory memoranda

MCK-MDL2996-0181320

(identified as such and correctly dated) to supplement the Working Papers file. This would be the case if the file does not contain adequate documentation of all significant conclusions and recommendations, gives an inaccurate or misleading portrayal of the work done, or does not fully or accurately describe the Firm's role in the study.

9.    Firm Knowledge . Certain Working Papers might be useful to contribute to the Firm's knowledge repositories, even if not retained in the Working Papers file. Before contributing such documents to a knowledge repository, the EM should ensure that such documents are sanitized so that the client's name and confidential information cannot be determined and review the sanitized documents with the DCS. The client's confidential information generally consists of any nonpublic information provided by the client or its sources to the Firm. For further guidance, please contact Firm Legal and/or consult the Information Sharing Guidelines, which are posted in the Policies intranet as Attachment B to the Serving Competitors Policy. Final authority and responsibility on this issue, however, rests with the DCS.

10.    Documents to Discard or Delete . Generally, everything not described in the previous three paragraphs should be discarded or deleted, including interview notes, drafts of reports and analyses, e-mail and other correspondence, and documents furnished by the client, whether in paper or electronic form. The Working Papers Manager, with guidance from the EM, should exercise his or her discretion in determining which documents to retain and which to discard or delete, keeping in mind the goals of this Policy.

11.    Retention for Five Years . The suggested retention period for Working Papers remaining after the above review is five years. At the end of the retention period, the Working Papers file should be destroyed unless a decision to the contrary is made by the DCS or ED or by Firm Legal pursuant to paragraph 6. It would be reasonable for historical reasons to retain for an indefinite period of time a copy of final reports delivered to the client, and some offices, Working Papers Managers and/or DCS's may decide to do so.

12.    Storage and Release of Working Papers . Each office should have in place procedures designed to ensure the quick retrieval of stored, physical Working Papers. The Working Papers Manager should include with the physical Working Papers either some removable medium (e.g., a CD-ROM disk, diskettes, or zip or jazz disks) with a copy of the electronic documents retained or a memorandum describing the network or other location (e.g., name of VTR) in which the electronic Working Papers are stored. Since Working Papers normally will contain confidential information, copies should be stored in secure areas and released to other Firm members only with the prior authorization of the DCS or the ED.

13. Advice for Collection, Assembly, and Review of Electronic Files . As stated above, electronic documents are subject to collection, assembly, and review in the same manner as paper documents. Given the typically large number of electronic copies of documents generated during a typical engagement, this can be a particular challenge. It is important that each team member review all of his or her electronic documents (including e-mails) relating to the engagement, add to the Working Papers file those that need to be kept under the standards set forth above, and delete all other electronic documents (including e-mails) relating to the engagement. Information contained in electronic calendars and virtual team rooms should be treated the same way. To simplify this process, it may be advisable at the beginning of a study, to establish a central repository, such as a virtual team room or a specific folder or database on the Firm's network, for the retention of all electronic Working Papers generated during the course of the engagement. Please consult your local office IT staff for assistance with implementing such an approach.

14.    Use of Local Hard Drive and Removable Media . When working in the local hard drive or with removable media, team members should exercise caution to ensure that the data is encrypted using the Firm's standard settings on their workstations. At the end of the engagement, all team members should destroy all files that reside on local hard drives and removable media after transfer of certain of those files to the Working Papers file as described above. The Working Papers Manager should also ensure that Working Papers stored in all directories on the network file server (e.g., directories for client studies) are disposed of under the same standards applicable to paper files.

15. Recycling of Backup Tapes . Electronic files stored on backup tapes are erased or replaced with other files on a regularly-scheduled basis, depending upon the practices of the local office. In most circumstances, the Working Papers Manager need not take or request special measures to delete or retain backup tapes. If any team member believes it necessary and appropriate to erase or destroy backup tapes sooner than the standard period in which such tapes would normally be recycled in the relevant office, he or she must first consult with Firm Legal. In the event of circumstances as described in paragraph 6, Firm Legal may determine that it is appropriate to suspend the recycling of backup tapes for some additional period of time.

16. Members Leaving the Firm . If a team member is leaving the Firm, the Working Papers Manager should ensure

MCK-MDL2996-0181321

that such person complies with this Policy before departure. Departing personnel should not remove from the Firm any proprietary or confidential information of the Firm or its clients.

## CER On-Line

**Date:**
**To:**
**From:**
**Body:**

MCK-MDL2996-0181322

## McKinsey Contact Details

| Engagement Director: | % | DCS (Global Parent): | % | DCS (Local / Sub): | % |
|---|---|---|---|---|---|

| Other Viewers/Editors: | | | | | |
|---|---|---|---|---|---|

| Billing Director: | | BD Time Allocation: | % | | |
|---|---|---|---|---|---|
| **Billing Office:** | | | | | |
| **CST Working Papers Contact:** | | **Working Papers Office:** | | | |
| **(Usually the study EM)** | | **(Usually the DCS or ED office)** | | | |

## Client Contact Details

| Client Company Name: | | | | | |
|---|---|---|---|---|---|
| **Preferred Client Code:** | | | **Parent Company Name:** | | |
| **Study Name:** | | | | | |

| Authorizing Executive: | Title: | First Name: | Last Name: | Job Title: |
|---|---|---|---|---|
| | Phone: | | Email: | |

| Executive Assistant: | Title: | First Name: | Last Name: | Job Title: |
|---|---|---|---|---|
| | Phone: | | Email: | |

| Client Accounting Contact: | Title: | First Name: | Last Name: | Job Title: |
|---|---|---|---|---|
| | Phone: | | Email: | |

| | CC invoice to client accounting contact: |
|---|---|
| | I do NOT want Accounting to contact the Authorizing Executive or their Executive Assistant for collection purposes without prior approval: |
| **Invoice Comments:** | |
| **Authorizing Executive Address:** | **Client Accounting Contact Address:** |

## Study and Billing Details

| Preliminary Charge Code: | | Charge Code: | |
|---|---|---|---|
| | | **Engagement Type:** | |
| **Start Date:** | | **Estimated End Date:** | |
| **Study Duration (calculated business days):** | | **Override calculated business days (for WIP worksheet):** | |

## Tax Information (Accounting will contact you if there is a tax issue)

### Study Approval
Where is the person who approached McKinsey for the study based?
Where was the LOP/C sent?
Where was the LOP presentation made to the client?
What tax rate should be applied, if known?

### Study Duration
In which city is the day to day client based?
If North America, which state, province or territory?
Which client country location is receiving the benefit of the project?
Which client location(s) are receiving the benefit of the project?

| Name | Position |
|---|---|
| | |
| | |
| | |

MCK-MDL2996-0181323

## Study Classification

**Engagement Industry:**
**Functional Keyword /**
**FCG Equivalencies:**

| **Functional Capability Group (FCG): %** | **Was FCG Knowledge/support materials used in the study negotiation?** | **Did FCG personnel provide direct support to the study negotiation?** |
|---|---|---|

**Product Service Focus**      This information will be used by FIRM accounting for determination of correct SIC Code.

**Tools and Frameworks:**
**Other Tools and Frameworks:**
**Geographic Focus:**
**Engagment objective and scope (detailed description required)**

**Source of Engagement Generation:**

**Engagement Background**

**Performance Partnership:**

| **Competitive Negotiation:** | **Competing Firms:** |
|---|---|
| | **Other Firms:** |

**Additional Information (including reason for winning study):**

| **Contribution to client development from CST:** | **Contribution:** |
|---|---|
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| **Other contributors to client development:** | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |
| | **Contribution:** |

**Comments:**

**Office Manager Approval:**          on

**Accounting Approval:**          on

## Risk Management Questions

Please contact the Legal Department if you respond "Yes" to any of these questions.

1) Has the client proposed, or do we expect that the client will propose, that we enter into any form of written contract?   Please note that you should answer "Yes" if you are serving a public sector client.

2) Do we anticipate that the client will want to disclose our work product or involvement to outside parties such as lenders or transaction counter-parties?

3) Might our services be construed to involve investment policy or transaction support to an institutional investor?

4) Is the engagement being conducted for multiple clients?
5) Do we anticipate delivering or implementing any software or web-enabled tools

MCK-MDL2996-0181324

developed by the Firm or an outside party (excluding off-the-shelf software)?

6) Are we serving, or do we anticipate that we might serve, as an approved advisor in a bankruptcy or reorganization proceeding?

7) Are there pending or anticipated legal or regulatory proceedings or other circumstances in connection with which our work or relationship might receive legal, media or other public attention?

8) Is the engagement covered by the MA&A policy (if yes, you should contact the MA&A hotline to register the engagement by calling 212-446-8600 in the Americas; 44-20-7961-5045 in Europe; and 86-21-6122-3278 in Asia Pacific)?

9) Do we anticipate any difficulty in collecting payment fully and on-time for fees and expenses (if yes, you should discuss with local financial managers)?

MCK-MDL2996-0181325

Include working papers policy in the printout
Hide working papers policy in the printout

# WORKING PAPERS

General Subject:   Retention and Disposition of Working Papers    July 12, 2002

Administrator:        Legal Department

Distribution:        All Firm Members

In client engagements, Firm members typically generate and store a large number of documents in both physical and electronic form. Below are guidelines for the retention and disposition of such "Working Papers".

1.   Goals of This Policy . The Firm has adopted this Policy to better enable Firm members to protect clients' confidential information, to create accurate records to support work we do for clients, to retrieve important documents, and to save storage space, both physical and electronic. Please note that although most of this Policy consists of recommended guidelines, certain steps described in this Policy, such as those described in paragraphs 5 and 6, are mandatory.

2.   "Working Papers" Defined . "Working Papers" include reports, interview notes, electronic spreadsheets, information provided by the client, information from third party sources, e-mail and other correspondence, and all other documents generated or stored by Firm members relating to a particular engagement, whether in physical or electronic form and whether in final or draft form.

3.   The Working Papers Manager . Each office should designate one or more individuals with responsibility to review, organize, and file Working Papers at the close of every engagement (generally when the engagement has been inactive for two months or earlier if no further significant activity is expected) or at the end of major phases of large engagements (the "Working Papers Manager"). The EM for each engagement should provide guidance, and all team members should provide assistance, to the Working Papers Manager performing these tasks.

4.   Collection . During an engagement, Working Papers are often dispersed among members of the engagement team and professional support staff. After the engagement, the Working Papers Manager should assemble from all team members copies of all Working Papers (both paper and electronic) for that engagement, and individual team members should discard and/or delete such files from their own personal paper and electronic files. The Working Papers Manager, with guidance from the EM, should determine which documents are important to retain in the Working Papers file for that engagement and discard and/or delete the remaining documents. If a team member has a continuing relationship with the client that makes it desirable to retain some documents in that person's files, a list of such documents should be provided to the Working Papers Manager and included in the Working Papers file.

5.   Client Instructions . Clients sometimes request that the Firm follow certain specific procedures and/or take certain specific steps in handling Working Papers. In such cases, the team must consult with Firm Legal before agreeing to any such procedures and/or steps.

6.   Anticipation of Litigation . If any team member learns of or has reason to anticipate a litigation, government investigation, or other legal controversy relating to the subject matter of an engagement, such person should notify Firm Legal. In such circumstances, the person must consult with Firm Legal before discarding or deleting Working Papers pursuant to this Policy. Firm Legal may determine that it is appropriate to preserve some or all related Working Papers (and to suspend recycling of backup tapes as described in paragraph 15) for some additional period of time.

7.   Documents to Retain . Documents that generally should be retained in a Working Papers file include copies of those documents that were delivered to a client (which should be clearly identified as such) and those other documents that state or support significant findings and conclusions, describe how important substantive questions raised by the client were resolved, describe a specific change or improvement in the client's business, and/or might be helpful in orienting Firm or client personnel in the event of a follow-on study.

8.   Creation of Additional Working Papers After Engagement Has Ended . In rare circumstances, an EM may deem it necessary as part of the Working Papers Manager's review process to create explanatory memoranda

MCK-MDL2996-0181326

(identified as such and correctly dated) to supplement the Working Papers file. This would be the case if the file does not contain adequate documentation of all significant conclusions and recommendations, gives an inaccurate or misleading portrayal of the work done, or does not fully or accurately describe the Firm's role in the study.

9.     Firm Knowledge . Certain Working Papers might be useful to contribute to the Firm's knowledge repositories, even if not retained in the Working Papers file. Before contributing such documents to a knowledge repository, the EM should ensure that such documents are sanitized so that the client's name and confidential information cannot be determined and review the sanitized documents with the DCS. The client's confidential information generally consists of any nonpublic information provided by the client or its sources to the Firm. For further guidance, please contact Firm Legal and/or consult the Information Sharing Guidelines, which are posted in the Policies intranet as Attachment B to the Serving Competitors Policy. Final authority and responsibility on this issue, however, rests with the DCS.

10.    Documents to Discard or Delete . Generally, everything not described in the previous three paragraphs should be discarded or deleted, including interview notes, drafts of reports and analyses, e-mail and other correspondence, and documents furnished by the client, whether in paper or electronic form. The Working Papers Manager, with guidance from the EM, should exercise his or her discretion in determining which documents to retain and which to discard or delete, keeping in mind the goals of this Policy.

11.    Retention for Five Years . The suggested retention period for Working Papers remaining after the above review is five years. At the end of the retention period, the Working Papers file should be destroyed unless a decision to the contrary is made by the DCS or ED or by Firm Legal pursuant to paragraph 6. It would be reasonable for historical reasons to retain for an indefinite period of time a copy of final reports delivered to the client, and some offices, Working Papers Managers and/or DCS's may decide to do so.

12.     Storage and Release of Working Papers . Each office should have in place procedures designed to ensure the quick retrieval of stored, physical Working Papers. The Working Papers Manager should include with the physical Working Papers either some removable medium (e.g., a CD-ROM disk, diskettes, or zip or jazz disks) with a copy of the electronic documents retained or a memorandum describing the network or other location (e.g., name of VTR) in which the electronic Working Papers are stored. Since Working Papers normally will contain confidential information, copies should be stored in secure areas and released to other Firm members only with the prior authorization of the DCS or the ED.

13. Advice for Collection, Assembly, and Review of Electronic Files . As stated above, electronic documents are subject to collection, assembly, and review in the same manner as paper documents. Given the typically large number of electronic copies of documents generated during a typical engagement, this can be a particular challenge. It is important that each team member review all of his or her electronic documents (including e-mails) relating to the engagement, add to the Working Papers file those that need to be kept under the standards set forth above, and delete all other electronic documents (including e-mails) relating to the engagement. Information contained in electronic calendars and virtual team rooms should be treated the same way. To simplify this process, it may be advisable at the beginning of a study, to establish a central repository, such as a virtual team room or a specific folder or database on the Firm's network, for the retention of all electronic Working Papers generated during the course of the engagement. Please consult your local office IT staff for assistance with implementing such an approach.

14.    Use of Local Hard Drive and Removable Media . When working in the local hard drive or with removable media, team members should exercise caution to ensure that the data is encrypted using the Firm's standard settings on their workstations. At the end of the engagement, all team members should destroy all files that reside on local hard drives and removable media after transfer of certain of those files to the Working Papers file as described above. The Working Papers Manager should also ensure that Working Papers stored in all directories on the network file server (e.g., directories for client studies) are disposed of under the same standards applicable to paper files.

15. Recycling of Backup Tapes . Electronic files stored on backup tapes are erased or replaced with other files on a regularly-scheduled basis, depending upon the practices of the local office. In most circumstances, the Working Papers Manager need not take or request special measures to delete or retain backup tapes. If any team member believes it necessary and appropriate to erase or destroy backup tapes sooner than the standard period in which such tapes would normally be recycled in the relevant office, he or she must first consult with Firm Legal. In the event of circumstances as described in paragraph 6, Firm Legal may determine that it is appropriate to suspend the recycling of backup tapes for some additional period of time.

16. Members Leaving the Firm . If a team member is leaving the Firm, the Working Papers Manager should ensure

that such person complies with this Policy before departure. Departing personnel should not remove from the Firm any proprietary or confidential information of the Firm or its clients.

MCK-MDL2996-0181328